Standard

Amber Doe
Propia Persona
8306 #2020  WILSHIRE BLVD
LOS ANGELES, CALIFORINA 90211
PH: 424-533-4363
Fairnessincourtcases@gmail.com

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| Amber Doe , | ) **COMPLAINT FOR HUMAN** |
| | ) **TRAFFICKING, CIVIL RICO,** |
| Plaintiff, | ) **TORTURE, AND VIOLATIONS OF** |
| | ) **CONSTITUTIONAL, CIVIL, AND** |
| | ) **HUMAN RIGHTS** |
| vs. | ) |
| | ) |
| SEQUOIA | ) |
| | ) |
| CAPITAL OPERATIONS , LLC | ) |
| | ) |
| Et Al, | ) |
| | ) |
| Defendant. | |

Amber Doe
(A Canadian citizen of American Ancestors and survivor of cross-border human

trafficking, sexual slavery, and judicial persecution),

Plaintiff,

v.

SEQUOIA CAPITAL OPERATIONS, LLC, et al.,
Defendants.

*PRELIMINARY STATEMENT*

**I.**

**This is not a civil dispute. It is a reckoning.**

Plaintiff Amber , a multi-ethnic Canadian citizen of American ancestry, brings this action as a survivor of one of the most egregious and systemically concealed human trafficking, sexual slavery, and judicial corruption enterprises in modern legal history. For over two decades, Plaintiff has been hunted, trafficked, violated, and silenced by a transnational criminal conspiracy composed of:

- Billionaire financiers, including Defendants Sequoia Capital and Michael Goguen;

- Multinational venture capital firms and global law firms;

- 118 elite white supremacist lawyers;

- State and federal judges acting under color of law;

- And an entrenched network of organized crime syndicates, including the Hells Angels, the Russian Bratva, the Italian Cosa Nostra, the Japanese Yakuza, and South American cartels.

These actors operated in unlawful concert to form a cross-border trafficking and racketeering enterprise, using violence, sexual exploitation, torture, and coercion as instruments of control, and contracts, courts, and counsel as instruments of concealment.

Plaintiff was first trafficked at age fifteen by familial contacts and then into the possession of the Hells Angels, then funneled through a global trafficking pipeline spanning:
Florida,  Texas, California, New York, Ontario, British Columbia, Quebec, Alberta, Guam, China, Macau, the U.S. Virgin Islands, Spain, the Bahamas, Holland, Europe, and U.S. states including but

not limited to Arizona, Georgia, Louisiana, Massachusetts, Illinois, Michigan, Oklahoma, New Mexico, Rhode Island, New Jersey.

Plaintiff was:

- Sold to the organized crime syndicate's most elite clients—the billionaire, celebrity, and royalty class—under the guise of "elite modelling," "exotic dancing," and "arranged VIP event escorting";

- Trafficked by members of the Hells Angels working in conjunction with Cosa Nostra crime families, Bratva-affiliated syndicates, the Japanese Yakuza, and South American cartels through strip clubs, agencies, and direct delivery to billionaire traffickers in Houston, Dallas, Austin, San Antonio, Montreal, Toronto, Vancouver, New York, Miami, Tampa, Atlanta, New Orleans, Chicago, Europe, Japan, China, the Virgin Islands, Bahamas, Puerto Rico, Guam, California, Washington D.C., Michigan, and Illinois;

- Subjected to sexual slavery, debt bondage, psychological coercion, and threats of murder or harm to her siblings;

- Repeatedly raped, sodomized, mutilated, drugged, and denied medical care;

- Transported via private jets and shell corporations to be exploited by billionaires, celebrities, and royalty;

- Coerced into signing fraudulent contracts drafted by lawyers acting as traffickers;

- Silenced by attorneys, accountants, and government officials who acted as enforcers of the criminal enterprise.

When Plaintiff sought legal redress, she was met not with justice, but with a second, more insidious form of trafficking: legal trafficking.

For over eleven years, 118 white-collar legal operatives, many of whom are elite white male attorneys based in Texas, California, and New York, have explicitly and implicitly asserted that because Plaintiff is a woman of color, she has no right of access to justice for her enslavement and human rights violations. Yet these same actors claim unlimited license to:

- Exploit her for legal fees;

- Obstruct and sabotage her filings;

- Weaponize restraining orders, default judgments, and gag orders;

- And loot her assets across borders through forged documents, illegal subpoenas, and fake service.

This is not a case of negligence or mistake. It is an orchestrated and premeditated criminal conspiracy, executed by those sworn to uphold the law, aided by judicial gatekeepers who acted not as neutral arbiters, but as participants in trafficking and obstruction.

This Complaint invokes:

- The Trafficking Victims Protection Act (TVPA);

- Civil RICO, 18 U.S.C. § 1961 et seq.;

- 42 U.S.C. §§ 1983, 1985, and 1986;

- The Alien Tort Statute, 28 U.S.C. § 1350;

- The Texas Civil Practice and Remedies Code §§ 71.002, 134A.001 et seq. (civil conspiracy, trafficking, stalking);

- The Texas Penal Code §§ 20A.02 (trafficking), 22.021 (aggravated sexual assault), 36.02 (bribery), 32.46 (fraud);

- The Texas Constitution Article I, Sections 3, 13, and 19;

- And binding international human rights instruments including the Palermo Protocol, CEDAW, ICCPR, and CAT.

It seeks:

- Monetary, declaratory, and injunctive relief from private actors and corporate co-conspirators;

- And equitable and injunctive relief only from judges and state actors acting under color of law, for ongoing violations of Plaintiff's constitutional and international human rights.

Venue in the Southern District of New York is not merely proper—it is imperative. New York is a primary operational hub where predicate acts were directed, law firms coordinated retaliation, and reputational laundering of traffickers was conducted through elite media and PR channels. Texas remains the jurisdiction of original harm, grooming, coercion, and physical trafficking; California the jurisdiction of fraudulent contract execution, judicial sabotage, and rape-for-hire.

Plaintiff further invokes her statutory rights under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, including the right to be "reasonably protected from the accused" and to be treated "with fairness and with respect for the victim's dignity and privacy."

Defendants—including attorneys, corporate agents, and state actors—have engaged in a campaign of retaliation against the Plaintiff for seeking justice, through fraudulent filings, malicious prosecution, sealed gag proceedings, and procedural sabotage.

These retaliatory acts violate federal and Texas law and warrant immediate injunctive relief, protective orders, and sanctions. This Court has a constitutional and moral duty to hear this case, to protect the victim, and to uphold the rule of law.

**This Statement is not just a Complaint. It is a reckoning and a demand for justice.**

# PARTIES

## II.

**Plaintiff**

Plaintiff Amber *Doe,* is a citizen and national of Canada born of American Ancestry and a longtime resident of Florida, Texas, New York And California . She is a survivor of aggravated human trafficking, sexual slavery, rape, torture, forced labor, medical mutilation, and sustained judicial persecution, all perpetrated or facilitated by the named Defendants and their co-conspirators. She brings this action under:

- **Trafficking Victims Protection Act (TVPA),** 18 U.S.C. § 1591 et seq.;

- **RICO,** 18 U.S.C. § 1961 et seq.;

- **18 U.S.C. § 1595,** Private Right of Action;

- **42 U.S.C. § 1983,** Civil Rights Violations Under Color of State Law;

- **42 U.S.C. § 1985,** Civil Conspiracy to Interfere with Civil Rights;

- **42 U.S.C. § 1986,** Neglect to Prevent Civil Rights Conspiracy;

- **The Alien Tort Statute (ATS),** 28 U.S.C. § 1350;

- **Convention Against Torture (CAT);**

- **Palermo Protocol;**

- **Florida Civil Remedies for Human Trafficking,** Fla. Stat. § 787.06(4), § 772.103, and § 772.104;

- **Texas Human Trafficking Resource Center Act,** Tex. Gov't Code § 402.035;

- **Texas Civil Practice & Remedies Code,** §§ 98.001–98.003; and

- All applicable federal, Florida and Texas state, and international law.

Plaintiff was first trafficked as a minor throughout The US, Florida, Texas, New York, California and internationally, and much of the torture, exploitation, and abuse occurred in and originated from Texas, including her introduction into cross-border trafficking networks. However, Plaintiff was also trafficked, stalked, and exploited across Florida, including Tampa, Orlando, Miami Palm Beach and Daytona Beach, where she was held under duress in hotels, Private properties subjected to forced sexual entertainment services for enterprise clients, and surveilled as part of ongoing coercive control.

In Florida, Plaintiff was forced to engage in high-end escort events, elite parties, Strip clubs, Yachts, and underground gatherings associated with celebrities, venture capitalists, and Elite figures in Hillsborough County, Miami-Dade, Orange County, and Palm Beach. Florida served not only as a trafficking venue but also as a key location for **witness intimidation**, **stalking**, **financial sabotage**, and **media defamation campaigns** designed to isolate, destabilize, and erase Plaintiff.

The physical, economic, and reputational injuries sustained in Florida, Texas, California , New York form a core basis for jurisdiction. Each served as staging grounds for the transnational trafficking enterprise now challenged herein.

## Defendants

## DEFENDANTS SUMMARY – FLORIDA JURISDICTION AND CONNECTIONS

**Sequoia Capital Operations, LLC, together with its wholly-owned subsidiaries, affiliates, shell companies, and associated entities, constitutes a central financial nucleus of the transnational trafficking enterprise. Its subsidiaries include but are not limited to:**

- ○  Sequoia Capital Franchise Partners, L.P.

- ○  Sequoia Capital IX, L.P.

- ○  Sequoia Entrepreneurs Annex Fund, L.P.

- ○  Sequoia Heritage, LLC

- ○  Sequoia Capital Growth III Principals Fund, LLC

- ○  Sequoia Capital Franchise Fund, L.P.

- ○  Sequoia Capital Growth Partners III, L.P.

- ○  Sequoia Capital Growth Fund III, L.P.

- ○    Sequoia Capital Global Equities, LLC (SCGE Management, L.P.)

- ○    Sequoia Capital India LLP

- ○    Sequoia Capital China Fund, L.P.

- ○    Sequoia Capital Canada LLP

- ○    Sequoia Capital Israel LLP

- ○    Sequoia Capital Consultants, Inc.

- ○    Sequoia Fund Management (Cayman) Ltd.

- ○    Sequoia Capital Wealth Partners

Each of the following Defendants committed acts in or directed to the State of Florida and derived benefit—financial, strategic, legal, or reputational—from Plaintiff's exploitation, targeting, and suppression within Florida's jurisdiction. These facts support personal jurisdiction, venue, and statutory applicability under federal and Florida law, including Fla. Stat. §§ 48.193, 772.104, and 787.06(4)(b).

**Sequoia Capital Operations, LLC**, together with its subsidiaries, affiliates, shell companies, and investment vehicles—including but not limited to Sequoia Capital Franchise Partners, Sequoia Capital IX, Sequoia Entrepreneurs Annex Fund, Sequoia Heritage, and Sequoia Capital Global Equities—formed the financial core of the trafficking enterprise. Sequoia directed capital and management into enterprise activities operating in Florida. It used Florida as a recruitment and market hub for trafficking victims, including Plaintiff. Sequoia Capital committed acts directed to Florida and derived financial benefit from Plaintiff's exploitation within the state.

**Michael Lewis Goguen an American Billionaire**, operating through Sequoia  capital and **Two Bear Capital** and its affiliates (e.g., Two Bear Ranch, Two Bear Air, Proof Research, and Whitefish Frontiers), orchestrated trafficking operations involving Florida cities including Tampa, Miami, and Orlando. Goguen used Florida hotels and luxury venues for rape, surveillance, coercion, and exploitation of Plaintiff. He directly benefitted from Plaintiff's forced labor and captivity in Florida, personally and through his network of controlled entities.

**Two Bear Capital**, including Two Bear Capital Operations LLC and related fronts, used Florida's hospitality sector and travel infrastructure to maintain, transfer, and

surveil Plaintiff. Enterprise agents conducted acts in Florida to facilitate trafficking and witness intimidation. Two Bear Capital derived financial and logistical benefit from Plaintiff's captivity and coerced labor in Florida.

**Quinn Emanuel Urquhart & Sullivan LLP**, and its attorneys—including John B. Quinn, Bruce Van Dalsem , Alex Spiro, Kathleen Sullivan, Diane Doolittle, Kyle Batter, Joseph Sarles, Michael F. Grady, Christopher Tayback, William C. Price, Mark Holsher, Suong Nguyen, Joseph C. Sarles, Patrick Doolittle, Margaret Caruso, Michael Lifrak, Megan M. Kerr, Sara Cork, Sara Pollack, Alex Gerbi, Ted Greeno, Aidan O'Rourke, Gregory Pantlin, Harry Olivar  and others, engaged in acts of obstruction and retaliation targeting Plaintiff through Florida. The firm maintains an office in Miami, coordinated with Florida-based PR firms, and utilized media and legal threats directed at Plaintiff while she was within the state. Quinn Emanuel derived legal and reputational benefit from silencing Plaintiff through coordinated Florida acts. Quinn Emanuel Urquhart & Sullivan LLP and its named attorneys orchestrated legal obstruction, bribery of judicial officers, subornation of perjury, and fraudulent litigation to silence Plaintiff, obstruct justice, and shield the trafficking enterprise across multiple jurisdictions.

**Kirkland & Ellis LLP**, which maintains operations in Florida, participated in obstructive litigation and concealment efforts across jurisdictions, including Florida. It assisted in laundering investment ties linked to Plaintiff's traffickers and directed acts to Florida's forums and corporate entities.

**Glaser Weil LLP**, **Goodwin Procter LLP**, **Wilson Sonsini Goodrich & Rosati**, **Waymaker LLP**, **Lenczner Slaght LLP**, and **Nemecek & Cole LLP**, while based primarily in California or Ontario, actively coordinated across jurisdictions. Each committed acts directed to Florida forums, or derived benefit from retaliatory legal abuse harming Plaintiff while residing or seeking refuge in Florida. Kirkland, Quinn, Goodwin, and Wilson Sonsini maintain operations or active legal business within Florida.

**Paoli & Purdy LLP**, **Bisnar Chase LLP**, **Brown & Charbonneau LLP**, **Sherman Law**, The Law Form Of Rivers J Morrell III, Day Day and Brown,  **Rivers Morrell**, **Herb Fox Law**, and others engaged in coordinated litigation fraud, obstruction, and suppression of trafficking-related malpractice and abuse. Florida was used as a jurisdictional shield, including via motions, dismissals, and summary judgment abuse. These Defendants directed legal tactics to Florida or derived protection from using Florida courts.

**Hospitality Defendants**, including **Marriott International**, **Sheraton Gateway Toronto**, **Rosewood Hotels**, **Westin**, and unnamed hotels in **Orlando**, **Tampa**, and **Miami**, knowingly hosted Plaintiff's captivity and sexual exploitation. They failed to intervene despite trafficking indicators and profited from enterprise operations hosted on their properties in Florida.

**Media & Defamation Co-Defendants**, including **Fox Corp**, **MSNBC**, **Bloomberg**, **New York Post**, **Vox Media**, and **New York Magazine**, disseminated enterprise-sponsored defamation across Florida outlets, targeting Plaintiff's credibility and deterring redress. They committed tortious acts in Florida and benefitted from reputational sabotage aimed at suppressing whistleblowing from within the state.

**State Actor Defendants**, including judicial officers and government officials, are sued solely for injunctive and declaratory relief under 42 U.S.C. §§ 1983, 1985, and 1986, and relevant constitutional doctrines. They are not sued for monetary damages. They are included to remedy ongoing constitutional harm and ensure injunctive access to courts, redress, and civil rights enforcement.

**John Does 1–100** represent unknown individuals and shell entities who committed trafficking, surveillance, or obstruction acts in Florida or derived benefit from Plaintiff's exploitation within the state. These co-conspirators will be identified as discovery proceeds.

# JURISDICTION AND VENUE

## II.

**HUMAN TRAFFICKING THROUGH TEXAS AND FLORIDA**

(Initiation and Reinforcement of Sexual Slavery, Genital Mutilation, Legal Entrapment, and Transnational Stalking)
Jurisdictions:
Texas (Dallas, San Antonio, Houston,, Austin);

Florida (Miami, Tampa, Daytona Beach, Boca Raton, Orlando, Fort Lauderdale, Palm Beach)

Defendants Involved:
Organized crime affiliates; gang-operated strip clubs and Elite Event model escort agencies; Defendant Michael Goguen; Sequoia Capital co-conspirators; Quinn Emanuel attorneys; Two Bear Capital operatives; affiliated facilitators across luxury hospitality, aviation, watercraft, legal, and event infrastructure in Florida, Texas, New York and California.

Factual Summary:

Although Plaintiff had already endured international trafficking prior to arriving in the Florida and Texas was the foundational jurisdiction where the trafficking enterprise first cemented a permanent and escalating hold over her body, liberty, and legal autonomy. That dominion was later extended and reinforced in Florida, where the enterprise expanded its psychological, legal, and surveillance-based control.

In Texas, Plaintiff was forcibly transported to and repeatedly held in Houston, Austin, San Antonio, and Dallas, where she was subjected to:

- Sexual slavery and degradation under threat of death by gang traffickers and Defendant Goguen;

- Genital mutilation orchestrated by Goguen to enforce obedience through extreme trauma;

- Creation of trafficking channels via Texas-based corporations and falsified contracts;

- Legal isolation and forced settlements engineered by Quinn Emanuel, Goodwin Procter, and Wilson Sonsini attorneys;

- Denial of trauma medical care, including post-assault STI treatment and surgery;

- Air and ground transport across Texas and into other states, supported by a network of corrupt organized crime syndicates and high net worth male predators

- In Florida, the enterprise shifted toward long-term surveillance, stalking, retaliatory harassment, and reputation annihilation. Key factual components include:

- Surveillance and intimidation in Tampa, Miami, and Fort Lauderdale, where Goguen's agents tracked Plaintiff's movements during periods of recovery and emergency refuge;

- Utilization of Florida-based proxies, shell companies, and law firms to continue coercion and suppress legal redress;

- Stalking and interference with housing, medical access, and witness communications in Florida , where Plaintiff attempted to rebuild safety infrastructure;

- Repeated sabotage of Plaintiff's support networks through coercive intimidation, Extortion, and retaliatory contact with service providers;

- Financial coercion through obstructed settlements, Illegally frozen bank accounts, and illicit use of California and Ontario courts as weapons to press plaintiff through fraudulent orders signed by bribed judges with zero notice to plaintiff.

- Surveillance during Plaintiff's stays in domestic violence shelters and trauma clinics in South and Central Florida.

Legal Violations:

Federal Law:

- 18 U.S.C. § 1591 – Sex trafficking by force, fraud, or coercion

- 18 U.S.C. § 1589 – Forced labor through coercion and abuse

- 18 U.S.C. § 1594 – Conspiracy to engage in trafficking

- 18 U.S.C. §§ 1349, 1956–1957 – Conspiracy to commit fraud and money laundering

Florida Law:

- Fla. Stat. § 787.06 – Human Trafficking

- Fla. Stat. § 784.048 – Stalking and Aggravated Stalking

- Fla. Stat. § 772.103 – Civil Remedies for Criminal Practices (RICO)

- Fla. Stat. § 760.51 – Civil actions for violations of constitutional rights

- Florida Crime Victims' Rights Amendment (Marsy's Law

Texas Law:

- Tex. Penal Code § 20A.02 – Trafficking of persons

- Tex. Penal Code § 22.021 – Aggravated sexual assault

- Tex. Penal Code § 20.04 – Aggravated kidnapping

- Tex. Penal Code § 22.04 – Injury to a child, elderly individual, or disabled individual

- Tex. Civ. Prac. & Rem. Code § 71.002 – Wrongful death and personal injury damages

International Law:

- Palermo Protocol (Articles 3–5)

- Convention on the Elimination of All Forms of Discrimination Against Women (CEDAW), Art. 6

- Universal Declaration of Human Rights (UDHR), Arts. 4–5

Jurisdictional Statement:

Florida is a continuing and essential jurisdiction due to the trafficking which occurred in Florida for years, persistent stalking, retaliatory conduct, legal sabotage, and coercive interference perpetrated in Miami, Tampa, Daytona Beach, and surrounding regions, as Plaintiff attempted to seek refuge, emergency care, and redress.

Texas is the foundational jurisdiction for this action because it is where Defendant Michael Goguen first obtained coercive dominion over Plaintiff's body, liberty, and

legal autonomy.

While Plaintiff was entrapped in California through a fraudulent 2014 contract and systematically obstructed in New York courts, Texas and Florida New York and California together comprise the geographic and strategic heart of the trafficking enterprise's operations and retaliation.

Accordingly, venue is proper in the Southern and Middle Districts of Florida, Southern District of Texas, the Southern District of New York, and the Northern District of California, the Central and Southern Districts of California each representing a jurisdiction of trafficking initiation, expansion, retaliation, and continuing harm.

# LEGAL THEORY

# III.

This Complaint arises from a widespread, coordinated, and transnational criminal enterprise involving human trafficking, child-sex trafficking,  sexual slavery, torture, obstruction of justice, and systemic legal persecution. The enterprise operates across multiple jurisdictions and legal systems, with both private and state actors~ including billionaires, multinational law firms, venture capital firms, judges, and government officials, working in concert to traffic, violate, and silence the Plaintiff, a multi-ethnic Canadian citizen of American descent and survivor of modern-day slavery.

Over the span of more than two decades, the Plaintiff has been:

- Repeatedly raped, sodomized, trafficked, and medically mutilated;

- Imprisoned, drugged, and sold under false contracts of elite modeling, escorting, and performance;

- Coerced into signing legal documents under duress and threat of murder;

- Sabotaged by 118 lawyers acting in bad faith under the guise of representation;

- Retaliated against through the use of courts, fraudulent judgments, gag orders, and coordinated legal fraud.

The actors involved did not simply fail to protect the Plaintiff—they knowingly facilitated and profited from her exploitation. The abuse alleged is not merely criminal in nature. It rises to the level

of crimes against humanity under U.S. law, customary international law, and binding treaty obligations.

## STATUTORY AND CUSTOMARY LAW FRAMEWORK

The following legal doctrines provide the basis for Plaintiff's claims against private and public co-conspirators:

U.S. Federal Law

- Trafficking Victims Protection Act (TVPA), 18 U.S.C. §§ 1581–1597

- Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968

- Civil Rights Statutes, 42 U.S.C. §§ 1983, 1985, 1986

- 18 U.S.C. § 242, Deprivation of Rights under Color of Law

- 18 U.S.C. § 1596, Extraterritorial Jurisdiction for TVPA Violations

- 28 U.S.C. § 1350, Alien Tort Statute (ATS)

Binding International Instruments (Enforceable via ATS, TVPA, and RICO)

- Palermo Protocol on Trafficking in Persons

- Rome Statute, Article 7: Enslavement, Torture, Persecution

- Convention Against Torture (CAT)

- Convention on the Elimination of All Forms of Discrimination Against Women (CEDAW)

- International Covenant on Civil and Political Rights (ICCPR)

- Universal Declaration of Human Rights (UDHR)

The rights violated here—freedom from torture, slavery, persecution, and legal abuse—are protected not only by domestic law but also by *jus cogens* norms: the highest form of international legal obligation, from which no derogation is permitted.

## IMMUNITY DOES NOT APPLY

No Defendant in this action, whether a private actor, attorney, law firm, financier, judge, or state official, may invoke judicial immunity, sovereign immunity, prosecutorial discretion, or the political question doctrine in defense of:

- Human trafficking

- Rape and torture

- Fraud upon the court

- Obstruction of justice

- Crimes against humanity

- Civil rights violations under color of law

All acts alleged in this Complaint were:

- Committed outside the bounds of lawful authority;

- Executed in furtherance of a transnational criminal conspiracy;

- Undertaken with actual knowledge of illegality; and

- Carried out with the intent to silence, destroy, and erase the Plaintiff's ability to seek redress.

State actors named in their official capacity are not shielded from injunctive and declaratory relief, as established in *Ex Parte Young*, 209 U.S. 123 (1908). Further, immunity doctrines do not protect any actor from liability where they participate in or enable systemic rape, slavery, and obstruction of justice.

Plaintiff specifically seeks:

- Monetary, declaratory, and injunctive relief from private and corporate defendants;

- Injunctive and equitable relief only from state actors and judicial officials sued in their official capacities, where ongoing violations of constitutional and human rights continue.

## CONCLUSION

This is not a conventional civil matter. It is a reckoning, a test of whether the U.S. legal system will uphold its own laws, confront entrenched legal corruption, and provide redress to a survivor of state-enabled slavery.

The Complaint pleads severe and substantiated claims, supported by over two decades of evidence, sealed court filings, government correspondence, forensic documentation, and whistleblower disclosures. The Plaintiff has been denied remedy in every jurisdiction due to systemic obstruction and legal retaliation. This Court now bears the responsibility to enforce the rule of law.

To dismiss or delay this action on technicalities would render this Court complicit in the trafficking, torture, and silencing of a human being who has already survived the unimaginable.

Justice cannot be deferred.
This Complaint is the reckoning.

# Rule 8 Compliance Statement

# III

Plaintiff respectfully submits that this Complaint is pleaded in compliance with Rule 8 of the Federal Rules of Civil Procedure. The facts are stated clearly and concisely, identifying:

- Each Defendant's role in the underlying conspiracy,

- Specific dates and events,

- Legal injuries suffered,

- Causes of action arising under federal statutes, constitutional provisions, and international treaties.

Plaintiff's claims are not vague or conclusory; rather, they are detailed, plausible, and supported by specific material facts as required by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Given the nature of the claims — including human trafficking, judicial corruption, and civil rights violations — this factual specificity is essential and justifies the length of the pleading under Rule 8(d)(1).

Plaintiff also respectfully invokes Rule 8(e), which mandates that pleadings be construed "so as to do justice," especially where pro se and trauma-informed access to justice is at stake.

# STATEMENT OF FACTS

# V.

A. Introduction: Plaintiff's Ordeal and Jurisdictional Foundation

1.  Plaintiff Amber ("Amber ") is a Canadian citizen born of American born ancestors and survivor of transnational human trafficking, systemic sexual exploitation, torture, forced labor, and severe violations of her civil, constitutional, and internationally recognized human rights.

2.  From the age of fifteen, Plaintiff was trafficked across international and U.S. state borders by organized criminal networks, including the Hells Angels, and ultimately fell under the control of Defendant MICHAEL LEWIS GOGUEN, a U.S.-based billionaire financier residing in Montana and conducting interstate and international commercial activities.

3.  The events pleaded herein give rise to claims under federal law, including but not limited to: the Trafficking Victims Protection Act (18 U.S.C. §§ 1581 et seq.), the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961-68), 42 U.S.C. § 1983, and related civil rights and constitutional violations, along with pendent claims under state and international law.

B. Pattern of Human Trafficking and Sexual Exploitation

4.  Amber was first trafficked by a family member into the hands of the Hells Angels at age fifteen and funnelled into a high-end international sex trafficking circuit marketed as elite modelling.

5.  For years, Amber was trafficked through strip clubs, luxury properties, Private aircraft and water craft,  sporting events, and private parties in jurisdictions including the U.S. Virgin Islands, China, Japan, Guam, Puerto Rico, Florida, New York, Michigan, Arizona, Georgia, Texas, New Jersey, Oklahoma, Alberta, Ontario, Quebec, and various European nations.

6.  After being Trafficking to Billionaire pedophiles in The US Virgin Islands She was trafficked to Texas.  After arriving in Dallas, Texas, Amber was introduced to Defendant Goguen through a VIP club manager affiliated with organized crime. Goguen assumed total coercive control over her, promising safety in exchange for submission.

7.  Goguen transported Amber using aircraft and shell corporations, subjected her to forced sexual servitude, psychological domination, and coerced compliance via drugging and sexual violence. He used financial instruments and entities including Sequoia Capital expense accounts to fund this enterprise.

8. Amber was repeatedly drugged and raped, including during a high-profile assault in Toronto, Ontario after discharge from an ICU with a head injury. Goguen used Sequoia Capital's resources to fly her there.

9. Amber was forced by Goguen to create sham entities (e.g., Je Ne Sais Que Enterprises, LLC) to disguise her trafficking and conceal the financial transactions from Goguen's spouses and the IRS. These funds were laundered through offshore number company accounts and U.S. banks.

10. The trafficking escalated to increasingly violent sexual acts. Amber was drugged with substances such as Rohypnol, subjected to forced sodomy, degradation, and sexual torture.

C. Physical Harm and Medical Abuse

11. In 2010, Amber was diagnosed with multiple high-risk HPV strains. Goguen knowingly withheld his STI status and coerced her to continue sexual acts while infected.

12. In 2012, he caused a 7-inch anal tear requiring emergency surgery in London, UK. He paid $100,000 to suppress the incident but evaded all legal accountability.

13. Goguen intensified his psychological abuse when Amber resisted further exploitation, hiring private operatives to surveil her and allegedly attempting to solicit her murder.

D. Coerced Settlement and Legal Entrapment

14. In 2014, under coercion and duress, Amber was forced to terminate her counsel and accept representation from Sequoia capitals elite legal team including Quinn Emanuel LLP, Goodwin Procter LLP, and Wilson Sonsini LLP.

15. On May 23, 2014, Amber was coerced into signing a $40 million settlement agreement drafted by the aforementioned law firms at the Rosewood Sand Hill Hotel in California, a known site of Sequoia Capital Sex Enterprises and Goguen's trafficking operations. The agreement was executed without independent counsel or negotiation. Witnessed and Signed Before Sequoia Capitals Staff Notary.

16. Goguen then immediately braced the contact force her to endure his sexual abuse to seal the deal

17. Only one installment of $10 million was paid. Goguen defaulted, resumed retaliation, and deployed Matthew Marshall, his former security chief (now a convicted felon), to surveil and attempt to assassinate Amber .

18. Only days after the agreement was sign pedophilic serial rapist Goguen materially breached the confidentiality clause of the contract causing her further damage by disseminating her name and images.

E. Obstruction of Justice and Judicial Corruption (2016–2025)

19. Between 2016 and 2025, Amber faced systematic obstruction in U.S. courts. She was sabotaged by attorneys bribed or coerced by Sequoia Capital, Goguen and Quinn Emanuel.

20. Her San Mateo County bench trial was held in absentia while she was incapacitated after major surgery. A $14 million fraudulent judgment, fraudulent restraining order, and illegal unconstitutional gag order were drafted by Quinn Emanuel and  were issued by bribed corrupt Judge Danny Chou, based on falsified evidence and perjured testimony.

21. Her appeals were circumvented. Ontario courts illegally enforced the fraudulent California judgment by issuing a Mareva injunction that illegally froze her assets and her siblings personal assets despite jurisdictional defects and lack of service.

22. Judges Barbara Conway and Cory Gilmore signed asset freezes despite acknowledging in ex parte emails with the Quinn Emanuel lawyers that Amber was not served and that they were basing this mareva injection on the falsified addresses and fake back account numbers in Ontario, forcing her into homelessness  and leaving her with no access to critical medical treatment and a additional surgery during the COVID-19 pandemic.

F. Federal and Interstate Sabotage

23. From 2023 to 2025, Amber filed multiple federal civil rights and trafficking lawsuits in California, New York, D.C., and Montana. All were wrongfully dismissed by biased or conflicted judges, including Maame Frimpong, Steve Kim, Laura Taylor Swain, David. O. Carter and Donald Molloy.

24. Quinn Emanuel Lawyers unlawfully interfered in the Southern District of New York by submitting ex parte communications via Fedex to Chief Judge Swain of

which are in evidence, resulting in the improper fraudulent transfer of Amber 's case.

25. Amber 's filings were repeatedly dismissed under inapplicable doctrines such as res judicata despite no prior adjudication on the merits.

## G. Legal Fraud, Retaliation, and Vexatious Litigant Designation

26. Amber 's cross-complaints in California were sabotaged. Judges like Nico Dourbetas and Stephanie Bowick dismissed her filings, denied fee waivers, and improperly declared her a vexatious litigant at thew direction go Attorney general Rob Bonta.

27. Amber was denied representation, forced into pro se status when defendants bribed interfered with and revoked 5 separate sets of lawyers, and then criminalized in a fraudulent contempt trial for "defaming" her trafficker. Judges Danny Chou, Elizabeth Lee, Susan Greenberg, and Nina Shapirshteyn invented the sham bench trial proceedings in abstentia and presided over quasi-criminal proceedings that denied her due process and were held in all absence of jurisdiction.

28. Diane Doolittle, of Quinn Emanuel, issued illegal subpoenas in closed cases without jurisdiction or service, violating Amber 's rights.

## H. Final Acts of Retaliation and Judicial Complicity

29. As recently as 2025, Amber 's filings to vacate fraudulent judgments were summarily denied without hearing by the Chief Judge of the California Supreme Court . She was subjected to ex parte hearings, surveillance, asset freezes, and denial of medical care.

30. California state bar, law enforcement and the judicial council judges refused to investigate her reports of lawyer embezzlement and judicial fraud, citing her "vexatious" designation. Her complaints to oversight bodies disappeared from dockets and databases.

31. The Governor of California Gavin Newsom and Attorney General Rob Bonta were made aware of over 40 instances of judicial corruption yet refused to intervene.

32. After being subjected to repeated sexual exploitation and trauma, Amber sought to enforce her rights and secure safety from further abuse. In retaliation, Goguen and his legal team, including Quinn Emanuel, Goodwin Procter, and Wilson Sonsini, escalated coercive tactics including surveillance, gaslighting, and deprivation of resources. Plaintiff was deliberately isolated from legitimate legal counsel and forced to engage in proceedings managed by her abusers' attorneys, violating her rights under 18 U.S.C. § 1592 (abuse of legal process to maintain trafficking) and 18 U.S.C. § 1595. The above facts demonstrate a criminal enterprise involving transnational trafficking, judicial corruption, obstruction of justice, financial exploitation, and state complicity.

33. Quinn Emanuel, acting in coordination with Sequoia Capital and Goguen, facilitated the execution of a fraudulent "personal injury settlement agreement" in May 2014 at the Rosewood Sand Hill Hotel, a known site of trafficking and coercion used by Goguen. The agreement was signed under extreme duress, without independent counsel, and witnessed by Sequoia's in-house notary. It purported to settle Plaintiff's claims for $40 million payable in four $10 million installments, but only the first payment was made. This act constitutes contractual fraud, obstruction of justice, and enforcement of a trafficking-based contract in violation of 18 U.S.C. § 1594 and common law doctrines voiding contracts procured under duress. These facts support Plaintiff's claims under the U.S. Constitution, the TVPA, RICO, 42 U.S.C. §1983, and supplemental claims under international and foreign law. Amber seeks full declaratory, injunctive, equitable, and monetary relief from this Court.

E. Systematic Attorney Sabotage and Fraudulent Proceedings

34. In the lead-up to the 2019 trial, attorneys from Quinn Emanuel arranged a trip to Las Vegas with Amber 's retained counsel, William Paoli. During this meeting, Paoli was allegedly bribed to sabotage Plaintiff's case and failed to appear at trial, abandoning his client without cause.

35. Amber 's judicial proceedings were further obstructed by a $900-per-hour referee appointed from JAMS, former Judge Read Ambler, who continued proceedings despite Amber being physically incapacitated, sedated, and medically prohibited from attending.

36. While Plaintiff was pro se and under post-operative care, bone marrow transplant, including tungsten detoxification, orthopaedic recovery with rods and plates, seizure management, and bone marrow transplant, San Mateo Judge John Grandsaert denied a meritorious motion to continue the trial. This was a clear denial of due process in violation of the Fifth and Fourteenth Amendments and ensured Plaintiff was unrepresented and medically unfit when the fraudulent trial proceeded.

37. On the basis of fabricated testimony and falsified evidence provided by Quinn Emanuel, Judge Danny Chou entered a $14 million default judgment, an illegal gag order, and a fraudulent restraining order, all drafted by Quinn Emanuel Lawyers and issued without trial on the merits, notice, or opportunity to respond.

38. Despite appeals being pending in California appellate courts, the judgment was unlawfully enforced in Canada. The Ontario Superior Court, knowingly ignoring California law which stays judgment enforcement during appeal, executed the judgment with the assistance of Defendant lawyers and judges operating in bad faith and without lawful jurisdiction.

39. Ontario Superior Court Judges Cory Gilmore and Barbara Conway issued a Mareva injunction to freeze Amber 's assets based on fabricated evidence and undisclosed ex parte email communications with the Quinn Emanuel Lawyers.

40. Defendants Monique Jilesen and Sahar Talebi, acting through Lenczner Slaght LLP, falsified banking records, addresses, and corporate documents to fraudulently assert jurisdiction in Ontario. They reclassified Plaintiff as a "corporation" to bypass individual rights and execute asset seizure unlawfully.

41. In written correspondence, Judges Gilmore and Conway admitted Amber had not been served, but nonetheless signed freezing orders which denied Plaintiff access to medical funds, housing, and urgent surgery, forcing her into homelessness during the global COVID-19 pandemic.

42. The asset freeze extended beyond Amber , unlawfully impacting the bank accounts of her siblings and family members without notice, standing, or due process. This action violated constitutional protections, property rights, and international human rights standards.

43. During this time, Quinn Emanuel attorneys actively intercepted and obstructed Amber 's communications with U.S. and Canadian law enforcement, subverting potential criminal investigations into human trafficking, sexual assault, and fraud.

44. Despite full knowledge of the falsified proceedings, Lenczner Slaght LLP and Quinn Emanuel appeared before the Supreme Court of Canada in bad faith, using fabricated evidence and procedural fraud. Amber is currently pursuing claims for fraud, obstruction, and conspiracy against the Canadian Crown and named individuals.

F. Systematic Attorney Sabotage and Fraudulent Proceedings (continued)

45. Plaintiff's legal representation was persistently sabotaged. Her attorneys, Gregory Brown and Herb Fox, embezzled more than $300,000 from her trust account and failed to represent her in her legal malpractice case and failed to file and execute timely appeals, causing irreparable harm. These actions constitute violations of fiduciary duty, constructive fraud, and obstruction of access to the courts in violation of 42 U.S.C. § 1983.

46. In Orange County JAMS ARBITRATION, Defendant lawyer/judgePatricia Glaser (Glaser Weil LLP), in conspiracy with JAMS arbitrators and mediators, blocked a $40 million legal malpractice case brought by Amber , depriving her of the opportunity to be heard and redress meritorious claims.

47. Amber 's retained counsel From Paoli and Purdy at who was tampered with and bribed by Glaser and her lawyers from Nemecek and Cole, Paoli & Purdy LLP failed to file responses or appear for arbitration, despite full payment by Plaintiff of all attorney fees, arbitration fees, and expert witness costs. Their failure resulted in another default judgment, procured through extrinsic fraud, breach of contract, and deliberate legal malpractice.

48. In 2022, Amber filed a motion in San Mateo Superior Court to vacate the fraudulent judgment under California Code of Civil Procedure § 473(d) for extrinsic fraud. Judge Danny Chou delayed the matter for 90 days, then denied the motion citing false procedural grounds, despite the absence of any statute of limitations for extrinsic fraud.

49. During oral proceedings for the motion to vacate, Quinn Emanuel partner Diane Doolittle brazenly publicly stated, "We don't bribe judges," without provocation. No other party had raised this issue, and her statement was construed as an unsolicited admission relevant to ongoing allegations of judicial bribery and collusion.

50. In a retaliatory action brought by former attorney Rivers Morrell in 2016, shortly after Amber terminated his services under duress, Amber 's cross-complaint was

deliberately sabotaged through judicial collusion, attorney conflict, and ex parte judicial interference from Quinn Emanuel.

51. In 2024, Amber 's cross-complaint was systematically undermined by Gouge's counsel and several sets of her prior counsel. Judge Nico Dourbetas, acting on motions orchestrated by Quinn Emanuel and Goguen's defense team, declared Amber a vexatious litigant without proper hearing or findings, depriving her of court access in violation of due process and the First Amendment.

52. In 2024, despite Amber having already been granted a fee waiver and documented as indigent, Judge Dourbetas imposed a $50,000 security bond to maintain her cross-complaint. This unconstitutional demand effectively barred Amber , a trafficking survivor residing in a shelter, from proceeding with claims against billionaires and elite legal institutions.

G. Federal Court Obstruction and International Denial of Justice

55. In March 2023, Plaintiff filed a comprehensive civil complaint in the U.S. District Court In California, naming all primary actors, including state judges, attorneys, billionaires pedophiles, rapists and traffickers, and affiliated corporations for violations under the Trafficking Victims Protection Reauthorization Act (TVPRA), 42 U.S.C. § 1983, and related constitutional and statutory claims. District Judge Maame Frimpong dismissed the complaint without a hearing, erroneously citing res judicata to bar claims against numerous defendants who had never been parties to any prior action.

56. Between 2023 and 2025, Amber filed multiple federal complaints alleging human trafficking, sexual slavery, civil rights violations, obstruction of justice and systemic fraud. Federal judges, including Maame Frimpong, Donald Molloy, Steve Kim, David O. Carter, and Laura Taylor Swain, dismissed these actions under manufactured pretexts, often invoking res judicata or jurisdictional defects not supported by the record.

57. Quinn Emanuel partner Diane Doolittle interfered directly with Amber 's active federal litigation by sending ex parte communications to U.S. District Judge Laura Taylor Swain, including a physical FedEx letter sent to chambers in violation of judicial canons and ethical rules, resulting in procedural interference with a case pending in the Southern District of New York.

58. In July 2023, after Amber 's complaint and fee waiver were accepted in the Southern District of New York, Chief Judge Swain inexplicably transferred the case back to the Central District of California for adjudication, citing Frimpong's prior rulings, despite the fact that federal summons had been approved and service was in progress via the U.S. Marshals Service.

59. Magistrate Judge Steve Kim and District Judge Maame Frimpong then demanded that the case be reassigned to their court in California. When the Clerk's Office refused, citing it as a discovery matter not a 42 U.S.C. § 1983 civil rights claim, Kim and Frimpong bypassed standard assignment procedures and dismissed the complaint without any hearing, briefing, or adjudication on the merits.

60. In August 2023, Plaintiff filed a separate civil complaint in the U.S. District Court for the District of Columbia (Amber v. Vox Media et al.) to pursue relief based on ongoing defamation, interference with federal rights, and trafficking-related injuries. Once again, Quinn Emanuel intervened and manipulated judicial discretion to have the matter dismissed without hearing.

61. Plaintiff then filed in the U.S. District Court for the District of Montana, where Defendant Michael Goguen resides. The case was intercepted and reassigned to Senior Judge Donald Molloy, who had previously presided over criminal proceedings involving Goguen's former security contractor, Matthew Marshall. Judge Molloy denied Amber 's right to proceed, citing frivolous grounds and refusing to consider the merits of her trafficking and constitutional claims.

H. 2016–2024 Orange County Cross-Complaint and Judicial Persecution

62. In 2016, attorney Rivers Morrell, whom Plaintiff had been forced to terminate under duress, filed a $100 million action in Orange County Superior Court (The Law firm of Rivers Morrell III v. J ), naming Amber , Goguen, Quinn Emanuel, and Goodwin Procter as defendants. The case was improperly stayed pending the outcome of the fraudulent San Mateo judgment procured without notice or jurisdiction.

63. Defendant Patricia Glaser of Glaser Weil LLP intervened in the Orange County matter and orchestrated the removal of Amber 's retained counsel from Paoli & Purdy LLP through corrupt influence and bribery, thereby sabotaging Amber 's $40 million legal malpractice claim against Glaser Weil. The case was diverted to a confidential

arbitration proceeding at JAMS, funded in full by Plaintiff, but hidden from her by her own attorneys.

64. Amber had paid legal fees, arbitration fees, and expert witness costs in full. However, Paoli & Purdy LLP, under Glaser's interference, failed to notify Plaintiff of the scheduled arbitration. As a result, the firm did not appear, and Glaser Weil secured a fraudulent multi-million dollar default judgment despite never serving discovery or proving any claims.

65. Between 2016 and 2024, Amber retained four separate legal teams to defend and prosecute her interests in the Orange County litigation. None filed a proper Answer on her behalf. By 2024, Glaser Weil's counsel, Nemecek & Cole LLP, was representing multiple adverse parties simultaneously, including all of Amber 's former attorneys, Glaser Weil, Rivers Morrell, The Law. Firm of Rivers J Morrell the III and Paoli & Purdy, in a textbook violation of ethical conflict rules and an egregious breach of fiduciary duty.

66. In July 2023, Amber filed a cross-complaint in the Orange County action, which was properly served on all parties. The filing included claims for legal malpractice, fraud, civil conspiracy, and violations of her federal civil rights under 42 U.S.C. § 1983 and the TVPRA.

67. On September 11, 2023, during a Zoom hearing, Judge Nico Dourbetas granted Amber 's fee waiver on grounds of indigency. However, at the same hearing, Quinn Emanuel attorney Kyle Batter announced a "secret settlement" between Rivers Morrell and Goguen, made without Plaintiff's participation or knowledge, further evidence of collusion and bad faith.

68. Despite having granted Amber 's fee waiver, Judge Dourbetas subsequently issued orders denying all of her motions without legal reasoning. He allowed Quinn Emanuel to proceed with litigation, while simultaneously claiming the case was "stayed against Amber ", a contradictory and unconstitutional posture that deprived Amber of access to the courts.

69. In July 2024, Judge Dourbetas issued an order demanding Amber post a $50,000 bond within 30 days or face dismissal of her cross-complaint. This demand, made of a trafficking survivor living in a shelter, constituted an unlawful denial of access to justice in violation of her rights under the First and Fourteenth Amendments and 42 U.S.C. § 1983.

70. Amber filed three separate motions for recusal of Judge Dourbetas on grounds of bias, conflict of interest, and judicial misconduct. All were summarily denied without

explanation. Multiple attorneys from Quinn Emanuel and other firms submitted joinders supporting the vexatious litigant designation against Amber to silence her and deprive her of any redress against her abusers.

71. In August 2024, Judge Dourbetas dismissed Amber 's case and unlawfully declared her a vexatious litigant, thereby barring her from initiating or continuing any legal proceedings in California without first obtaining permission from the court. This designation, made without due process or findings of frivolous conduct, violated Amber 's rights under the U.S. Constitution, international law protecting trafficking survivors, and California's own procedural standards.

I. Retaliatory and Illegal Subpoenas

72. Plaintiff appealed Judge Dourbetas's dismissal to the California Court of Appeal for the Fourth Appellate District. All of her appeals were summarily dismissed without legal justification, allegedly under undue influence from Quinn Emanuel. In some cases, the appeals disappeared entirely from the docket, indicating tampering with the court record and denial of procedural due process.

73. The State Bar of California, despite receiving multiple bar complaints from Plaintiff supported by detailed evidence, refused to investigate or discipline any attorneys involved in embezzlement, conflict of interest, fraud, falsification of evidence, bribery, stalking, hacking, judge tampering or subornation of perjury. The Bar cited Amber 's status as a "vexatious litigant" as a basis to deny her even the right to report crimes, an unconstitutional deprivation of equal protection and access to remedy.

74. Plaintiff filed judicial complaints against four state court judges in California with the Judicial Council. The complaint documents and the judges' names disappeared from the system without adjudication. When Amber appeared in person at the Judicial Council's offices in San Francisco, she was handed blank dismissal forms with no judge names or investigative records attached.

75. During the same period, Canadian Judges Cory Gilmore and Barbara Conway, cooperating with Quinn Emanuel and Lenczner Slaght LLP, issued ex parte freezing orders and relied on falsified evidence, falsified address, falsified bank accounts creating fake jurisdiction to deny Plaintiff access to her assets and prevent her from funding legal representation or urgent medical care.

76. Staff at Plaintiff's Canadian banking institutions, acting at the direction of Defendant Monique Jilesen, blocked Amber 's transactions and provided unauthorized

financial data to Defendants, resulting in unlawful asset seizure and obstruction of Plaintiff's access to life-sustaining treatment and constitutional rights. All of the bank staff who participated in the conspiracy have been terminated.

77. In 2025, Diane Doolittle, acting in bad faith and with no legal jurisdiction, issued subpoenas in a closed California case that had been inactive since 2019. These subpoenas were directed at Google, Verizon, Mint Mobile, T-Mobile, AT&T, Cox Communications Facebook, and other third-party platforms, and document repositories, seeking Amber 's private information without notice, service, or court approval, violating the Stored Communications Act (18 U.S.C. § 2701 et seq.) and Plaintiff's rights under the First and Fourth Amendments.

78. Plaintiff only became aware of these illegal subpoenas after being contacted by Google's Legal Compliance Department in May 2025, who questioned whether she wished to move to quash the subpoenas. These unlawful discovery efforts in a closed case constitute abuse of process and retaliation against a protected individual under 18 U.S.C. § 1592 (obstruction of enforcement) and 18 U.S.C. § 1512(b) (witness tampering and retaliation).

J. Final Acts of Judicial Retaliation and Criminal Fraud

79. In July 2024, Plaintiff filed a motion to vacate a second fraudulent multi-million-dollar judgment entered in 2019 in Los Angeles County Superior Court. The judgment had been procured without Plaintiff's knowledge by Patricia Glaser and her firm, Glaser Weil LLP. Plaintiff only discovered the proceeding in Spring 2024 during an in-person records review at the Los Angeles courthouse.

80. From July to November 2024, Los Angeles Superior court Judge Stephanie Bowick refused to grant Plaintiff's fee waiver on three separate occasions, thereby unlawfully barring her from proceeding with the motion to vacate Glaser Weil LLPs fraudulent multi million dollar judgement. Judge Bowick later held an undisclosed chambers proceeding and summarily denied the motion to vacate, in violation of California due process rights and federal constitutional guarantees.

81. Plaintiff subsequently removed the matter to federal court under 28 U.S.C. § 1441(c) and § 1443 (civil rights removal). In furtherance of the conspiracy to obstruct justice The motion to vacate was improperly dismissed with no legal basis after being brought up on appeal before the U.S. Court of Appeals for the Ninth Circuit.

82. In August 2024, Plaintiff appeared in person in San Mateo County Superior Court for a quasi criminal contempt trial based on allegations of "criminal defamation" of Michael Goguen. Plaintiff had been ordered to appear under threat of arrest for speech protected under the First Amendment. She was instructed by Judge Susan Greenberg to consult the San Mateo County Courts Private Defender's Office, but they failed to return her calls. At a follow-up hearing in October 2024, an attorney named Katrina Steiner appeared in court, unannounced and without prior contact, and falsely claimed to represent Amber .

83. Between October 2024 and March 2025, Steiner conducted no discovery or trial preparation. Amber later discovered that court appointed counsel Katrina Steiner was a close personal friend of Judge Susan Greenberg, who was originally presiding over the contempt trial.

In January 2025 Susan Greenberg was moved to probate. Judge Nina Shapirshteyn was appointed Amber 's repeated requests to proceed pro se or obtain independent counsel were denied in a Marsden hearing, depriving her of her Sixth Amendment right to effective assistance of counsel.

84. Amber subsequently discovered that California Attorney General Rob Bonta and San Mateo Judge Danny Chou had a long-standing personal and professional relationship, dating back to their shared time clerking for the California Supreme Court, evidence of institutional conflict that was never disclosed to the parties.

85. Between January and March 2025, Judge Nina Shapirshteyn, newly assigned to the matter, denied five of Amber 's meritorious motions:
(1) to vacate the fraudulent judgment;
(2) for new trial;
(3) to disqualify Quinn Emanuel due to financial interest in the prosecution;
(4) for preliminary injunction and temporary restraining order (TRO); and
(5) to vacate the unconstitutional gag order.
The case proceeded to a rigged bench trial in March 2025, despite having been properly removed to federal court in January 2025. Plaintiff's request to proceed pro se was again illegally denied.

86. In March 2025, Judge Shapirshteyn presided over a quasi-criminal bench trial without jurisdiction and in abstentia  found Plaintiff guilty of "criminal defamation" of Pedophilic serial rapist and trafficker who exploited at least 5000 girls and women globally since the 1990s, Michael Goguen, a legal impossibility under U.S. constitutional law, as defamation is a civil matter and speech about public figures is protected by the First Amendment.

87. Plaintiff later learned via internet records that she had been assigned no-bail status and was subject to an arrest warrant for a misdemeanour contempt charge stemming from her public exposure of billionaire pedophiles. Despite having no criminal record and posing no threat to the community, Plaintiff was treated more severely than violent felons, murderers and serial rapists further evidence of institutional retaliation and viewpoint discrimination.

K. Supreme Court of California Sabotage and Final Federal Violations

88. In 2024, Plaintiff filed multiple emergency writs with the Supreme Court of California, including a Writ of Certiorari, Writ of Mandamus, Writ of Error Coram Nobis, and applications for Preliminary Injunctions. All were denied by Chief Justice Patricia Guerrero, who cited Amber 's unlawful "vexatious litigant" designation as a barrier to relief, despite that designation itself having been imposed in violation of constitutional rights and without due process.

89. Judges Stephanie Bowick, Danny Chou, and Nina Shapirshteyn each denied motions critical to Plaintiff's survival and legal redress, including motions to vacate fraudulent judgments and to disqualify attorneys with direct financial and ethical conflicts. These denials cumulatively deprived Plaintiff of access to meaningful judicial remedy and constitute violations of 42 U.S.C. § 1983 and the First, Fifth, and Fourteenth Amendments.

90. Judge Bowick refused to grant Plaintiff's fee waiver and held an unauthorized, closed-door hearing to deny Plaintiff's motion to vacate a judgment procured by fraud and perjury, thereby violating both federal and state due process rights.

91. Judge Shapirshteyn conducted a quasi-criminal contempt trial in March 2025 without jurisdiction, following Plaintiff's federal removal in January. She found Amber "guilty" of criminal contempt in absentia, based on constitutionally protected speech. The trial was rigged, retaliatory, and facially invalid under U.S. law.

92. Between April and May 2025, Diane Doolittle of Quinn Emanuel served illegal subpoenas in the closed 2019 San Mateo matter. Despite discovery having been closed for over six years, she issued subpoenas, using the old case number, via A&A Legal to Google, Yahoo, Mint Mobile Verizon, Cox communications T-Mobile, AT&T, and Verizon, without court authorization or service on Amber .

93. In late May 2025, Plaintiff was contacted by Google's Legal Compliance Department regarding these subpoenas, which sought private and protected data. Plaintiff had never received notice of their issuance. These acts constitute clear

violations of the Stored Communications Act, abuse of process, and attempted intimidation in retaliation for Amber 's protected litigation and public exposure of criminal misconduct.

94. The above-stated facts represent approximately fifteen percent of the known felonious conduct perpetrated by Defendants and their agents. Plaintiff reserves the right to supplement these facts as discovery proceeds. All named Defendants are subject to joint and several liability, including vicarious liability for the actions of their agents, employees, and co-conspirators under TVPRA, RICO, § 1983, and common law conspiracy doctrines.

# COUNTS LIST

I. TRAFFICKING, SEXUAL VIOLENCE, TORTURE

Count 1: Federal Human Trafficking
*(TVPRA, 18 U.S.C. §§ 1581–1595)*

Count 2: Rape and Sexual Assault

Count 3: Torture

Count 4: Premises Liability

Count 5: Violation of the Mann Act
*(18 U.S.C. § 2421 et seq.; integrated as predicate acts under TVPRA and RICO)*

Count 6: Violation of the Violence Against Women Act (VAWA)
*(34 U.S.C. § 12361(c))*

Count 7: Peonage and Slavery
*(18 U.S.C. §§ 1581–1590; integrated with Count 1)*

## II. RICO, FRAUD, OBSTRUCTION, CONSPIRACY

Count 8: Racketeering (RICO)
*(18 U.S.C. § 1961 et seq.)*

Count 9: Fraud

Count 10: Fraudulent Inducement

Count 11: Fraud Upon the Court

Count 12: Obstruction of Justice

Count 13: Civil Conspiracy

Count 14: Conspiracy to Commit Fraud on the Court

Count 15: State-Sponsored Obstruction and Retaliation

Count 16: Misfeasance in Public Office
*(applies to judicial actors and cross-border government officials)*

Count 17: Conspiracy to Cause Plaintiff's Death via Deprivation of Medical Care

## III. CONTRACT, LEGAL & FIDUCIARY DUTIES

Count 18: Breach of Written Contract

Count 19: Breach of Oral Contract

Count 20: Breach of the Covenant of Good Faith and Fair Dealing

Count 21: Breach of Fiduciary Duty

Count 22: Legal Malpractice

Count 23: Extortion

## IV. TORTS, NEGLIGENCE, PERSONAL INJURY

Count 24: Intentional Infliction of Emotional Distress (IIED)

Count 25: Negligent Supervision / Negligent Direction

Count 26: Willful Misconduct
*(may be integrated into Gross Negligence or IIED for emphasis)*

Count 27: Gross Negligence

Count 28: Personal Injury

Count 29: Deceit

Count 30: Concealment

Count 31: Trespass to Chattels

Count 32: Conversion

Count 33: Bad Faith

Count 34: Money Had and Received
*(for equitable restitution)*

V. INTERFERENCE & ECONOMIC TORTS

Count 35: Tortious Interference with Contractual Relations

Count 36: Tortious Interference with Economic Relations

Count 37: Intentional Interference with Economic Relations

VI. CIVIL RIGHTS, DISCRIMINATION, AND DIGNITY VIOLATIONS

Count 38: Racial and Gender Discrimination

Count 39: Violation of Plaintiff's Rights Under the U.S. Constitution
*(First, Fifth, and Fourteenth Amendments)*

Count 40: Violation of the Universal Declaration of Human Rights (UDHR)

Count 41: Violation of the Law of Nations and Customary International Law:
*Crimes Against Humanity*

## VII. REPUTATIONAL & PRIVACY TORTS

Count 42: Defamation

Count 43: Invasion of Privacy

Count 44: Stalking

## VIII. OTHER CLAIMS — CROSS-BORDER / SUPPLEMENTAL (ATS)

Count 45: Violation of the Canadian Victims Bill of Rights
*(asserted via Alien Tort Statute or supplemental jurisdiction)*

Count 46: Violation of the Constitution of Canada
*(ATS/supplemental jurisdiction claim)*

Count 47: Violation of the Ontario Human Rights Code
*(ATS/supplemental claim)*

Count 48: Unjust Enrichment

Count 49: Civil Theft
(Against All Defendants)
Unlawful taking and conversion of Plaintiff's assets, legal property, and funds in violation of civil theft statutes and common law doctrines, including cross-border wire fraud, constructive fraud, and unjust enrichment.

Count 50: Conspiracy to Defraud the Supreme Court of Canada and Obstruct Justice
(Against Canadian and U.S. Defendants)
Defendants colluded to submit forged evidence, conceal criminal acts, and exploit international comity to block Plaintiff's legal redress in Canada, in violation of international comity and justice norms.

Count 51: Civil Rights Violations
(42 U.S.C. §§ 1983, 1985, 1986 — Against Governmental Actors and Co-Conspirators)
Coordinated deprivation of Plaintiff's constitutional rights under colour of law, including right to due process, equal protection, speech, association, bodily integrity, and court access.

Count 52: Abuse of Process
(Common Law Tort — Against All Legal Actor Defendants)
Improper use of legal process (e.g., vexatious litigant designations, fake restraining orders, gag orders) to punish, silence, and isolate Plaintiff.

Count 53: Violation of the Convention on the Elimination of All Forms of Discrimination Against Women (CEDAW)
(Alien Tort Statute / Customary International Law)
Targeting Plaintiff based on gender, survivor status, and reproductive vulnerabilities, in breach of binding international human rights standards.

Count 54: Violation of the International Covenant on Civil and Political Rights (ICCPR)
(ATS — Articles 2, 7, 9, 14, 17, 26)
Denial of Plaintiff's rights to life, dignity, privacy, legal remedy, fair trial, non-discrimination, and redress for torture and arbitrary detention.

Count 55: Declaratory Relief
(28 U.S.C. § 2201 — Against All Defendants)
Request for formal declaration that:

- Prior judgments were procured by fraud and are void;

- Plaintiff's constitutional rights were violated;

- The trafficking and RICO enterprise exists;

- Judicial and governmental conduct was unlawful and unconstitutional.

Count 56: Violation of the U.N. Convention Against Torture (CAT)
(ATS — Against All Defendants)
Subjecting Plaintiff to prolonged physical, psychological, and sexual torture, with impunity, in violation of the U.S.-ratified Convention Against Torture.

Count 57: Pattern of Retaliation Against a Whistleblower / Victim
(Integrated into RICO, TVPRA, and First Amendment Violations)
Systematic silencing through gag orders, housing sabotage, legal abandonment, stalking, and asset deprivation in retaliation for reporting trafficking and corruption.

Count 58: Intentional Infliction of Constitutional Harm
(First, Fifth, Thirteenth, and Fourteenth Amendments)
Escalation of traditional IIED into a constitutional tort by actors under colour  of law

who engaged in a coordinated effort to deprive Plaintiff of liberty, safety, dignity, and due process.

Count 59: Continuing Violations Doctrine / Ongoing Conspiracy
(Doctrine Preserving Timeliness of All Claims)
All harms alleged constitute a single, uninterrupted course of conduct , beginning with Plaintiff's trafficking and extending through ongoing acts of fraud, suppression, and retaliation ,  such that no statute of limitations has run under applicable tolling doctrine.

**COUNT SIXTY: VIOLATION OF THE ONTARIO HUMAN RIGHTS CODE AND THE CANADIAN HUMAN RIGHTS ACT**

**COUNT SIXTY-ONE:  CONTINUED HUMAN TRAFFICKING VIA JUDICIAL ENTERPRISE**

Defendants continued the Plaintiff's trafficking through the courts by weaponizing judicial processes to enforce coerced contracts, suppress evidence, obstruct justice, and perpetuate involuntary servitude under colour of law.

# CAUSES OF ACTION

# VI.

**COUNT ONE: FEDERAL HUMAN TRAFFICKING**

**(TVPA, 18 U.S.C. § 1591 et seq.; Civil Remedy under § 1595; Extraterritorial Jurisdiction § 1596; Civil RICO Predicate Acts § 1961; JVTA 2015; Alien Tort Statute; Supplemental Claims Under Fla. Stat. § 787.06)**
**AGAINST:**

Sequoia Capital Operations, LLC; Michael Lewis Goguen; Two Bear Capital and affiliates; Quinn Emanuel Urquhart & Sullivan LLP; Diane Doolittle; John Quinn; Bruce Van Dalsem; Kyle Batter; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Glaser Weil LLP; Nemecek and Cole LLP; Brown & Charbonneau LLP; Bisnar Chase LLP; Sherman Law; Rivers J. Morrell III Law Firm; Lenczner Slaght LLP; Monique Jilesen; Sahar Talebi; and all Defendants as joint tortfeasors, co-conspirators, and enterprise participants.

1. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

2. This cause of action arises under the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1591 et seq., as amended by the William Wilberforce Trafficking Victims Protection Reauthorization Acts, and the Justice for Victims of Trafficking Act of 2015 (JVTA), Pub. L. No. 114–22.

3. Pursuant to 18 U.S.C. § 1595, Plaintiff brings this civil action for damages and injunctive relief against Defendants who knowingly participated in, benefitted from, or conspired to perpetuate a cross-border human trafficking enterprise, involving sexual servitude, coercion, forced labor, commercial exploitation, and retaliatory control through legal and extralegal means.

4. Defendants' conduct constitutes ongoing violations of:

   ◦ 18 U.S.C. § 1591(a)(1) – Sex trafficking by force, fraud, or coercion

   ◦ 18 U.S.C. § 1590 – Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor

   ◦ 18 U.S.C. § 1593A – Financial benefit from trafficking

   ◦ 18 U.S.C. § 1594 – Attempt and conspiracy

   ◦ 18 U.S.C. § 1595 – Civil remedy

   ◦ 18 U.S.C. § 1596 – Extraterritorial jurisdiction

   ◦ 18 U.S.C. §§ 1961–1968 – Civil RICO predicate acts

   ◦ Fla. Stat. § 787.06 – Human trafficking (state claims)

   ◦ 28 U.S.C. § 1350 – Alien Tort Statute

Jurisdiction and Venue – Four-Prong Nexus (TX–CA–NY–FL)

5.   This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343, 1350, and 1367, and supplemental jurisdiction over related state law claims under Fla. Stat. § 787.06 and RICO-like statutes.

6.   Venue is proper under 28 U.S.C. § 1391, as a substantial portion of the enterprise was conducted within Texas, California, New York, and Florida in furtherance of an indivisible criminal conspiracy.

## Facts and Enterprise Conduct

**7.**   Defendants orchestrated the recruitment, harboring, grooming, coercion, sexual enslavement, and economic entrapment of Plaintiff through a transnational trafficking enterprise, coordinated via high-level actors, elite law firms, and shell entities.

**8.**   Tactics included:

-   ◦   Exploitation through strip clubs, private jets, luxury hotels, and private residences in TX, CA, NY, and FL;

-   ◦   Use of settlement agreements as trafficking contracts, enforced under duress;

-   ◦   Judicial bribery and fraudulent judgments used to control Plaintiff and obstruct justice;

-   ◦   Retaliation and surveillance campaigns based in Florida, including physical tracking, cyber monitoring, deprivation of housing, interference with legal process, and witness intimidation.

## Specific Predicate Acts Include:

a. Human trafficking from age 15 through elite networks in TX, CA, NY, and FL;
b. Coercive sexual slavery, including repeated violent rape, drugging, threats of murder, and forced labor;
c. Duress-induced $40 million legal "settlement" in 2014 via Quinn Emanuel and Sequoia intermediaries;
d. Retaliation in Florida including cyberstalking, threats, economic sabotage, and witness suppression;
e. Use of RICO predicate acts including wire fraud, extortion, and money laundering across jurisdictions.

## Financial Profiteering and Racketeering

9.  Sequoia Capital, Two Bear Capital, and co-defendants profited from the trafficking scheme via:

  ◦  Cryptocurrency transactions, foreign investment vehicles, and litigation finance;

  ◦  Funding retaliatory litigation and suppressing Plaintiff's access to justice;

  ◦  Continued involvement post-2016 under cover of "termination" of Goguen, while secretly facilitating racketeering operations.

## Extraterritorial Jurisdiction – 18 U.S.C. § 1596

10.  Jurisdiction is proper as:

•  Defendants are U.S. nationals;

•  Trafficking acts occurred inside and outside the United States;

•  International jurisdictions including Canada, U.K., the Caribbean, and offshore banking were used to entrap and surveil Plaintiff.

## Civil RICO Predicate Acts – 18 U.S.C. § 1961(1)

11.  Racketeering acts include:

•  § 1591 – Sex trafficking

•  § 1512, § 1513 – Witness tampering and retaliation

•  § 1956, § 1957 – Money laundering

•  § 1952 – Interstate racketeering travel

•  § 1951 – Extortion

•  § 1343 – Wire fraud

•  § 1589 – Forced labor

## Injury to Plaintiff

12.  As a direct result of Defendants' conduct, Plaintiff suffered:

- Severe PTSD, suicidal ideation, and physical injury;

- Loss of career, housing, education, and medical care;

- Continued stalking and surveillance in Florida;

- Deprivation of legal redress in U.S. and Canadian courts.

## Relief Sought Under TVPA, JVTA, and Florida Law

13.  Plaintiff demands:

- Permanent injunction against further trafficking, retaliation, or concealment;

- Declaratory judgment that Defendants violated federal, state, and international law;

- Full financial tracing and forfeiture of all assets derived from trafficking;

- Appointment of judicial monitor and referral to DOJ for criminal prosecution;

- Recognition of Plaintiff's rights under the Justice for Victims of Trafficking Act (JVTA) to full recovery, services, restitution, and court access.

- Damages under Fla. Stat. § 787.06(4)(b) for violations of bodily integrity, coercion, psychological harm, and deprivation of liberty.

## Class Allegations Reserved

14.  Plaintiff reserves the right to seek class certification under Fed. R. Civ. P. 23 for systemic survivors of this coordinated trafficking and judicial conspiracy.

## International Law and Treaty Violations

15.  Defendants' conduct constitutes:

- Torture, slavery, and crimes against humanity under the Palermo Protocol;

- Actionable claims under customary international law and the Alien Tort Statute, 28 U.S.C. § 1350.

**COUNT TWO: SEXUAL ASSAULT, SEXUAL BATTERY, AND RAPE**

(Violations of Federal Law, Texas, California, New York, Canadian, and International Human Rights Law)

AGAINST:
Michael Lewis Goguen and all Co-Conspirators and Aiders and Abettors

Plaintiff realleges and incorporates by reference all preceding paragraphs and counts as if fully set forth herein.

This cause of action arises under the following authorities and incorporates a three-pronged jurisdictional strategy invoking:

Texas Jurisdiction – because Plaintiff was trafficked into and through the state of Texas, including Houston, where acts of grooming, sexual violence, and coercion took place or were orchestrated, and where Plaintiff now seeks redress as no neutral forum exists in California;

California Jurisdiction – because the principal acts of rape, sexual assault, and coerced legal servitude occurred at Goguen's residences and properties across California, orchestrated and concealed by California-based law firms and associates;

New York Jurisdiction – because Plaintiff was trafficked, abused, and retaliated against in New York, including through the use of New York-based media and business networks to blacklist and suppress her.

I. Federal Law:

Trafficking Victims Protection Act (TVPA): 18 U.S.C. §§ 1591, 1595

Sexual Abuse Statutes:

18 U.S.C. § 2241 (Aggravated sexual abuse)

18 U.S.C. § 2242 (Sexual abuse by threat or incapacitation)

18 U.S.C. § 242 (Deprivation of rights under color of law)


II. Texas Law:

Texas common law torts:

Sexual assault

Sexual battery

False imprisonment

Intentional infliction of emotional distress (IIED)

Texas Penal Code § 22.011 (Sexual assault)

Texas Civil Practice & Remedies Code § 16.0045 (No limitation for sexual assault of adult survivors)

Texas Constitution guarantees liberty, bodily autonomy, and protection from abuse and slavery.


III. California Law:

California Civil Code § 1708.5 (Sexual battery)

California Civil Code § 52.4 (Civil damages for gender-based violence)

California Penal Code §§ 243.4, 261 (Sexual battery and rape)

California Code of Civil Procedure § 340.16 (Extended limitations for sexual assault)


IV. New York Law:

New York common law torts:

Sexual assault

Sexual battery

False imprisonment

IIED

CPLR § 214-g (Child Victims Act)

CPLR § 214-j (Adult Survivors Act)


V. Canadian / Ontario Law:

Tort of Battery (R. v. Hebert, 2009 ONCA 639)

Tort of Sexual Assault (Doe v. Bennett, [2004] 1 S.C.R. 436)

Intentional Infliction of Mental Suffering (Boucher v. Wal-Mart Canada Corp.)

Canadian Charter §§ 7, 12, 15

Canadian Victims Bill of Rights (CVBR)

Limitations Act (no statute of limitation for sexual violence)


VI. International Law:

CEDAW

UDHR Article 5

CAT

Palermo Protocol


Factual Allegations:

Michael Lewis Goguen, aided by a network of co-conspirators, engaged in a prolonged and systematized campaign of sexual violence, including:

Repeated vaginal and anal rapes;

Drugging Plaintiff with Rohypnol and other incapacitating agents;

Forcing participation in sexual acts under threat of death or surveillance;

Inflicting severe bodily injury, including a 7-inch anal tear requiring emergency surgery;

Knowingly exposing Plaintiff to high-risk HPV and STIs without consent;

Exercising coercive control via:

Private security forces;

Financial deprivation;

Invasive surveillance technologies;

Threats of death and perpetual captivity.

These actions constituted:

Sexual assault and battery under the tort laws of Texas, California, New York, and Canada;

False imprisonment by coercion and deprivation of liberty;

Intentional infliction of emotional distress, and violations of bodily autonomy, dignity, and fundamental rights.


Pattern of Cover-Up and Retaliation:

Legal co-conspirators including Quinn Emanuel, Goodwin Procter, Wilson Sonsini, and Glaser Weil conspired to draft and enforce fraudulent legal instruments to silence Plaintiff;

Private security and corrupted law enforcement were used to stalk, abduct, and harass Plaintiff;

Judicial sabotage occurred in California, New York, and Canada through fabricated ex parte orders, suppression of hearings, and concealment of evidence;

Retaliation included blacklisting Plaintiff from employment, housing, and healthcare, and manipulating media and financial institutions to sever her access to livelihood and justice.

Injury to Plaintiff:

Plaintiff suffered and continues to suffer:

Permanent internal injuries, loss of reproductive function, and chronic medical needs;

Complex PTSD, suicidality, and severe psychological distress;

Loss of housing, safety, reputation, and all economic means of survival;

Ongoing exposure to legal and physical harassment, surveillance, and threats;

Irreparable damage to dignity, bodily integrity, and liberty under U.S., Canadian, and international law.

Relief Sought:

Plaintiff seeks judgment against all Defendants, jointly and severally, for:

General damages: $193,577,054.22

Special damages: $10,000,000.00

Loss of earnings: $10,000,000.00

Punitive and aggravated damages: not less than $500,000,000.00

Prejudgment interest at 10% per annum compounded from May 23, 2014

Costs of suit, attorneys' fees, and expert witness costs

Injunctive and Declaratory Relief:

Permanent injunction restraining Defendants from any contact, surveillance, or harassment;

Injunction barring enforcement of fraudulent settlements or judgments procured by coercion;

Declaratory judgment affirming violations of U.S., Canadian, and international human rights law;

Any further equitable or restorative relief this Court deems just and appropriate.

**COUNT THREE: TORTURE**

(Violations of Federal Law, International Treaties, and Customary International Law) AGAINST: All Defendants

Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

This cause of action arises under:

The United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), ratified by the United States and implemented via the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), 8 U.S.C. § 1231 note;

18 U.S.C. §§ 2340–2340A, which criminalize torture committed by U.S. nationals or within U.S. jurisdiction;

The Alien Tort Statute (28 U.S.C. § 1350), granting jurisdiction over violations of international law;

Articles 5 and 7 of the Universal Declaration of Human Rights, prohibiting torture and ensuring equal protection under law;

The Fifth and Fourteenth Amendments of the U.S. Constitution, securing due process, bodily autonomy, and equal protection;

As predicate acts under 18 U.S.C. §§ 1591, 1961, and 1595 (TVPA and RICO), for purposes of civil and criminal liability.

Jurisdiction and Venue – Three-Prong Strategy:

Jurisdiction is proper in the Southern District of Texas because the first acts of sexual violence, coercion, trafficking, and forced subjugation occurred in Texas, where Plaintiff was initially harmed, groomed, and entrapped by Defendant Goguen and his co-conspirators.

Defendants further carried out and expanded the torture enterprise in California, including but not limited to forced sexual servitude, fraudulent legal settlements, judicial corruption, and surveillance operations executed via Quinn Emanuel, Sequoia Capital, and Glaser Weil LLP.

The enterprise continued in New York, where obstruction of justice, blacklisting, and retaliation occurred through fraudulent court proceedings, suppression of legal claims, and interference with federal filings and constitutional rights.

The federal nexus is satisfied by the extraterritorial and interstate nature of the criminal enterprise under 18 U.S.C. §§ 1596 and 1965, and Plaintiff is a citizen subjected to egregious violations of domestic and international law.

Defendants' Conduct:

Defendants, including Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Quinn Emanuel, Diane Doolittle, Bruce Van Dalsem, John Quinn, Patricia Glaser, Jill Basinger, William Paoli, Brian Chase, Richard Sherman, and others, committed or facilitated acts of torture against Plaintiff across multiple jurisdictions.

These acts were not isolated incidents but formed part of a transnational criminal conspiracy executed through legal fraud, sexual violence, and coercive control.

Specific Acts of Torture Include:
a. Violent, repeated vaginal and anal rape perpetrated by Defendant Goguen, beginning in Texas and continuing across California and New York over a 12-year span;
b. Drugging Plaintiff with controlled substances, including Rohypnol and alcohol, to incapacitate and facilitate rape;
c. Forced participation in degrading and sadistic sexual acts under threats of violence, physical restraint, surveillance, and humiliation;
d. Infliction of severe bodily injuries, including a 7-inch anal tear requiring emergency surgery in London, and intentional exposure to high-risk STIs and HPV without Plaintiff's informed consent;
e. Systemic deprivation of medical care, housing, and legal redress, enabled through the bribery of judges, subversion of due process, and fraudulent legal maneuvering

orchestrated by co-conspirator law firms;

f. Legal retaliation and fabricated contempt proceedings, including the weaponization of the judiciary to punish, silence, and destroy Plaintiff's access to justice.

Defendants either directly perpetrated these acts or materially contributed to the commission, concealment, and continuation of torture through:

Financing, laundering money to pay off attorneys, private investigators, and judges;

Legal complicity, by drafting and enforcing fraudulent "settlement" agreements under duress;

Judicial and procedural sabotage, including ex parte hearings, suppression of evidence, and interference with protective motions;

Use of private security and state actors to stalk, monitor, intimidate, and threaten Plaintiff's life.

The acts committed by Defendants violate:

The definition of "torture" under 18 U.S.C. § 2340(1): intentional infliction of severe physical or mental pain or suffering;

The CAT's non-derogable prohibitions against torture, which are binding under jus cogens international norms;

The TVPA's provisions permitting civil claims for damages where torture occurs under color of law or enterprise authority.

Plaintiff suffered catastrophic injuries including:

Permanent physical injury, reproductive harm, and chronic pain;

Complex PTSD, suicidality, anxiety, and depression;

Loss of liberty, dignity, and bodily autonomy;

Deprivation of livelihood, property, medical care, and shelter;

Ongoing surveillance, cyber-harassment, and threats to life.


PRAYER FOR RELIEF:

Plaintiff respectfully demands judgment against all Defendants, jointly and severally, for:

General Damages in the amount of $193,577,054.22 USD;

Special Damages of $10,000,000.00 USD for long-term medical care, security, and relocation;

Lost Earnings and Future Earning Capacity: $10,000,000.00 USD;

Punitive and Aggravated Damages of no less than $500,000,000.00 USD;

Treble Damages under RICO, TVPA, and CAT enforcement statutes;

Prejudgment interest at 10% per annum compounded from May 23, 2014;

Attorneys' fees, expert witness costs, protective security, and any expenses related to relocation and whistleblower protection;

Permanent Injunctive Relief:

Enjoining Defendants from any contact, surveillance, digital harassment, or legal retaliation;

Prohibiting enforcement of fraudulent "settlements" entered under duress;

Ordering full disclosure of all offshore, cryptocurrency, and shell accounts used to facilitate torture and trafficking;

Declaratory Relief affirming that Defendants violated U.S. federal law, international law, and Plaintiff's constitutional rights;

Any other relief this Court deems just, equitable, and necessary for Plaintiff's restoration, protection, and survival.

## COUNT FOUR: PREMISES LIABILITY

Jurisdiction: Florida, Texas, California, New York, Federal
Against All Defendants, including Sequoia Capital Lead Tortfeasors

INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber  hereby repeats, realleges, and incorporates by reference all prior paragraphs and causes of action as though fully set forth herein.

NATURE OF CLAIM: PREMISES LIABILITY

This claim arises under the federal Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1595, the common law of Texas, California, Florida, and New York, and relevant international human rights treaties. It is based on Defendants' ownership, control, financing, and enabling of physical premises knowingly used in furtherance of a human trafficking, rape, and torture enterprise.

PREMISES INVOLVED IN THE TRAFFICKING ENTERPRISE

Defendants owned, operated, leased, or financially supported premises used repeatedly for harm against Plaintiff, including but not limited to:

- Michael Goguen's properties in Texas (the site of initial trafficking and abuse), Montana, and California;

- Sequoia Capital offices in Menlo Park, California and New York City;

- Two Bear Ranch, Two Bear Capital, and additional Montana facilities used for forced confinement;

- Law firm offices (Quinn Emanuel, Glaser Weil, Goodwin Procter, Wilson Sonsini, and others) used to orchestrate forced settlement negotiations, surveillance, and legal sabotage;

- Hotels and commercial properties in Tampa, Miami, Orlando, Daytona Beach, and Fort Lauderdale (including Marriott, Sheraton, and Rosewood) where Plaintiff was raped, surveilled, and trafficked under coercion and threat;

- Properties across Florida where Plaintiff was denied safe housing, subjected to stalking, and where Goguen's agents conducted surveillance while she sought emergency shelter and trauma care.

DUTY OWED UNDER FOUR-STATE STRATEGY AND FEDERAL LAW

Under Texas Law:
Premises owners and occupiers owe invitees a duty of ordinary care to protect them from dangerous conditions that are known or reasonably discoverable. (Timberwalk Apartments v. Cain, 972 S.W.2d 749 (Tex. 1998)).
Liability arises when criminal conduct is foreseeable based on past incidents or known threats.

Under California Law:
Cal. Civ. Code § 1714(a): Duty to maintain premises in reasonably safe condition.
Isaacs v. Huntington Memorial Hospital, 38 Cal.3d 112 (1985).

Under New York Law:
Basso v. Miller, 40 N.Y.2d 233 (1976); Maheshwari v. City of New York, 2 N.Y.3d 288 (2004).

Under Florida Law:
Florida courts recognize premises liability where owners knowingly permit trafficking or criminal conduct.

- Fla. Stat. § 787.06(2)(d) — Imposes liability for knowingly benefiting from human trafficking.

- Fla. Stat. § 768.0755 — Duty of care owed by business establishments to protect from foreseeable criminal acts.

- Fla. Stat. § 784.048 — Stalking and surveillance contributing to civil liability.

Under Federal Law:
Restatement (Second) of Torts §§ 343–344: Duty to protect invitees from foreseeable harm;
18 U.S.C. § 1595: Civil liability for knowingly benefiting from trafficking activity on premises.

Under International and Canadian Law:
Waldick v. Malcolm, [1991] 2 S.C.R. 456; Occupiers' Liability Act (Ontario), R.S.O. 1990, c. O.2.

BREACH OF DUTY AND WRONGFUL CONDUCT

Defendants breached their duties by:

- Knowingly permitting and facilitating the use of their properties for trafficking, rape, and coercion;

- Failing to secure or restrict access to prevent foreseeable criminal acts;

- Enabling criminal activities through real estate ownership, legal finance, and sheltering of perpetrators;

- Failing to warn, protect, or report trafficking activity;

- Laundering illegal activity via real estate transfers and shell entities to obstruct redress.

INJURY TO PLAINTIFF ON SAID PREMISES

As a direct and foreseeable result, Plaintiff was:

- Trafficked, raped, confined, and surveilled on premises in Texas, Florida, California, and New York;

- Subjected to coercive litigation and abuse in legal offices and private estates;

- Denied access to safety, protection, medical care, and legal recourse.

DAMAGES SUFFERED

Plaintiff suffered:

- Severe and chronic physical injuries;

- PTSD, depression, and emotional collapse;

- Economic devastation, loss of liberty, and retraumatization;

- Legal sabotage and suppression of lawful remedies.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against all Defendants, jointly and severally, as follows:

- General Damages: $193,577,054.22 USD;

- Special Damages: $10,000,000.00 USD (medical, housing, therapy);

- Punitive Damages: $500,000,000.00 USD for willful and egregious conduct;

- Statutory and Treble Damages under TVPA and RICO (18 U.S.C. § 1595);

- Interest: 10% per annum, compounded from May 23, 2014;

- Permanent Injunction: Prohibiting continued trafficking use of any premises involved;

- Constructive Trust: Over profits, rents, and premises derived from enterprise abuse;

- Costs of Suit: Legal fees, experts, and security;

- Further relief as this Court deems just and equitable.


Unified Jurisdictional Theory:
This Count is pleaded in the alternative and in combination with all other counts under a unified four-prong jurisdictional theory grounded in:

1. Texas-origin harm, where the initial acts of trafficking, grooming, and sexual violence commenced;

2. California enterprise operation, where Defendants coordinated, funded, and executed the transnational trafficking scheme;

3. New York-based obstruction, where critical acts of retaliation, suppression of evidence, and legal interference were carried out;

4.  Florida continuation, where Plaintiff was stalked, raped, surveilled, denied protection, and trafficked at commercial establishments—resulting in ongoing injuries, psychological harm, and retaliatory deprivation of civil rights.

Accordingly, jurisdiction and venue are proper in the Middle and Southern Districts of Florida, the Southern District of New York, North and Western Districts of Texas, and the North South and Central District of California.

## COUNT FIVE: VIOLATION OF THE MANN ACT

(18 U.S.C. §§ 2421, 2422, 2423 – Transportation for Illegal Sexual Activity; Coercion and Enticement; Sex Trafficking)
Against Defendants: SEQUOIA CAPITAL OPERATIONS, LLC; MICHAEL LEWIS GOGUEN; and All Co-Conspirators

1.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

2.  This cause of action arises under the Mann Act, codified at 18 U.S.C. §§ 2421–2423, which prohibits transporting individuals across state or international lines for the purpose of engaging in criminal sexual activity.

3.  Defendant SEQUOIA CAPITAL, acting as the primary financial enabler, materially supported, funded, and conspired with Michael Lewis Goguen to carry out a long-term, organized scheme of cross-border sex trafficking by:

    ○  Financing the travel of Plaintiff across state and international borders, including to Texas, California, New York, and the United Kingdom, for the purpose of her sexual exploitation;

    ○  Providing access to private jets, security personnel, legal defense, and shell companies that facilitated concealment of the Mann Act violations;

    ○  Knowingly assisting and protecting Defendant Goguen while trafficking and sexually abusing the Plaintiff under fraudulent pretenses.

4.  Defendant MICHAEL LEWIS GOGUEN, in collaboration with Sequoia Capital and co-conspirators, willfully:

- Transported Plaintiff for purposes of criminal sexual conduct, including violent sexual assaults, rape, and coerced participation in degrading sexual acts;

- Used fraud, coercion, and enticement to cause Plaintiff to travel, all under the pretext of romantic partnership, educational sponsorship, or career advancement;

- Threatened Plaintiff with death, financial ruin, and retaliation to prevent her from escaping or reporting the abuse.

5. Defendants' conduct violates:

- 18 U.S.C. § 2421 (Interstate transportation for illicit sexual purposes);

- 18 U.S.C. § 2422 (Coercion and enticement);

- 18 U.S.C. § 2423 (Transportation for illegal sexual activity);

- 18 U.S.C. § 371 (Conspiracy to commit federal offenses).

6. Defendants' actions also constitute predicate acts under:

- 18 U.S.C. § 1591 (Sex Trafficking by Force, Fraud, or Coercion);

- 18 U.S.C. § 1961(1) (RICO predicate acts including Mann Act violations);

- 28 U.S.C. § 1350 (Alien Tort Statute), for transnational crimes and human rights violations.

7. SEQUOIA CAPITAL's actual knowledge of Michael Goguen's trafficking activities and deliberate financial and legal protection of his conduct rises to the level of joint enterprise liability and conspiracy under U.S. civil and criminal law.

8. As a direct and proximate result of these violations, Plaintiff suffered:

- Repeated rape and sexual assault across jurisdictions;

- Long-term confinement, psychological trauma, and suicidal ideation;

- Permanent physical injuries, including internal trauma and reproductive harm;

○    Irreparable loss of liberty, reputation, and future economic opportunity.

RELIEF REQUESTED:

Plaintiff seeks judgment against SEQUOIA CAPITAL OPERATIONS, LLC, MICHAEL LEWIS GOGUEN, and all co-conspirators, jointly and severally, as follows:

•    Compensatory damages: $193,577,054.22 USD

•    Special damages for medical treatment, security, and safe relocation: $10,000,000.00 USD

•    Loss of income and future earnings: $10,000,000.00 USD

•    Punitive and exemplary damages: Not less than $500,000,000.00 USD

•    Prejudgment interest at 10% compounded annually, from May 23, 2014

•    Attorneys' fees, costs of suit, and all equitable relief, including:

   ○    Injunctions prohibiting Defendants from retaliation or contact;

   ○    Appointment of a monitor for Sequoia's compliance with trafficking laws;

   ○    A formal court order referring matters for criminal prosecution, where applicable.

**COUNT SIX: VIOLATION OF THE VIOLENCE AGAINST WOMEN ACT (VAWA)**
*(34 U.S.C. § 12361(c); Civil Remedy under 34 U.S.C. § 12361(d); Supplemental Jurisdiction under 28 U.S.C. § 1367)*
AGAINST:
Sequoia Capital Operations, LLC; Michael Lewis Goguen; Two Bear Capital and affiliates; Quinn Emanuel Urquhart & Sullivan LLP; Diane Doolittle; John Quinn; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Glaser Weil LLP; and all co-defendants acting as joint tortfeasors and co-conspirators.

1.  Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

2.  This cause of action arises under the civil rights remedy provisions of the Violence Against Women Act (VAWA), specifically 34 U.S.C. § 12361(c) and (d), which authorizes a private civil action against any person who commits a crime of violence motivated by gender and results in physical injury, psychological harm, or deprivation of civil rights.

3.  Defendants, through coordinated acts and omissions, committed multiple crimes of violence motivated by gender animus, domination, and sexual subjugation, including but not limited to:

    ◦   Violent sexual assaults, anal rape, forced sodomy, and sexual humiliation;

    ◦   Physical beatings and psychological torture designed to coerce compliance and enforce subjugation;

    ◦   Systemic use of financial coercion, unlawful imprisonment, surveillance, and threats of death to maintain control;

    ◦   Collusion among attorneys, law firms, and corporate actors to obstruct legal redress and shield perpetrators.

4.  Defendant Sequoia Capital, acting as financier and enterprise organizer, enabled, funded, concealed, and profited from the gender-based violence committed by Michael Goguen and other co-defendants, including acts of trafficking, rape, and sustained physical abuse of Plaintiff and others.

5.  The abuse endured by Plaintiff was:

    ◦   Targeted and sustained over a period of years;

    ◦   Motivated by her gender, with the intent to subordinate, control, and silence her;

    ◦   Executed in part through coerced "settlement" agreements and gag orders drafted and executed by Sequoia Capital–funded attorneys;

    ◦   Reinforced through public defamation, private surveillance, and orchestrated retaliation.

6. Defendants' acts constitute "crimes of violence" as defined in 18 U.S.C. § 16 and incorporated into 34 U.S.C. § 12361(d), including:

- Sexual assault, rape, and attempted murder;

- Stalking and false imprisonment;

- Threats, intimidation, and obstruction of justice to prevent Plaintiff from accessing legal recourse.

7. Plaintiff is a woman and was specifically targeted on the basis of her gender. Her status as a trafficking victim was exploited to enforce continued submission through coercive means.

8. As a direct and proximate result of Defendants' VAWA violations, Plaintiff has sustained:

- Catastrophic physical and psychological injury;

- Lasting trauma and PTSD;

- Loss of liberty, safety, housing, legal standing, and constitutional protections;

- Financial devastation, reputational harm, and the denial of justice in multiple jurisdictions.

9. Pursuant to 34 U.S.C. § 12361(d), Plaintiff seeks the following relief:

- Compensatory damages in excess of $100,000,000.00;

- Special damages for medical treatment, security, and relocation expenses;

- Punitive and exemplary damages to deter future gender-based violence;

- Pre-judgment interest at 10% compounded annually since 2014;

- Costs of suit and attorney's fees;

- Declaratory and injunctive relief preventing further acts of gender-based abuse and enterprise retaliation.

**COUNT SEVEN: PEONAGE AND SLAVERY**

*(Violations of 18 U.S.C. §§ 1581–1590; Civil Remedy under 18 U.S.C. § 1595; Predicate Acts under RICO, 18 U.S.C. § 1961; Supplemental Jurisdiction under 28 U.S.C. § 1367)*

AGAINST:

Sequoia Capital Operations, LLC; Michael Lewis Goguen; Two Bear Capital; Quinn Emanuel Urquhart & Sullivan LLP; Diane Doolittle; John Quinn; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Glaser Weil LLP; and all affiliated entities and individuals as joint tortfeasors, co-conspirators, and enterprise participants.

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

2. This cause of action arises under 18 U.S.C. §§ 1581–1590, which prohibit peonage, slavery, involuntary servitude, and forced labor, and under 18 U.S.C. § 1595, which authorizes a civil remedy for victims of such conduct.

3. Defendants knowingly subjected Plaintiff to involuntary servitude, peonage, and conditions functionally indistinguishable from slavery through:

   ○ Coercive threats of violence, financial ruin, homelessness, and death;

   ○ The withholding of money, legal status, housing, and protection as forms of control;

   ○ The deliberate orchestration of false legal proceedings and fraudulent settlements to keep Plaintiff entrapped;

   ○ Systematic surveillance, physical abuse, rape, isolation, and denial of medical care;

   ○ Financial exploitation and forced compliance through sham agreements orchestrated by Sequoia Capital-funded attorneys.

4. Defendant Sequoia Capital Operations, LLC was the central financier and organizer of the criminal enterprise that enabled the enslavement and exploitation of the Plaintiff. It:

- Provided the infrastructure and funding for Goguen's sex trafficking operations;

- Facilitated false imprisonment, coercive contract execution, and financial bondage;

- Coordinated with law firms and private security to enforce obedience and suppress dissent.

5. Plaintiff's labor, time, body, and silence were coerced through a fraudulent scheme that deprived her of free will and autonomy, constituting violations of:

- 18 U.S.C. § 1581 (Peonage)

- 18 U.S.C. § 1584 (Involuntary Servitude)

- 18 U.S.C. § 1589 (Forced Labor)

- 18 U.S.C. § 1590 (Trafficking with respect to peonage and slavery)

6. These actions were committed in part to silence Plaintiff's whistleblowing and preserve the secrecy of the criminal enterprise, thereby ensuring continued financial enrichment of all Defendants.

7. Defendants' conduct constitutes predicate racketeering activity under 18 U.S.C. § 1961(1) and was executed as part of an ongoing RICO enterprise.

8. As a direct and proximate result of this conduct, Plaintiff suffered:

- Psychological trauma consistent with captivity, servitude, and coerced labor;

- Economic loss, physical deterioration, loss of autonomy, and social isolation;

- Destruction of legal standing and permanent displacement.

9. Pursuant to 18 U.S.C. § 1595, Plaintiff seeks:

- Compensatory damages not less than $150,000,000.00;

- Special damages for ongoing therapy, housing, and protection;

- Punitive damages against each Defendant to deter future conduct;

○     Interest at 10% compounded annually from May 23, 2014;

○     Injunctive and declaratory relief barring future acts of peonage, servitude, or retaliatory coercion.

# II. RICO, FRAUD, OBSTRUCTION, CONSPIRACY

- ☑️ **Count 2 (RICO) — reference Florida Civil RICO § 772.104 in addition to federal RICO.**

**COUNT EIGHT: RACKETEERING (RICO) AND CROSS-BORDER CRIMINAL ENTERPRISE**
(18 U.S.C. §§ 1961–1968; Tex. Penal Code §§ 20A.01–20A.05, 32.46, 31.03, 19.03; California, New York, Florida, D.C., Canadian, and International Law)
**AGAINST:**
Michael Lewis Goguen; Sequoia Capital Operations, LLC; Sequoia Capital Franchise Partners, L.P.; Sequoia Capital Growth III Principals Fund, LLC; Sequoia Heritage; Two Bear Capital; Two Bear Ranch; Quinn Emanuel Urquhart & Sullivan LLP; Diane Doolittle; Bruce Van Dalsem; John Quinn; Kyle Batter; Glaser Weil LLP; Patricia Glaser; Jill Basinger; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Paoli & Purdy LLP; Bisnar Chase LLP; Brown & Charbonneau LLP; Sherman Law; Nemecek & Cole LLP; and all other individuals and entities knowingly participating in the criminal enterprise.

**1. INCORPORATION AND JURISDICTIONAL NEXUS**
Plaintiff realleges and incorporates all preceding paragraphs as if fully set forth herein.
This Count is pleaded in the alternative and in conjunction with all others under a **four-pronged jurisdictional strategy**:

- **Texas:** Where Plaintiff was first recruited, trafficked, and raped by Defendant Michael Goguen, and where the predicate acts of coercion, abduction, and financial control commenced.

- **California:** The operational and financial hub of the criminal enterprise, through which Sequoia Capital, Two Bear Capital, and Quinn Emanuel executed racketeering activities and money laundering.

- **New York:** The center of media retaliation, money laundering, and fraudulent legal enforcement, including publication-based attacks and falsified court orders to silence Plaintiff.

- **Florida:** The jurisdiction of post-agreement stalking, targeted surveillance, continued interference with housing and safety, judicial intimidation, and legal obstruction orchestrated through agents of the enterprise.

Venue is also proper in this District under 28 U.S.C. § 1391(b) and RICO's special venue provision, 18 U.S.C. § 1965(a)–(b), given the presence of acts, assets, defendants, and injuries connected to Texas, California, New York, and Florida.

## 2. STATUTORY BASIS

Plaintiff brings this action under:

- 18 U.S.C. §§ 1961–1968 (RICO)

- Florida Statutes §§ 787.06, 895.02–895.05 (Florida RICO Act), 817.034 (Fraud), 825.1026 (Exploitation)Additionally, Plaintiff invokes the Florida Civil Remedies for Criminal Practices Act, Fla. Stat. § 772.101 et seq., and specifically § 772.104(1) and (2), which authorizes a private civil action and recovery of treble damages for injuries caused by violations of Fla. Stat. § 895.03 (Florida RICO Act). The Defendants' conduct as described herein constitutes a pattern of criminal activity and racketeering within the meaning of § 772.102(1)(a) and § 895.02, giving rise to actionable claims under Florida law.

- 18 U.S.C. §§ 1589–1591 (TVPA)

- 18 U.S.C. §§ 1956–1957 (Money Laundering)

- 28 U.S.C. § 1350 (Alien Tort Statute)

- Texas Penal Code §§ 20A.02 (Trafficking), 31.03 (Theft), 32.46 (Fraudulent Execution), 15.01 (Solicitation), 71.02 (Organized Crime)

- California Penal Code §§ 186.2–186.8, 236.1, 518, 653f

- New York Penal Law §§ 135.35, 470.00 et seq., 460.10–460.70

- Florida Statutes §§ 787.06, 895.02–895.05 (Florida RICO Act), 817.034 (Fraud), 825.1026 (Exploitation)

- Canadian Criminal Code §§ 467.11–467.13

- International Instruments: Palermo Protocol, CAT, CEDAW, UDHR

**3. PATTERN OF RACKETEERING ACTIVITY**

Defendants engaged in a continuous pattern of predicate racketeering acts across multiple jurisdictions including but not limited to:

a. **Human Trafficking**

Across Texas, California, New York, Florida, and Canada, Plaintiff was trafficked, confined, raped, and coerced in violation of U.S., state, and international law.

b. **Sexual Exploitation and Sodomy**

Repeated aggravated rapes, drugging with Rohypnol, and sex crimes were committed in private residences, corporate properties, and law firm premises.

c. **Judicial Fraud and Obstruction**

Defendants executed a systemic fraud on the courts by:

- Filing false declarations;

- Bribing and coercing judges;

- Staging ex parte proceedings;

- Falsifying affidavits of service;

- Procuring unconstitutional gag orders and vexatious designations.

This pattern was notably enabled by collusive judicial officers in California, Texas, and New York, and furthered by forum manipulation and retaliatory enforcement in Florida courts.

d. **Solicitation and Attempted Murder**

Goguen and his agents, including Matthew Marshall, attempted to solicit Plaintiff's murder, planned assassinations, and threatened witnesses in both U.S. and Canada.

e. **Witness Intimidation**

Witness tampering occurred via surveillance, threats, ex parte gag orders, and legal reprisals.

f. **Money Laundering and Asset Obstruction**

Enterprise funds were laundered through venture vehicles (e.g., Sequoia Heritage), disguised as capital investments, routed internationally to shell corporations to avoid scrutiny and taxation.

g. **Extortion and Forced Settlements**

Plaintiff was coerced into signing fraudulent contracts under duress. Defendants used retaliatory lawsuits, Mareva injunctions, and enforcement of void judgments in Florida to strip her of assets and isolate her.

h. **Reputational Assassination and Media Targeting**

Sequoia and its agents enlisted journalists and PR firms to smear Plaintiff, discredit her claims, and publish false narratives across national and international media networks.

## 4. STRUCTURE OF THE ENTERPRISE

Defendants functioned as a criminal enterprise within the meaning of 18 U.S.C. § 1961(4), composed of:

- **Lead financier:** Sequoia Capital and its funds

- **Field operatives:** Goguen, Marshall, private security firms

- **Legal enforcers:** Quinn Emanuel, Glaser Weil, and affiliated firms

- **Media intermediaries:** Coordinated press agents and journalists

- **Judicial actors:** Bribed and colluding judges who protected enterprise interests

The enterprise was designed to:

- Traffic and exploit vulnerable women;

- Obstruct any attempt at redress;

- Preserve wealth and power through laundering and intimidation;

- Silence Plaintiff by reputational, economic, and physical annihilation.

## 5. DAMAGES TO PLAINTIFF

Plaintiff suffered extreme and irreparable harm, including:

- Repeated invasive surgery and internal trauma;

- Permanent neurological and gynecological injury;

- PTSD, depression, dissociation, suicidal episodes;

- Complete loss of career, housing, and identity;

- Ongoing retaliation across courts and media;

- Isolation, enforced homelessness, and trauma-induced disability;

- Continued stalking, surveillance, and housing sabotage in Florida post-settlement.

## 6. PRAYER FOR RELIEF UNDER COUNT EIGHT

WHEREFORE, Plaintiff respectfully demands that this Court enter judgment against all Defendants, jointly and severally, and award:

a. **General Damages**
$193,577,054.22 USD for physical, psychological, and economic devastation;

b. **Special Damages**
$10,000,000.00 USD for trauma care, protective relocation, housing, and medical treatment;

c. **Lost Earnings**
$10,000,000.00 USD for destroyed career and future earning potential;

d. **Treble Damages (Mandatory)**
$381,000,000.00 USD under 18 U.S.C. § 1964(c);

d-1. Treble Damages (Florida RICO)
An additional award of treble damages as authorized by Fla. Stat. § 772.104(2) for Defendants' pattern of criminal activity and racketeering under Florida law;

e. **Constructive Trust & Forfeiture**
On all funds, profits, properties, or interests obtained by means of racketeering or coercion;

f. **Permanent Injunctive Relief**
Enjoining all Defendants from further retaliatory legal proceedings, surveillance, or media attacks;

g. **Emergency Security Orders**
To fund safe housing, communication access, and legal protections;

h. **Attorneys' Fees, Costs, and Expert Expenses**
Including protection for whistleblowers under TVPA and RICO fee-shifting statutes;

i. **Prejudgment and Post-Judgment Interest**
At a rate of 10% compounded annually from May 23, 2014 to present;

j. **Any further declaratory or equitable relief**
This Court deems just, proper, and necessary under the law.

# COUNT NINE: FRAUD

(Against: All Named Defendants and Doe Co-Conspirators)
[Three-Prong Jurisdictional Nexus: Texas (origin harm, grooming, trafficking); California (agreement situs, tribunal fraud, rape-for-hire); New York (stalking, legal retaliation, financial laundering)]

## I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber  , a Canadian citizen, recognized survivor of cross-border human trafficking, systemic judicial persecution, and coerced sexual servitude, hereby incorporates by reference all preceding allegations, paragraphs, and counts of this Complaint as if fully stated herein, pursuant to Fed. R. Civ. P. 10(c) and Rule 9(b).

## II. SCHEME TO DEFRAUD ACROSS INTERSTATE AND INTERNATIONAL BORDERS

Defendants, jointly and severally, engaged in a coordinated racketeering scheme of fraud and fraudulent concealment across Texas, California, New York, Ontario, and international forums. Their objective: to obstruct justice, silence Plaintiff, erase lawful debts, and continue the trafficking enterprise under color of law.

This scheme included, without limitation:

A. Fraudulent Diversion of Settlement

- Theft of $40,000,000.00 USD owed under the May 23, 2014 Settlement Agreement via fake orders, coerced stipulations, and manufactured waivers obtained through duress and trafficking coercion.

B. Judicial Fraud and Service Manipulation

- Manufacture of sham orders, false proofs of service, vexatious litigant designations, ex parte gag orders, and forged transcripts in California Superior Courts (including Los Angeles and San Mateo) and New York Supreme Court.

C. Suppression and Fabrication of Legal Filings

- Blocking of Plaintiff's motions, fee waivers, and appeals; creation of false dockets and concealment of judicial proceedings to prevent Plaintiff from asserting her rights.

D. Bribery and Sabotage of Legal Counsel

- Paid or coerced withdrawal of attorneys across New York and California, including misappropriation of Plaintiff's retainer funds and attorney-client files.

E. Financial Laundering Through Judgments

- Use of fraudulent California judgments to launder financial theft via Ontario Mareva injunctions and Canadian enforcement without appellate review.

F. Deception of Courts and Agencies

- False representations to courts, law enforcement, media, and financial institutions about Plaintiff's status, legal posture, and identity to justify continued stalking, defamation, and financial abuse.

G. Exploitation of Trauma for Legal Incapacity

- Weaponizing Plaintiff's PTSD and medical vulnerability to bar her from hearings, service, and filings, while continuing retaliatory enforcement and character assassination.

III. KNOWING MISREPRESENTATIONS & FRAUDULENT OMISSIONS

Defendants knowingly and maliciously made the following material misrepresentations and strategic omissions:

1. That Plaintiff waived or abandoned her legal rights — despite lack of valid waiver;

2. That service of process was valid — despite forged proofs, concealed filings, and illegal service;

3. That Plaintiff was properly designated vexatious or in contempt — without due process;

4. That judgments were enforceable — when they were obtained through bribery and fraud;

5. That legal counsel withdrew independently — rather than under bribery, threats, or gag orders;

6. That Plaintiff consented to orders, rulings, or settlements — when she was excluded from hearings or incapacitated by trafficking trauma.

IV. ACTUAL KNOWLEDGE AND INTENT TO DEFRAUD

Each Defendant acted with actual knowledge of the falsity of their statements and omissions and with deliberate intent to:

- Obstruct justice and suppress Plaintiff's legal identity;

- Shield co-conspirators from prosecution for trafficking, rape-for-hire, and judicial bribery;

- Launder fraudulent judgments across U.S. and Canadian jurisdictions;

- Destroy Plaintiff's reputation, health, career, and financial future.

## V. RELIANCE, CAUSATION, AND SUPREME INJURY

Plaintiff reasonably relied on the appearance of legal legitimacy, judicial integrity, and attorney loyalty. Her trust in legal process was willfully exploited.

As a direct and proximate result, Plaintiff suffered:

- Total Economic Annihilation: $193,577,054.22 in stolen funds, lost income, and legal sabotage;

- Medical Deprivation: Reconstructive surgeries and psychiatric care denied;

- Psychological Collapse: Complex PTSD, suicidality, and public humiliation;

- Housing and Safety Loss: Forced migration, eviction, and death threats;

- Reputational Evisceration: Lifelong damage to credibility, legal identity, and professional viability.

## VI. VIOLATED LAWS AND AUTHORITIES

Defendants' conduct constitutes civil and criminal fraud under:

A. Federal Law

- RICO, 18 U.S.C. §§ 1961–1968

- TVPA, 18 U.S.C. §§ 1589–1595

- 42 U.S.C. § 1983 – deprivation of due process

- Fraud on the Court – *Chambers v. NASCO*, 501 U.S. 32 (1991)

B. Texas, California, and New York Law

- *Lazar v. Superior Court*, 12 Cal. 4th 631 (1996)
- *Kaufman v. Cohen*, 307 A.D.2d 113 (1st Dep't 2003)
- Texas: *Formosa Plastics Corp. v. Presidio Engineers*, 960 S.W.2d 41 (Tex. 1998)

C. International Law

- Palermo Protocol, Article 6
- CEDAW, Articles 2(e), 5
- UDHR, Articles 7, 8, 10, 12

VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment as follows:

A. General Damages: $193,577,054.22 USD for fraud, breach, and reputational destruction;
B. Special Damages: $10,000,000.00 USD for medical, relocation, and emergency protection;
C. Lost Income: $10,000,000.00 USD for vocational obliteration and future loss;
D. Compound Interest: 10% from May 23, 2014 to judgment, under CPLR § 5001 and *Bank of America Canada* v. *Mutual Trust Co.*, 2002 SCC 43;
E. Treble Damages: Under RICO and TVPA for predicate acts and trafficking fraud;
F. Punitive Damages: $500,000,000.00 USD for malicious, systemic legal deception;
G. Equitable Relief: Permanent injunction halting all enforcement of fraudulent rulings;
H. Constructive Trust: On all assets obtained through fraud and coercion;
I. Restitution: Full accounting and disgorgement of misappropriated funds;
J. Other Relief: As this Court deems just and necessary under U.S. and international law to restore Plaintiff's life, identity, and rights.

Complaint for Human Trafficking

**COUNT TEN: FRAUDULENT INDUCEMENT**

(Against: Sequoia Capital Operations, LLC; Sequoia Capital Franchise Partners, L.P.; Michael Lewis Goguen; Two Bear Capital; Quinn Emanuel Urquhart & Sullivan LLP; Diane Doolittle; John Quinn; Bruce Van Dalsem; Kyle Batter; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Glaser Weil LLP; Patricia Glaser; Jill Basinger; Nemecek & Cole LLP; Brown & Charbonneau LLP; and all named and Doe co-conspirators)

1.  INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber , a Canadian citizen and internationally recognized survivor of cross-border human trafficking, systemic sexual exploitation, and retaliatory litigation, by and through this Complaint, hereby realleges and incorporates by reference all preceding paragraphs, facts, and causes of action as though fully set forth herein. This Count is pleaded in the alternative and in combination with all other counts under a three-prong jurisdictional theory grounded in: (1) initial acts of inducement, coercion, and abuse committed in Texas; (2) ongoing fraudulent enforcement and legal malpractice centered in California; and (3) financial laundering, strategic misrepresentation, and media retaliation in New York. All acts herein are additionally tied to federal jurisdiction under RICO, the Trafficking Victims Protection Act (TVPA), and international human rights obligations, including the Palermo Protocol and customary international law.

2.  LEGAL STANDARD: FRAUDULENT INDUCEMENT (GROUNDED IN TEXAS, CALIFORNIA, NEW YORK LAW)

This Count arises under:

- Texas Common Law: Fraudulent inducement is recognized as a distinct tort actionable when a party enters into an agreement based on false material representations or concealment of critical facts (*Haase v. Glazner*, 62 S.W.3d 795 (Tex. 2001)).

- California Law: California Civil Code §§ 1572–1573 defines actual fraud to include intentional misrepresentation, suppression of truth, and duress.

- New York Law: Fraudulent inducement arises where material misrepresentations are made knowingly to induce action (*Sokolow v. Lacher & Lovell-Taylor*, 261 A.D.2d 110 (1st Dept. 1999)).

- Federal Law: RICO predicate acts under 18 U.S.C. § 1961 et seq., TVPA claims under 18 U.S.C. §§ 1590–1595, and 42 U.S.C. § 1983 violations via state actors facilitating fraud.

- International Law: Violations of the Universal Declaration of Human Rights (Arts. 7, 8, 12), the Palermo Protocol (Art. 6, 9), and the International Covenant on Civil and Political Rights (ICCPR, Arts. 2, 9, 14).

3.   FACTUAL BASIS FOR FRAUDULENT INDUCEMENT

Defendants, operating in an enterprise of legal professionals, financial actors, and technology investors, jointly and severally engaged in a premeditated scheme to fraudulently induce Plaintiff into entering a coercive, illegitimate, and voidable settlement agreement dated May 23, 2014. The inducement relied on a pattern of:

a. Misrepresentation Regarding Voluntariness, Legal Finality, and Mutual Benefit

- Plaintiff was falsely assured that the agreement was voluntary, fully compensatory, and shielded her from further legal retaliation.

- At the time of execution, Plaintiff was in Texas, unrepresented, suffering from severe psychological and physical trauma resulting from years of trafficking and rape.

- Attorneys drafting the agreement—including Diane Doolittle, John Quinn, and Patricia Glaser—were operating in gross conflict of interest, representing the interests of Goguen and Sequoia, not Plaintiff.

b. Concealment of Material Facts and Legal Consequences

- Plaintiff was never informed that the agreement would be used to silence her, deny medical treatment, bar legal redress, and serve as the foundation for retaliatory litigation across multiple jurisdictions.

- Key facts were actively concealed, including:

- ◦ Goguen's criminal sexual assaults and rape-for-hire scheme;

- ◦ The complicity of Sequoia Capital in concealing and facilitating these crimes;

- ◦ The use of sham Nevada LLCs and shell accounts to avoid payment and enforcement;

- ◦ The intention to weaponize the coerced agreement in California and Ontario.

c. Coercion and Exploitation of Medical, Psychological, and Economic Vulnerability

- • Plaintiff was under financial duress, isolated, suicidal, and suffering from untreated trauma injuries when the agreement was executed.

- • The settlement was imposed with explicit threats of retaliation, reputational annihilation, criminal complaints, and deportation.

- • Defendants manipulated Plaintiff's trauma-based decision-making and lack of legal resources to extract a coerced signature.

4.    KNOWLEDGE AND INTENT TO DEFRAUD

All named and Doe defendants acted with actual knowledge of the falsity of their representations, with the intent to:

- • Neutralize Civil and Criminal Liability: Use the appearance of a "settlement" to bar claims under RICO, TVPA, and international law;

- • Evade Due Process: Deprive Plaintiff of adversarial hearings, appellate rights, and equal access to justice;

- • Retaliate and Silence: Prevent disclosure of trafficking, rape, and complicity by Quinn Emanuel, Sequoia Capital, and associated law firms;

- • Secure Judicial Favor: Utilize forged or coercive agreements to obtain fraudulent rulings, asset freezes, gag orders, and criminal contempt findings in Canada and the United States.

5.    RELIANCE, CAUSATION, AND INJURY

Plaintiff reasonably relied on the representations made by Defendants and the presumed impartiality and ethics of their legal representatives. As a direct and proximate result:

- Plaintiff was defrauded of $40 million USD in promised settlement funds;

- Plaintiff was denied critical medical care and lifesaving surgeries;

- Plaintiff's legal identity was annihilated through vexatious litigant designations, sealed gag orders, and reputational destruction;

- Plaintiff was subjected to retaliatory litigation in California, fraudulent enforcement in New York, and Mareva injunctions in Ontario;

- Plaintiff was prevented from seeking criminal redress, UN remedy, or international human rights relief.

6.    VIOLATED LEGAL STANDARDS

This conduct constitutes fraudulent inducement under:

- Texas Common Law: *Haase v. Glazner*, 62 S.W.3d 795; *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41 (Tex. 1998);

- California Law: Cal. Civ. Code §§ 1572–1573; *Lazar v. Superior Court*, 12 Cal.4th 631 (1996);

- New York Law: *Sokolow v. Lacher & Lovell-Taylor*, 261 A.D.2d 110 (1st Dept. 1999);

- District of Columbia Law: *Hercules & Co. v. Shama Restaurant*, 613 A.2d 916 (D.C. 1992);

- Federal Law: RICO predicate acts (mail/wire fraud, obstruction of justice, extortion);

- TVPA: 18 U.S.C. §§ 1589–1595;

- Canadian Law: Tort of deceit; *Bruno Appliance and Furniture, Inc. v. Hryniak*, 2014 SCC 8; CVBR;

- International Law: Palermo Protocol, ICCPR, UDHR (Arts. 7, 8, 12).

7.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against all named and Doe Defendants, jointly and severally, and grant the following relief:

a. General Damages: $193,577,054.22 USD for financial, psychological, and reputational destruction;
b. Special Damages: $10,000,000.00 USD for medical, relocation, security, and trauma recovery support;
c. Lost Earnings: $10,000,000.00 USD for career sabotage, denial of education, and unlawful interference with professional licensing;
d. Prejudgment Interest: 10% per annum compounded from May 23, 2014 under CPLR § 5001 and California equity doctrines;
e. Punitive and Aggravated Damages: $500,000,000.00 USD to punish malice, deceit, and systemic abuse;
f. Treble Damages: Pursuant to RICO (18 U.S.C. § 1964(c)) and TVPA (18 U.S.C. § 1595);
g. Permanent Injunction:

- Enjoining Defendants from enforcing the May 23, 2014 Agreement;

- Prohibiting enforcement of related orders, gag rulings, or contempt proceedings;

- Barring legal retaliation, surveillance, or third-party coordination;
  h. Constructive Trust: Over all assets, benefits, and funds obtained through the coerced agreement and retaliatory litigation;
  i. Restitution & Full Accounting: Of legal trust funds, retainer abuse, and enterprise-level proceeds of fraud;
  j. Further Relief: As this Court deems just and equitable under U.S. constitutional law, Texas, California, New York, Canadian, and international human rights frameworks.

**COUNT ELEVEN: FRAUD UPON THE COURT**

(Against All Defendants – Injunctive and Declaratory Relief Only from Judicial and State Actors)

I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber  repeats, realleges, and incorporates by reference all preceding paragraphs, factual allegations, and causes of action as though fully set forth herein.

II. NATURE OF FRAUD UPON THE COURT

Defendants, acting individually and in concert, engaged in a malicious, deliberate, and systematic enterprise to commit fraud upon multiple courts in the United States, Canada, and internationally, including but not limited to:

- The Superior Court of California (San Mateo, Los Angeles, Orange Counties);

- The United States District Courts (SDNY, CDCA, District of Montana);

- The United States Court of Appeals for the Ninth Circuit;

- The Ontario Superior Court of Justice (Commercial List and Appellate Divisions);

- The California Supreme Court and Court of Appeal;

- The Supreme Court of Canada.

The fraudulent schemes were not confined to adversarial misconduct. They were designed to corrupt the judicial machinery itself, including: bribing judges, staging ex parte communications, falsifying service, suppressing hearings, fabricating evidence, and manufacturing void rulings that destroyed Plaintiff's legal standing.

III. ELEMENTS OF FRAUD UPON THE COURT

The fraud consisted of, inter alia:

- Filing perjured declarations, false affidavits of service, forged documents, and default motions based on fictitious addresses;

- Bribing judicial officers and clerks for favorable rulings and illegal designations (e.g., vexatious litigant status);

- Suppressing key exculpatory documents, including victim certifications and medical records;

- Engaging in ex parte communications with judges (including Susan Greenberg, Danny Chou, Nina Shapirshteyn, Barbara Conway, Cory Gilmore) to manipulate rulings and calendar motions off-schedule;

- Staging illegal contempt proceedings and issuing punitive monetary gag bonds (e.g., $50,000 by Judge Nico Dourbetas) in complete absence of jurisdiction.

This conduct goes beyond fraud between litigants. It strikes at the institutional integrity of the courts, warranting vacatur of all judgments obtained through fraud.

IV. SPECIFIC ACTS OF FRAUD

Examples include:

- The Ontario Mareva injunction obtained via falsified affidavits and forged service, used to freeze assets despite California appeals being pending;

- The illegal erasure of Plaintiff's legal identity by converting her into a corporate defendant;

- The secret dismissal of Plaintiff's well-pleaded federal claims in SDNY and CDCA using fabricated jurisdictional arguments;

- Judicial collusion with law firms such as Lenczner Slaght and Quinn Emanuel to falsify nationality, standing, and court access.

V. LEGAL BASIS FOR RELIEF

Defendants' conduct constitutes fraud upon the court and violates:

- U.S. Federal Common Law: *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944); *United States v. Throckmorton*, 98 U.S. 61 (1878);

- Ontario Civil Procedure: Rule 59.06 (fraudulent judgments);

- Canadian Common Law: *Canada v. Grenier*, 2005 FCA 348; *Merchant Law Group v. Canada*, 2010 FCA 206;

- Canadian Criminal Code: s. 139 (obstruction), s. 380 (fraud), s. 131 (perjury), s. 465 (conspiracy);

- International Law: The Palermo Protocol, CEDAW, and UDHR.

## VI. STANDING FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff has standing to seek relief because she continues to suffer collateral legal, reputational, and safety harms stemming from the fraudulent orders and rulings:

- Illegal enforcement of judgments across U.S. and Canadian jurisdictions;

- Denial of access to courts and gag orders premised on false filings;

- Legal paralysis and erasure of legal personhood through fraudulently procured orders.

## VII. RELIEF SOUGHT

Plaintiff does not seek damages from judicial officers or state officials. Instead, she seeks the following declaratory and injunctive relief:

A. Declaratory Relief

1. A declaration that all judgments, designations, gag orders, and rulings procured through fraud upon the court are void ab initio and without legal effect;

2. A declaration that the judicial misconduct described constitutes a violation of Plaintiff's due process and access to courts rights under the First and Fourteenth Amendments.

B. Injunctive Relief

1. Vacatur of all fraudulent judgments, restraining orders, asset freezes, vexatious litigant designations, contempt citations, and gag orders entered without valid jurisdiction or due process;

2. An order permanently enjoining Defendants from further obstruction, surveillance, retaliation, or use of fraudulently obtained rulings;

3. Structural injunctive relief requiring independent review of all judicial rulings against Plaintiff to purge the record of fraud.

C. Protective Relief

1.  An order restoring Plaintiff's full legal standing and court access;

2.  An order mandating unsealing of suppressed filings and protective review of Plaintiff's safety concerns arising from retaliatory litigation.

D. Further Relief

Such other and further equitable or injunctive relief as this Honourable Court may deem just, proper, and necessary to uphold Plaintiff's constitutional, international, and human rights.

## COUNT TWELVE: OBSTRUCTION OF JUSTICE

(Against All Defendants)

1.  **INCORPORATION OF PRIOR ALLEGATIONS**
    Plaintiff Amber  repeats, realleges, and incorporates by reference all preceding paragraphs, factual allegations, and causes of action as though fully set forth herein.

2.  **NATURE OF THE OBSTRUCTION SCHEME**
    Defendants, individually and collectively, engaged in a deliberate, continuous, and systemic pattern of obstruction of justice across civil, criminal, and administrative forums in Canada, the United States (including Florida, Texas, New York, and California), and international jurisdictions. Defendants acted with specific intent to:

•   Prevent Plaintiff's claims from being adjudicated on the merits;

•   Shield co-conspirators from civil and criminal liability;

•   Conceal the existence of a continuing enterprise of human trafficking, sexual violence, and financial crimes;

•   Evade accountability for violations of federal statutes, including the Trafficking Victims Protection Reauthorization Act (TVPRA), RICO, and civil rights laws;

•   Permanently silence Plaintiff through judicial coercion, economic strangulation, reputational destruction, and physical surveillance.
    This obstruction scheme extended across courts, tribunals, state bar agencies, law enforcement, and international oversight bodies.

3.  **UNLAWFUL ACTS OF OBSTRUCTION**
    The Defendants obstructed justice through the following acts, among others:

- a. Fabrication of judicial records, including forged affidavits, false certificates of service, perjured declarations, and default judgments;

- b. Secret ex parte hearings in courts including San Mateo Superior Court (CA), Los Angeles Superior Court (CA), Miami-Dade County Court (FL), New York County Supreme Court (NY), Travis County (TX), and Ontario Superior Court (Commercial List), excluding Plaintiff from due process;

- c. Bribery of judicial officers, clerks, and public officials to block adjudication of trafficking claims and suppress evidence;

- d. Suppression of exculpatory evidence, including trafficking certifications, medical documentation, and financial abuse records;

- e. Retaliatory lawsuits designed to intimidate Plaintiff and deter legal action;

- f. Collusion with state bar officials to obstruct investigations into attorney misconduct and enable continued abuse by defense counsel;

- g. Manipulation of federal courts in SDNY, EDNY, CDCA, SDFL, and the Ninth and Eleventh Circuits via fraud, vexatious litigant designations, and improper removals;

- h. Interference with treaty obligations and human rights inquiries, including the obstruction of Plaintiff's filings before the United Nations and Inter-American Commission on Human Rights.

**4.** VIOLATIONS OF LAW
Defendants' conduct constitutes obstruction of justice under both domestic criminal law and civil rights law, as well as international obligations. The conduct violated:

U.S. Federal Law:

- 18 U.S.C. §1503 (Obstruction of justice);

- 18 U.S.C. §1512 (Witness tampering);

- 18 U.S.C. §1513 (Victim retaliation);

- 18 U.S.C. §1962 (Civil RICO – predicate acts);

- First and Fourteenth Amendments (Access to courts);

Florida Law:

- Fla. Stat. §843.085 (Filing false documents against property);

- Fla. Stat. §821.05 (Retaliation against a witness);

- Fla. Stat. §774.011 (Obstruction of investigations);

Texas Law:

- Tex. Penal Code §37.09 (Tampering with or fabricating physical evidence);

- Tex. Penal Code §36.06 (Retaliation);

New York Law:

- N.Y. Penal Law §215.00 et seq. (Judicial obstruction);

California Law:

- Cal. Penal Code §132, §134 (Perjury and fraud);

Canadian Criminal Code:

- s. 139 (Obstruction of Justice);

- s. 465 (Conspiracy);

- s. 380 (Fraud);

- s. 423 (Intimidation);

- s. 131 (Perjury);

- s. 346 (Extortion);

Other Applicable Law:

- Ontario Human Trafficking Act, S.O. 2017, c. 14, s. 16;

- Ontario Rules of Civil Procedure, Rule 59.06 (fraudulently obtained judgments);

- Palermo Protocol, CEDAW, UDHR;

- Canadian Charter of Rights and Freedoms, ss. 7, 12, 15, 24.

**5.**  ONGOING PATTERN OF OBSTRUCTION
Defendants' obstruction is ongoing, including:

- Continued use of illegal subpoenas and fraudulently obtained orders to monitor Plaintiff's location, finances, and personal networks in FL, TX, NY, and CA;

- Interference with Plaintiff's international diplomatic protection applications and access to humanitarian remedies;

- Use of law enforcement proxies and private contractors to stalk, intimidate, and surveil Plaintiff;

- Systematic deprivation of housing, healthcare, and income to destabilize Plaintiff and suppress testimony.

**6.**  DAMAGES

As a direct and proximate result of this obstruction enterprise, Plaintiff has suffered:

- Permanent denial of meaningful judicial redress;

- Unlawful enforcement of over $100 million USD in fraudulent judgments;

- Chronic PTSD, physical injury, and permanent disability due to retaliation and medical neglect;

- Total financial collapse and reputational devastation;

- Ongoing fear, endangerment, and denial of human dignity and liberty.

**7.**  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

- a. Declaratory relief that all rulings, judgments, orders, and sanctions obtained through obstruction are void ab initio;

- b. General damages in the amount of $193,577,054.22 USD;

- c. Special damages for protective, legal, and medical needs in the amount of $10,000,000.00 USD;

- d. Lost earnings in the amount of $10,000,000.00 USD;

- e. Punitive and aggravated damages in the amount of $500,000,000.00 USD;

- f. Prejudgment interest at 10% compounded annually from May 23, 2014;

- g. Full costs of suit, including attorneys' fees, expert fees, protective services, and security;

- h. Restitution and disgorgement of all proceeds, assets, and benefits obtained through obstruction;

- i. Permanent injunctive relief restraining Defendants from any further obstruction, surveillance, or retaliation;

- j. Such further relief as this Honourable Court deems just, proper, and necessary to uphold Plaintiff's rights under U.S., Canadian, and international law.

# COUNT THIRTEEN: CIVIL CONSPIRACY

(Against All Named Defendants and Doe Co-Conspirators)

1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber  Doe, , a Canadian national, whistleblower, and internationally recognized survivor of human trafficking and systemic judicial retaliation, repeats, re-alleges, and incorporates by reference all preceding allegations, factual assertions, and causes of action as if fully set forth herein, pursuant to Federal Rule of Civil Procedure 10(c). These incorporated allegations provide the evidentiary and jurisdictional foundation for the conspiracy alleged in this Count.

2. JURISDICTIONAL STRATEGY: FLORIDA, TEXAS, CALIFORNIA, NEW YORK

This Count is asserted under a four-prong jurisdictional framework, demonstrating purposeful availment and tortious acts committed by Defendants in all four states:

- Florida Nexus: Defendants used Florida's legal system, shell entities, and media ecosystem to launder reputational defamation, conceal assets, and obstruct justice. Plaintiff was stalked, monitored, and threatened in Florida, with state court enforcement actions enabling transnational fraud.

- Texas Nexus: The conspiracy was initiated in Texas where Plaintiff was first trafficked, groomed, raped, and subjected to coercive control by Defendant Michael Goguen and co-conspirators.

- California Nexus: The epicenter of the conspiracy operated from California, where Defendants engaged in systemic judicial fraud, bribery, and retaliatory litigation, using firms such as Quinn Emanuel and Glaser Weil to weaponize the courts.

- **New York Nexus**: Defendants leveraged New York's financial institutions, courts, and law firms to enforce fraudulent orders, obstruct representation, and disseminate defamatory materials designed to destroy Plaintiff's legal credibility and social existence.

Federal jurisdiction is proper under:

- 28 U.S.C. § 1331 (federal question),

- 18 U.S.C. § 1595 (TVPA – civil remedy),

- 18 U.S.C. § 1964(c) (RICO – private right of action),

- 28 U.S.C. § 1350 (Alien Tort Statute).

## 3. NATURE AND SCOPE OF THE CONSPIRACY

Defendants entered into a vast, continuous, and unlawful civil conspiracy to:

- Perpetuate and conceal human trafficking, sexual slavery, and forced labor;

- Obstruct justice through judicial bribery, procedural sabotage, and fraudulent enforcement actions;

- Retaliate against Plaintiff for whistleblowing, accessing counsel, and seeking international redress;

- Enforce fraudulent judgments across Florida, Ontario, and New York in violation of due process and international comity;

- Silence, surveil, and endanger Plaintiff using cyber-surveillance, lawfare, and criminal proxies;

- Weaponize U.S. and Canadian legal systems to facilitate systemic abuse under color of law.

## 4. LEGAL FRAMEWORK

Federal Law:

- 18 U.S.C. § 1962(d) (RICO conspiracy)

- 18 U.S.C. § 1595 (TVPA)

- 42 U.S.C. § 1983 (constitutional rights)

- 28 U.S.C. § 1350 (ATS – international human rights)

Florida Law:

- Florida recognizes civil conspiracy when two or more parties agree to commit an unlawful act or a lawful act by unlawful means, causing injury (*Charles v. Florida Foreclosure Placement Center, LLC*, 988 So. 2d 1157 (Fla. Dist. Ct. App. 2008)).

Texas Law:

- Civil conspiracy exists when there is a meeting of the minds to commit a tort (*Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716 (Tex. 1995)).

California Law:

- Conspirators are jointly liable for each other's acts in furtherance of the scheme (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994)).

New York Law:

- Conspiracy is actionable when coupled with an underlying tort (*Kovach v. Hinchey*, 202 A.D.3d 1123 (N.Y. App. Div. 2022)).

Canadian Law:

- Unlawful means conspiracy requires concerted action with intent to harm (*A.I. Enterprises Ltd. v. Bram Enterprises Ltd.*, 2014 SCC 12).

International Law:

- Palermo Protocol

- CEDAW

- UDHR (Articles 3, 5, 7, 8, 10)

- ICCPR (Articles 2, 7, 9, 14)

5. ELEMENTS OF CIVIL CONSPIRACY SATISFIED

Agreement:
Defendants knowingly entered into an unlawful scheme to protect a trafficking enterprise and destroy Plaintiff's legal and social personhood.

Common Design:
Defendants coordinated litigation abuse, media smears, and obstruction tactics to silence Plaintiff.

Overt Acts:

- Rapes, sexual exploitation, and trafficking in Texas and California;

- Bribed judges issuing sham judgments in California, Ontario, and New York;

- Surveillance and stalking in Florida;

- Illicit coordination with Florida and New York attorneys to obstruct counsel and spread defamation;

- Fraudulent Mareva injunctions and asset freezes across jurisdictions;

- Extrajudicial harassment and murder solicitation via private contractors.

Malicious Intent:
Defendants acted with willful malice to annihilate Plaintiff's legal rights, destroy her livelihood, and silence her internationally.

Injury:

- C-PTSD, suicidal ideation, permanent disability;

- Financial collapse, loss of all assets, housing, safety;

- Defamation across media, judicial, and corporate platforms;

- Violation of dignity, identity, and physical safety.


6. PARTICIPATING CO-CONSPIRATORS

- Michael Goguen – Trafficker and financier of retaliatory litigation and bribery;

- Sequoia Capital / Two Bear Capital – Funding legal abuse, enforcement fraud, and concealment;

- Law Firms – Quinn Emanuel, Glaser Weil, Goodwin Procter, Bisnar Chase, Wilson Sonsini, Paoli & Purdy LLP, Rivers Morrell LLP, Brown & Charbonneau LLP;

- Ontario Actors – Lenczner Slaght, Monique Jilesen, Barbara Conway, Cory Gilmore – complicit in cross-border enforcement of fraudulent orders;

- State and Judicial Actors – Judges, clerks, prosecutors, and bar officials in Florida, California, and New York who obstructed justice, suppressed filings, and received unlawful inducements.

## 7. DAMAGES

As a direct and proximate result of the conspiracy:

- Plaintiff suffered irreversible injury to mental, physical, financial, and legal well-being;

- She endured stalking, torture, surveillance, and economic strangulation across four jurisdictions;

- Her civil rights, identity, and liberty were permanently violated.

## 8. PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against all Defendants, jointly and severally, as follows:

a. General Damages: $193,577,054.22 USD
b. Special Damages: $10,000,000.00 USD for medical, security, legal, and protective support
c. Lost Earnings: $10,000,000.00 USD
d. Treble Damages: Under RICO, TVPA, and Texas Civil Code
e. Punitive Damages: $500,000,000.00 USD
f. Prejudgment & Postjudgment Interest: 10% compounded annually from May 23, 2014
g. Constructive Trust: On all ill-gotten assets and proceeds
h. Restitution and Accounting: Full tracing and disgorgement
i. Permanent Injunction: Barring all Defendants from further acts of conspiracy, stalking, or enforcement
j. Criminal Referral: To DOJ, RCMP, and United Nations for prosecution
k. Declaratory Judgment: Declaring the existence of the civil conspiracy in violation of U.S., Canadian, and international law

l. Attorneys' Fees and Full Costs of Suit

m. Further Relief: As this Court deems just, necessary, and aligned with the rule of law and the rights of trafficking survivors

## COUNT FOURTEEN: CONSPIRACY TO COMMIT FRAUD ON THE COURT

(Against All Defendants, Including Law Firms, Attorneys, Judicial Actors, and State Officers)

1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber repeats, realleges, and incorporates by reference all preceding paragraphs and causes of action of this Complaint as though fully set forth herein.

2. NATURE OF THE CLAIM: SYSTEMIC FRAUD ON THE COURT

This cause of action arises under:

- Federal law prohibiting fraud upon the court, including the Supreme Court's holdings in *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944); *United States v. Throckmorton*, 98 U.S. 61 (1878); and *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991);

- 42 U.S.C. § 1983, for the conspiracy to violate constitutional rights under colour of law, including the First and Fourteenth Amendments;

- 18 U.S.C. §§ 1961–1968 (RICO), identifying fraud on the court as a predicate act of racketeering in furtherance of a criminal enterprise;

- 18 U.S.C. § 371, federal conspiracy to defraud the United States;

- Federal supervisory and inherent judicial powers, which empower courts to vacate judgments obtained by corrupt means;

- 28 U.S.C. § 1367, for supplemental jurisdiction over related tort claims under state and international law;

- 28 U.S.C. § 1350, Alien Tort Statute, for acts that constitute international crimes against the administration of justice.

The Defendants, acting individually and as part of an integrated criminal enterprise, executed a deliberate and systemic conspiracy to corrupt, defraud, and sabotage the judicial machinery of the United States in multiple courts, including the SDNY, Central District of California, Northern District of California, the Ninth Circuit Court of Appeals, the California Supreme Court, and the Ontario Superior Court of Justice.

## 3. ELEMENTS OF FRAUD ON THE COURT MET AND EXCEEDED

Fraud on the court occurs when officers of the court engage in conduct so egregious that it "threatens the integrity of the judiciary itself" (*Hazel-Atlas*, 322 U.S. at 246). The following elements are satisfied:

### A. A Coordinated Conspiracy

The Defendants formed a calculated agreement to subvert justice, including:

- Submitting false declarations, forged documents, and manufactured evidence;

- Procuring and concealing ex parte hearings without Plaintiff's notice or participation;

- Bribing, coercing, or improperly influencing judges, clerks, law enforcement, and bar associations;

- Fraudulently designating Plaintiff a "vexatious litigant" to prevent access to courts;

- Denying fee waivers in bad faith after previously granting IFP status;

- Illegally sealing Plaintiff's filings while disseminating them to opposing parties;

- Engineering venue transfers, unlawful removals, or docket sabotage to derail meritorious claims.

### B. Participation of Judicial Officers and Court Personnel

This count encompasses acts of judicial fraud and betrayal of public trust by:

- California state court judges who vacated hearings, conducted ex parte proceedings, and issued void orders without notice;

- Ninth Circuit judges who denied meritorious writs while protecting co-conspirators;

- SDNY personnel who transferred Plaintiff's case to a hostile venue on fabricated grounds, violating 28 U.S.C. §§ 1391 and 1404(a);

- Coordinated denial of appeals and sealing of records designed to shield the enterprise.

C. Material Impact on Fundamental Rights

The conspiracy directly violated Plaintiff's:

- First Amendment right of access to courts;

- Fourteenth Amendment rights to due process and equal protection;

- Rights under 18 U.S.C. § 1595 (TVPA) to civil remedies for trafficking and coercion;

- Human rights under international law, including Article 8 of the UDHR (right to effective remedy) and Articles 2 and 6 of the ICCPR (access to impartial tribunal).

4. IDENTIFICATION OF CONSPIRATORS

This criminal conspiracy was executed by and through:

Legal Entities and Attorneys

- Quinn Emanuel Urquhart & Sullivan LLP (Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter);

- Glaser Weil LLP (Patricia Glaser, Jill Basinger);

- Paoli & Purdy LLP, Sherman Law, Bisnar Chase LLP, Nemecek & Cole LLP, and Goodwin Procter LLP;

- Wilson Sonsini Goodrich & Rosati LLP, Kirkland & Ellis LLP, and Sequoia Capital's general counsel;
  All of whom drafted, filed, or facilitated fraudulent pleadings, ex parte motions, and abandoned Plaintiff while colluding with opposing parties and courts.

State and Federal Judges, Officers, and Clerks

- Stephanie Bowick, Nina Shapirshteyn, Cory Gilmore, Barbara Conway, Danny Chou, and others who knowingly conducted void proceedings;

- Judges of the Ninth Circuit, who declined to review appeals on false jurisdictional grounds;

- Judges in SDNY and CDCA, who transferred and dismissed cases under fabricated pretenses.

Financial Sponsors and Beneficiaries

- Michael Lewis Goguen, financier and trafficker who directly funded legal abuse;

- Sequoia Capital, Two Bear Capital, and Two Bear Ranch, who laundered legal fees and paid for sabotage of Plaintiff's lawsuits;

- Ontario co-conspirators who unlawfully enforced California orders barred under California law during appeals.

5. DAMAGES SUFFERED

As a direct and foreseeable consequence of this fraud on the court, Plaintiff has suffered:

- Nullification of valid motions and the permanent loss of legal redress;

- Unlawful enforcement of void orders and restraining judgments;

- Physical harm, asset loss, and displacement resulting from unlawful legal sabotage;

- Destruction of career, home, reputation, and personal identity;

- Ongoing trauma, endangerment, and deprivation of basic human dignity.

## 6. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. *Vacatur of all orders, judgments, and proceedings* obtained through fraud upon the court;
b. *Declaration that the proceedings were void ab initio*, as required by *Hazel-Atlas* and *Chambers*;
c. *Treble damages* under RICO and civil conspiracy laws in the amount of $580,731,162.66 USD;
d. *Punitive damages* in excess of $500,000,000.00 USD to deter systemic legal fraud and protect public trust;
e. *Injunctive relief* enjoining Defendants from future litigation abuse, harassment, or sabotage;
f. *Constructive trust and equitable disgorgement* of all assets, legal fees, and profits obtained by judicial fraud;
g. *Permanent disqualification of attorneys and judges* who violated ethical and legal standards;
h. *Criminal referral* to the DOJ, RCMP, FBI, UN Special Rapporteur on the Independence of Judges and Lawyers, and appropriate authorities for prosecution under domestic and international law;
i. *Attorneys' fees, expert costs, security expenses*, and full legal costs of suit;
j. Any other and further relief this Honourable Court deems just, necessary, and equitable to restore the rule of law.

## COUNT FIFTEEN: STATE-SPONSORED OBSTRUCTION AND RETALIATION

(Against: Judicial Officers, U.S. Government Officials, and State Agencies — Injunctive and Declaratory Relief Only)

## I. INCORPORATION OF PRIOR ALLEGATIONS
Plaintiff Amber  fully incorporates and re-alleges all preceding paragraphs and causes of action as though fully set forth herein.

## II. JURISDICTIONAL AND LEGAL BASIS

This cause of action is brought under:

- 42 U.S.C. § 1983 for violations of Plaintiff's rights to access the courts, due process, and equal protection under the First, Fifth, and Fourteenth Amendments;

- 28 U.S.C. § 2201 (Declaratory Judgment Act);

- 28 U.S.C. § 1350 (Alien Tort Statute) for violations of customary international law, including the prohibitions against trafficking, torture, and judicial persecution;

- The International Covenant on Civil and Political Rights (ICCPR);

- The Universal Declaration of Human Rights;

- The Palermo Protocol;

- The Canadian Charter of Rights and Freedoms (Sections 7, 12, 15, and 24), for reference under international human rights frameworks.

Plaintiff seeks only injunctive and declaratory relief from all judicial and governmental defendants named in this Count, in accordance with doctrines of sovereign and judicial immunity and Ex parte Young, 209 U.S. 123 (1908).

## III. SYSTEMIC STATE-SPONSORED OBSTRUCTION AND RETALIATION

The Defendants, acting in official capacities, conspired with private actors and legal entities to orchestrate and enforce a state-sponsored scheme of obstruction, retaliation, and suppression targeting Plaintiff, a known human trafficking survivor.

These coordinated acts included:

- Fraudulent dismissals of well-pleaded federal and state claims under TVPA, RICO, and 42 U.S.C. § 1983;

- Void vexatious litigant designations and unlawful denials of access to courts;

- Ex parte manipulation of calendars and rulings;

- Asset freezes and enforcement of judgments lacking personal or subject-matter jurisdiction;

- Sealing of filings to foreclose oversight, transparency, and appellate review;

- Refusal to investigate or prosecute attorney misconduct.

## IV. RETALIATION IN VIOLATION OF FEDERAL RIGHTS

Defendants' actions:

- Obstructed Plaintiff's right of access to the courts under the First and Fourteenth Amendments (Christopher v. Harbury, 536 U.S. 403 (2002));

- Denied procedural and substantive due process in violation of the Fifth and Fourteenth Amendments;

- Targeted Plaintiff's protected status as a survivor of human trafficking, constituting a pattern of discriminatory animus and state-enabled violence.

## V. RELIEF REQUESTED AGAINST JUDGES AND GOVERNMENT OFFICIALS

Plaintiff does not seek monetary damages from any judicial officer, U.S. government actor, or state official named in this Count. Plaintiff seeks the following injunctive and declaratory relief only:

### A. Declaratory Relief

1. A declaration that all judgments, orders, designations, and rulings obtained through state-sponsored conspiracy and extrinsic fraud are void ab initio.

2. A declaration that judicial and state actors engaged in non-judicial conduct, outside the scope of their official duties, in conspiracy with private actors to obstruct Plaintiff's rights.

### B. Injunctive Relief

1. Vacatur of all void orders, designations, asset seizures, and rulings issued against Plaintiff in the absence of jurisdiction.

2. A permanent injunction prohibiting any further retaliation, obstruction, or administrative manipulation targeting Plaintiff in any jurisdiction.

3. Structural relief in the form of independent review and investigation of Plaintiff's denied access to remedy, under supervision of an Article III court or special master.

### C. Protective Relief

1. An order ensuring that Plaintiff's filings are no longer sealed, blocked, or administratively suppressed without cause.

2. An order guaranteeing Plaintiff's rights to pursue her claims and defenses without fear of retaliation, threats, or suppression by state actors.

D. Further Relief

Any other injunctive, equitable, or declaratory relief this Court deems just, necessary, and proper to safeguard Plaintiff's access to justice and protect her constitutional and international rights.

## COUNT SIXTEEN: MISFEASANCE IN PUBLIC OFFICE AND CONSPIRACY TO COMMIT FRAUD ON THE COURT

(Against Canadian Hon. Justice Barbara Conway and Hon. Justice Cory Gilmore — In Personal Capacity Where Permitted, Otherwise for Declaratory and Injunctive Relief Only)

I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff Amber repeats and re-alleges all preceding paragraphs as though fully set forth herein.

II. JURISDICTION AND LEGAL BASIS

2. This claim arises under:

- 42 U.S.C. § 1983, for violations of Plaintiff's rights under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution;

- 28 U.S.C. § 1350 (Alien Tort Statute), for violations of customary international law prohibiting slavery, human trafficking, torture, and judicial persecution of protected persons;

- Federal common law, including doctrines prohibiting fraud upon the court, conspiracy to obstruct justice, and state-sponsored retaliation;

- Customary international law and binding treaties including:

  ▪ ICCPR (International Covenant on Civil and Political Rights);

- ▪ CEDAW (Convention on the Elimination of All Forms of Discrimination Against Women);

- ▪ Palermo Protocol on human trafficking.

3. Judicial immunity does not extend to acts:

- ○ Undertaken in conspiracy with private parties;

- ○ Performed in complete absence of jurisdiction;

- ○ Executed in a non-judicial or administrative capacity.
  *(See Dennis v. Sparks, 449 U.S. 24 (1980); Forrester v. White, 484 U.S. 219 (1988); Stump v. Sparkman, 435 U.S. 349 (1978); Miller v. Gammie, 335 F.3d 889 (9th Cir. 2003)).*

## III. FACTUAL BACKGROUND

4. Defendants Conway and Gilmore, judges of the Ontario Superior Court of Justice (Commercial List), conspired with private actors—including Quinn Emanuel and Lenczner Slaght—to perpetrate fraud upon multiple courts by:

- ○ Knowingly asserting false jurisdiction over Plaintiff;

- ○ Issuing and enforcing illegal Mareva injunctions during active California appeals;

- ○ Freezing Plaintiff's trust accounts and survival assets, including those earmarked for medical and legal necessities;

- ○ Engaging in ex parte communications with defense counsel while issuing binding rulings;

- ○ Enforcing fraudulent judgments obtained through bribery, perjury, and suppression of material facts.

## IV. FRAUD ON THE COURT

5. Defendants engaged in extrinsic fraud by:

- ○ Knowingly concealing jurisdictional defects;

- ○ Misrepresenting the enforceability of an active-appeal judgment;

- ○ Suppressing Plaintiff's pro se filings, evidence, and jurisdictional defenses;

- ○ Transforming the Ontario court into a collection tool for a fraudulent California judgment.

6. These acts render all associated orders void ab initio.
   *(Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944); United States v. Throckmorton, 98 U.S. 61 (1878)).*

## V. VIOLATIONS OF CONSTITUTIONAL AND INTERNATIONAL LAW

7. The above conduct violated:

- ○ First Amendment: right of access to courts;

- ○ Fifth Amendment: deprivation of property without due process;

- ○ Fourteenth Amendment: unequal treatment based on Plaintiff's gender and status as a trafficking victim;

- ○ ICCPR Articles 2, 7, 14;

- ○ CEDAW Articles 2, 5, 15;

- ○ Palermo Protocol Articles 6 and 9;

- ○ UDHR Articles 7, 8, and 10.

## VI. RELIEF SOUGHT (INJUNCTIVE AND DECLARATORY ONLY AS TO JUDGES)

WHEREFORE, Plaintiff respectfully demands judgment against Hon. Justice Barbara Conway and Hon. Justice Cory Gilmore for the following equitable and non-monetary relief only:

A. Declaratory Relief
8. A declaration that:

- • Defendants' acts were performed in complete absence of jurisdiction;

- Their conduct constitutes fraud upon the court and violation of fundamental rights;

- Judicial immunity does not apply where judges conspire with private actors or act in a non-judicial capacity.

B. Injunctive Relief
9. An order:

- Vacating all orders issued under Defendants' authority relating to Plaintiff;

- Permanently enjoining Defendants from issuing future orders affecting Plaintiff's person, assets, or procedural rights;

- Prohibiting further interference, intimidation, or extrajudicial actions against Plaintiff in any jurisdiction.

C. Further Equitable Relief
10. Any other equitable, restorative, protective, or injunctive remedies that this Court deems just and proper to:

- Restore Plaintiff's access to justice;

- Prevent recurrence of systemic abuse;

- Vindicate the rule of law and international human rights obligations.

**COUNT SEVENTEEN : CONSPIRACY TO CAUSE PLAINTIFF'S DEATH VIA DEPRIVATION OF MEDICAL TREATMENT**

AGAINST: All Defendants

I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff re-alleges and incorporates by reference all preceding paragraphs and causes of action as though fully set forth herein.

## II. LEGAL BASIS AND JURISDICTION

This Count arises under the following authorities:

- 42 U.S.C. § 1983, for deprivation of constitutional rights under colour of law, including the First, Fifth, and Fourteenth Amendments;

- Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), permitting direct constitutional tort claims against individual actors;

- 42 U.S.C. § 1985(3), prohibiting conspiracies to deprive individuals of equal protection or equal privileges and immunities under the law;

- 42 U.S.C. § 12132, the Americans with Disabilities Act, for denial of access to medical care and legal processes;

- Alien Tort Statute (ATS), 28 U.S.C. § 1350, for acts constituting attempted extrajudicial killing, torture, and inhumane treatment in violation of customary international law;

- Universal Declaration of Human Rights (Articles 3, 5, 7, 8, 25) and treaties ratified by the United States including the ICCPR, CAT, and Palermo Protocol.

## III. FACTUAL ALLEGATIONS

The Defendants—Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Two Bear Ranch, Quinn Emanuel Urquhart & Sullivan LLP, Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter, Nemecek and Cole LLP, Patricia Glaser, Glaser Weil LLP, Jill Basinger, William Paoli, Paoli & Purdy LLP, Bisnar Chase, Brian Chase, Scott Ritsima, Richard Sherman, Sherman Law, and other co-conspirators—acted in concert to carry out a deliberate and malicious conspiracy to deprive Plaintiff of life-saving medical care by:

- Freezing Plaintiff's assets to prevent medical access;

- Filing knowingly frivolous and harassing legal actions to exhaust Plaintiff's finances and defenses;

- Procuring fraudulent restraining orders, vexatious litigant designations, and ex parte judgments barring access to basic services;

- Blocking Plaintiff's court access, medical appointments, and surgery scheduling;

- Using fraudulent subpoenas to surveil Plaintiff's private health information and interfere with HIPAA-protected communications;

- Coordinating with judicial actors to deny hearings, seal critical filings, and issue retaliatory rulings with knowledge of Plaintiff's fragile health condition.

## IV. KNOWLEDGE, INTENT, AND FORESEEABILITY

The Defendants knew or should have known that:

- Plaintiff suffered from chronic life-threatening conditions requiring immediate medical attention;

- The systematic interference would likely result in medical deterioration and potential death;

- Denial of access to funds, shelter, and care would exacerbate Plaintiff's risk.

The Defendants acted with:

- Actual malice and reckless disregard for Plaintiff's life and civil rights;

- Intent to silence, discredit, and destroy Plaintiff's capacity to seek redress or survive.

## V. CONSPIRACY AND VIOLATIONS

The coordinated campaign constitutes:

- A civil conspiracy under 42 U.S.C. § 1985(3) to deprive Plaintiff of equal access to courts, housing, medical treatment, and due process;

- A Bivens-eligible constitutional deprivation of life, liberty, and property without due process of law;

- A violation of the Fourteenth Amendment Equal Protection Clause, by targeting Plaintiff based on sex, disability, and status as a survivor of human trafficking;

- A denial of access to the courts in violation of the First Amendment and Bounds v. Smith, 430 U.S. 817 (1977);

- An attempted extrajudicial killing in violation of international law actionable under the ATS (*see Filártiga v. Peña-Irala*, 630 F.2d 876 (2d Cir. 1980)).

## VI. DAMAGES AND RELIEF SOUGHT

As a direct and proximate result of Defendants' conduct, Plaintiff suffered:

- Acute medical complications and life-threatening deterioration;

- Extreme emotional distress, physical suffering, and continued endangerment;

- Loss of income, access to shelter, and security.

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

A. General Damages:
$193,577,054.22 for pain, suffering, and loss of constitutional protections.

B. Special Damages:
$10,000,000.00 for emergency medical care, relocation, and restoration of access to health services.

C. Lost Income and Earnings:
$10,000,000.00 due to loss of employment opportunities and earning potential.

D. Interest:
10% compound interest per annum on all damages from May 23, 2014, to date of satisfaction.

E. Costs and Attorneys' Fees:
All legal costs, attorneys' fees, experts, investigators, and litigation expenses incurred.

F. Protective and Emergency Relief:

- Immediate security protection for Plaintiff's person and property;

- Emergency housing and medical access facilitated by court order.

G. Additional Relief:
Any further equitable, declaratory, or injunctive relief the Court deems just and proper to preserve Plaintiff's life, safety, and rights under U.S. and international law.

# III. CONTRACT, LEGAL & FIDUCIARY DUTIES

## COUNT EIGHTEEN: BREACH OF WRITTEN CONTRACT, FRAUDULENT INDUCEMENT, AND TRAFFICKING-RELATED COERCION

(Against: Michael Lewis Goguen, and Sequoia Capital as financial beneficiary and co-conspirator)

Plaintiff hereby incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

This cause of action arises under:

- Federal Diversity Jurisdiction, 28 U.S.C. § 1332;

- Supplemental Jurisdiction, 28 U.S.C. § 1367;

- Trafficking Victims Protection Act (TVPA), 18 U.S.C. §§ 1589–1595;

- Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968;

- Alien Tort Statute (ATS), 28 U.S.C. § 1350;

- Customary international law and treaties, including the Palermo Protocol, Article 6.

A. THE WRITTEN CONTRACT

On or about May 23, 2014, Plaintiff was coerced under extreme duress, trafficking-related threats, and psychological manipulation into signing a written $40 million settlement agreement with Defendant Michael Lewis Goguen.

The contract, prepared and orchestrated by Goguen and agents of Sequoia Capital, purported to release Plaintiff's claims for human trafficking, sexual slavery, rape, forced labor, battery, false imprisonment, and related personal injuries in exchange for four (4) installment payments of $10 million USD each.

The execution of this contract occurred under unlawful conditions:

- Plaintiff was a trafficking victim held in a state of physical, emotional, and economic captivity;

- She lacked independent legal counsel, was under constant threat of harm, and was coerced into silence via non-disclosure clauses, extortionate pressure, and fear of retaliation;

- The contract was executed at the Rosewood Sand Hill Hotel—a known trafficking site used by Defendants—with a notary provided by Sequoia Capital's legal counsel, further entrenching their role.

## B. CORRECTIVE STATEMENT OF FACTS

Although Defendant Goguen made the initial $10 million payment pursuant to the May 23, 2014 agreement, he subsequently clawed back the full amount under an illegal Mareva injunction issued in Ontario, based on a fraudulent California judgment, in direct violation of both California and Ontario law, which prohibit enforcement of such orders during pending appeals.

Moreover, Plaintiff's former attorneys — including Patricia Glaser (Glaser Weil LLP), William Paoli (Paoli & Purdy LLP), and Gregory Brown (Brown & Charbonneau LLP) — embezzled or misappropriated substantial sums from the original $10 million payment, leaving Plaintiff with no remaining benefit from that installment.

As a result, Defendants retained both the benefit of the release and the $10 million, while Plaintiff was defrauded, impoverished, and retraumatized. The full $40 million remains due and owing, plus interest and consequential damages.

## C. FRAUDULENT INDUCEMENT AND COERCION

Plaintiff was fraudulently induced into signing the contract. Defendant Goguen and his associates:

- Concealed ongoing sexual exploitation, medical harm, and risk of disease;

- Misrepresented the legal effect of the settlement and withheld key factual information;

- Leveraged Plaintiff's trauma, captivity, and lack of legal protection to extract silence and release of claims;

- Utilized trafficking-based coercion, constituting a violation of TVPA § 1590 and § 1595.

The contract is voidable or unenforceable under federal and international law due to:

- Lack of capacity caused by trafficking trauma;

- Absence of voluntariness;

- Unconscionability and public policy violations barring enforcement of contracts procured via slavery, coercion, or forced labor.

## D. SEQUOIA CAPITAL'S LIABILITY AS TRAFFICKING BENEFICIARY

Sequoia Capital, through its executives, lawyers, and funding apparatus:

- Facilitated, witnessed, and financially benefitted from the execution of the coerced contract;

- Employed law firms (Quinn Emanuel, Wilson Sonsini, Goodwin Procter) to structure the agreement;

- Provided the notary, location, and legal logistics to shield Goguen;

- Derived tangible financial, reputational, and litigation benefit from suppressing Plaintiff's rights and avoiding public litigation.

Sequoia Capital is thus liable under:

- TVPA § 1595 as a knowing financial beneficiary of trafficking;

- RICO § 1962(d) for conspiracy to obstruct justice and engage in trafficking-related predicate acts;

- ATS (28 U.S.C. § 1350) for profiting from customary international law violations (slavery, torture, denial of legal remedy).

## E. DAMAGES

As a direct and proximate result of Defendants' breach and trafficking-related coercion, Plaintiff has suffered:

- Loss of the full $40 million in contractual compensation, due to wrongful clawback and attorney embezzlement;

- Permanent physical injuries, reproductive harm, and neurological damage;

- Destruction of earning capacity;

- Severe emotional, psychological, and psychiatric trauma;

- Housing instability, medical deprivation, and professional annihilation caused by breach and retaliation.

## F. APPLICABLE LAW & TREATIES

The following legal frameworks apply:

- TVPA, 18 U.S.C. §§ 1581–1595;

- Civil RICO, 18 U.S.C. §§ 1961–1968 (predicate acts include: fraud, extortion, obstruction, witness tampering, money laundering);

- Palermo Protocol, Art. 6 (obligation to ensure restitution and void contracts made under trafficking);

- International Covenant on Civil and Political Rights;

- Convention Against Torture;

- Universal Declaration of Human Rights, Arts. 3, 5, 7, and 8;

- State contract law (New York, California, Ontario, Delaware).

## 8. RELIEF REQUESTED

Plaintiff demands judgment against all Defendants, jointly and severally, as follows:

a. Compensatory damages in the amount of $193,577,054.22 USD, representing the full unpaid $40 million under the contract plus consequential and non-economic damages;

b. Special damages for ongoing medical, relocation, therapy, and protective services in the amount of $10,000,000.00 USD;

c. Loss of earnings and destruction of earning capacity in the amount of $10,000,000.00 USD;

d. Prejudgment interest at 10% per annum compounded annually from May 23, 2014, to the date of judgment, in accordance with federal and state precedent:

*See* SEC v. Platforms Wireless Int'l Corp., 617 F.3d 1072, 1097 (9th Cir. 2010);
*See also* United States v. Gordon, 393 F.3d 1044, 1058 (9th Cir. 2004);
*See* Matter of Westinghouse Elec. Corp., 76 B.R. 612, 615 (Bankr. S.D.N.Y. 1987).

e. Aggravated and punitive damages in an amount no less than $500,000,000.00 USD, based on the egregious nature of Defendants' racketeering, trafficking, and bad faith;

f. Statutory treble damages pursuant to 18 U.S.C. § 1964(c) (Civil RICO) and 18 U.S.C. § 1595 (TVPA);

g. Costs of suit, including litigation expenses and fees;

h. Attorney's fees, security costs, and emergency protection orders to prevent further harm or obstruction;

i. Permanent injunctive relief barring Defendants and their affiliates from engaging in further trafficking-related acts, harassment, or legal sabotage against Plaintiff;

j. Any other relief this Honorable Court deems just and equitable under the circumstances.


**COUNT 19: BREACH OF WRITTEN CONTRACT**

(Against: Glaser Weil LLP, Patricia Glaser, Jill Basinger; Bisnar Chase LLP, Brian Chase, Scott Ritsima; Sherman Law, Richard Sherman; Paoli and Purdy LLP, William Paoli and Court Purdy; The Law Firm of Rivers J. Morrell III; Rivers J. Morrell III, Brown & Charbonneau LLP, Gregory Brown)

Plaintiff hereby incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

This cause of action arises under:

- Federal Diversity Jurisdiction, 28 U.S.C. § 1332;

- Supplemental Jurisdiction, 28 U.S.C. § 1367;

- State contract law (California, New York, Ontario);

- Customary international legal obligations governing representation of survivors of human trafficking.

## A. FORMATION OF WRITTEN CONTRACTS

Between 2012 and 2022, Plaintiff entered into written retainer agreements with the above-named Defendants for legal services related to:

- Enforcement of Plaintiff's $40 million written settlement agreement with Defendant Michael Goguen;

- Litigation and recovery related to sexual violence, forced labor, and trafficking-based injuries;

- Defense against retaliatory lawsuits, Mareva injunctions, and fraudulent judgments obtained by adversaries;

- Civil rights violations, legal malpractice by prior attorneys, and systemic legal obstruction.

Each Defendant voluntarily assumed contractual duties to act as Plaintiff's legal counsel, and each agreement established specific obligations of performance, communication, competence, confidentiality, and loyalty.

## B. CONTRACTUAL TERMS & CONSIDERATION

The written agreements included provisions for:

- Contingency-based fees, hourly billing, or hybrid arrangements;

- Legal services to be rendered competently and in good faith, with full adherence to ethical and fiduciary duties;

- Attorney-client privilege protections, preservation of evidence, and diligent litigation conduct;

- Agreements by Plaintiff to cooperate, share privileged information, and fund reasonable litigation costs where required.

These contracts are legally binding, enforceable under state law, and were supported by mutual assent and consideration.

## C. DEFENDANTS' BREACH OF WRITTEN CONTRACTS

Each named Defendant materially breached the written agreement(s) by:

1. Failing or refusing to perform legal services promised, including enforcement of Plaintiff's $40 million claim;

2. Abandoning Plaintiff during active proceedings without cause or court-approved withdrawal;

3. Diverting or misappropriating trust funds received as part of prior settlements or fee awards;

4. Failing to file timely motions, appeals, or protective claims, resulting in procedural losses;

5. Withholding critical case documents, destroying evidence, or mismanaging litigation strategy;

6. Engaging in collusive conduct with opposing counsel or parties, contrary to Plaintiff's interests.

Each breach substantially deprived Plaintiff of the benefit of the bargain and caused grave harm to her legal, economic, and personal safety interests.

## D. DAMAGES

As a direct and proximate result of the foregoing breaches, Plaintiff has suffered:

- Irrecoverable legal and financial loss, including forfeiture of claims exceeding $40 million USD;

- Loss of trust funds and diverted settlement proceeds, including portions of the $10 million initial payment made under the Goguen agreement;

- Loss of legal redress, foreclosure of remedies, and sabotage of meritorious claims;

- Worsened personal and medical harm, caused by exposure to retaliation, unprotected threats, and ongoing financial ruin;

- Destruction of earning capacity, career, and civil protections.

## E. RELIEF REQUESTED

Plaintiff demands judgment against the above-named Defendants, jointly and severally, as follows:

a. Compensatory damages in the amount of $40,000,000.00 USD, reflecting the full loss of enforcement, embezzled trust funds, and failed legal redress;

b. Consequential damages for personal, medical, and economic harm in the amount of $10,000,000.00 USD;

c. Prejudgment interest at a rate of 10% per annum compounded annually, from the date of each individual breach;

d. Costs of suit, including forensic accounting, litigation expenses, and expert fees;

e. Any other relief this Honorable Court deems just and appropriate under the circumstances.

## COUNT TWENTY: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

(Against: All Retained Law Firms and Named Attorneys)
[Three-Prong Jurisdiction: Texas (origin of contractual harm); California (situs of legal sabotage); New York (financial nexus and reputational laundering)]

I. Incorporation by Reference

1. Plaintiff Amber Doe , a Canadian citizen and internationally recognized survivor of cross-border human trafficking, hereby realleges and incorporates by reference all preceding paragraphs and Counts of this Complaint as though fully set forth herein.

II. Jurisdiction and Legal Basis

2.    This cause of action arises under:

- 28 U.S.C. § 1331 – Federal question jurisdiction under RICO (18 U.S.C. §§ 1961–1968), TVPA (18 U.S.C. §§ 1581–1595), and constitutional deprivations (First, Fifth, Thirteenth, and Fourteenth Amendments);

- 28 U.S.C. § 1332 – Diversity jurisdiction (Plaintiff is a foreign national; Defendants are U.S. citizens from California, New York, Texas, and elsewhere);

- 28 U.S.C. § 1367 – Supplemental jurisdiction over related state and common law claims;

- District of Columbia law: Recognizes a covenant of good faith and fair dealing in all contracts, particularly where fiduciary obligations and extreme vulnerability are at issue. See *Paul v. Judicial Watch, Inc.*, 543 F. Supp. 2d 1 (D.D.C. 2008);

- New York law: Permits independent causes of action for breach of this covenant when conduct undermines the spirit of the contract. See *Dalton v. ETS*, 87 N.Y.2d 384 (1995);

- California law: Recognizes the claim where a party's conduct frustrates the benefits of the agreement. See *Careau & Co. v. Security Pacific*, 222 Cal.App.3d 1371 (1990);

- Ontario law (Canada): Imposes a duty of good faith contractual performance. See *Bhasin v. Hrynew*, 2014 SCC 71.

III. Parties and Fiduciary Relationships

3.    Plaintiff retained the following attorneys and law firms under written and oral contracts across multiple jurisdictions, each of whom owed fiduciary and contractual duties heightened by Plaintiff's known trafficking status and legal endangerment:

- Glaser Weil LLP – Patricia Glaser, Jill Basinger;

- Bisnar Chase LLP – Brian Chase, Scott Ritsema;

- Sherman Law – Richard Sherman;

- Paoli & Purdy LLP – William Paoli, Court Purdy;

- Brown & Charbonneau LLP – Gregory Brown;

- Law Offices of Rivers J. Morrell III – Rivers Morrell;

- Quinn Emanuel Urquhart & Sullivan LLP – Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter;

- Wilson Sonsini Goodrich & Rosati LLP – Keith Eggleton et al.;

- Goodwin Procter LLP – Anthony McCusker et al.;

- Nemecek & Cole LLP – Frank Nemecek, Jonathan Cole, Claudia Stone, Marta Alcumbrac;

- Lenczner Slaght LLP – Monique Jilesen, Sahar Telbi, Barbara Conway, Cory Gilmore.

4. These Defendants were uniquely positioned as protectors of Plaintiff's legal interests but instead acted with callous disregard, weaponizing their contracts to entrap, betray, and sabotage her. They owed Plaintiff duties of transparency, diligence, loyalty, conflict avoidance, and zealous advocacy—especially in light of her medical fragility, legal isolation, and whistleblower status.

## IV. Breach of the Covenant

5. Defendants breached their covenant of good faith and fair dealing through a pattern of systemic misconduct, including:

### A. Legal Abandonment and Coerced Withdrawal

- Defendants withdrew mid-litigation under pressure from criminal actors (e.g., Michael Goguen), citing fabricated conflicts while concealing bribery or threats.

### B. Conflicts of Interest and Dual Allegiances

- Multiple law firms accepted retainers from Plaintiff while covertly serving the interests of Goguen, Quinn Emanuel, and affiliated enterprises with a stake in silencing her.

### C. Sabotage of Meritorious Legal Relief

- Refusing to file appeals or motions already prepared;

- Withholding filings;

- Misleading Plaintiff about court deadlines, procedural remedies, and jurisdictional rights.

### D. Collusion in Fraudulent Judgments

- Enforcing the California Glaser judgment despite knowing it was procured via suborned perjury and sealed findings;

- Assisting in the unlawful enforcement of the Ontario Mareva injunction while Plaintiff's appeals were pending in California, in direct violation of U.S. and Canadian law.

E. Deployment of Coercive Litigation Instruments

- Weaponizing vexatious litigant declarations, forged gag orders, sealed findings, and ex parte rulings to entrench Plaintiff's isolation;

- Supporting or failing to challenge unconstitutional court actions that stripped Plaintiff of her access to counsel, rights of speech, and right to petition.

V. Resulting Harm

6.  As a direct and proximate result of these breaches:

   ◦ Plaintiff lost the entirety of a $10 million confidential settlement originally agreed upon in Texas;

   ◦ Plaintiff's access to competent legal representation was permanently destroyed across the United States and Canada;

   ◦ Plaintiff suffered irreversible reputational harm, defamation, and blacklisting within legal, media, and professional circles;

   ◦ Plaintiff's medical condition worsened due to inability to access treatment, compounded by displacement, housing loss, and threats to life;

   ◦ Plaintiff developed Complex PTSD, severe emotional distress, and systemic retraumatization.

VI. Relief Requested

7.  WHEREFORE, Plaintiff seeks judgment against all Defendants, jointly and severally, as follows:

a. Compensatory Damages
$100,000,000.00 USD – For economic loss, reputational damage, emotional distress, and deprivation of legal protections;

b. Restitution
Full refund of all legal fees paid under any retainer agreement with Defendants, plus 10% annual compound interest from the date of breach;

c. Special Damages
$10,000,000.00 USD – For ongoing trauma-related treatment, housing displacement, and security protection;

d. Prejudgment Interest
10% compounded annually from the date of each breach through entry of final judgment;

e. Aggravated and Punitive Damages
No less than $250,000,000.00 USD – For deliberate betrayal, judicial sabotage, collusion with criminal actors, and willful obstruction of justice;

f. Treble Damages
Under RICO (18 U.S.C. § 1964(c)) and TVPA (18 U.S.C. § 1595), for participation in and benefit from racketeering and trafficking-related abuses;

g. Permanent Injunction
Enjoining all Defendants from further interference, communication, or legal activity against Plaintiff;

h. Protective Orders
To ensure Plaintiff's safety and preserve confidential and medical information across jurisdictions;

i. Attorneys' Fees and Costs
Including expert witness fees, security expenses, and the cost of emergency counsel coordination;

j. Additional Relief
As this Honorable Court deems just, necessary, and appropriate under the U.S. Constitution, international law (CEDAW, UDHR, ICCPR, Palermo Protocol), and applicable domestic statutes of D.C., California, New York, and Ontario.

## COUNT TWENTY-ONE: BREACH OF FIDUCIARY DUTY

(Against: Glaser Weil LLP, Patricia Glaser, Jill Basinger; Bisnar Chase LLP, Brian Chase, Scott Ritsima; Sherman Law, Richard Sherman; Paoli & Purdy LLP, William Paoli; The Law Offices of Rivers J. Morrell III, Rivers J. Morrell III; Brown & Charbonneau LLP, Gregory Brown; Nemecek & Cole LLP, Frank W. Nemecek, Jonathan B. Cole, Marshall R. Cole, Michael W. Feenberg, Michael McCarthy, Mark Schaeffer, Claudia Stone, Marta Alcumbrac; Quinn Emanuel LLP, John Quinn, Kathleen Sullivan, Michael F. Grady, Christopher Tayback, William C. Price, Mark Holsher, Suong Nguyen, Joseph C. Sarles, Patrick Doolittle, Margaret Caruso, Michael Lifrak, Megan M. Kerr, Sara Pollack, Alex Gerbi, Ted Greeno, Aidan O'Rourke,

Gregory Pantlin; Wilson Sonsini Goodrich & Rosati, Keith Eggleton; Goodwin Procter LLP, Anthony McCusker; Kirkland & Ellis LLP, David Klein; Baker Marquart LLP / Waymaker LLP, Ryan Baker, Christopher Reynolds; Day, Day & Brown, Alan Brown; Lenczner Slaght LLP, Monique Jilesen, Sahar Talebi)

Plaintiff Amber repeats, repleads, and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

The Defendants listed above entered into binding fiduciary relationships with Plaintiff by virtue of their roles as attorneys, legal representatives, retained counsel, court officers, or fiduciaries engaged in representing Plaintiff in legal matters directly involving her claims of human trafficking, rape, torture, slavery, sexual abuse, judicial sabotage, and civil and criminal obstruction of justice in both Canada and the United States.

As fiduciaries, each Defendant owed Plaintiff the highest duties recognized under New York law, federal common law, and international human rights law, including but not limited to:

- Undivided loyalty;

- Full and honest disclosure;

- Zealous representation and competent legal advocacy;

- Confidentiality and protection of privileged communications;

- Candor toward the tribunal;

- Avoidance of actual and apparent conflicts of interest.

The Defendants willfully, maliciously, and repeatedly breached these duties through the following conduct:

a. Self-dealing and conflicts of interest, including secret coordination with Defendants Michael Goguen, Sequoia Capital, and affiliated co-conspirators;

b. Acceptance of bribes, inducements, or funding from opposing parties to undermine Plaintiff's legal position;

c. Concealment of hearing dates, court filings, and settlement proceedings from Plaintiff, leaving her unrepresented during critical litigation stages;

d. Abandonment in the midst of litigation, including ex parte withdrawal before trial and arbitration proceedings, without court leave or adequate notice;

e. Participation in illegal ex parte communications, fraudulent filings, and coordination with corrupted judges to engineer adverse rulings and vexatious litigant designations;

f. Collusion to obtain and enforce a fraudulent Mareva injunction, resulting in the illegal seizure of Plaintiff's assets and clawback of the original $10 million payment;

g. Suppression of exculpatory evidence and trafficking records, in direct violation of their duties and international treaty obligations;

h. Deliberate sabotage of meritorious claims for human trafficking, legal malpractice, and civil damages, thereby violating Plaintiff's right to access the courts under the First and Fourteenth Amendments and the Alien Tort Statute (28 U.S.C. § 1350);

i. Concealment of misconduct by other lawyers, including refusal to disclose malpractice, misappropriation, or falsified pleadings during appeals and arbitration;

j. Ongoing retaliation, defamation, and witness intimidation, knowingly placing Plaintiff at risk of further violence and deprivation of life-saving care.

This breach of fiduciary duty directly and proximately caused the following injuries:

- Financial devastation exceeding $193 million in cumulative economic losses;

- Destruction of Plaintiff's litigation standing, career, and access to justice;

- Emotional, psychological, and psychiatric trauma;

- Medical injury, reproductive harm, and delayed surgeries;

- Permanent harm to Plaintiff's legal claims and personal safety.

The above-named Defendants are jointly and severally liable for breach of fiduciary duty under:

- Pappas v. Tzolis, 20 N.Y.3d 228 (2012);

- Matter of Cooperman, 83 N.Y.2d 465 (1994);

- Restatement (Third) of the Law Governing Lawyers §§ 16, 49;

- Palermo Protocol (Art. 6), requiring restitution and voiding of trafficking-complicit agreements;

- Universal Declaration of Human Rights, Articles 3, 5, 7, and 8;

- Canadian Charter of Rights and Freedoms and Ontario Human Trafficking Act for cross-border fiduciary coordination.

Note: This Count is not limited to the attorneys and firms named above. Plaintiff reserves the right to amend this Complaint to include additional law firms, individual attorneys, agents, and conspirators discovered during Rule 26 discovery, subpoena compliance, or compelled disclosures.


PRAYER FOR RELIEF – COUNT TWENTY
Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. General damages: $193,577,054.22 USD;
b. Special damages: $10,000,000.00 USD for relocation, medical care, therapy, and protective services;
c. Loss of earnings and career: $10,000,000.00 USD;
d. Prejudgment interest at 10% per annum, compounded annually from May 23, 2014;
e. Punitive and aggravated damages: $500,000,000.00 USD;
f. Disgorgement of all legal fees, retainers, and compensation obtained through fraud or disloyalty;
g. Constructive trust and forfeiture over assets, judgments, and funds obtained in violation of fiduciary duties;
h. Injunctive relief preventing Defendants from further acts of retaliation, collusion, or judicial interference;
i. Attorneys' fees, costs of suit, expert fees, and disbursements;
j. Such further relief as this Court deems just and proper.


## COUNT TWENTY-TWO: LEGAL MALPRACTICE

(Against: All Named Legal Professionals and Law Firms)
[Three-Prong Jurisdiction: Texas (origin and injury), California (situs of sabotage and judgment enforcement), New York (financial and contractual laundering)]

I. Incorporation by Reference

Plaintiff Amber Doe, , a Canadian national and internationally recognized survivor of cross-border human trafficking, hereby repeats, realleges, and incorporates by reference all preceding paragraphs, factual allegations, statutes, legal theories, and causes of action as though fully set forth herein.

II. Jurisdictional and Legal Framework

This cause of action arises under the following federal and state statutory, constitutional, and common law frameworks:

- Federal Jurisdiction:

    ○ 28 U.S.C. § 1331 – Federal Question Jurisdiction (RICO, TVPA, constitutional violations);

    ○ 28 U.S.C. § 1332 – Diversity Jurisdiction (foreign plaintiff vs. U.S.-based defendants);

    ○ 28 U.S.C. § 1367 – Supplemental Jurisdiction over intertwined state/common law torts;

    ○ 42 U.S.C. § 1983 – Civil rights violations through conspiracy with state actors;

    ○ 18 U.S.C. §§ 1589–1595 – TVPA: Retaliatory legal coercion, deprivation of access to remedy;

    ○ 18 U.S.C. § 1962(d) – RICO Conspiracy: predicate acts including obstruction, extortion, wire/mail fraud.

- Texas Law: Attorneys breached fiduciary duty and standard of care causing direct harm to a domiciled client. See *Cosgrove v. Grimes*, 774 S.W.2d 662 (Tex. 1989).

- California Law: Legal malpractice actionable when attorneys breach duties of diligence, loyalty, or competence. See *Budoff v. Levi Strauss & Co.*, 95 Cal.App.4th 1375 (2002).

- New York Law: Elements: (1) Attorney negligence; (2) Proximate causation; (3) Ascertainable damages. See *McCoy v. Feinman*, 99 N.Y.2d 295 (2002).

- Canadian Law (Ontario): Fiduciary breach actionable under *Galambos v. Perez*, 2009 SCC 48; *Norberg v. Wynrib*, [1992] 2 SCR 226.

III. Duties Owed and Breached

Defendant legal professionals owed Plaintiff the following duties under retainer, fiduciary, and constitutional law:

- Competent and zealous legal representation;

- Loyalty, conflict avoidance, confidentiality;
- Non-collusion with adversaries or co-conspirators;
- Enforcement of Plaintiff's rights under U.S. and international law;
- Heightened care due to Plaintiff's vulnerability as a trafficked individual and whistleblower under threat.

Each Defendant, by contract or appearance, assumed these duties with full knowledge of the stakes.

IV. Acts of Legal Malpractice and Obstruction

Defendants engaged in a pattern of malpractice, collusion, and sabotage, including:

A. Gross Negligence and Abandonment

- Failure to file key appeals or motions;
- Withholding pleadings or defaulting at hearings;
- Secret abandonment during active litigation.

B. Breach of Loyalty and Confidentiality

- Unauthorized release of privileged information;
- Coordination with Michael Goguen, Sequoia Capital, Quinn Emanuel, and hostile judges.

C. Complicity in Fraudulent Judgments

- Participation in enforcement of California Glaser judgment and Ontario Mareva injunction;
- Pressuring Plaintiff into surrendering claims exceeding $50M through duress and silence.

D. Retaliation, Sabotage, and Obstruction

- Accepting bribes to withdraw or sabotage;
- Threatening ethical counsel to deter representation;
- Filing gag orders and vexatious litigant motions based on perjury;
- Ensuring Plaintiff's exile from every legal forum in U.S. and Canada.

These acts constitute professional negligence, tortious betrayal, obstruction of justice, and violations of the right to remedy under the U.S. Constitution and international human rights law.

V. Resulting Harm

As a direct and proximate result of Defendants' legal malpractice:

- Plaintiff lost access to over $889 million USD in legitimate claims and remedies;

- Plaintiff was subjected to judicial violence, illegal surveillance, and systemic retaliation;

- Plaintiff was defamed and stripped of procedural rights via fabricated court orders;

- Plaintiff's liberty, dignity, and survival were denied under U.S., Canadian, and international law.

VI. Prayer for Relief

WHEREFORE, Plaintiff seeks judgment against all Defendants, jointly and severally, as follows:

a. General Damages:
$193,577,054.22 USD – For reputational destruction, lost access to courts, and legal betrayal.

b. Special Damages:
$10,000,000.00 USD – For trauma care, housing, protection, and stabilization.

c. Loss of Earnings:
$10,000,000.00 USD – For career loss and blocked settlements.

d. Prejudgment Interest:
10% compounded annually from May 23, 2014.

e. Punitive and Exemplary Damages:
Not less than $500,000,000.00 USD – For malicious and systemic betrayal of professional trust.

f. Statutory Treble Damages:
Under RICO (18 U.S.C. § 1964(c)) and TVPA (18 U.S.C. § 1595).

g. Constructive Trust:
Disgorgement of all legal fees and proceeds derived from collusion and obstruction.

h. Permanent Injunction:
Prohibiting Defendants from initiating or engaging in any matter involving Plaintiff.

i. Mandatory Disclosure Orders:
Full production of suppressed case files, conflicts, and internal communications.

j. Attorneys' Fees and Costs:
Full reimbursement of litigation costs, expert fees, and emergency coordination.

k. Further Relief:
As the Court deems just under U.S. law, Canadian law, and international human rights frameworks including CEDAW, UDHR, and the Palermo Protocol.

# COUNT TWENTY-THREE: EXTORTION

AGAINST: Michael Lewis Goguen; Sequoia Capital; Two Bear Capital; Two Bear Ranch; Quinn Emanuel Urquhart & Sullivan LLP; Glaser Weil LLP; William Paoli; Paoli & Purdy LLP; and all co-conspirators known and unknown.

## 1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber  repeats, re-alleges, and incorporates by reference all preceding paragraphs of this Statement of Claim as though fully set forth herein.

## 2. THE DEFENDANTS' EXTORTIONATE CONDUCT

Defendants, acting individually and in concert, engaged in a prolonged, coordinated, and unlawful campaign of extortion with the intent to financially ruin, silence, coerce, and endanger Plaintiff—a known human trafficking survivor and whistleblower.

This ongoing pattern of extortion involved, inter alia:

- a. Judicial Weaponization:
  Unlawful designation of Plaintiff as a "vexatious litigant" in California courts, without legal merit, to bar her access to justice and obstruct all legal recourse.

- b. Financial Duress:
  Imposition of fabricated sanctions and unlawful bond requirements—including a fraudulent $50,000 bond by Judge Nico Dourbetas—to bankrupt Plaintiff and prevent judicial remedy.

- c. Fraudulent Proceedings & Legal Sabotage:
  Use of ex parte orders, forged restraining orders, malicious contempt charges, and false judgments to intimidate Plaintiff into silence regarding her trafficking, rape, and torture.

- d. Threats of Death and Physical Harm:
  Contracting private operatives to surveil, stalk, and attempt murder, including threats communicated via Goguen's security personnel and legal associates.

- e. Medical & Financial Coercion:
  Freezing of Plaintiff's bank accounts, theft of financial assets, and deliberate obstruction of medical care, leading to severe and irreversible deterioration of her health.

These acts constitute a methodical and transnational pattern of extortion that crossed state and international borders, and formed part of a broader racketeering scheme.

## 3. STATUTORY VIOLATIONS

The Defendants' conduct constitutes extortion and coercion in violation of:

- 18 U.S.C. § 1951 (Hobbs Act):
  Extortion by threats, force, coercion, and abuse of government authority affecting interstate commerce;

- 18 U.S.C. § 875(d):
  Transmission of threats in interstate commerce with intent to extort money, property, and silence speech;

- 18 U.S.C. § 1961(1):
  Extortion as a predicate act under the Racketeer Influenced and Corrupt Organizations Act (RICO);

- Criminal Code of Canada, RSC 1985, c C-46, s. 346:
  Extortion and coercion under Canadian criminal law;

- Ontario Torts of Extortion, Economic Duress, and Unlawful Means;

- Ontario Human Trafficking Act, S.O. 2017, c. 14, s. 16;

- A.I. Enterprises Ltd. v. Bram Enterprises Ltd., 2014 SCC 12;

- International Treaties Binding on the U.S. and Canada, Including:
  The Palermo Protocol, CEDAW, the Universal Declaration of Human Rights, and the Convention Against Torture (CAT).

## 4. PATTERN OF ORGANIZED, TRANSNATIONAL EXTORTION

This was not isolated misconduct but part of a transnational criminal enterprise operating across California, Montana, Alberta, Ontario, and New York.

Goals of this enterprise included:

- Silencing of Plaintiff's reports of human trafficking and sexual abuse;

- Obstruction of justice via judicial sabotage and economic strangulation;

- Elimination of Plaintiff's legal standing and credibility through retaliation;

- Psychological destruction and lethal endangerment of the Plaintiff.

## 5. DAMAGES SUFFERED BY PLAINTIFF

As a direct and proximate result of Defendants' acts of extortion, Plaintiff endured:

- a. Emotional & Psychological Trauma:
  Complex PTSD, anxiety, suicidal ideation, and psychological deterioration caused by life-threatening coercion and terror campaigns.

- b. Economic Destruction:
  Loss of housing, bank assets, income, legal remedies, and all financial stability due to unlawful seizures, fraudulent sanctions, and litigation abuse.

- c. Physical Injury & Medical Collapse:
  Denial of critical surgeries and life-saving medical treatment resulting in prolonged physical agony and risk to life.

- d. Systematic Denial of Legal Rights:
  Elimination of access to courts in Canada, the U.S., and international tribunals, in violation of domestic and international human rights law.

## 6. PRAYER FOR RELIEF (COUNT TWENTY-THREE)

WHEREFORE, Plaintiff respectfully demands judgment against all named Defendants, jointly and severally, as follows:

a. General Damages:
$193,577,054.22 USD for trauma, suffering, financial destruction, and ongoing harm;

b. Special Damages (Medical & Security):
$10,000,000.00 USD for surgeries, trauma therapy, emergency relocation, and protective services;

c. Loss of Earnings:
$10,000,000.00 USD representing lost future income, contracts, and economic capacity;

d. Prejudgment Interest:
10% compounded annually from May 23, 2014;

e. Punitive & Exemplary Damages:
$500,000,000.00 USD to deter future acts of extortion and punish Defendants' flagrant violations;

f. Costs of Suit:
All attorneys' fees, investigative expenses, security protection, and litigation costs;

g. Permanent Injunctive Relief:
Enjoining Defendants from further threats, retaliation, obstruction, surveillance, or interference with Plaintiff's liberty or person;

h. Mandatory Security Orders:
Court-ordered housing, relocation, protective services, medical care, and trauma recovery assistance;

i. Further Relief:
Any additional relief the Court deems just, proper, and necessary in the interests of justice and international law.


**COUNT TWENTY-FOUR: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

(Against All Named Defendants and Co-Conspirators)
Jurisdictional Strategy: Texas (trafficking origin), California (rape, legal abuse), New York (media defamation, surveillance), Florida (post-agreement stalking and asset coercion)

## I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber Doe, , a Canadian national and internationally recognized survivor of transnational human trafficking, forced rape, coerced labor, retaliatory surveillance, and systemic judicial sabotage, hereby repleads and incorporates by reference all preceding allegations of this Complaint as though fully set forth herein.

## II. EXTREME AND OUTRAGEOUS CONDUCT

Defendants, acting individually and in conspiracy, subjected Plaintiff to a sustained, sadistic, and strategic campaign of psychological warfare, institutional terror, and public eradication.

This campaign originated in Texas with human trafficking and coercive grooming, expanded through California via sexual slavery, legal fraud, and retaliation; metastasized in New York through surveillance, digital subterfuge, and media defamation; and continued in Florida through stalking, asset strangulation, and obstruction of medical aid.

This conduct includes but is not limited to:

- Sexual exploitation and rape, including trafficking, coercion, and rape funded and directed by Defendant Michael Goguen and enabled by Sequoia Capital and Two Bear Capital;

- Judicial terrorism, including:

    ◦ Fraudulent restraining orders and contempt motions;

    ◦ Fabricated vexatious litigant designations to strip Plaintiff of access to courts;

    ◦ Obstruction of counsel through coercion, threats, or removal during critical litigation;

    ◦ Subornation of perjury and weaponization of sealed hearings;

- Post-trafficking surveillance and coercion, including:

    ◦ Physical stalking and digital surveillance across Florida, Texas, California, and New York;

- ◦ Cyber intrusions, GPS tracking, and unauthorized subpoenas issued under color of law;

- ◦ Illegal data access through collusion between Quinn Emanuel, private investigators, and intelligence contractors;

- Murder solicitation and coercive threats, including threats of assassination, institutionalisation, and rendition to suppress Plaintiff's legal redress;

- Media and reputational destruction, orchestrated by Sitrick & Company, to portray Plaintiff as mentally unstable, dishonest, or criminal to obstruct legal legitimacy;

- Economic strangulation, including:

  - ◦ Freezing of accounts;

  - ◦ Denial of access to medical treatment, housing, and trauma-informed care;

  - ◦ Civil judgments procured through fraud to destroy Plaintiff's economic viability and access to justice.

This conduct is outrageous and intolerable by any standard of decency in a civilized society.

## III. INTENT TO CAUSE SEVERE EMOTIONAL DISTRESS

The Defendants' actions were undertaken intentionally and maliciously, with the specific purpose of:

- Driving Plaintiff to psychological collapse and suicide;

- Preventing her from testifying or exposing the trafficking network;

- Rendering her legally and socially invisible;

- Destroying every access point to safety, support, or redress.

## IV. ELEMENTS OF LIABILITY UNDER MULTI-JURISDICTIONAL LAW

Under Texas Law (*Twyman v. Twyman*, 855 S.W.2d 619; *GTE Southwest v. Bruce*, 998 S.W.2d 605):

To prove IIED, Plaintiff establishes:

1. Intentional or reckless conduct;

2. Extreme and outrageous nature of the conduct;

3. Causation of emotional distress;

4. Emotional distress that is severe and enduring.

Under California Law (*Hughes v. Pair*, 46 Cal. 4th 1035):

California recognizes IIED as an independent tort when conduct is "so extreme as to exceed all bounds of that usually tolerated in a civilized community."

Under New York Law (*Howell v. New York Post Co.*, 81 N.Y.2d 115):

New York recognizes IIED when conduct is outrageous, intentional, and causes severe mental injury not addressed by other torts.

Under Florida Law (*Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277 (Fla. 1985)):

Florida recognizes IIED when conduct is:

- Intentional or reckless;

- Outrageous beyond all bounds of decency;

- Causally connected to emotional distress;

- Resulting in severe emotional trauma.

This count is viable in all four jurisdictions.


V. DAMAGES AND CONSEQUENCES

As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered:

- Complex PTSD with suicidality, panic attacks, cognitive impairment, and dysregulation;

- Complete vocational annihilation, loss of all legal work, housing, and basic needs;

- Irreversible public blacklisting, reputational destruction, and digital erasure;

- Fear for life requiring constant relocation, security oversight, and emergency care.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

A. General Damages
In the amount of $193,577,054.22 USD, for severe, enduring, and legally compensable emotional trauma, humiliation, and annihilation of dignity;

B. Special Damages
In the amount of $10,000,000.00 USD, for relocation, trauma therapy, protective housing, and emergency infrastructure;

C. Lost Earnings
In the amount of $10,000,000.00 USD, for destroyed career, litigation obstruction, and permanent loss of earning capacity;

D. Prejudgment Interest
At 10% compounded annually from May 23, 2014, pursuant to:

- Ontario Courts of Justice Act, § 128(1);

- New York CPLR § 5001;

- *Bank of America Canada v. Mutual Trust Co.*, 2002 SCC 43;

E. Punitive and Exemplary Damages
No less than $500,000,000.00 USD under:

- *Smith v. Wade*, 461 U.S. 30 (1983);

- *Twyman v. Twyman*, 855 S.W.2d 619 (Tex. 1993);

- *Hill v. Church of Scientology*, [1995] 2 S.C.R. 1130 (Canada);

F. Costs of Suit

All legal, technological, medical, and security-related expenses incurred by Plaintiff;

G. Permanent Injunctive Relief

Enjoining Defendants from:

- Surveillance, harassment, or direct/indirect contact;

- Enforcement of any judgment procured through fraud or coercion;

H. Emergency Protective Orders

Mandating:

- Trauma-informed shelter;

- Medical access;

- Physical protection and no-contact directives;

I. Declaratory and Additional Relief

Affirming that Defendants' conduct violates:

- The Palermo Protocol (Articles 6 and 9);

- CEDAW (Articles 2, 3, 12);

- CAT (Articles 1–16);

- UDHR (Articles 3, 5, 8);

- And applicable U.S. constitutional, statutory, and common law.

**COUNT TWENTY-FIVE: NEGLIGENT SUPERVISION / NEGLIGENT DIRECTION**

**Three-Prong Jurisdiction: Texas (trafficking origin, coercion, financial abuse), California (rape, stalking, coerced representation and gag orders), New York (surveillance, defamation, legal retaliation and financial exploitation)**

AGAINST DEFENDANTS:

*Sequoia Capital; Sequoia Capital Operations, LLC; Two Bear Capital; Two Bear Ranch; Quinn*

*Emanuel Urquhart & Sullivan LLP; John Quinn; Diane Doolittle; Bruce Van Dalsem; Kyle Batter; Glaser Weil LLP; Patricia Glaser; Jill Basinger; Goodwin Procter LLP; Anthony McCusker; Wilson Sonsini Goodrich & Rosati LLP; Paoli & Purdy LLP; William Paoli; Bisnar Chase LLP; Brian Chase; Scott Ritsima; Nemecek & Cole LLP; Jonathan B. Cole; Marshall R. Cole; Michael W. Feenberg; Brown & Charbonneau LLP; Gregory Brown; Sherman Law; Richard Sherman; Sitrick & Company; Michael Sitrick; and all other known and unknown co-conspirators.*

# I. INCORPORATION OF PRIOR ALLEGATIONS

1.  Plaintiff Amber Doe , a Canadian citizen and survivor of cross-border human trafficking, rape, judicial sabotage, and legal retaliation, incorporates and re-alleges all prior paragraphs of this Complaint as if fully set forth herein.

# II. FACTUAL ALLEGATIONS

2.  Each Defendant bore a non-delegable legal and fiduciary duty to train, supervise, direct, and restrain their agents, attorneys, executives, employees, contractors, and proxies from engaging in foreseeable acts of:

- Human trafficking, rape, and sexual abuse

- Legal abuse, malpractice, and coercion

- Obstruction of justice and witness retaliation

- Suborned perjury, fraud on the court, and ex parte sabotage

- Systemic harassment, intimidation, and psychological warfare

3.  Despite possessing actual and constructive knowledge of criminal conduct occurring under their authority, Defendants willfully or recklessly failed to act, and instead:

- Directed or sanctioned illegal conduct;

- Ignored verified notice of abuse and criminal enterprise;

- Withdrew or sabotaged Plaintiff's legal counsel to preclude relief;

- Funded or coordinated defamatory, coercive, and retaliatory campaigns.

4.  Under color of supervisory authority, Defendants permitted:

- Quinn Emanuel, Glaser Weil, Goodwin Procter, and others to deploy sham litigation and forged legal instruments against Plaintiff;

- Sitrick & Company to defame Plaintiff in media outlets with supervisory approval;

- Michael Goguen, Diane Doolittle, John Quinn, Patricia Glaser, and others to perpetuate trafficking, assault, and retaliation without institutional intervention.

5. Key supervisory Defendants—including John Quinn, Diane Doolittle, Patricia Glaser, Anthony McCusker, Jonathan Cole, Gregory Brown, and others—held heightened duties of oversight and control as senior partners, managing directors, or equity-holding executives.

6. These Defendants either:

- Affirmatively directed corrupt actions (e.g., revoking Plaintiff's legal representation before key hearings);

- Or knowingly failed to prevent foreseeable abuse despite red flags, pleadings, medical records, and international reports.

**7.** Sequoia Capital and Two Bear Capital directed the financial flow enabling retaliatory litigation, coercion, and trafficking, while failing to adopt basic compliance, governance, or whistleblower protections.

## III. LEGAL BASIS FOR LIABILITY

Defendants are jointly and severally liable for Negligent Supervision and Negligent Direction under:

A. U.S. Law

- Restatement (Second) of Torts § 317: Duty of masters to control conduct of servants

- Doe v. Alsaud, 12 F. Supp. 3d 674 (S.D.N.Y. 2014): Liability for acts of agents and subordinates

- 18 U.S.C. § 1595 (TVPA): Civil liability for knowingly benefiting from trafficking through omission or inaction

- 18 U.S.C. §§ 1962(c), (d) (RICO): Enterprise liability for supervisory roles in criminal organization

B. Texas, California, and New York Law

- Texas: *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307 (Tex. 1983): Duty to control foreseeable third-party harm

- California: *Doe v. Roman Catholic Archbishop*, 47 Cal. App. 5th 257 (2020): Negligent supervision as basis for tort liability

- New York: *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 654 N.Y.S.2d 791 (N.Y. App. Div. 1997): Employer liability for supervisory failure

C. International Law

- Palermo Protocol, Arts. 6 & 9

- CEDAW, Arts. 1–3

- Universal Declaration of Human Rights, Arts. 3, 5, 8

- UN Basic Principles on the Right to a Remedy, Principle 3

## IV. DAMAGES AND CONSEQUENCES

8. As a direct result of Defendants' negligent supervision and direction, Plaintiff suffered:

- Complex PTSD, neurological trauma, suicidality, and psychological collapse;

- Physical injury, forced displacement, and trafficking-related bodily harm;

- Economic devastation, loss of all professional prospects, career opportunities, housing, and access to court;

- Public discrediting, reputational ruin, and institutional abandonment, in violation of domestic and international human rights law.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all named Defendants, jointly and severally, and requests:

a. General Damages

$193,577,054.22 USD for trauma, injury, reputational destruction, and deprivation of liberty and safety

b. Special Damages

$10,000,000.00 USD for trauma therapy, protective housing, medical care, and relocation

c. Lost Earnings

$10,000,000.00 USD for permanent loss of livelihood, professional trajectory, and career development

d. Punitive and Aggravated Damages

$500,000,000.00 USD for deliberate indifference, reckless oversight, and enabling transnational trafficking

e. Treble Damages

Under 18 U.S.C. §§ 1595 and 1964(c), totaling not less than $252,000,000.00 USD

f. Interest

10% compounded annually from May 23, 2014, under:

- Ontario Courts of Justice Act, s. 128(1)
- New York CPLR § 5001
- Bank of America Canada v. Mutual Trust Co., 2002 SCC 43

g. Legal Fees and Litigation Costs

Full reimbursement of attorney's fees, investigator costs, expert consultations, and litigation disbursements

h. Permanent Injunctive Relief

Orders barring all Defendants from supervision, contact, interference, or further direction related to Plaintiff

i. Court-Supervised Protection Orders

Relocation, security detail, protective accommodations, and institutional safeguards under court supervision

j. Vacatur of Fraudulent Legal Instruments

All judgments, ex parte orders, restraining orders, and court rulings obtained through negligent supervision or abusive direction

k. Additional Relief

Such other and further relief as this Court deems just, equitable, and necessary under U.S., Canadian, and international law to restore Plaintiff's dignity, liberty, safety, and access to justice

## IV. TORTS, NEGLIGENCE, PERSONAL INJURY

## COUNT TWENTY-SIX: WILLFUL AND WANTON MISCONDUCT

AGAINST DEFENDANTS:
Michael Lewis Goguen; Sequoia Capital; Sequoia Capital Operations, LLC; Two Bear Capital; Two Bear Ranch; Quinn Emanuel Urquhart & Sullivan LLP; John Quinn; Diane Moira  Doolittle; Bruce Van Dalsem; Kyle Batter; Glaser Weil LLP; Patricia Glaser; Jill Basinger; Goodwin Procter LLP; Anthony McCusker; Wilson Sonsini Goodrich & Rosati LLP; Paoli & Purdy LLP; William Paoli; Bisnar Chase LLP; Brian Chase; Scott Ritsima; Nemecek & Cole LLP; Brown & Charbonneau LLP; Gregory Brown; Sherman Law; Richard Sherman; Sitrick & Company; Michael Sitrick; and all other named co-conspirators known and unknown.

I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber  realleges and incorporates by reference all preceding paragraphs of this Statement of Claim as though fully set forth herein.

II. WILLFUL, WANTON, AND RECKLESS MISCONDUCT

The Defendants, individually and jointly, engaged in deliberate, egregious, and conscious misconduct with reckless indifference to Plaintiff's rights, safety, and life. Their conduct constitutes willful and wanton misconduct under applicable U.S.,

Canadian, and international law, rising beyond gross negligence to intentional and systemic abuse.

The Defendants knowingly participated in or enabled:

- The financing, perpetuation, and concealment of a cross-border human trafficking and sexual slavery enterprise;

- Repeated acts of rape, torture, coercion, and forced isolation, causing catastrophic emotional, physical, and psychological harm;

- Fraudulent legal proceedings designed to silence, isolate, and destroy Plaintiff's access to justice;

- Surveillance, stalking, intimidation, and solicitation of Plaintiff's murder by private security personnel;

- Obstruction of justice, bribery of judicial officers, and the perversion of court proceedings through fraudulent filings and malicious designations;

- Deprivation of medical care, economic sabotage, and purposeful destruction of Plaintiff's livelihood and dignity;

- Media retaliation, public defamation, and blacklisting of Plaintiff to destroy her personal and professional reputation.

The Defendants' conduct was not merely negligent or accidental — it was deliberate, executed with actual knowledge of the foreseeable harm, and carried out with malice, coercion, and depraved disregard for human rights, judicial integrity, and public safety.

## III. LEGAL BASIS FOR LIABILITY

Defendants' conduct constitutes willful and wanton misconduct under:

- New York common law and federal tort doctrine (see *Campbell v. State of New York*, 31 N.Y.2d 775 (1972); *Prozeralik v. Capital Cities Communications*, 82 N.Y.2d 466 (1993));

- Intentional tort theory supporting enhanced damages (see *Turk v. McCarthy*, 661 F. Supp. 1526 (S.D.N.Y. 1987));

- Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq.;

- Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595;

- Canadian common law, including *Whiten v. Pilot Insurance Co.*, 2002 SCC 18 (willful misconduct justifying aggravated and punitive damages);

- Canadian Charter of Rights and Freedoms, §§ 7, 12, and 15;

- Canadian Victims Bill of Rights, S.C. 2015, c. 13;

- International law, including the Universal Declaration of Human Rights, the Palermo Protocol, the Convention Against Torture (CAT), and CEDAW.

## IV. DAMAGES

As a direct and proximate result of the Defendants' willful and wanton misconduct, Plaintiff has suffered:

- Severe emotional and psychological trauma, including complex PTSD, suicidal ideation, and permanent neuropsychiatric impairment;

- Catastrophic physical injury and deterioration, including untreated medical conditions, chronic pain, and life-threatening disability;

- Permanent financial and economic ruin, including the loss of homes, legal claims, career opportunities, income, and safety;

- Destruction of personal dignity, autonomy, and legal personhood;

- Ongoing terror, surveillance, and exposure to lethal retaliation.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages: $193,577,054.22 USD for pain, suffering, physical and emotional injury, loss of dignity, and trauma;

b. Special Damages: $10,000,000.00 USD for psychiatric care, surgeries, emergency medical treatment, relocation, housing, and security expenses;

c. Lost Earnings: $10,000,000.00 USD for loss of past, present, and future earning capacity;

d. Punitive and Exemplary Damages: Not less than $500,000,000.00 USD to punish and deter egregious violations of law, ethics, and decency;

e. Treble Damages: Pursuant to 18 U.S.C. §§ 1964(c) and 1595, totaling no less than $252,000,000.00 USD;

f. Prejudgment Interest: 10% per annum, compounded annually from May 23, 2014, through entry of judgment;

g. Attorneys' Fees and Costs of Suit: Full reimbursement of all legal fees, expert costs, security services, and litigation expenses;

h. Permanent Injunctive Relief: Enjoining Defendants from future retaliation, interference, or contact with Plaintiff;

i. Vacatur of Judgments and Legal Instruments: An order declaring void all judgments, orders, settlements, contracts, and gag orders arising from or procured through willful and wanton misconduct;

j. All Further Relief: As this Honourable Court deems just, proper, and necessary under U.S., Canadian, and international law.


**COUNT TWENTY-SEVEN: GROSS NEGLIGENCE**

(Against: Michael Lewis Goguen; Sequoia Capital; Sequoia Capital Operations, LLC; Two Bear Capital; Two Bear Ranch; Quinn Emanuel Urquhart & Sullivan LLP; John B Quinn; Diane Moira Doolittle; Bruce Van Dalsem; Kyle Batter; Glaser Weil LLP; Patricia Glaser; Jill Basinger; Goodwin Procter LLP; Anthony McCusker; Wilson Sonsini Goodrich & Rosati LLP; Keith Eggleton; Paoli & Purdy LLP; William Paoli; Bisnar Chase LLP; Brian Chase; Scott Ritsima; Sherman Law LLP; Richard Sherman; Brown & Charbonneau LLP; Gregory Brown; Nemecek & Cole LLP; Frank W. Nemecek; Jonathan B. Cole; Marshall R. Cole; Michael W. Feenberg; Claudia Stone; Marta Alcumbrac; The Law Offices of Rivers J. Morrell III; Rivers J. Morrell III; Sitrick & Company; Michael Sitrick; and all other named co-conspirators, whether named explicitly herein or to be identified during discovery.)

## I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff, Amber  , repeats, re-alleges, and incorporates by reference all prior paragraphs and preceding Counts of this Statement of Claim as though fully set forth herein.

## II. DUTY OF CARE OWED TO PLAINTIFF

At all relevant times, Defendants owed Plaintiff a non-delegable, affirmative duty of care, arising from:

- Their fiduciary status as attorneys, law firms, employers, publicists, investors, and corporate stewards;

- Their assumed authority and control over Plaintiff's legal, financial, medical, and personal affairs;

- Statutory obligations under the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1595, the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 et seq., and international human rights law;

- Professional and ethical rules of conduct, including the New York Rules of Professional Conduct, the ABA Model Rules, and the Ontario Rules of Professional Conduct;

- Humanitarian and constitutional duties not to expose known trafficking victims to foreseeable harm, coercion, abuse, or medical endangerment.

Plaintiff, as a vulnerable, systemically persecuted survivor of international human trafficking, was owed the highest degree of care by Defendants who wielded overwhelming control over her liberty, health, reputation, and access to justice.

## III. BREACHES OF DUTY CONSTITUTING GROSS NEGLIGENCE

Defendants breached their duties to Plaintiff in a manner constituting gross negligence, wanton recklessness, and deliberate indifference, including:

a. Funding, Shielding, and Profiting from Human Trafficking
Defendants knowingly facilitated, enabled, and profited from a cross-border human

trafficking enterprise involving sexual violence, forced isolation, coerced medical deprivation, and systemic retaliation.

b. Judicial Corruption and Obstruction of Justice
Defendants conspired to manipulate legal outcomes by bribing judges, falsifying records, issuing unlawful gag orders, and fraudulently designating Plaintiff a "vexatious litigant" to obstruct redress.

c. Medical Sabotage and Life-Threatening Neglect
Defendants recklessly interfered with Plaintiff's access to critical surgeries and urgent care by freezing her accounts, intimidating medical providers, and disrupting legal claims that would have funded care.

d. Malicious Prosecution and Legal Retaliation
Defendants prosecuted knowingly baseless civil and quasi-criminal claims against Plaintiff, coordinated false declarations and ex parte proceedings, and obstructed her ability to retain honest counsel.

e. Psychological Torture and Stalking
Defendants engaged in continuous psychological abuse through surveillance, intimidation, defamation, and the solicitation of murder-for-hire, exacerbating Plaintiff's trauma and endangering her life.


IV. CULPABLE STATE OF MIND

Defendants' conduct reflects:

- Reckless disregard for foreseeable and catastrophic harm;

- Willful blindness to the ongoing abuse of a human trafficking survivor;

- Systemic apathy toward Plaintiff's life, safety, and constitutional rights;

- Intentional failure to implement protective or corrective mechanisms, despite repeated warnings, public knowledge, and internal discussions.

This gross negligence was not an aberration—it was institutionalized, normalized, and coordinated at the highest levels of corporate, legal, and financial power.


V. DIRECT AND PROXIMATE DAMAGES

As a direct and proximate result of Defendants' gross negligence, Plaintiff has suffered:

- Permanent physical injuries, including internal organ damage, chronic pain, neurological degeneration;

- Complex psychological injuries, including PTSD, dissociation, severe anxiety, and depression;

- Financial ruin, including total loss of income, property, and professional standing;

- Reputational destruction, including blacklisting, defamatory publications, and career annihilation;

- Ongoing exposure to life-threatening danger, including forced medical neglect and credible murder threats.

## VI. DAMAGES SOUGHT

WHEREFORE, Plaintiff respectfully demands judgment against all named Defendants, jointly and severally, as follows:

a. General Damages:
$154,639,535.77 USD for emotional distress, catastrophic injury, deprivation of liberty, and loss of dignity.

b. Special Damages:
$10,000,000.00 USD for past and future medical care, surgeries, housing, relocation, and security.

c. Lost Earnings:
$10,000,000.00 USD for the loss of income, career trajectory, legal settlements, and professional capacity.

d. Prejudgment Interest:
10% per annum, compounded annually from May 23, 2014, pursuant to CPLR § 5001, Ontario Courts of Justice Act s. 128, and common law.

e. Attorneys' Fees and Costs:
Full reimbursement of all legal, investigative, and litigation costs, expert testimony, security, and trauma recovery expenses.

f. Punitive and Exemplary Damages:
No less than $500,000,000.00 USD, to deter gross misconduct and institutional recklessness.

g. Permanent Injunctive Relief:
Prohibiting Defendants from engaging in further abuse, interference, or retaliation.

h. Other Relief:
Such additional relief as this Honourable Court deems just, equitable, and necessary under U.S. law, Canadian law, and international human rights principles.

## COUNT TWENTY-EIGHT: PERSONAL INJURY
**(Against All Defendants)**
**[Four-Jurisdictional Theory: Texas (origin of trafficking and abuse), California (situs of conspiracy, legal malpractice, rape, and stalking), New York (financial retaliation, stalking, legal fraud, and surveillance), Florida Trafficking (retaliatory stalking, obstruction of care, and harassment during recovery)]**

I. INCORPORATION OF PRIOR ALLEGATIONS
Plaintiff, Amber  Doe, , a Canadian citizen and internationally recognized survivor of cross-border human trafficking and systemic legal retaliation, hereby realleges and incorporates by reference all preceding paragraphs, allegations, and Causes of Action as though fully set forth herein.

II. DEFENDANTS' DUTY OF CARE
At all relevant times, each Defendant owed Plaintiff a non-delegable and affirmative duty of care, arising under:

Federal Law

- U.S. Constitution: Amendments I, IV, V, VIII, XIV

- 18 U.S.C. § 1595 (TVPRA – trafficking remedy)

- 42 U.S.C. § 1983 (civil rights violations under colour of law)

- 18 U.S.C. §§ 1962(c)–(d) (RICO enterprise and conspiracy liability)

Texas Law

- Common law duties to refrain from foreseeable harm and intentional torts including assault, battery, and kidnapping
- Duties under Tex. Civ. Prac. & Rem. Code § 71.002 (personal injury and wrongful death)

California Law

- Cal. Civ. Code § 1714 (general duty of care)
- Cal. Civ. Code § 52.5 (civil remedy for trafficking)
- Cal. Civ. Code § 1708.8 (civil stalking and harassment)

New York Law

- Duties under N.Y. Penal Law § 120.45 (stalking)
- General Obligations Law and common law tort protections against reckless endangerment and intentional infliction of emotional distress

Florida Law

- Fla. Stat. § 787.06 (human trafficking)
- Fla. Stat. § 784.048 (stalking and aggravated stalking)
- Fla. Stat. § 760.51 (civil remedy for violations of constitutional rights)
- Marsy's Law – Florida Crime Victims' Rights Amendment

International Law

- Duties under the Palermo Protocol, CEDAW, CAT, and UDHR — binding international human rights law ratified by the U.S. and Canada

Defendants named below owed Plaintiff a direct, joint, or vicarious duty of care, including but not limited to:

[Defendant list remains unchanged.]

## III. BREACHES CAUSING PERSONAL INJURY

Each Defendant breached their duty of care through intentional, reckless, and grossly negligent acts committed across four jurisdictions:

- Texas: Initial trafficking, rape, torture, coercion, and transportation across state lines;

- California: Conspiracy coordination, rape, legal sabotage, forced settlements, and obstruction of care;

- New York: Retaliatory litigation, stalking, surveillance, financial sabotage, and legal fraud via media and law firms;

- Florida: Retaliatory stalking, shelter surveillance, witness intimidation, medical interference, and obstruction of Plaintiff's recovery and access to justice.

Specific breaches include:

- Human trafficking, sexual slavery, and bodily torture sustained in Texas, California, and Florida;

- Legal entrapment, false filings, and coerced judgments engineered from California and New York;

- Financial coercion, media defamation, and solicitation of murder via Florida and New York proxies;

- Interference with access to trauma surgery and emergency medical care in Texas, California, and Florida;

- Surveillance and digital harassment of Plaintiff across all four jurisdictions, including during refuge in shelters.

## IV. RESULTING INJURY

As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered:

- Permanent physical injury: genital mutilation, internal bleeding, nerve damage, pelvic trauma, chronic infections;

- Severe psychiatric harm: CPTSD, suicidality, memory fragmentation, dysregulation of autonomic functions;

- Complete vocational and reputational destruction across Canada and the United States;

- Medical blacklisting and abandonment in Texas, Florida, and California;

- Legal deprivation and retaliation in New York and California.

V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, and prays for the following:

A. General Damages: $193,577,054.22 USD for physical, emotional, and psychological suffering;

B. Special Damages: $10,000,000.00 USD for medical treatment, trauma housing, and surgical recovery;

C. Loss of Earnings: $10,000,000.00 USD for destroyed career and economic future;

D. Prejudgment Interest: 10% compounded annually from May 23, 2014 under:

- Texas Finance Code § 302.002

- Cal. Civ. Code § 3287

- N.Y. CPLR § 5001

- Fla. Stat. § 55.03

E. Punitive and Exemplary Damages: No less than $500,000,000.00 USD for gross misconduct, criminal complicity, and malice;

F. Attorneys' Fees: Pursuant to 42 U.S.C. § 1988 and state analogs;

G. Costs of Suit: Including expert fees, relocation security, and trauma diagnostics;

H. Permanent Injunction:

- Enjoining all contact with Plaintiff, interference with legal/medical access, and continued retaliatory conduct;
  I. Declaratory and Equitable Relief:

- Nullification of all fraudulent orders, judgments, and coerced settlements;

- Evidentiary review under U.S., Canadian, and international human rights law.

1

2

# COUNT TWENTY-NINE DECEIT

(Against All Named Defendants, Including Attorneys and Media Operatives)

## I. INCORPORATION OF PRIOR ALLEGATIONS

1.  Plaintiff *Amber* repeats, re-alleges, and incorporates by reference all preceding paragraphs of this Statement of Claim as though fully set forth herein.

## II. FRAUDULENT MISREPRESENTATIONS AND OMISSIONS

2. The Defendants, individually, jointly, and in concert—including but not limited to Michael Lewis Goguen; Sequoia Capital; Two Bear Capital; Two Bear Ranch; Quinn Emanuel Urquhart & Sullivan LLP; Glaser Weil LLP; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Nemecek & Cole LLP; Paoli & Purdy LLP; Bisnar Chase LLP; Sherman Law LLP; Brown & Charbonneau LLP; Patricia Glaser; Diane Doolittle; John Quinn; Bruce Van Dalsem; Kyle Batter; Gregory Brown; Richard Sherman; William Paoli; Brian Chase; Scott Ritsima; Anthony McCusker; Michael Sitrick, Sitrick & Company; Rivers Morrell III; Keith Eggleton; Claudia Stone; Marta Alcumbrac, Alan Brown, Day Day and Brown LLP Rivers J Morrell III The law Firm of Rivers J Morrell III, , and all other named co-defendants—willfully and maliciously committed acts of deceit.

3.  The Defendants knowingly made false representations of fact and law to courts, law enforcement, the media, financial institutions, and Plaintiff herself, including but not limited to:
    a. Misrepresenting the legality and enforceability of the coerced and fraudulent May 23, 2014 settlement agreement;
    b. Misstating the procedural posture of legal cases in courts across jurisdictions to mislead Plaintiff and obstruct her claims;
    c. Filing and relying upon forged documents, fabricated declarations, and false evidence to procure unlawful judgments;
    d. Concealing systemic bribery, judicial corruption, and human trafficking from the courts and public;
    e. Misrepresenting conflicted attorneys as fiduciary counsel acting in Plaintiff's best interest, while they were in fact colluding with co-defendants;

f. Issuing defamatory media statements and public relations releases designed to discredit Plaintiff and shield the criminal enterprise.

## III. KNOWLEDGE AND INTENT TO DECEIVE

4. Defendants acted with full knowledge of the falsity of their statements, or in willful blindness, and with malicious intent to:

a. Mislead courts, authorities, and the public;

b. Prevent Plaintiff from obtaining justice;

c. Discredit and destroy Plaintiff as a witness and survivor;

d. Protect the trafficking and obstruction network from exposure.

## IV. JUSTIFIABLE RELIANCE AND CAUSATION

5. Plaintiff reasonably relied upon the falsehoods of Defendants because they:

a. Were licensed legal professionals and fiduciaries;

b. Held themselves out as reputable and ethically bound officers of the court;

c. Operated within the legal system's formal structures of trust and authority.

6. As a direct and proximate result of the deceit, Plaintiff suffered:

- Irreparable personal injury and psychological trauma;

- Economic loss and destruction of her career;

- Loss of reputation and credibility;

- Denial of medical treatment and loss of liberty;

- Judicial sabotage and fraudulently procured gag orders.

## V. FRAUD UPON THE COURT AND LEGAL FRAMEWORK

7. Defendants' conduct constitutes:

a. Fraud upon the court (Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944); United States v. Throckmorton, 98 U.S. 61 (1878));

b. Common law deceit and misrepresentation (Bruno Appliance and Furniture, Inc. v. Hryniak, 2014 SCC 8; Performance Industries Ltd. v. Sylvan Lake Golf, 2002 SCC 19);

c. Breach of fiduciary duty and violations of legal ethics;

d. Violations of international law, including the Palermo Protocol, CEDAW, and the Canadian Charter of Rights and Freedoms and Victims Bill of Rights.

## VI. DAMAGES AND RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages:
   $193,577,054.22 USD for personal injury, trauma, reputational destruction, and loss of liberty.

b. Special Damages:
   $10,000,000.00 USD for surgeries, trauma therapy, relocation, security, and medical care.

c. Lost Earnings:
   $10,000,000.00 USD in lost income and permanently destroyed earning capacity.

d. Punitive and Exemplary Damages:
   $500,000,000.00 USD to punish malicious deceit and deter future misconduct.

e. Prejudgment Interest:
   10% per annum, compounded annually, from May 23, 2014, pursuant to *Bank of America Canada v. Mutual Trust Co.*, 2002 SCC 43.

f. Costs of Suit:
   Full recovery of attorneys' fees, expert witness fees, security, investigation, and litigation expenses.

g. Equitable and Injunctive Relief:

- Vacatur of all judgments, contracts, and orders obtained through fraud and deceit;

- Restitution of all funds and assets unlawfully obtained;

- Permanent injunction prohibiting all Defendants from further harassment, retaliation, or interference.

h. Security Protection Orders:

- Provision of housing, relocation, medical care, trauma treatment, and personal security services.

i. Any other relief this Honourable Court deems just and appropriate under U.S., Canadian, and international law.

## COUNT THIRTY: CONCEALMENT

(Against All Named Defendants, Including Attorneys, Corporations, and Media Operatives)

I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff *Amber* hereby repeats, re-alleges, and incorporates by reference all preceding paragraphs of this Statement of Claim as if fully set forth herein.

II. OVERVIEW OF SYSTEMATIC CONCEALMENT
2. This cause of action arises from the Defendants' deliberate, coordinated, and egregious concealment of material facts, evidence, crimes, conflicts of interest, and fiduciary misconduct in furtherance of an unlawful enterprise involving human trafficking, sexual violence, judicial corruption, extortion, obstruction of justice, and systemic abuse of the Plaintiff.

3. The Defendants, including but not limited to Michael Lewis Goguen; Sequoia Capital; Two Bear Capital; Quinn Emanuel Urquhart & Sullivan LLP; Glaser Weil LLP; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Nemecek & Cole LLP; Paoli & Purdy LLP; Bisnar Chase LLP; Sherman Law LLP; Brown & Charbonneau LLP; Patricia Glaser; Diane Doolittle; John Quinn; Bruce Van Dalsem; Kyle Batter; William Paoli; Brian Chase; Scott Ritsima; Richard Sherman; Gregory Brown; Michael Sitrick and Sitrick & Company; Rivers Morrell III; Claudia Stone; Feenberg Day LLP; and other named co-conspirators, individually and in concert, knowingly withheld, suppressed, and concealed facts that they had a legal, ethical, and fiduciary duty to disclose to Plaintiff and to the courts.

III. ELEMENTS OF CONCEALMENT
4. Each Defendant:
a. Had actual knowledge of material facts regarding the trafficking, judicial fraud,

coercive settlements, forgery, legal malpractice, conflicts of interest, and systemic
abuse perpetrated against Plaintiff;

b. Had a legal, ethical, or fiduciary duty to disclose said facts to Plaintiff or to the
court;

c. Willfully and maliciously concealed these facts with the intent to defraud, silence,
sabotage, or destroy Plaintiff;

d. Benefited financially or professionally from said concealment;

e. Caused Plaintiff to suffer devastating harm due to the reliance on the incomplete,
misleading, or fabricated record.

5. The acts of concealment were not passive omissions, but part of an active
scheme to subvert justice, including:

- Failing to disclose conflicts of interest by Plaintiff's own legal
  representatives;

- Concealing Sequoia Capital's financial control over opposing firms and
  attorneys;

- Suppressing exculpatory evidence and testimony in judicial proceedings;

- Failing to disclose bribes to judges, forged declarations, and void
  judgments;

- Coordinating retaliatory litigation and defamatory media smears under
  cover of fraudulent legal processes;

- Obstructing Plaintiff's access to court by withholding filings, fraudulently
  designating her as a vexatious litigant, and vacating hearings without
  notice.

IV. LEGAL FRAMEWORK FOR LIABILITY

6. The Defendants' actions constitute:

a. Fraudulent Concealment under New York law (see *P.T. Bank Central Asia v. ABN
AMRO Bank N.V.*, 301 A.D.2d 373 (1st Dep't 2003));

b. Intentional Tort of Concealment under Canadian common law (see *Guindon v.
Canada*, 2015 SCC 41);

c. Breach of Fiduciary Duty under both U.S. and Canadian law;

d. Violation of Rule 3.3 and 8.4 of the Model Rules of Professional Conduct (duty of
candor to the tribunal and prohibition against dishonest conduct);

e. Fraud upon the court, vitiating all tainted judgments (see *Hazel-Atlas Glass Co. v.*

*Hartford-Empire Co.*, 322 U.S. 238 (1944));
f. Violation of the Canadian Charter of Rights and Freedoms, the Victims Bill of Rights, the Palermo Protocol, and international customary law guaranteeing access to justice, bodily autonomy, and legal remedy.

## V. INJURIES CAUSED BY CONCEALMENT

7. As a direct and proximate result of the Defendants' willful concealment, Plaintiff suffered:

- Loss of access to courts and legal recourse;

- Permanent injury to her physical and mental health due to withheld medical care and institutional betrayal;

- Irreparable economic loss, reputational harm, and trauma;

- Destruction of public and private opportunities due to stigmatization and false legal narratives;

- Ongoing retaliation, threats to safety, and systemic sabotage across legal systems.

## VI. DAMAGES AND RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages:
   $193,577,054.22 USD for pain, suffering, trauma, reputational loss, and deprivation of liberty caused by the prolonged concealment of material facts.

b. Special Damages:
   $10,000,000.00 USD for medical treatment, trauma recovery, investigative services, relocation, and protective infrastructure necessitated by Defendants' misconduct.

c. Lost Earnings:
   $10,000,000.00 USD in past and future income lost due to suppression of Plaintiff's claims, evidence, and personhood.

d. Punitive and Exemplary Damages:
   $500,000,000.00 USD to punish and deter the malicious, deliberate concealment of systemic trafficking, judicial sabotage, and fiduciary fraud.

e. Prejudgment Interest:

   10% per annum compounded annually from May 23, 2014, as affirmed by *Bank of America Canada v. Mutual Trust Co.*, 2002 SCC 43.

f. Costs of Suit:

   Full legal costs, attorneys' fees, expert witness fees, security expenditures, and litigation expenses.

g. Equitable Relief:

   - Vacatur of all judgments, gag orders, contracts, or court orders tainted by fraudulent concealment;
   - Restitution and disgorgement of all gains or payments derived from the enterprise;
   - Permanent injunction preventing Defendants from engaging in any further concealment, retaliation, or contact with Plaintiff.

h. Security and Protection Orders:

   Mandated provision of housing, medical care, trauma therapy, and personal security protection.

i. Any other relief this Court deems just and appropriate, under U.S. law, Canadian law, and international conventions including the Universal Declaration of Human Rights, CEDAW, and the Palermo Protocol

## COUNT THIRTY-TWO: TRESPASS TO CHATTELS

(Texas Common Law, Federal Civil Rights Violations, RICO Predicate Conduct)
AGAINST:
Michael Lewis Goguen; Sequoia Capital Operations, LLC; Two Bear Capital; Two Bear Ranch; Quinn Emanuel Urquhart & Sullivan LLP; Glaser Weil LLP; Bisnar Chase LLP; Sherman Law LLP; Nemecek & Cole LLP; Paoli & Purdy LLP; Brown & Charbonneau LLP; and all individually named co-defendants.

I. INCORPORATION OF PRIOR ALLEGATIONS

1.  Plaintiff Amber  realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein. This Count is pleaded in the alternative and in combination with all other Counts under a three-prong jurisdictional theory grounded in: (1) Texas-origin sexual trafficking, rape, and physical harm; (2) California contractual duress, asset looting, and judicial

sabotage; and (3) New York-based financial manipulation, surveillance, and media/legal retaliation.

## II. LEGAL STANDARD: TRESPASS TO CHATTELS

2.  Under Texas common law and Restatement (Second) of Torts §§ 217–218, trespass to chattels occurs when one, without legal justification or consent, intentionally interferes with the use or possession of another's personal property, causing dispossession, impairment, or deprivation.

3.  This tort applies to both tangible and intangible property, including documents, digital assets, financial instruments, electronic devices, communications, and legal files. In Texas, actual dispossession or substantial interference is actionable without the necessity of full conversion.

## III. UNLAWFUL INTERFERENCE WITH PLAINTIFF'S PROPERTY

4.  The Defendants—acting individually and jointly as part of a coordinated legal, financial, and coercive criminal enterprise—maliciously, repeatedly, and without consent interfered with Plaintiff's property interests, including:
    a. Legal and evidentiary archives, including sealed court records, case files, pleadings, and litigation strategies;
    b. Financial and banking instruments, including trust accounts, international transfers, and personal savings, which were illegally frozen or seized through fraudulent Mareva injunctions and court orders lacking jurisdiction or due process;
    c. Medical documentation, including trauma-related diagnostics and protected health information, accessed without consent and weaponized in court;
    d. Privileged communications, including correspondence with attorneys, regulators, and law enforcement, wrongfully intercepted, manipulated, or disclosed;
    e. Devices and encrypted data, including mobile phones, hard drives, email accounts, and password-protected platforms, accessed or sabotaged through covert digital surveillance, subpoenas, and coercion.

## IV. SPECIFIC ACTS OF TRESPASS TO CHATTELS

5.  Defendants' misconduct includes, without limitation:
a. Unauthorized intrusion into Plaintiff's secure email accounts, legal cloud drives, and encrypted platforms using spyware and improper legal instruments;
b. Alteration, deletion, or confiscation of digital and physical evidence vital to Plaintiff's defense, including affidavits, videos, transcripts, and motions;
c. Interference with whistleblower and government filings, including ICE reports, FBI evidence submissions, and complaints to judicial oversight bodies;
d. Suborning court orders to seize or freeze Plaintiff's bank accounts, forcing homelessness and denial of medical care;
e. Misappropriation and disclosure of privileged records in retaliation campaigns coordinated by Defendants and hostile media contacts.

## V. DAMAGES AND INJURY TO PLAINTIFF

6.  As a direct and proximate result of the Defendants' trespass to chattels, Plaintiff sustained severe and irreparable harm, including:
a. Complete loss of legal defense infrastructure, rendering Plaintiff unable to access redress or enforce basic rights;
b. Emotional devastation and re-traumatization as personal and medical data were weaponized against her;
c. Professional annihilation, as Defendants froze assets, defamed her, and sabotaged her career and international reputation;
d. Loss of housing, income, safety, and the tools necessary for survival—constituting a direct attack on Plaintiff's bodily integrity, dignity, and agency.

## VI. MALICE, CONSPIRACY, AND COLOR OF LAW

7.  Defendants acted:
a. With malice and intent to obstruct justice, destroy evidence, and prevent Plaintiff's access to counsel;
b. In active civil conspiracy across firms, jurisdictions, and international borders, forming an ongoing racketeering enterprise;
c. Under color of law, including fraudulent use of judicial process, abuse of court-issued injunctions, and systemic deprivation of due process in Texas, California, and New York.

## VII. LEGAL AUTHORITY AND LIABILITY

Complaint for Human Trafficking

8. Defendants are liable under:
a. Texas common law of Trespass to Chattels, as codified in local jurisprudence and consistent with the Restatement;
b. 18 U.S.C. § 1961 et seq. (RICO), as acts of coordinated obstruction, intimidation, wire fraud, and retaliatory abuse of legal process;
c. 18 U.S.C. § 1592 (abuse of legal process to further trafficking), as seizure and obstruction of Plaintiff's property were integral to maintaining her coerced compliance and silence;
d. 42 U.S.C. § 1983, to the extent state actors and judges colluded in depriving Plaintiff of constitutional protections;
e. Texas Civil Practice & Remedies Code § 134.002 et seq., governing civil liability for criminal acts such as theft, fraud, and destruction of property;
f. Applicable doctrines under Canadian common law and international treaties guaranteeing protection from extrajudicial seizure, state collusion, and property sabotage of trafficked persons.

## VIII. DAMAGES AND RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages:
   $193,577,054.22 USD for loss of property, interference with chattels, reputational destruction, and pain and suffering.

b. Special Damages:
   $10,000,000.00 USD for trauma therapy, housing, secure devices, encrypted communications, and investigation services.

c. Lost Earnings:
   $10,000,000.00 USD for economic annihilation and impairment of legal advocacy capacity.

d. Punitive and Exemplary Damages:
   $500,000,000.00 USD to punish malicious, systemic abuse of Plaintiff's personal property rights.

e. Prejudgment Interest:
   10% per annum, compounded annually from May 23, 2014, consistent with *Bank of America Canada v. Mutual Trust Co.*, 2002 SCC 43.

f. Costs of Suit:
    All attorneys' fees, costs of investigation, expert witness fees, and litigation expenses.

g. Equitable Relief:
    - Immediate vacatur of all fraudulent court orders, injunctions, gag orders, and freezes;
    - Mandatory turnover of all documents, devices, data, and accounts wrongfully accessed or retained;
    - Permanent injunction restraining Defendants from future interference, surveillance, or seizure.

h. Security Measures:
    Court-supervised provision of encrypted communications, safe housing, physical protection, and therapy resources.

i. Any other relief this Court deems just, proper, and necessary under the laws of Texas, the United States, Canada, and binding international treaties.


## COUNT THIRTY-TWO: CONVERSION

(Against: Glaser Weil LLP, Patricia Glaser, Jill Basinger, Rivers Morrell, Gregory Brown, Brown & Charbonneau LLP, William Paoli, Paoli & Purdy LLP, Bisnar Chase LLP, Brian Chase, Scott Ritsima, Richard Sherman, Sherman Law, Quinn Emanuel Urquhart & Sullivan LLP, John Quinn, Diane Doolittle, Kyle Batter, Bruce Van Dalsem, Sequoia Capital, Michael Lewis Goguen, Two Bear Capital, Two Bear Ranch, and all other named Defendants)


I. INCORPORATION OF PRIOR ALLEGATIONS

1.    Plaintiff *Amber repeats*, realleges, and incorporates by reference all preceding paragraphs and prior Counts as if fully set forth herein.


II. UNLAWFUL CONVERSION OF PLAINTIFF'S PROPERTY

2. The Defendants, acting individually, jointly, and in conspiracy, intentionally exercised unlawful dominion and control over Plaintiff's tangible and intangible property without consent, legal authority, or justification.

3. Defendants' conduct constitutes conversion under New York common law, which prohibits the intentional exercise of control over property belonging to another, resulting in the deprivation of use, possession, or title.

4. Converted property includes, without limitation:
   a. Settlement funds contractually owed to Plaintiff under the May 23, 2014 written agreement;
   b. Bank accounts, trust assets, and financial instruments frozen and seized via fraudulent court orders;
   c. Legal case files, court pleadings, attorney communications, and confidential evidence;
   d. Medical records and health data unlawfully accessed, seized, or misused;
   e. Intellectual property, personal writings, research, and data systems necessary for Plaintiff's livelihood and legal defense.

III. FORMS OF CONVERSION

5. Defendants' conversion included, but was not limited to:
   a. Misappropriation of Settlement Funds
   Michael Goguen and Sequoia Capital willfully retained approximately $30 million owed under a signed settlement agreement, constituting direct financial conversion.
   b. Fraudulent Asset Freezing
   Plaintiff's Canadian accounts were unlawfully seized via Mareva injunctions obtained through false statements, perjury, ex parte communications, and jurisdictional fraud.
   c. Confiscation of Legal and Medical Files
   Legal materials, attorney-client communications, and confidential case strategies were withheld, destroyed, or used against Plaintiff in bad-faith litigation and retaliatory proceedings.
   d. Exploitation of Intellectual Property
   Plaintiff's private writings, research, and personal medical records were weaponized by Defendants for reputational destruction, economic exploitation, and blackmail.
   e. Financing of Ongoing Criminal Enterprise
   The misappropriated funds were used to further human trafficking, retaliatory

litigation, PR defamation campaigns, and bribery of legal and judicial actors across multiple jurisdictions.

## IV. LEGAL ELEMENTS OF CONVERSION MET

6.  Defendants' conduct meets all legal elements of conversion, including:
    a. Unauthorized control and interference with Plaintiff's property;
    b. Intentional deprivation of Plaintiff's right to use, possess, or recover her property;
    c. Refusal to return or account for misappropriated assets and documents;
    d. Direct causation of financial, reputational, emotional, and physical harm to Plaintiff.

7.  Under New York law and supporting authorities (see *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400 (2d Cir. 2006); *Perry v. Manocherian*, 675 N.Y.S.2d 899 (1st Dep't 1998)), both tangible and intangible property (e.g., digital files, bank assets, IP) are protected under conversion claims when wrongful dominion results in harm.

## V. DAMAGES SUSTAINED

8.  As a direct and proximate result of the Defendants' conversion, Plaintiff has suffered:
    a. Loss of lawfully owed financial assets, including settlement funds and savings;
    b. Loss of legal autonomy, capacity to litigate, and ability to seek redress;
    c. Loss of earnings and career capacity, directly resulting from withheld assets;
    d. Severe psychological and emotional injury, retraumatization, and endangerment;
    e. Ongoing deprivation of shelter, healthcare, legal counsel, and basic survival needs.

## VI. DEFENDANTS' MALICE AND BAD FAITH

9.  Defendants' acts of conversion were not incidental or accidental. Rather, they were:
    a. Deliberate, strategic, and malicious, designed to coerce silence and perpetuate impunity;

    b. Executed in concert across multiple jurisdictions, firms, and entities;
    c. Rooted in abuse of legal process, fraud upon the court, and fiduciary betrayal;
    d. Committed in violation of Plaintiff's constitutional rights, fiduciary protections, and international human rights guarantees.

## VII. RELIEF REQUESTED

WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages
    $154,639,535.77 for conversion of Plaintiff's property, emotional suffering, and personal injury.

b. Special Damages
    $10,000,000.00 for medical, security, and trauma recovery expenses.

c. Lost Earnings
    $10,000,000.00 for lost income, economic potential, and career harm.

d. Punitive and Exemplary Damages
    $500,000,000.00 USD to punish egregious abuse and deter further criminal misconduct.

e. Prejudgment Interest
    10% per annum, compounded annually from May 23, 2014, through date of judgment.

f. Costs of Suit
    All legal fees, expert witness fees, court costs, and litigation expenses.

g. Equitable Restitution
    Mandatory return of all converted funds, documents, data, and assets, including restitution of unlawfully frozen accounts and seized records.

h. Injunctive Relief
    Permanent injunction prohibiting further interference with Plaintiff's property, finances, and communications.

i. Emergency Protective Relief
    Provision of immediate shelter, personal protection, secure communications, and trauma stabilization resources.

j. Any further relief this Court deems just, equitable, and appropriate under U.S., Canadian, and international law.

# COUNT THIRTY-THREE: BAD FAITH

(Against All Defendants – Federal, Florida Common Law, Texas, California, New York, and, Civil Rights, and RICO Jurisdiction)

## I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber  hereby realleges, restates, and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein, including but not limited to those relating to trafficking, judicial corruption, retaliation, and international abuse.

## II. JURISDICTIONAL STRATEGY: FOUR-PRONG THEORY (TX, CA, NY, FL)

This Count is pleaded under a four-prong jurisdictional framework, with substantial conduct occurring in:

- Texas: Origin and grooming location of trafficking; early stages of coercion, rape, and contractual duress.

- California: Center of fraudulent litigation, gag orders, judicial bribery, attorney misconduct, and court tampering.

- New York: Media defamation, surveillance, obstruction of filings, banking/ injunction fraud, and court access sabotage.

- Florida: Continued stalking and trafficking post-agreement, conspiracy to obstruct Plaintiff's rights via media, finance, and state complicity.

Federal jurisdiction is also proper under 28 U.S.C. § 1331, 42 U.S.C. § 1983, 18 U.S.C. §§ 1591–1595, and 18 U.S.C. § 1964(c).

## III. NATURE OF CLAIM: SYSTEMIC BAD FAITH

Defendants, in concert and under color of law, engaged in a deliberate, institutionalized pattern of bad faith that spans:

- Fiduciary abuse (e.g., abandonment of legal counsel mid-litigation);

- Judicial fraud and coordinated sabotage of due process;

- Fraudulent enforcement of void judgments, Mareva injunctions, ex parte liens, and manufactured contempt;

- Intentional retaliation for Plaintiff's whistleblowing and reporting of international criminal activity;

- Weaponization of court processes to obstruct access to justice, destroy evidence, and endanger Plaintiff.

## IV. LEGAL BASIS FOR BAD FAITH

Defendants' conduct violated:

- Texas Common Law: Bad faith in fiduciary/legal relations (Arnold v. Nat'l County Mut. Fire Ins. Co., 725 S.W.2d 165 (Tex. 1987)).

- California Law: Abuse of court process, breach of professional duty.

- New York Law: Judicial fraud, malicious prosecution, attorney misconduct.

- Florida Law: Malicious litigation, stalking under Fla. Stat. §784.048 and professional misconduct.

- Federal Law:

  ◦ 42 U.S.C. § 1983: Retaliatory denial of access to court.

  ◦ 18 U.S.C. §§ 1592, 1595: Legal process abuse for trafficking retaliation.

  ◦ 18 U.S.C. §§ 1961–1968: RICO pattern conduct.

- International Law:

  ◦ Palermo Protocol (Articles 6, 9);

  ◦ Convention Against Torture (CAT);

  ◦ CEDAW Articles 2, 5, 15;

  ◦ Canadian Charter of Rights and Freedoms (Sections 7, 15).

## V. SPECIFIC ACTS OF BAD FAITH

Defendants, jointly and severally, committed acts including but not limited to:

- Abandoning Plaintiff during critical hearings while under retainer;

- Bribing or coercing over 40 California, Florida, and Ontario judges to refuse hearings, vacate decisions, or impose gag orders;

- Engineering fraudulent "vexatious litigant" designations to silence whistleblowing;

- Utilizing sealed orders, ex parte communications, and unauthorized psychiatric rulings to deny standing;

- Filing false declarations, destroying exculpatory evidence, obstructing witnesses, and coercing representation withdrawals;

- Coordinated media defamation with litigation to sabotage Plaintiff's safety, housing, and access to basic services.

## VI. DAMAGES TO PLAINTIFF
As a direct result of Defendants' systemic bad faith:

- Plaintiff suffered irreversible neurological and psychiatric harm;

- Plaintiff was rendered homeless, stateless, and denied access to medicine and medical care;

- Plaintiff faced attempted assassination, stalking, and human rights abuses in Florida and Canada;

- All legal redress in U.S. and Canadian courts was foreclosed via conspiracy, fraud, and judicial abuse.

## VII. LIABILITY AND AUTHORITIES
Defendants are jointly and severally liable under:

- State bad faith and legal malpractice doctrines;

- Federal civil rights, anti-trafficking, and anti-corruption statutes;

- International anti-trafficking conventions;

- U.S. RICO for coordination of obstruction, retaliation, fraud, and enterprise facilitation.

## VIII. PRAYER FOR RELIEF
Plaintiff seeks judgment as follows:

1. General Damages: $193,577,054.22 USD for lifelong trauma, persecution, and loss of liberty;

2. Special Damages: $10,000,000.00 USD for relocation, security, trauma recovery, and litigation support;

3. Lost Income: $10,000,000.00 USD in earnings foregone due to blacklisting and professional sabotage;

4. Punitive Damages: $500,000,000.00 USD for malicious abuse of fiduciary and legal authority;

5. Interest: 10% per annum, compounded since May 23, 2014;

6. Costs: All legal, investigatory, and protective expenses;

7. Injunctive Relief: Vacatur of all fraudulent orders, protection from Defendants, prohibition on future obstruction;

8. Disgorgement and Restitution: Return of all unjustly retained property and legal profits gained via bad faith;

9. Emergency Measures: Protective services, housing, and encrypted communications;

10. Any further relief this Court deems just, proper, and in accordance with international human rights principles.

## V. INTERFERENCE & ECONOMIC TORTS

## COUNT THIRTY-FIVE: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

(Against: Michael Lewis Goguen, Sequoia Capital, Quinn Emanuel Urquhart & Sullivan LLP, John Quinn, Diane Doolittle, Bruce Van Dalsem, Kyle Batter, Goodwin

Procter LLP, Wilson Sonsini Goodrich & Rosati LLP, Monique Jilesen, Lenczner
Slaght LLP, and all co-conspirators named herein)

## I. INCORPORATION OF PRIOR ALLEGATIONS

1.  Plaintiff *Amber* repeats, realleges, and incorporates by reference all preceding
    paragraphs and causes of action as though fully set forth herein.

## II. NATURE OF THE CLAIM

2. This claim arises from Defendants' deliberate and malicious interference with
Plaintiff's valid contractual and fiduciary relationships with:

- Legal counsel

- Medical providers

- Financial institutions

- Fiduciaries and agents acting in Plaintiff's interest.

3.  Defendants' coordinated actions constituted intentional tortious interference
    under U.S. and Canadian law, executed to obstruct justice, deprive Plaintiff of
    medical treatment, and destroy her financial access and legal support.

## III. VALID CONTRACTUAL RELATIONSHIPS INTERFERED WITH

4.  Defendants intentionally and maliciously interfered with the following valid and
    ongoing contractual relationships:

A. Legal Representation Contracts:

- *The Law Offices of Rivers Morrell III* – terminated under coercion

- *Glaser Weil LLP* – representation sabotaged, fraud, attorney interference and
  Bribery.

- *Bisnar Chase LLP* – withdrawn due to threats, bribery, fraud , obstruction,  and
  attorney. interference

- *Paoli & Purdy LLP* – revoked under pressure, obstruction, attorney and
  interference  and fraud

B. Medical Care Contracts:

- Plaintiff had scheduled surgeries and trauma care with licensed medical providers under lawful consent and treatment plans;

- Quinn Emanuel lawyers (including Diane Doolittle and Bruce Van Dalsem) made ex parte telephone calls to Plaintiff's surgeons, intimidating and threatening them, resulting in the abandonment of Plaintiff's care and cancellation of procedures.

C. Financial and Banking Relationships:

- Plaintiff maintained accounts and fiduciary relationships with Canadian banks;

- Monique Jilesen and Lenczner Slaght LLP intervened without legal authority, directly contacting bank officers and misrepresenting Plaintiff's legal status, leading to the unlawful freezing and withdrawal of her funds.

IV. LEGAL ELEMENTS SATISFIED

5. The conduct of the Defendants satisfies all elements of tortious interference under New York, federal, and Canadian common law:

- Valid and enforceable contracts existed;

- Defendants had knowledge of those contracts;

- Defendants intentionally induced breach or abandonment;

- Plaintiff suffered substantial damages and irreparable harm.

V. DAMAGES AND INJURY RESULTING FROM INTERFERENCE

6. As a result of Defendants' interference, Plaintiff:

  ° Was denied critical medical surgeries, leaving her in severe pain and permanent injury;

  ° Lost access to essential financial accounts, preventing her from securing housing, protection, and medication;

  ° Was forced into pro se legal status, without medical care or legal resources, while defending herself against a global trafficking enterprise;

      &deg;    Endured public humiliation, trauma, physical deterioration, and repeated assassination threats with no protection.

## VI. MALICE AND CONTINUING INJURY

7. Defendants' actions were deliberate, malicious, and retaliatory, motivated by:

      &deg;    Desire to silence Plaintiff's testimony;

      &deg;    Obstruction of RICO and trafficking litigation;

      &deg;    Suppression of evidence linking Defendants to criminal enterprises.

8. Defendants violated duties of care, legal ethics, fiduciary obligations, and international human rights principles.

## VII. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully demands judgment against the Defendants, jointly and severally, for:

a. General Damages:
$193,577,054.22 USD for deprivation of contractual rights, physical harm, and reputational injury;

b. Special Damages:
$10,000,000.00 USD for canceled surgeries, denied care, destroyed banking relationships, and trauma recovery expenses;

c. Loss of Earnings:
$10,000,000.00 USD for lost professional income, legal fees, and destroyed opportunities;

d. Punitive and Aggravated Damages:
$500,000,000.00 USD to deter such egregious and coordinated abuse of power;

e. Prejudgment and Postjudgment Interest:
10% compounded annually from May 23, 2014, through judgment;

f. Costs of Suit and Legal Expenses:
Attorneys' fees, investigators, medical and expert costs, and full litigation reimbursement;

g. Equitable Restitution and Vacatur:
   Rescission of coerced terminations, reinstatement of damages, and nullification of illegal interference and asset seizures;

h. Permanent Injunction:
   Prohibiting further interference with any medical, legal, or financial professional assisting Plaintiff;

i. Emergency Protection and Medical Restoration:
   Court-ordered reinstatement of medical surgeries, treatment plans, and housing security;

j. All other relief deemed just and proper under U.S., Canadian, and international law.

## COUNT THIRTY-SIX: TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS

(Against: All Named Defendants as Joint Tortfeasors and RICO Co-Conspirators)

I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff Amber  repeats, realleges, and incorporates by reference all preceding paragraphs, factual allegations, and legal claims in this Complaint as though fully set forth herein.

2. This Count is pleaded under a tri-jurisdictional framework, encompassing:
   a. Texas – where Defendants originally trafficked, raped, and exploited Plaintiff while isolating her from any means of lawful income;
   b. California – where Defendants executed unlawful contractual sabotage, coordinated retaliatory litigation, and imposed judicial obstructions;
   c. New York – where Plaintiff's financial, philanthropic, and legal opportunities were systematically blacklisted, defamed, and destroyed.

II. NATURE OF THE CLAIM: SYSTEMIC ECONOMIC SABOTAGE

3. Defendants engaged in a deliberate, premeditated, and transnational scheme of tortious interference with Plaintiff's existing and prospective economic relationships, including employment, consulting, housing, medical, legal, and donor engagements.

4. Defendants had full knowledge of Plaintiff's financial dependencies and professional goals and acted with malicious intent to destroy her capacity for self-sufficiency, safety, and livelihood.

5. Defendants conspired to:
a. Prevent Plaintiff from securing legal counsel and enforcing valid settlement rights;
b. Block her from employment, contracts, banking, and public credibility;
c. Weaponize false legal actions, fraudulent judgments, and ex parte restraining orders to disable Plaintiff's economic agency.

## III. ELEMENTS OF TORTIOUS INTERFERENCE UNDER FEDERAL, STATE, AND INTERNATIONAL LAW

6. Defendants' conduct satisfies all legal elements of tortious interference under Texas, California, and New York law, as well as Restatement (Second) of Torts §§ 766–774:
a. Existence of valid business relationships or economic expectancy between Plaintiff and third parties;
b. Defendants' knowledge of such relationships or expectancies;
c. Intentional and unjustifiable interference through wrongful means, including fraud, coercion, bribery, and intimidation;
d. Actual disruption of the economic relationships or expectancies;
e. Resulting economic harm, including blacklisting, loss of income, reputational injury, and financial ruin.

## IV. SPECIFIC WRONGFUL ACTS OF INTERFERENCE

7. Each named Defendant engaged in acts of economic sabotage through coercion, defamation, obstruction, and systemic deprivation:

A. Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Two Bear Ranch
a. Blacklisted Plaintiff from tech, investment, and donor networks by labeling her unstable, criminal, and noncompliant.

b. Used intimidation, surveillance, and blackmail to frighten away potential employers, investors, and collaborators.

c. Financed retaliatory litigation in California, New York, and Ontario to collapse Plaintiff's financial life.

B. Quinn Emanuel, Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter

a. Engaged in fraud upon the court to freeze Plaintiff's assets and terminate access to legal funds.

b. Threatened third-party medical providers and housing sponsors with litigation or exposure.

c. Poisoned Plaintiff's credibility through sealed filings, false declarations, and media coordination.

C. Goodwin Procter LLP & Anthony McCusker

a. Obstructed Plaintiff's attempts to collect on settlement rights by refusing communications and denying due process.

b. Used institutional power to discredit Plaintiff's reentry into business and philanthropy sectors.

D. Wilson Sonsini & Keith Eggleton

a. Interfered with confidential settlement enforcement and warned third parties of "fraud risk" tied to Plaintiff.

b. Operated in collusion with Quinn Emanuel to prevent Plaintiff's economic participation and recovery.

E. Glaser Weil LLP, Patricia Glaser, Jill Basinger

a. Retaliated against Plaintiff for filing malpractice and abuse claims, including filing secret restraining orders.

b. Co-conspired with Goguen to divert funds, void prior legal protections, and sabotage Plaintiff's recovery path.

F. Rivers Morrell, Paoli & Purdy LLP, William Paoli, Nemecek & Cole LLP, Frank Nemecek, Jonathan Cole, Marshall Cole, Marta Alcumbrac, Bisnar Chase LLP, Brian Chase, Scott Ritsima, Brown & Charbonneau LLP, Gregory Brown, Sherman Law LLP, Richard Sherman

a. Entered into representation agreements under false pretenses, then abruptly withdrew before hearings.

b. Shared privileged economic data, witness lists, and settlement plans with adverse parties.

c. Issued false declarations to courts that Plaintiff had "no viable claims," sabotaging employment and housing support.

G. Monique Jilesen & Lenczner Slaght LLP
a. Interfered with Plaintiff's Canadian bank access, froze digital assets, and blocked all housing and therapy funds.
b. Weaponized Ontario courts to seize assets and issue orders banning Plaintiff's economic participation.

## V. DAMAGES SUFFERED

8.  As a direct and proximate result of Defendants' wrongful acts, Plaintiff sustained:
    a. Total economic collapse, including eviction, loss of credit, medical abandonment, and professional isolation;
    b. Reputational destruction, both personal and professional, causing lasting barriers to employment or client relations;
    c. Psychological trauma, including compounded PTSD, suicidal ideation, and physiological harm;
    d. Unrelenting economic strangulation, blocking every lawful avenue to safety, survival, or public rehabilitation.

## VI. LEGAL LIABILITY

9.  Defendants are liable under:
    a. Texas tort law, for intentional interference with prospective economic advantage (see *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711 (Tex. 2001));
    b. California common law, for intentional interference with economic advantage, where malice, fraud, or intimidation were employed (*Della Penna v. Toyota Motor Sales*, 11 Cal. 4th 376 (1995));
    c. New York tort law, under *Carvel Corp. v. Noonan*, 3 N.Y.3d 182 (2004);
    d. RICO, 18 U.S.C. §§ 1961–1968 – for economic injury caused by coordinated enterprise acts;
    e. 42 U.S.C. § 1983, for denial of property rights, court access, and liberty interests under color of law;
    f. Palermo Protocol, CEDAW, and CAT – for violation of Plaintiff's economic rights and liberty as a trafficking survivor under international law.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages
    $193,577,054.22 USD for permanent loss of economic autonomy, livelihood, and access to dignified survival.

b. Special Damages
    $10,000,000.00 USD for trauma therapy, housing, medical care, and protective services to mitigate economic ruin.

c. Lost Earnings
    $10,000,000.00 USD for permanent inability to work, access clients, or rebuild reputation in any industry.

d. Punitive and Exemplary Damages
    $500,000,000.00 USD for willful sabotage, enterprise-level blacklisting, and coordinated financial destruction.

e. Prejudgment and Postjudgment Interest
    10% per annum, compounded annually from May 23, 2014, pursuant to *Bank of America Canada v. Mutual Trust Co.*, 2002 SCC 43.

f. Equitable Relief
    - Restitution of all funds seized, redirected, or frozen through fraud;
    - Vacatur of gag orders, Mareva injunctions, and fraudulent restraining orders;
    - Public declaration of tortious interference and enterprise misconduct.

g. Permanent Injunctive Relief
    - Prohibiting Defendants from any further contact, surveillance, obstruction, or blacklisting of Plaintiff;
    - Compelling access to banking, housing, healthcare, and rehabilitation services.

h. Costs and Attorneys' Fees
    All fees and litigation costs incurred in seeking redress for Defendants' economic crimes and civil torts.

i. Further Relief
    Any other relief deemed just, proper, and necessary by this Court under U.S., Canadian, and international law.

**COUNT THIRTY-SEVEN: INTENTIONAL INTERFERENCE WITH
ECONOMIC RELATIONS**

(Against: Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Quinn Emanuel
Urquhart & Sullivan LLP, John B. Quinn, Diane Doolittle, Bruce Van Dalsem, Kyle
Batter, Patricia Glaser, Jill Basinger, Glaser Weil LLP, William Paoli, Paoli & Purdy
LLP, Brian Chase, Scott Ritsema, Bisnar Chase LLP, Richard Sherman, Sherman Law
LLP, Gregory Brown, Brown & Charbonneau LLP, Frank Nemecek, Jonathan Cole,
Marshall Cole, Michael Feenberg, Nemecek & Cole LLP, Monique Jilesen, Lenczner
Slaght LLP, Anthony McCusker, Goodwin Procter LLP, Keith Eggleton, Wilson
Sonsini Goodrich & Rosati LLP)

I. INCORPORATION OF PRIOR ALLEGATIONS

1.  Plaintiff *Amber repeats*, realleges, and incorporates by reference all preceding
    allegations and causes of action as though fully set forth herein.

II. NATURE OF CLAIM: INTENTIONAL INTERFERENCE WITH ECONOMIC
RELATIONS

2.  This Count arises from the Defendants' knowing, malicious, and unlawful
    interference with Plaintiff's existing and prospective economic relations,
    including:

    ◦   Professional contracts;

    ◦   Employment opportunities;

    ◦   Settlement payments;

    ◦   Financial accounts and trust assets;

    ◦   Medical care financing and procedures;

    ◦   Legal representation and litigation recovery;

    ◦   Intellectual property and publishing opportunities.

3. The Defendants acted with actual malice and improper motives — not to compete lawfully or protect legal rights — but to economically cripple, defame, and obstruct Plaintiff, a whistleblower and human trafficking survivor.

## III. CULPABLE DEFENDANTS' ACTIONS

### A. Michael Lewis Goguen, Sequoia Capital, and Two Bear Capital

- Deliberately withheld and misappropriated $30M in settlement payments to obstruct Plaintiff's economic autonomy;

- Financed retaliatory litigation and judicial bribery to sabotage Plaintiff's access to employment, medical care, and legal restitution.

### B. Quinn Emanuel, John Quinn, Diane Doolittle, Bruce Van Dalsem, and Kyle Batter

- Coordinated a targeted campaign of vexatious litigation, false gag orders, and malicious filings to brand Plaintiff unemployable;

- Issued unlawful subpoenas and harassed Plaintiff's potential employers and doctors with defamatory information;

- Threatened Plaintiff's surgeons via ex parte calls, preventing medical procedures that were prerequisites for returning to work.

### C. Glaser Weil LLP, Patricia Glaser, Jill Basinger

- Colluded with Sequoia and Goguen to sabotage Plaintiff's economic and legal recovery through arbitration fraud and suppression of claims;

- Leaked defamatory and false statements to employers, journalists, and judicial officers to destroy Plaintiff's professional prospects.

### D. Paoli & Purdy LLP, William Paoli

- Accepted representation of Plaintiff, then abruptly withdrew at a critical pretrial moment under illegal pressure and conflicts of interest, leaving Plaintiff economically vulnerable and legally defenseless.

### E. Bisnar Chase LLP, Brian Chase, Scott Ritsema

- Retained to pursue legal recovery, but sabotaged claims through collusion with opposing counsel and withdrawal under coordinated coercion, frustrating Plaintiff's economic redress.

F. Sherman Law LLP, Richard Sherman

- Colluded with Goguen and other co-defendants to suppress evidence and misdirect proceedings to prevent financial recovery and impede Plaintiff's ability to seek damages from liable parties.

G. Brown & Charbonneau LLP, Gregory Brown

- Filed retaliatory counterclaims under false pretenses, misrepresented Plaintiff's legal standing, and obstructed her ability to access legal damages, impacting future earnings and litigation funding.

H. Nemecek & Cole LLP, Frank Nemecek, Jonathan Cole, Marshall Cole, Michael Feenberg

- Joined the sabotage of Plaintiff's active legal matters, interfering with settlements and retainer relationships by misrepresenting Plaintiff's position and aiding retaliatory counterlitigation.

I. Monique Jilesen & Lenczner Slaght LLP

- Illegally contacted Plaintiff's Canadian banks, causing asset freezes that paralyzed Plaintiff's ability to fund legal actions or maintain stability.

J. Anthony McCusker & Goodwin Procter LLP; Keith Eggleton & Wilson Sonsini Goodrich & Rosati LLP

- Used their legal authority to file fraudulent instruments and retaliatory gag orders, effectively preventing Plaintiff from speaking publicly, publishing her work, or restoring her public and economic reputation.

IV. ELEMENTS SATISFIED UNDER LAW

4. The actions of Defendants satisfy all elements under New York and Ontario common law, as well as international law standards for intentional interference with economic relations:

- **Valid Economic Expectancy:** Plaintiff had actual and prospective relationships yielding income, legal fees, and professional opportunities;

- **Defendants' Knowledge:** Defendants knew of these relationships and dependencies;

- **Intentional Interference:** Defendants committed overt, unlawful acts to disrupt Plaintiff's economic dealings;

- **Malice and Improper Motive:** The actions were not protected or privileged — they were calculated to harm;

- **Causation and Damage:** Plaintiff was deprived of earnings, assets, legal funding, and public standing.

*See:*
*Carvel Corp. v. Noonan*, 3 N.Y.3d 182 (2004);
*Bhasin v. Hrynew*, 2014 SCC 71;
*Reach Mkt. Direct Inc. v. TRW Inc.*, 135 F. Supp. 2d 682 (S.D.N.Y. 2001);
*Barrett v. United States*, 798 F.2d 565 (2d Cir. 1986).

## V. DAMAGES SUFFERED

5. As a direct and proximate result of this intentional economic interference, Plaintiff has suffered:

- Complete financial collapse and inability to pursue lawful claims;

- Foreclosure of intellectual property licensing, publishing, and employment prospects;

- Long-term medical disability from denied treatment;

- Homelessness, reputational ruin, and chronic danger to life and safety.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against the Defendants, jointly and severally, as follows:

a. General Damages:
  $193,577,054.22 USD for deprivation of economic security, income, and financial solvency;

b. Special Damages:
  $10,000,000.00 USD for economic losses related to blocked surgeries, employment, publishing contracts, and lost investments;

c. Lost Earnings and Future Capacity:
  $10,000,000.00 USD in direct lost income and future earning impairment;

d. Punitive and Exemplary Damages:
  $500,000,000.00 USD to punish malicious interference and prevent recurrence;

e. Prejudgment Interest:
  10% per annum compounded annually from May 23, 2014, pursuant to *Bank of America Canada v. Mutual Trust Co.*, 2002 SCC 43;

f. Equitable Relief:
  Rescission of all fraudulent interference instruments and injunction against further sabotage of Plaintiff's economic affairs;

g. Costs of Suit:
  Full attorneys' fees, expert costs, investigative and litigation expenses;

h. Injunctive Relief:
  Permanent injunction barring Defendants from contacting Plaintiff's employers, banks, medical providers, or financial partners;

i. Any further relief this Court deems just, necessary, and proper under U.S., Canadian, and international law.

## VI. CIVIL RIGHTS, DISCRIMINATION, AND DIGNITY VIOLATIONS

# COUNT THIRTY-EIGHT: RACIAL AND GENDER DISCRIMINATION

(Against: Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Quinn Emanuel Urquhart & Sullivan LLP, John Quinn, Diane Doolittle, Bruce Van Dalsem, Kyle Batter, Patricia Glaser, Jill Basinger, Glaser Weil LLP, William Paoli, Paoli & Purdy LLP, Brian Chase, Scott Ritsema, Bisnar Chase LLP, Richard Sherman, Sherman Law LLP, Gregory Brown, Brown & Charbonneau LLP, Nemecek & Cole LLP, Monique Jilesen, Lenczner Slaght LLP, Goodwin Procter LLP, Wilson Sonsini Goodrich & Rosati LLP, and all other named Defendants)

## I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff *Amber* repleads, realleges, and incorporates by reference all preceding paragraphs and causes of action as though fully set forth herein.

## II. NATURE OF CLAIM: RACIAL AND GENDER DISCRIMINATION

2. The Defendants engaged in a sustained and systemic pattern of racial and gender-based discrimination, rooted in animus toward Plaintiff's identity as a woman of colour , a trafficking survivor, and a vocal whistleblower against elite power structures.

3. The discrimination was not incidental. It was deliberate, targeted, and integral to the criminal enterprise. The Defendants treated Plaintiff with contempt, hostility, and denial of fundamental rights solely because of her race, gender, and social status.

4. Defendants exploited Plaintiff's gender and ethnicity to:

    ○ Discredit her testimony;

    ○ Defame her as "unstable," "delusional," or "unfit";

    ○ Obstruct access to legal representation;

    ○ Deny her medical care and housing;

    ○ Isolate her from judicial protection;

    ○ Undermine her credibility through racist and sexist tropes;

○   Intimidate her into silence through public humiliation and retaliation.

## III. CULPABLE DEFENDANTS' DISCRIMINATORY ACTS

### A. Michael Lewis Goguen

- Repeatedly weaponized Plaintiff's race and gender to dehumanize, exploit, and silence her;

- Made disparaging comments about Plaintiff's ethnicity and used her identity to justify coercion, abuse, and isolation;

- Referred to Plaintiff as "property," "broken," and "mentally unstable," echoing deeply racist, misogynistic rhetoric to delegitimize her as a human being.

### B. Sequoia Capital & Two Bear Capital

- Supported, financed, and protected Goguen's abuse;

- Refused to investigate credible allegations due to racial and gender-based assumptions that Plaintiff was a liar, grifter, or gold-digger;

- Made institutional decisions reflecting a white supremacist and misogynist culture that erased Plaintiff's humanity.

### C. Quinn Emanuel (John Quinn, Diane Doolittle, Bruce Van Dalsem, Kyle Batter)

- Filed pleadings depicting Plaintiff as unstable, dangerous, and vexatious in language steeped in racist and sexist dog whistles;

- Issued gag orders and subpoenas to silence a woman of colour  from speaking out against abuse;

- Deliberately abandoned representation when Plaintiff refused to "tone down" her accusations against elite white men.

### D. Glaser Weil LLP (Patricia Glaser, Jill Basinger)

- Refused to pursue viable civil rights claims due to Plaintiff's racial and gender identity;

- Belittled Plaintiff's trauma and medical conditions, and used her emotional distress as evidence of alleged mental instability.

E. Paoli & Purdy LLP, Bisnar Chase LLP, Sherman Law LLP, Brown & Charbonneau LLP, Nemecek & Cole LLP

- All abruptly abandoned or turned against Plaintiff under pressure from wealthier white defendants, citing vague claims of "reputational risk" or "difficult client" stereotypes;

- Used racialized and gendered tropes to justify legal sabotage and defamation.

F. Monique Jilesen & Lenczner Slaght LLP

- Weaponized their position to isolate Plaintiff in Canadian courts, with repeated references to Plaintiff's "lack of credibility" and "dramatic behavior," reinforcing racist, misogynist stereotypes in legal filings;

- Participated in hearings in which Plaintiff was not allowed to speak, in violation of due process and equality rights.

G. Goodwin Procter LLP & Wilson Sonsini Goodrich & Rosati LLP

- Engaged in retaliatory filings designed to bankrupt and silence Plaintiff;

- Maintained internal communications mocking Plaintiff's appearance, speech, and emotional state;

- Made decisions regarding Plaintiff's cases that disproportionately penalized her for conduct routinely tolerated from white male litigants.

IV. LEGAL BASIS

5.    The conduct of Defendants violates:

- Title VI and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d & § 2000e (discrimination on basis of race and sex);

- 42 U.S.C. § 1981 – Equal rights under the law;

- 42 U.S.C. § 1983 – Deprivation of constitutional rights under colour  of law;

- Canadian Charter of Rights and Freedoms, §§ 7, 15 (equality and security of the person);

- Canadian Human Rights Act, RSC 1985, c. H-6;

- Ontario Human Rights Code, RSO 1990, c H.19, §§ 1, 5, 9;

- CEDAW, Universal Declaration of Human Rights, International Covenant on Civil and Political Rights, and Palermo Protocol — all of which prohibit discrimination based on race and gender, and obligate state and corporate actors to protect survivors of trafficking without prejudice.

## V. DAMAGES SUFFERED

6. As a direct and proximate result of Defendants' racial and gender discrimination, Plaintiff suffered:

- Loss of legal representation due to racist and sexist exclusion;

- Psychological trauma from public humiliation, abandonment, and isolation;

- Loss of income, career prospects, and housing;

- Delayed or denied medical care based on prejudiced judgments;

- Reputational harm reinforced by discriminatory court records;

- Entrapment in a cycle of abuse and judicial retaliation that continues to this day.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages – $193,577,054.22 USD for emotional, psychological, reputational, and economic injuries;

b. Special Damages – $10,000,000.00 USD for medical, relocation, and legal costs necessitated by the discriminatory conduct;

c. Loss of Earnings – $10,000,000.00 USD in lost present and future income;

d. Punitive and Aggravated Damages – $500,000,000.00 USD for malicious discrimination and systemic abuse;

e. Equitable Relief – Vacatur of discriminatory rulings and court orders issued under racial and gender bias;

f. Injunctive Relief – Permanent orders barring Defendants from retaliation, continued defamation, or discriminatory litigation;

g. Prejudgment Interest – 10% per annum compounded annually from May 23, 2014;

h. Costs of Suit – Full attorneys' fees, expert witness fees, and litigation costs;

i. Emergency Protection – Secure housing, trauma-informed medical care, legal advocacy, and security from further discrimination;

j. Any further relief this Court deems just, proper, and necessary under U.S., Canadian, and international law.


# COUNT THIRTY-NINE: VIOLATION OF PLAINTIFF'S RIGHTS UNDER THE U.S. CONSTITUTION

(First, Fifth, and Fourteenth Amendments)
(Against:  SEQUOIA CAPITAL, Michael Lewis Goguen, Quinn Emanuel Urquhart & Sullivan LLP, John Quinn, Diane Doolittle, Bruce Van Dalsem, Kyle Batter, Sequoia Capital, Two Bear Capital, Patricia Glaser, Glaser Weil LLP, William Paoli, Paoli & Purdy LLP, Brian Chase, Scott Ritsema, Bisnar Chase LLP, Richard Sherman, Sherman Law LLP, Gregory Brown, Brown & Charbonneau LLP, Nemecek & Cole LLP, and all state actors, court officers, and co-conspirators acting under colour  of law)


I. INCORPORATION OF PRIOR ALLEGATIONS

1.  Plaintiff *Amber*  repleads and realleges all prior paragraphs and causes of action as though fully set forth herein.


II. NATURE OF THE CLAIM

2. Defendants, individually and in concert, violated Plaintiff's clearly established constitutional rights under:

- The First Amendment – freedom of speech, right to petition the government for redress, and freedom from retaliatory censorship;

- The Fifth Amendment – protection against deprivation of liberty and property without due process of law;

- The Fourteenth Amendment – equal protection and substantive due process.

3. These violations were not accidental—they were deliberate, systemic, and executed through colour of law, abuse of legal process, judicial fraud, and collusion between private parties and state actors.

## III. CULPABLE DEFENDANTS AND SPECIFIC CONSTITUTIONAL VIOLATIONS

A. Michael Lewis Goguen

- Engaged in retaliatory gag orders, surveillance, and obstruction of Plaintiff's ability to speak publicly about her trafficking;

- Conspired with state and judicial actors to freeze Plaintiff's assets and suppress her filings without legal process.

B. Quinn Emanuel LLP (John Quinn, Diane Doolittle, Bruce Van Dalsem, Kyle Batter)

- Participated in ex parte communications, filed fraudulent vexatious litigant orders to suppress Plaintiff's speech, and colluded with judges to prevent her access to courts;

- Acted under colour of law by leveraging judicial cooperation to silence, punish, and deprive Plaintiff of redress.

C. Sequoia Capital & Two Bear Capital

- Funded litigation campaigns that involved unlawful ex parte orders, seizure of property, and systemic interference in Plaintiff's First and Fifth Amendment rights.

D. Patricia Glaser & Glaser Weil LLP

- Colluded in the fabrication of legal documents used to deny Plaintiff due process;

- Participated in silencing and abandoning Plaintiff to sabotage her access to justice.

E. Paoli & Purdy LLP, Bisnar Chase LLP, Sherman Law LLP, Brown & Charbonneau LLP, Nemecek & Cole LLP

- Engaged in willful sabotage of Plaintiff's legal claims, abandonment in violation of due process, and systemic suppression of evidence and legal filings protected by the First and Fifth Amendments.

F. Judges, Court Clerks, and State Officials

Acted under colour  of law to:

  ◦ Freeze Plaintiff's accounts without hearing;

  ◦ Seal her pleadings and deny her access to the courts;

  ◦ Deny her in forma pauperis status on retaliatory grounds;

  ◦ Issue ex parte gag orders and enforce fraudulent judgments without due process.

## IV. VIOLATED CONSTITUTIONAL RIGHTS

4. First Amendment Violations

  ◦ Plaintiff's rights to petition the government and access the courts were obstructed by:

    ▪ Filing vexatious litigant designations based on protected speech;

    ▪ Gag orders and secret hearings;

    ▪ Threats to Plaintiff's safety in retaliation for whistleblowing.

5. Fifth Amendment Violations

- ○ Defendants deprived Plaintiff of her liberty, property, and legal protections without:

    - ▪ Adequate notice;

    - ▪ A meaningful opportunity to be heard;

    - ▪ Any legitimate state interest or lawful authority.

6.  Fourteenth Amendment Violations

    - ○ The unequal treatment of Plaintiff—due to her race, gender, pro se status, and status as a trafficking survivor—violated her right to equal protection of the law and access to unbiased judicial proceedings.

## V. LEGAL AUTHORITY

7.  Defendants' conduct violated the following constitutional provisions and precedents:

- First Amendment, U.S. Const. amend. I (see *Houston v. Hill*, 482 U.S. 451 (1987); *BE & K Constr. Co. v. NLRB*, 536 U.S. 516 (2002));

- Fifth Amendment, U.S. Const. amend. V (see *Goldberg v. Kelly*, 397 U.S. 254 (1970); *Mathews v. Eldridge*, 424 U.S. 319 (1976));

- Fourteenth Amendment, U.S. Const. amend. XIV (see *Board of Regents v. Roth*, 408 U.S. 564 (1972); *Plyler v. Doe*, 457 U.S. 202 (1982));

- 42 U.S.C. § 1983 – Liability for persons acting under colour of law who deprive others of constitutional rights;

- Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) – Remedy for constitutional violations by federal actors.

## VI. DAMAGES SUFFERED

8.  As a direct and proximate result of these constitutional violations, Plaintiff has suffered:

- Loss of liberty, due process, and access to the courts;

- Emotional distress and trauma;

- Loss of shelter, property, and income;

- Exposure to retaliatory surveillance, harassment, and danger to life;

- Deprivation of equal protection, medical care, and dignity.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. Compensatory Damages: $193,577,054.22 USD for violation of Plaintiff's First, Fifth, and Fourteenth Amendment rights;

b. Special Damages: $10,000,000.00 USD for medical treatment, protective services, housing, and trauma care;

c. Punitive Damages: $500,000,000.00 USD to punish egregious constitutional violations committed with malice;

d. Declaratory Relief: A judicial declaration that Defendants' conduct violated the U.S. Constitution;

e. Equitable Relief:

- Vacatur of all judgments obtained in violation of due process;

- Injunctive orders to prevent further constitutional violations;

- Permanent protection orders ensuring Plaintiff's safety and access to courts;

f. Attorney's Fees and Costs: As authorized by 42 U.S.C. § 1988;

g. Interest: Pre- and post-judgment interest at 10% per annum compounded annually from May 23, 2014;

h. Any other relief the Court deems just and proper under the Constitution, federal statutes, and international human rights law.

**COUNT FORTY: VIOLATION OF THE UNIVERSAL DECLARATION OF HUMAN RIGHTS (UDHR)**

(Against: Sequoia Capital; Michael Lewis Goguen; Two Bear Capital; Quinn Emanuel Urquhart & Sullivan LLP; John Quinn; Diane Doolittle; Bruce Van Dalsem; Kyle Batter; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Glaser Weil LLP; Patricia Glaser; Jill Basinger; Bisnar Chase LLP; Brian Chase; Scott Ritsema; Sherman Law LLP; Richard Sherman; Paoli & Purdy LLP; William Paoli; Gregory Brown; Brown & Charbonneau LLP; Nemecek & Cole LLP; and all co-conspirators, including who participated in or enabled the systemic violations described herein.)

## I. INCORPORATION OF PRIOR ALLEGATIONS

1.  Plaintiff *Amber* repeats, realleges, and incorporates by reference all preceding paragraphs and causes of action as though fully set forth herein.

## II. NATURE OF THE CLAIM

2.  The Defendants, individually and in conspiracy, committed gross and systemic violations of the Universal Declaration of Human Rights (UDHR)—a foundational instrument of international law ratified by the United States as a member of the United Nations and binding under customary international law.

3.  These violations were executed through a global criminal enterprise involving human trafficking, legal abuse, sexual exploitation, deprivation of liberty, medical neglect, forced silence, judicial sabotage, and targeted persecution of Plaintiff—a Black, female, disabled, and trafficked survivor.

## III. SPECIFIC ARTICLES OF THE UDHR VIOLATED

4.  Defendants' conduct violated the following articles of the UDHR:

- Article 1 – *"All human beings are born free and equal in dignity and rights."*
  → Plaintiff was denied equal dignity, freedom, and recognition before the law.

- Article 3 – *"Everyone has the right to life, liberty and security of person."*
  → Plaintiff's liberty, safety, and life were placed in jeopardy by Defendants' acts of trafficking, stalking, surveillance, and judicial obstruction.

- Article 5 – *"No one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment."*
  → Defendants subjected Plaintiff to psychological torture, coercion, and degrading treatment through fabricated legal proceedings, denial of medical care, housing, and court access.

- Article 6 – *"Everyone has the right to recognition everywhere as a person before the law."*
  → Plaintiff was denied recognition and protection under law through illegal gag orders, vexatious designations, sealed pleadings, and judicial erasure.

- Article 7 – *"All are equal before the law and are entitled without any discrimination to equal protection of the law."*
  → Plaintiff was denied equal protection due to her race, gender, disability, and status as a trafficking victim.

- Article 8 – *"Everyone has the right to an effective remedy… for acts violating… fundamental rights."*
  → Plaintiff was obstructed from all effective remedies in Canadian and U.S. courts through coordinated sabotage and obstruction by Defendants.

- Article 10 – *"Everyone is entitled in full equality to a fair and public hearing by an independent and impartial tribunal."*
  → Defendants bribed, coerced, and conspired with judicial officers to ensure Plaintiff never received a fair hearing.

- Article 12 – *"No one shall be subjected to arbitrary interference with his privacy, family, home or correspondence…"*
  → Plaintiff was subjected to unlawful surveillance, IP tracking, email seizures, and data theft through illegal ex parte subpoenas.

- Article 13 – *"Everyone has the right to freedom of movement and residence…"*
  → Plaintiff was forced into transience, denied housing, and targeted with fraudulent ex parte asset freezes and evictions.

- Article 16(2) – *"Marriage shall be entered into only with the free and full consent of the intending spouses."*
  → Plaintiff was trafficked into a forced marriage under a false identity.

- Article 19 – *"Everyone has the right to freedom of opinion and expression…"*
  → Defendants censored Plaintiff through gag orders, retaliatory lawsuits, and judicial suppression of speech.

- Article 25 – *"Everyone has the right to a standard of living adequate for the health and well-being of himself…"*
  → Defendants obstructed Plaintiff's access to food, shelter, medical treatment, and psychological care.

## IV. LEGAL BASIS

5. The UDHR is binding on the United States and Canada under customary international law and their ratification of:

- The Charter of the United Nations (1945);

- The International Covenant on Civil and Political Rights (ICCPR);

- The Convention Against Torture (CAT);

- The Convention on the Elimination of All Forms of Discrimination Against Women (CEDAW);

- The Palermo Protocol on Human Trafficking.

6. Federal courts recognize the UDHR as a source of enforceable norms under the Alien Tort Statute (28 U.S.C. § 1350) and as persuasive authority in claims of egregious human rights violations (see *Filártiga v. Peña-Irala*, 630 F.2d 876 (2d Cir. 1980); *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)).

## V. DAMAGES

7. As a direct and proximate result of Defendants' violations of Plaintiff's inalienable human rights, she has suffered:

- Permanent psychological trauma and CPTSD;

- Life-threatening denial of food, housing, and medical care;

- Systemic judicial retaliation and erasure of personhood;

- Deprivation of property, speech, and legal identity;

- Ongoing danger to life, liberty, and dignity.

Complaint for Human Trafficking

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages: $193,577,054.22 USD for egregious violations of Plaintiff's human dignity, safety, and freedom;

b. Special Damages: $10,000,000.00 USD for medical care, shelter, trauma therapy, and safe relocation;

c. Punitive and Exemplary Damages: $500,000,000.00 USD to deter future violations of fundamental human rights by private or public actors;

d. Equitable Relief:

- Vacatur of all fraudulent orders, judgments, settlements, and contracts;
- Disgorgement of all profits derived from trafficking, fraud, or legal suppression;

e. Declaratory Judgment: Recognizing that Defendants' conduct constitutes a violation of the UDHR and customary international law;

f. Protective Injunctions: Barring any further acts of retaliation, interference, or harassment;

g. Restitution: Immediate return of all seized, frozen, or misappropriated funds and personal property;

h. Attorneys' Fees and Costs of Suit;

i. Pre- and Post-Judgment Interest at 10% per annum, compounded annually;

j. Any such further relief as this Honourable Court deems just, proper, and necessary under U.S., Canadian, and international law.


## COUNT FORTY- ONE: VIOLATION OF THE LAW OF NATIONS AND CUSTOMARY INTERNATIONAL LAW- CRIMES AGAINST HUMANITY

(Against: Michael Lewis Goguen; Sequoia Capital; Two Bear Capital; Quinn Emanuel Urquhart & Sullivan LLP; John Quinn; Diane Doolittle; Bruce Van Dalsem; Kyle Batter; Goodwin Procter LLP; Wilson Sonsini Goodrich & Rosati LLP; Glaser Weil

LLP; Patricia Glaser; Jill Basinger; Bisnar Chase LLP; Brian Chase; Scott Ritsima;
Sherman Law LLP; Richard Sherman; Paoli & Purdy LLP; William Paoli; Gregory
Brown; Brown & Charbonneau LLP; Nemecek & Cole LLP; Lenczner Slaght LLP;
Monique Jilesen; Sahar Telbi; Cory Gilmore; Barbara Conway; and all other co-
conspirators known and unknown.)

## I. INCORPORATION OF PRIOR ALLEGATIONS

1.  Plaintiff *Amber*  repeats, realleges, and incorporates by reference all prior
    paragraphs, facts, and causes of action as though fully set forth herein.

## II. NATURE OF THE CLAIM

2.  This claim arises under the Alien Tort Statute (ATS), 28 U.S.C. § 1350, and
    customary international law recognized in the Law of Nations, the Rome Statute
    of the International Criminal Court, and other binding international instruments.

3.  The Defendants, acting individually and in concert, committed, enabled,
    conspired to commit, or aided and abetted crimes against humanity, including
    but not limited to:

- Enslavement (Rome Statute Art. 7(1)(c));

- Persecution on the basis of gender, race, and political identity (Art. 7(1)(h));

- Torture (Art. 7(1)(f));

- Rape and sexual violence (Art. 7(1)(g));

- Enforced disappearance and judicial erasure (Art. 7(1)(i));

- Other inhumane acts intentionally causing great suffering and bodily or mental
  harm (Art. 7(1)(k)).

4.  These acts occurred as part of a widespread and systematic attack directed
    against Plaintiff as a known whistleblower, trafficking survivor, and political
    dissident, with full knowledge of the attack and its criminal nature by the
    Defendants.

## III. ELEMENTS OF CRIMES AGAINST HUMANITY UNDER INTERNATIONAL LAW

5. Defendants' conduct satisfies the elements of crimes against humanity under international legal standards:

- Widespread or systematic attack directed against a civilian population;

- Multiple acts of rape, sexual enslavement, persecution, forced disappearance, torture, and inhumane treatment;

- Intent and knowledge of participation in a coordinated scheme of human rights abuse;

- State complicity and private sector collusion through abuse of law enforcement, courts, and international boundaries to further the criminal enterprise;

- Purposeful denial of remedies, access to justice, and restoration, perpetuating ongoing suffering.

6. The acts committed were not isolated: they were repeated across jurisdictions (U.S. and Canada), involved collusion among private firms, lawyers, state officials, and judges, and were motivated by financial greed, discrimination, retaliation, and silencing.

## IV. SPECIFIC CONDUCT SUPPORTING THIS CLAIM

7. The following constitute acts of crimes against humanity within the meaning of customary international law:

- Trafficking, rape, and sexual slavery perpetrated and covered up by Michael Goguen, funded by Sequoia Capital, and laundered through law firms and shell entities (Art. 7(1)(c), (g));

- State-enabled persecution through court systems—judicial sabotage, false designations, gag orders, malicious prosecution, and enforced disappearance of Plaintiff's identity and voice (Art. 7(1)(h), (i));

- Torture through legal abuse, forced pro se status, obstruction of medical care, trauma therapy, and ongoing threats to Plaintiff's life and liberty (Art. 7(1)(f), (k));

- Systemic gender-based violence and racial targeting of Plaintiff as a Black woman and trafficking survivor—targeted to deny her legal protection, identity, dignity, and redress (Art. 7(1)(h));

- Use of legal systems as weapons—fabricating court orders, freezing assets, coercing silence through economic duress and digital surveillance, all to facilitate continued enterprise crimes and evade justice (Art. 7(1)(k)).

## V. LEGAL BASIS

8. These violations are justiciable in U.S. federal courts under:

- 28 U.S.C. § 1350 (Alien Tort Statute);

- Filártiga v. Peña-Irala, 630 F.2d 876 (2d Cir. 1980);

- Sosa v. Alvarez-Machain, 542 U.S. 692 (2004);

- Customary International Law recognized by the United Nations, including the Universal Declaration of Human Rights, CEDAW, Palermo Protocol, and Rome Statute;

- The U.S. Constitution, which prohibits cruel and unusual punishment, denial of due process, and equal protection.

9. The United States has a duty under jus cogens norms to prevent, punish, and provide redress for crimes against humanity, regardless of domestic jurisdictional defenses raised by Defendants.

## VI. DAMAGES

10. As a result of Defendants' crimes against humanity, Plaintiff has suffered:

- Permanent psychological trauma, CPTSD, and suicidal ideation;

- Physical injuries and denial of critical medical care;

- Total collapse of financial and personal security;

- Social, legal, and judicial erasure;

- Exposure to violence, death threats, stalking, and forced invisibility.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages: $250,000,000.00 USD for physical, psychological, and emotional suffering;

b. Special Damages: $25,000,000.00 USD for medical care, secure relocation, trauma therapy, and protective services;

c. Punitive and Exemplary Damages: $500,000,000.00 USD to punish and deter future crimes against humanity committed by private entities and legal actors;

d. Equitable and Declaratory Relief:

- Full vacatur of all fraudulent orders, contracts, and proceedings facilitating these violations;

- Restitution of all converted, seized, or hidden assets;

- Declaratory judgment affirming that Defendants' acts constitute crimes against humanity under customary international law;

e. Emergency Injunctive Relief: For Plaintiff's security, medical care, and relocation;

f. Referral to International Authorities: Including the U.N. Special Rapporteurs on Torture, Human Trafficking, and Violence Against Women, and to the Office of the Prosecutor of the International Criminal Court (ICC) for investigation and potential prosecution;

g. Attorneys' Fees, Litigation Costs, and Expert Fees;

h. Pre- and Post-Judgment Interest at the legal rate of 10% per annum, compounded annually;

i. Any further relief this Honourable Court may deem just, proper, and necessary under U.S., Canadian, and international law.


# VII. REPUTATIONAL & PRIVACY TORTS

**COUNT FORTY-TWO: DEFAMATION**

*(Supreme, Severe, Comprehensive, and Infallible Federal Count)*

Four-Prong Jurisdictional Theory: Texas (origin of harm and trafficking), California (site of coerced agreements, rape, stalking, and judicial sabotage), New York (media publication, financial exploitation, stalking, defamation), Florida (retaliatory stalking, false reports, and publication of defamatory information during refuge and recovery).

Against: Vox Media, The New York Post, Quinn Emanuel Urquhart & Sullivan LLP, Michael Lewis Goguen, Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter, Nemecek & Cole LLP, Patricia Glaser, Glaser Weil LLP, Jill Basinger, and all other co-conspirators to be named.

## I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber  Doe, , a Canadian citizen and internationally recognized survivor of transnational human trafficking, rape, coercion, and legal persecution, hereby repeats, realleges, and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

## II. JURISDICTION AND VENUE

This claim arises under the tort laws of Texas, California, New York, and Florida, with jurisdiction founded on:

- 28 U.S.C. § 1331 (federal question);

- 28 U.S.C. § 1367 (supplemental jurisdiction);

- Venue proper under 28 U.S.C. § 1391(b)(2) and (e), as a substantial part of the events —including publication, harm, and enterprise coordination—occurred in these jurisdictions.

Additionally, this cause implicates international human rights protections, including:

- Universal Declaration of Human Rights (Arts. 3, 5, 12, 17);

- CEDAW (Arts. 1, 2, 3, 12);

- Palermo Protocol (Art. 6, 9);

- Convention Against Torture (Art. 14).

## III. FACTUAL BASIS FOR DEFAMATION CLAIM

From 2014 to the present, Defendants, acting individually and in concert, disseminated false, malicious, and defamatory statements concerning Plaintiff via:

- Major media platforms and digital publications;

- Court pleadings and press releases strategically leaked to media;

- Legal briefs embedded with falsehoods, republished in online and offline news sources.

False and malicious claims included:

- Fabrication of rape and trafficking allegations;

- Accusations of mental instability and dangerousness;

- Labeling Plaintiff as a vexatious litigant and extortionist;

- Allegations of criminal conduct including blackmail and fraud;

- Defamation of all litigation and whistleblower activity as meritless.

These statements were published:

- In Texas to local legal and professional communities;

- In California through coordinated litigation and court manipulation;

- In New York via national outlets including *The New York Post* and Vox Media;

- In Florida, where defamatory content was circulated during Plaintiff's post-trafficking recovery and used to justify retaliatory law enforcement action and denial of victim services.

## IV. DEFENDANTS' ROLE IN DEFAMATORY SCHEME

- Vox Media & The New York Post: Published malicious falsehoods without verification, knowingly relying on leaks from hostile counsel and sealed legal documents.

- Quinn Emanuel LLP: Deployed sealed court documents and litigation strategy to defame Plaintiff under color of law.

- Michael Goguen: Orchestrated and financed the smear campaign across all four jurisdictions.

- Doolittle, Quinn, Van Dalsem, Batter: Authored pleadings that seeded the media with defamatory content.

- Glaser Weil LLP, Glaser, Basinger: Embedded falsehoods in judicial documents and spread them extra-judicially.

- Nemecek & Cole LLP: Disseminated false claims in legal circles, media contacts, and coordinated with law enforcement to stigmatize Plaintiff in Florida.

V. ELEMENTS OF DEFAMATION IN FOUR STATES

A. Texas Law – *WFAA-TV v. McLemore*, 978 S.W.2d 568 (Tex. 1998):

- False and defamatory statements published;

- Made with fault (malice);

- Resulted in reputational and emotional harm.

B. California Law – *Smith v. Maldonado*, 72 Cal.App.4th 637 (1999):

- Published unprivileged falsehoods with malice;

- Resulted in career, emotional, and reputational harm.

C. New York Law – *Gross v. New York Times*, 82 N.Y.2d 146 (1993):

- Per se defamation includes false allegations of criminality, fraud, and mental illness;

- Higher standard (actual malice) met due to Plaintiff's public whistleblower status.

D. Florida Law – *Larsen v. Nova Southeastern Univ.*, 154 So.3d 482 (Fla. 4th DCA 2015); Fla. Stat. § 770.01 et seq.:

- • False statement of fact published to third parties;

- • Clear identification of Plaintiff as the subject;

- • Resulted in damage to reputation, safety, and access to services and justice.

## VI. DAMAGES AND CATASTROPHIC CONSEQUENCES

As a direct and foreseeable result, Plaintiff suffered:

- • Reputational destruction in Texas, California, Florida, and New York, including blacklisting from medical care, shelter access, and professional networks;

- • Severe psychological trauma: CPTSD, suicidality, isolation, identity erasure;

- • Professional annihilation: Contracts terminated, grants canceled, barred from advocacy spaces;

- • Stalking and endangerment: Florida-based smear campaigns led to shelter evictions and denial of services;

- • Legal sabotage: Federal and state courts denied relief based on false and defamatory records seeded by Defendants.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally:

a. General Damages: $193,577,054.22 USD for psychological injury, reputational destruction, and social erasure;
b. Special Damages: $10,000,000.00 USD for trauma care, safe relocation, and counter-defamation support;
c. Lost Earnings: $10,000,000.00 USD for professional destruction;
d. Punitive Damages: $500,000,000.00 USD for malicious defamation and abuse of power;
e. Interest (10% annually, compounded since May 23, 2014), under:

- • Ontario Courts of Justice Act, s. 128(1);

- • N.Y. CPLR § 5001;

- • Fla. Stat. § 55.03;

- Cal. Civ. Code § 3287.
  f. Injunctive Relief:

- Takedown of defamatory materials;

- Public retraction and apology;

- Prohibition on further media attacks or defamatory litigation.
  g. Declaratory Relief:

- Legal finding of malicious defamation;

- Declaration of retaliatory abuse against a trafficking survivor.
  h. Costs of Suit: Full legal, security, forensic, and relocation costs;
  i. Further Equitable Relief: As this Court deems just under U.S. federal law, Florida, Texas, California, and New York tort law, and international human rights instruments.

## COUNT FORTY-THREE: INVASION OF PRIVACY

(Against: *Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Two Bear Ranch, Quinn Emanuel Urquhart & Sullivan LLP, Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter, Patricia Glaser, Glaser Weil LLP, Jill Basinger, Rivers Morrell, Gregory Brown, William Paoli, Paoli & Purdy LLP, Bisnar Chase LLP, Brian Chase, Scott Ritsima, Richard Sherman, Sherman Law LLP, Nemecek & Cole LLP, Michael Strickland, Sitrick & Company, Christopher Reynolds, Estate of David Fechheimer, and all individually named and co-conspiring defendants)*)

## I. INCORPORATION OF PRIOR ALLEGATIONS

1. Plaintiff Amber  fully incorporates and re-alleges all preceding paragraphs and causes of action in this Complaint as though fully set forth herein.

## II. LEGAL BASIS FOR CLAIM

2. This claim arises under:

   ◦ U.S. common law of invasion of privacy, including:

- ▪ *Intrusion upon seclusion*;

- ▪ *Public disclosure of private facts*.

- ○ Restatement (Second) of Torts §§ 652A–E, as adopted by federal and New York courts.

- ○ Fourth and Fourteenth Amendments of the U.S. Constitution, as incorporated through 42 U.S.C. § 1983.

- ○ Canadian Tort Law, as affirmed in *Jones v. Tsige*, 2012 ONCA 32.

- ○ International Human Rights Law, including:

  - ▪ *Universal Declaration of Human Rights* (Art. 12, 17);

  - ▪ *International Covenant on Civil and Political Rights* (Art. 17);

  - ▪ *CEDAW* and the *Palermo Protocol*.

## III. FACTUAL ALLEGATIONS

### A. Physical Surveillance and Stalking

3. Defendants, acting in concert, retained private security firms and intelligence contractors—including *Christopher Reynolds*, the *Estate of David Fechheimer*, and Sitrick-affiliated contractors—to follow, intimidate, and surveil Plaintiff across U.S., Canadian, and international borders.

### B. Digital Espionage and Hacking

4. *Goguen*, *Sequoia Capital*, *Quinn Emanuel*, and associated law firms authorized and orchestrated the hacking of Plaintiff's:

- ○ Email accounts;

- ○ Cloud storage (iCloud, Google Drive);

- ○ Encrypted legal case files;

- ○ Confidential medical and psychiatric data.

5.  Defendants used fraudulent subpoenas and ex parte motions to acquire Plaintiff's IP logs and confidential correspondence with attorneys and physicians.

C. Medical and Financial Invasion

6.  *Michael Goguen*, with aid from *Diane Doolittle*, *Glaser Weil LLP*, and others, illegally accessed and circulated:

    ◦   Plaintiff's medical files (including records of gynecological trauma from rape);

    ◦   Psychiatric assessments;

    ◦   Surgical photographs;

    ◦   Financial trust data.

7.  *Two Bear Capital* and *Quinn Emanuel* enforced fraudulent Mareva injunctions that froze Plaintiff's accounts and exposed her to eviction, hunger, and loss of legal counsel.

D. Media Dissemination and Defamation

8.  Defendants engaged *Sitrick & Company*, *Michael Strickland*, and *Vox Media* to seed defamatory, humiliating falsehoods about Plaintiff in public platforms, portraying her as:

    ◦   Mentally unstable;

    ◦   Racist

    ◦   A prostitute;

    ◦   A criminal/extortionist.

9.  These stories were released knowing Plaintiff was a recognized human trafficking survivor and legal whistleblower.

E. Sexual Privacy Violations

10. Defendants republished and broadcast, without consent, graphic details of:

    ◦   Plaintiff's rape injuries;

- ◦ HPV exposure;

- ◦ Reproductive trauma;

- ◦ Sexual violence.

## IV. ELEMENTS OF INVASION OF PRIVACY ESTABLISHED

11. Defendants:

- Intentionally intruded upon Plaintiff's seclusion and private life;

- Publicly disclosed private, intimate facts with no public interest;

- Acted with actual malice, fraud, and criminal intent;

- Engaged in conduct that would offend any reasonable person.

12. Their actions meet the thresholds for both:

- *Intrusion upon seclusion* (covert surveillance, hacking, illegal data acquisition);

- *Public disclosure of private facts* (sexual trauma, psychiatric data, reputational ruin).

## V. DAMAGES

13. As a direct and proximate result of Defendants' intentional and malicious conduct, Plaintiff has suffered:

- Emotional and Psychological Harm:

  - ◦ Complex- PTSD, panic attacks, Anxiety, Parasomnia, depression, suicidal ideation.

- Reputational and Economic Loss:

  - ◦ Total loss of income, housing, and professional standing.

- Physical Endangerment:

  - ◦ Exposure to stalking, sexual violence, and retaliation.

- Constitutional and Human Rights Deprivation:
  - Loss of dignity, privacy, and bodily autonomy.

## VI. RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants, jointly and severally, as follows:

A. General Damages
$154,639,535.77 USD for emotional distress, reputational damage, and deprivation of liberty.

B. Special Damages
$10,000,000.00 USD for therapy, relocation, medical, and protective services.

C. Loss of Earnings
$10,000,000.00 USD for professional destruction and lost future income.

D. Prejudgment Interest
10% compound interest annually from May 23, 2014, until judgment.

E. Punitive and Aggravated Damages
No less than $500,000,000.00 USD to punish willful, malicious privacy violations.

F. Injunctive Relief

- Cease and desist orders;

- Permanent removal of all defamatory and unlawfully obtained content;

- Ban on future contact, surveillance, or digital intrusion.

G. Declaratory Relief
Declaration that Defendants violated Plaintiff's U.S. constitutional rights, international human rights, and privacy protections.

H. Costs of Suit
Full attorneys' fees, expert witness costs, investigation expenses, and protection services.

I. Further Relief

Any additional relief this Court deems just, proper, and necessary to remedy the unprecedented violations of law and humanity.

**COUNT FORTY-FOUR : STALKING**

(Against: Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Two Bear Ranch, Christopher Reynolds, Estate of David Fechheimer, Diane Doolittle, Bruce Van Dalsem, Kyle Batter, John Quinn, Quinn Emanuel Urquhart & Sullivan LLP, and all co-conspirators known and unknown)

I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber  Doe, , a Canadian national and internationally recognized survivor of transnational human trafficking, rape, coercion, and retaliatory abuse, hereby realleges and incorporates by reference all prior paragraphs of this Complaint as though fully set forth herein.

II. JURISDICTIONAL STRATEGY

This Count is pleaded under a Four-Prong Jurisdictional Strategy:

- Texas – Origin site of trafficking, grooming, coercion, and surveillance;

- California – Epicenter of legal abuse, sexual violence, stalking, electronic stalking, and fraudulent litigation;

- New York – Traffciking, Site of financial coercion, retaliatory enforcement, surveillance, media defamation, and unlawful record tampering;

- Florida – Stalking and surveillance continued after contractual coercion; location of billionaire co-conspirators and coordinated retaliation using Miami-based affiliates.

III. LEGAL BASIS FOR STALKING CLAIM

This Count arises under a hybrid foundation of federal law, constitutional guarantees, state statutory and common law (Texas, California, New York, Florida), and binding international human rights law. Defendants' conduct constitutes civil stalking, as defined and actionable under:

- Federal Law
  - 18 U.S.C. § 2261A (Interstate Stalking)
  - 42 U.S.C. § 1983 (Color of Law / State Collusion)
- U.S. Constitutional Law
  - First Amendment – Retaliation and suppression of protected speech
  - Fourth Amendment – Invasion of privacy and unlawful surveillance
  - Fourteenth Amendment – Equal protection and liberty deprivation
- Florida Law
  - Fla. Stat. § 784.048(2), (5) – Civil and criminal stalking, including cyberstalking, actionable by private civil complaint
- Texas Law
  - Texas Penal Code § 42.072 – Criminal Stalking
  - Civil cause: *Patel v. Hussain*, 485 S.W.3d 153 (Tex. App. – Houston [14th Dist.] 2016)
- New York Law
  - N.Y. Penal Law §§ 120.45–120.60 – Criminal stalking (Degrees 1–4)
  - Common law tort – Stalking / IIED recognized
- California Law
  - Civil stalking and tortious harassment actionable via *People v. Borrelli*, 77 Cal. App. 4th 703 (2000)
- International Human Rights Law
  - UDHR – Articles 1, 3, 5, 12

- ◦　ICCPR – Articles 7, 9, 17

- ◦　CEDAW – Articles 1–3, 12

- ◦　Palermo Protocol – Articles 6, 9 (survivor protection)

## IV. FACTUAL BASIS FOR STALKING CLAIM

From 2014 to the present, Defendants engaged in an unrelenting, malicious campaign of stalking, surveillance, and retaliatory coercion. Their tactics included:

### A. Physical Surveillance

- Deployment of private spies across TX, CA, NY, FL, and Canada;

- Presence at shelters, medical offices, and trauma clinics;

- Tracking Plaintiff to legal, therapeutic, and safe spaces.

### B. Electronic Surveillance & Cyberstalking

- Installation of GPS trackers and surveillance spyware;

- Hacking of email, cloud accounts, and legal correspondence;

- Use of fraudulently obtained subpoenas to access confidential records.

### C. Legal Abuse as a Tool of Stalking

- Quinn Emanuel and co-defendants used litigation as pretext for surveillance;

- Fabricated pleadings, secret hearings, and ex parte orders to intimidate;

- Sham subpoenas used to gain access to privileged data.

### D. Threats and Intimidation

- Repeated threats of rape, institutionalization, and assassination;

- Doxxing, defamatory media leaks, social media stalking;

- Visible surveillance and fear tactics to destabilize Plaintiff.

### E. Retaliatory Conspiracy

- Threats and harassment engineered to force pro se litigation and obstruct justice;

- Public campaigns via private PR firms (e.g., Sitrick & Co.) to defame Plaintiff;

- Use of civil courts in TX, CA, FL, and NY to enforce fraudulent orders.

## V. ELEMENTS OF STALKING — MET

1. **Course of Conduct:** Sustained, coordinated acts across jurisdictions and time;

2. **Malicious Intent:** Purposeful acts to surveil, defame, and destroy Plaintiff's legal, physical, and psychological safety;

3. **No Legal Justification:** Abuse of legal process and surveillance without any privileged or lawful basis;

4. **Resulting Harm:** Documented psychiatric harm, physical danger, and deprivation of liberty.

## VI. DAMAGES

As a direct and proximate result of the stalking campaign, Plaintiff suffered:

- Complex PTSD, insomnia, memory loss, emotional dysregulation, and suicidal ideation;

- Displacement, housing insecurity, and loss of all professional income;

- Loss of legal counsel and disruption of every ongoing legal proceeding;

- Threats to life, destruction of reputation, and irreversible psychological damage.

## VII. PRAYER FOR RELIEF

Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

a. General Damages
$154,639,535.77 USD for psychological, emotional, reputational, and privacy-related harms

b. Special Damages
$10,000,000.00 USD for relocation, trauma recovery, physical protection infrastructure

c. Lost Earnings
$10,000,000.00 USD due to stalking-based career annihilation and forced displacement

d. Punitive Damages
Not less than $500,000,000.00 USD for willful, malicious, and retaliatory stalking

e. Interest
10% annually, compounded from May 23, 2014, pursuant to:

- Ontario Courts of Justice Act, § 128(1)

- NY CPLR § 5001

- *Bank of America Canada v. Mutual Trust Co.*, 2002 SCC 43

f. Permanent Injunction

- No contact, no surveillance, no litigation or service attempts without leave of court

- Cease all digital, physical, or legal stalking

g. Court-Ordered Protection

- Emergency housing, medical care, and trauma-informed accommodations

h. Declaratory Judgment
That Defendants' acts constitute criminal and civil stalking in violation of U.S., state, and international law

i. Costs of Suit
All costs, security, expert witness fees, and protective services incurred due to this campaign

j. Further Relief
Any other equitable, protective, declaratory, or emergency relief the Court deems just and necessary to preserve Plaintiff's safety, liberty, dignity, and access to redress

# VIII. OTHER CLAIMS : CROSS-BORDER / SUPPLEMENTAL (ATS)

## COUNT FORTY-SIX: VIOLATION OF THE CONSTITUTION OF CANADA

(Against: Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Two Bear Ranch, Quinn Emanuel Urquhart & Sullivan LLP, Glaser Weil LLP, Goodwin Procter LLP, Wilson Sonsini Goodrich & Rosati LLP, and all individually named co-Defendants)
*(Asserted via 28 U.S.C. § 1367 (supplemental jurisdiction) and/or 28 U.S.C. § 1350 (Alien Tort Statute))*

## I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber  hereby re-alleges and incorporates by reference all preceding paragraphs, counts, and factual assertions as though fully set forth herein.

## II. LEGAL BASIS FOR CLAIM

This Cause of Action arises under the Constitution of Canada, including the Canadian Charter of Rights and Freedoms, which protects citizens and  non-citizens within Canadian jurisdiction and whose violations may be actionable in U.S. courts under the Alien Tort Statute (ATS) or under supplemental jurisdiction, where such violations arise from the same nucleus of operative fact as Plaintiff's federal claims.

The following provisions of the Canadian Charter of Rights and Freedoms have been systematically violated by Defendants:

- Section 7 – Right to life, liberty, and security of the person, and the right not to be deprived thereof except in accordance with the principles of fundamental justice;

- Section 12 – Right to be free from cruel and unusual treatment or punishment;

- Section 15 – Right to equality before and under the law and the right to equal protection and benefit of the law without discrimination;

- Section 24(1) – Right to an effective remedy where Charter rights have been infringed or denied.

## III. CONDUCT CONSTITUTING CONSTITUTIONAL VIOLATIONS

Defendants, individually and in concert, engaged in a deliberate, coordinated, and transnational scheme involving human trafficking, judicial fraud, systemic retaliation, and abuse of state power, resulting in the complete abrogation of Plaintiff's Charter-protected rights.

Specific acts by Defendants include:

- Violations of Section 7 (Life, Liberty, and Security of the Person)
  Through forced servitude, judicial sabotage, retaliatory litigation, fraudulent injunctions, surveillance, and systemic intimidation, Defendants deprived Plaintiff of her physical safety, medical freedom, bodily autonomy, legal redress, and ability to live freely without coercion.

- Violations of Section 12 (Cruel and Unusual Treatment)
  Plaintiff was subjected to rape, sodomy, psychological torture, coerced labor, medical abuse, and unlawful confinement. These acts, orchestrated or facilitated by Defendants, constitute cruel and unusual treatment under Canadian and international law.

- Violations of Section 15 (Equality Rights)
  Plaintiff was systematically denied equal protection and access to justice due to her gender, racial background, socioeconomic vulnerability, and survivor status. Defendants exploited her status as a trafficking victim to strip her of legal standing, credibility, and personhood.

- Violations of Section 24 (Remedies Clause)
  Defendants obstructed every meaningful legal avenue of redress through fraudulent restraining orders, secret hearings, perjured affidavits, denial of fee waivers, bribery of judges, and collusion with Canadian courts and officials. Plaintiff was effectively denied access to any impartial judicial process in Ontario, despite clear evidence of criminal and constitutional violations.

This unlawful conduct occurred within the jurisdiction of Canadian courts and government actors, and was financed, directed, or supported from within the United States. The transnational nature of the conspiracy brings this claim within the scope of

the Alien Tort Statute and the Court's supplemental jurisdiction under 28 U.S.C. §
1367.

## IV. DAMAGES

As a direct and proximate result of the above-described violations of the Canadian
Constitution, Plaintiff has suffered:

- Complete loss of her liberty, safety, and bodily autonomy;

- Severe and ongoing PTSD, emotional trauma, and psychiatric injury;

- Medical harm and denial of critical healthcare access;

- Destruction of personal, professional, and legal rights;

- Reputational annihilation, economic devastation, and systemic silencing.

## V. PRAYER FOR RELIEF — COUNT FORTY-SIX

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly
and severally, and requests the following relief:

A. General Damages
In the amount of $154,639,535.77 USD/CAD for severe emotional distress,
deprivation of liberty, and physical and psychological harm.

B. Special Damages
In the amount of $10,000,000.00 USD/CAD for medical treatment, therapy, security,
housing, and survivor services.

C. Loss of Earnings
In the amount of $10,000,000.00 USD/CAD for loss of income, business opportunities,
and financial independence.

D. Compound Interest
At a rate of 10% per annum, compounded annually from May 23, 2014, to the date of
judgment.

E. Punitive and Exemplary Damages
No less than $500,000,000.00 USD, to punish and deter Defendants' egregious constitutional misconduct and willful disregard of human dignity.

F. Treble Damages
As permitted under applicable U.S. and Canadian statutes, including but not limited to the Civil RICO Act, the Ontario Tort of Human Trafficking Act, and the Canadian Victims Bill of Rights.

G. Attorneys' Fees and Costs of Suit
Including expert witness fees, document recovery, forensic investigation, emergency medical shelter, and protective relocation.

H. Permanent Injunctive Relief
Enjoining all Defendants from engaging in any further retaliation, surveillance, obstruction, or abuse against Plaintiff.

I. Accounting and Disgorgement
Of all profits, proceeds, assets, and benefits derived from the human trafficking enterprise, judicial corruption, and systemic abuse.

J. Declaratory Relief
Declaring that Defendants' acts constitute violations of the Canadian Charter of Rights and Freedoms, international human rights law, and fundamental constitutional guarantees.

K. Any and All Further Relief
As this Honourable Court deems just, equitable, and necessary in the interest of justice, public safety, and international accountability.


**COUNT FORTY-SEVEN: VIOLATION OF THE CANADIAN VICTIMS BILL OF RIGHTS**

(Pursuant to the Canadian Victims Bill of Rights, S.C. 2015, c. 13)
(Asserted via 28 U.S.C. § 1350 (Alien Tort Statute) and/or 28 U.S.C. § 1367 (Supplemental Jurisdiction))

AGAINST:
Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Two Bear Ranch, Quinn Emanuel Urquhart & Sullivan LLP, Diane Doolittle, John Quinn, Bruce Van Dalsem,

Kyle Batter, Glaser Weil LLP, Patricia Glaser, Jill Basinger, William Paoli, Paoli & Purdy LLP, Bisnar Chase LLP, Brian Chase, Scott Ritsima, Richard Sherman, Sherman Law, Gregory Brown, Brown & Charbonneau LLP, Goodwin Procter LLP, Anthony McCusker, Wilson Sonsini Goodrich & Rosati LLP, and DOES 1–100.

## I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber  hereby repeats, realleges, and incorporates by reference all preceding paragraphs, factual allegations, and Counts as though fully set forth herein.

## II. LEGAL BASIS FOR CLAIM

This Cause of Action arises under the Canadian Victims Bill of Rights (CVBR), S.C. 2015, c. 13, which recognizes and affirms the rights of crime victims in Canada. The statute guarantees enforceable rights to protection, participation, information, restitution, and remedy.

Because Plaintiff's harms were directly caused by acts of transnational abuse, trafficking, and systemic obstruction—including events occurring within Canada and affecting Plaintiff as a trafficking survivor—the SDNY may properly exercise jurisdiction under:

- The Alien Tort Statute (28 U.S.C. § 1350), permitting claims for violations of international norms of justice and dignity;

- Supplemental Jurisdiction (28 U.S.C. § 1367), as the same facts underlie Plaintiff's U.S. constitutional, TVPRA, and RICO claims.

## III. VIOLATIONS OF SPECIFIC RIGHTS UNDER THE CVBR

The Defendants, acting individually and in concert, committed gross and systemic violations of the CVBR, including but not limited to the following:

- Section 8 – Right to Information:
  Defendants deliberately concealed the status, outcome, and contents of legal proceedings in Canada and the U.S. Plaintiff was denied access to court records, decisions, and notices, while secret ex parte judgments were entered that directly harmed her legal and personal interests.

- Section 9 – Right to Protection:
  Defendants facilitated ongoing surveillance, harassment, intimidation, and retaliation against Plaintiff in Canada and the U.S. They colluded to obstruct criminal complaints, undermined investigations into trafficking, and exploited judicial and law enforcement agencies to maintain Plaintiff's exposure to violent danger.

- Section 10 – Right to Participation:
  Plaintiff was barred from hearings, her filings were sealed or rejected, and judicial actors colluded with defense counsel to block her meaningful participation in the legal system. Her status as a trafficking survivor was ignored or weaponized against her.

- Section 16 – Right to Restitution and Remedy:
  Through fraudulent Mareva injunctions, denial of fee waivers, abuse of process, and secret judgments, Defendants intentionally denied Plaintiff access to legal counsel, remedies, compensation, and enforcement of her basic human rights. Her $40 million settlement was stolen, and every route to recovery was obstructed.

## IV. NATURE OF DEFENDANTS' CONDUCT

The actions of Defendants were deliberate, retaliatory, and malicious, and carried out with full awareness of Plaintiff's vulnerable status as a victim of human trafficking, sexual violence, and systemic exploitation. Rather than protect her rights under the CVBR, Defendants conspired to erase them.

The pattern of obstruction and abuse included:

- Repeated fraud upon the court in Ontario and California;

- Collusion with Canadian and U.S. judges and state actors to sabotage due process;

- Active interference with police and RCMP investigations;

- Harassment and surveillance of Plaintiff while litigating pro se under fear of death.

## V. DAMAGES

As a direct and proximate result of the violations of the Canadian Victims Bill of Rights, Plaintiff has suffered catastrophic and continuing harm, including:

- Severe psychological trauma, PTSD, and emotional distress;

- Physical injury and deprivation of necessary medical treatment;

- Loss of career, housing, income, and basic security;

- Continued threats to her safety, liberty, and life;

- Deprivation of access to justice and irreparable reputational harm.

## VI. PRAYER FOR RELIEF ~ COUNT FORTY-SEVEN

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all named Defendants, jointly and severally, and grant the following relief:

A. General Damages
In the amount of $193,577,054.22 USD/CAD, for the full extent of Plaintiff's emotional, physical, and reputational injuries caused by Defendants' systemic denial of her rights.

B. Special Damages
In the amount of $10,000,000.00 USD for medical care, psychiatric treatment, security measures, survivor recovery, and therapeutic services.

C. Loss of Earnings
In the amount of $10,000,000.00 USD for destruction of Plaintiff's career, opportunities, and earning potential.

D. Prejudgment and Post-Judgment Interest
At a rate of 10% per annum, compounded annually, from May 23, 2014, to the date of final judgment.

E. Punitive and Exemplary Damages
To be determined at trial but not less than $500,000,000.00 USD, based on the willful, egregious, and repeated violations of Plaintiff's statutory and human rights.

F. Attorneys' Fees and Legal Costs
Including forensic investigation, protective services, relocation assistance, and expert witness expenses.

G. Equitable Relief
An injunction prohibiting Defendants from continued retaliation, obstruction, or denial of Plaintiff's rights under the CVBR and international law.

H. Declaratory Relief
Declaring that Defendants' actions constitute violations of the Canadian Victims Bill of Rights, the law of nations, and internationally recognized human rights protections.

I. Such Further and Additional Relief
As this Honourable Court may deem just, equitable, and necessary in the interests of justice, deterrence, and the public conscience.

## COUNT FORTY-EIGHT: UNJUST ENRICHMENT

(Four-Prong Jurisdiction: Texas, California, New York, Florida)
Against: *Quinn Emanuel Urquhart & Sullivan LLP, Wilson Sonsini Goodrich & Rosati LLP, Goodwin Procter LLP, Nemecek & Cole LLP, Sherman Law, Glaser Weil LLP, Paoli & Purdy LLP, Bisnar Chase LLP, Rivers Morrell, Diane Doolittle, Anthony McCusker, Patricia Glaser, Jill Basinger, William Paoli, Ryan Baker, Michael Strickland, Sitrick & Company, Chris Reynolds, Brian Nash, Michael Feenberg, Michael McCarthy, Mark Schaeffer, Michael Frederick Grady, Bruce Eric Van Dalsem, John Quinn, Kathleen Sullivan, Christopher Taybak, William C. Price, Mark Holsher, Suong Nguyen, Joseph Sarles, Megan M. Kerr, Patrick Doolittle, Margaret Caruso, Michael Lifrack, Sara Pollack, Jonathan B. Cole, Frank Nemecek, Marshall Cole, Joseph W. Scott, Alex Gerbi, Ted Greeno, Aiden O'Rourke, and all co-conspirators known and unknown*

I. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber  Doe, , an internationally recognized survivor of transnational trafficking, sexual slavery, and judicial retaliation, hereby re-alleges and incorporates by reference all preceding paragraphs, factual allegations, and Causes of Action as though fully set forth herein.

II. LEGAL BASIS FOR CLAIM

This Count arises under a comprehensive matrix of equity and common law across all four jurisdictions, federal law, and international human rights instruments, including but not limited to:

- Texas Law: *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39 (Tex. 1992); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881 (Tex. 1998)

- California Law: *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583 (2008)

- New York Law: *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173 (2011)

- Florida Law: *Golden v. Woodward*, 15 So.3d 664 (Fla. Dist. Ct. App. 2009)

- Restatement (Third) of Restitution and Unjust Enrichment, §§ 1, 3

- Alien Tort Statute, 28 U.S.C. § 1350

- Palermo Protocol, UDHR, and CEDAW, where unjust enrichment is directly tied to forced labor, systemic rape, legal coercion, and deprivation of access to redress.

## III. FACTUAL ALLEGATIONS

Defendants knowingly accepted and retained financial, reputational, and institutional gains derived from Plaintiff's coerced legal entrapment, sexual servitude, and legal annihilation. These ill-gotten gains include:

- Legal fees paid under duress, including through compelled settlements and involuntary representation;

- Fraudulent clawbacks from the $40,000,000 Goguen settlement initiated under false pretenses;

- Judgment enforcement from courts operating under bribery, perjury, and coercion;

- Retainer profits and billable hours accrued while knowingly perpetuating a trafficking cover-up.

Each Defendant:

- Knew Plaintiff was trafficked and under coercion;

- Accepted funds from litigation efforts weaponized to destroy her credibility and autonomy;

- • Refused to return funds or acknowledge wrongful gain, despite international protections for trafficking survivors.

## IV. ELEMENTS OF UNJUST ENRICHMENT — SATISFIED ACROSS ALL JURISDICTIONS

To establish unjust enrichment, Plaintiff must prove:

1. **A Benefit Conferred:** Plaintiff paid retainers, suffered asset seizures, and was forced into coerced settlements and judgments that directly funded Defendant institutions;

2. **Awareness & Acceptance:** Defendants were aware of her status as a trafficked, abused, and silenced victim, yet proceeded with enforcement and billing;

3. **Inequity of Retention:** Retention of funds obtained through coercion, rape, judicial sabotage, and international law violations is categorically unjust.

Each prong is met in Texas, California, New York, and Florida, and meets international customary law standards for restitution against non-consensual economic exploitation.

## V. DAMAGES

As a direct and proximate result of Defendants' unlawful enrichment, Plaintiff has suffered:

- • Economic immiseration and inability to secure basic needs;

- • Total legal and vocational destruction;

- • Psychological torment caused by the monetization of her exploitation.

## VI. RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

A. Restitution & Disgorgement
Of all legal fees, clawbacks, bribes, and funds received—no less than $40,000,000.00 USD;

B. General Damages
$193,577,054.22 USD for economic devastation, lost restitution, and emotional anguish;

C. Special Damages
$10,000,000.00 USD for trauma therapy, emergency protection, and safe housing;

D. Lost Earnings
$10,000,000.00 USD for loss of livelihood, career, and access to independent survival;

E. Pre- and Post-Judgment Interest
10% compound annual interest from May 23, 2014, pursuant to:

- *Texas Finance Code § 302.002*;

- *New York CPLR § 5001*;

- *Ontario Courts of Justice Act § 128(1)*;

F. Punitive Damages
No less than $500,000,000.00 USD for egregious, malicious enrichment by legal elites;

G. Constructive Trust & Equitable Lien
Over all funds, assets, and properties purchased or enhanced with tainted proceeds;

H. Permanent Injunction
Enjoining Defendants from:

- Retaining or transferring proceeds of unjust enrichment;

- Filing retaliatory actions or contacting Plaintiff;

- Committing further acts of concealment or obstruction;

I. Costs of Suit
All litigation, investigative, and protective costs, including trauma recovery and attorney's fees;

J. Other Relief
All further relief this Court deems just, equitable, and necessary under the laws of the United States, Texas, California, New York, Florida, and binding international human rights law.

**COUNT FORTY-NINE: CIVIL THEFT**

(Against: Michael Lewis Goguen, Sequoia Capital, Two Bear Capital, Two Bear Ranch, Quinn Emanuel Urquhart & Sullivan LLP, Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter, Patricia Glaser, Glaser Weil LLP, Jill Basinger, William Paoli, Paoli & Purdy LLP, Nemecek & Cole LLP, Brian Chase, Scott Ritsima, Richard Sherman, Sherman Law, Goodwin Procter LLP, Wilson Sonsini Goodrich & Rosati LLP, Anthony McCusker, and all other individually named Defendants)

## I. INCORPORATION BY REFERENCE

Plaintiff Amber  re-alleges and incorporates by reference all prior allegations, Counts, and factual assertions as if fully set forth herein.

## II. LEGAL BASIS

This claim arises under the civil law of theft and conversion as recognized by:

- New York common law (*LoPresti v. Terwilliger*, 126 F.3d 34 (2d Cir. 1997); *Lundy v. Hochberg*, 202 A.D.3d 716 (2d Dep't 2022));

- California Penal Code §§ 484–487, 496, for extraterritorial predicate acts;

- Tort of Conversion and Theft under Canadian common law;

- Canadian Criminal Code (R.S.C. 1985, c. C-46), including §§ 322 (Theft), 380 (Fraud), and 361 (False Pretenses);

- 18 U.S.C. § 1962(c), (d) (RICO), civil theft as predicate act;

- 18 U.S.C. § 1595(a) (TVPRA) — theft in the context of human trafficking;

- International law, including the Universal Declaration of Human Rights (Art. 3, 8, 17), ICCPR, and the Palermo Protocol.

## III. FACTUAL ALLEGATIONS

Defendants engaged in intentional, knowing, and malicious appropriation of Plaintiff's tangible and intangible property for their own use and benefit, without Plaintiff's consent and under circumstances constituting criminal theft and conversion.

Specifically, Defendants took possession of:

A. Settlement Proceeds

The full $40,000,000 settlement from Michael Goguen, obtained under coercion, withheld by Quinn Emanuel and Sequoia-controlled attorneys, and never lawfully disbursed.

B. Legal and Medical Files

Plaintiff's confidential case files, attorney-client records, psychiatric evaluations, medical records, and evidentiary documents were stolen, withheld, destroyed, or used to sabotage litigation.

C. Asset Seizures

Personal funds, property, and savings held in Alberta, Canada, were frozen or seized under a fraudulent Mareva injunction issued ex parte via perjured affidavits orchestrated by Quinn Emanuel and Glaser Weil.

D. Evidence Suppression

Videos, witness statements, text messages, and forensic data corroborating Plaintiff's trafficking and abuse were intercepted, sealed, deleted, or sold to opposing parties.

E. Contractual Rights

Plaintiff's rights to perform, litigate, and recover were stolen via fraudulent stipulations, gag orders, and retaliation carried out by defense counsel acting as agents of Goguen and Sequoia.

IV. ELEMENTS OF CIVIL THEFT SATISFIED

Each Defendant:

- Intentionally took property belonging to Plaintiff;

- Had no legal right or consent to do so;

- Acted with knowledge and malice as part of a scheme to silence, dispossess, and obstruct Plaintiff;

- Has retained stolen property or profited therefrom without restitution.

Plaintiff has demanded return and redress, and Defendants have failed and refused to restore her stolen property.

The theft constitutes a pattern of racketeering and human rights abuse that is ongoing, retaliatory, and directly tied to the sexual exploitation, forced contracts, and extortion of a trafficking victim.

## V. DAMAGES

As a direct and proximate result of the civil theft, Plaintiff has suffered:

- Permanent loss of over $60 million in property and settlement assets;

- Destruction of her ability to recover, rebuild, or secure justice;

- Physical, psychological, and financial injury;

- Systemic deprivation of constitutional, civil, and economic rights.

## VI. PRAYER FOR RELIEF — COUNT FORTY-NINE

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against all named Defendants, jointly and severally, and award the following relief:

A. Restitution and Disgorgement
Return of the full $40,000,000 in settlement funds and all converted property.

B. General Damages
$193,577,054.22 USD/CAD for civil theft, trauma, dispossession, and obstruction.

C. Special Damages
$10,000,000.00 USD for therapy, security, medical recovery, and survivor protection.

D. Lost Earnings
$10,000,000.00 USD in career and future opportunity losses caused by theft and interference.

E. Punitive Damages
No less than $500,000,000.00 USD, based on the deliberate, repeated, and organized nature of Defendants' theft and criminal enterprise.

F. Prejudgment and Post-Judgment Interest
At 10% compound interest annually from May 23, 2014 to judgment.

G. Equitable Relief

- Imposition of a constructive trust over all property acquired with stolen funds;

- Permanent injunction against future theft, retaliation, or obstruction.

H. Costs of Suit
Including court fees, investigators, document forensics, data recovery, and protective security.

I. Other Relief
Any additional relief this Court deems just, necessary, and appropriate to restore equity and deter transnational legal predation.

## COUNT FIFTY: CONSPIRACY TO DEFRAUD THE SUPREME COURT OF CANADA AND OBSTRUCT JUSTICE

AGAINST:
Cory Gilmore, Barbara Conway, Quinn Emanuel Urquhart & Sullivan LLP, Michael Goguen,  Sequoia Capital, Lenczner Slaght LLP, Diane Moira Doolittle, Monique Jilesen, Sahar Talebi, John B Quinn, Kyle Batter, and all related legal agents and co-conspirators.

I. INCORPORATION OF PRIOR ALLEGATIONS

1.  The Plaintiff, Amber  , repeats, re-alleges, and incorporates by reference all preceding allegations, facts, and causes of action in this Statement of Claim as if fully set forth herein.

II. JURISDICTIONAL AND LEGAL BASIS

2.  This Count arises under:

- The common law tort of Civil Conspiracy (Hunt v. Carey Canada Inc., [1990] 2 SCR 959);

- The tort of Fraud on the Court (Maple Leaf Foods Inc. v. Schneider Corp. (1998), 42 OR (3d) 177 (CA));

- The Canadian Charter of Rights and Freedoms (Sections 7, 12, 15, and 24);

- International law obligations under the Universal Declaration of Human Rights, ICCPR, Palermo Protocol, and customary international law prohibiting obstruction of justice.

## III. CONSPIRACY TO DEFRAUD THE SUPREME COURT OF CANADA

3. The Defendants, including judicial officers, attorneys, and law firms, entered into an unlawful, coordinated conspiracy with the following objectives:

- To fabricate jurisdiction in Ontario;

- To pre-empt appellate review in California;

- To fraudulently enforce an invalid California judgment during its pending appeal;

- To circumvent statutory prohibitions on enforcement under California Code of Civil Procedure § 916;

- To fraudulently invoke Ontario Commercial List courts to enforce a judgment obtained through fraud upon California courts;

- To obstruct justice before the Supreme Court of Canada by suppressing exculpatory facts, jurisdictional defects, and California's statutory prohibitions on enforcement.

## IV. FACTUAL BACKGROUND OF THE FRAUD

4. The California judgment, obtained through extrinsic fraud, perjury, and judicial corruption, was actively under appeal.

5. Under California law, no judgment may be enforced while an appeal is pending. (California Code of Civil Procedure § 916).

6. Defendants Barbara Conway and Cory Gilmore knew:

- Plaintiff had not been lawfully served in Ontario;

- The Ontario Superior Court lacked personal jurisdiction over the Plaintiff;

- California law barred enforcement of the judgment pending appeal;

- The Mareva injunction directly prevented Plaintiff from funding her California appellate proceedings, obtaining medical care, or securing legal counsel.

7. Nevertheless, Conway, Gilmore, Quinn Emanuel, and Lenczner Slaght:

- Initiated fraudulent Mareva proceedings in Ontario;

- Executed ex parte administrative orders freezing Plaintiff's assets throughout Canada;

- Engaged in secret ex parte communications from the Ontario judicial bench email account, acknowledging improper service and lack of jurisdiction;

- Misrepresented these facts to the Supreme Court of Canada, suppressing the legal defects to shield their fraudulent Mareva orders from review.

## V. PARTICIPATION OF LEGAL CO-CONSPIRATORS

8. Quinn Emanuel Urquhart & Sullivan LLP, through John Quinn, Diane Doolittle, Bruce Van Dalsem, Kyle Batter, and other partners:

- Actively concealed the jurisdictional infirmities;

- Orchestrated the use of Ontario courts as a fraudulent collection arm for an unenforceable California judgment.

9. Lenczner Slaght LLP, through Monique Jilesen and Sahar Talebi:

- Participated directly in ex parte communications with Ontario judges;

- Misled the Commercial List Court regarding service, jurisdiction, and the status of the California appellate proceedings.

10. All Defendants acted willfully, knowingly, and maliciously to:

- Silence Plaintiff's claims;

- Eliminate her ability to challenge the underlying fraudulent judgment;

- Destroy her financial, medical, legal, and personal stability.

## VI. LEGAL VIOLATIONS AND ABUSES

11.  This conspiracy constitutes:

- Fraud on the Court;

- Civil Conspiracy to Obstruct Justice;

- Tortious Interference with Appellate Rights and Medical Care;

- Abuse of Process and Bad Faith Litigation Conduct;

- Misfeasance in Public Office (by Conway and Gilmore);

- Violations of Charter Sections 7, 12, 15, and 24;

- Violations of International Law under the Universal Declaration of Human Rights and ICCPR.

## VII. SEVERE AND CATASTROPHIC INJURIES CAUSED

12.  As a direct and proximate result of Defendants' conspiracy, Plaintiff suffered:

- Total loss of all financial assets and liquid capital;

- Forced homelessness and deprivation of safe housing;

- Denial of urgent, life-threatening medical surgeries and care;

- Inability to secure legal representation to defend pending appeals;

- Ongoing physical suffering, emotional trauma, financial ruin, reputational injury, and systemic deprivation of access to justice.

## VIII. DAMAGES AND RELIEF SOUGHT

WHEREFORE, Plaintiff demands judgment against all named Defendants, jointly and severally, as follows:

A. Compensatory Damages

- General damages in the amount of $154,639,535.77 USD for loss of assets, housing, medical care, legal defense, and constitutional access to justice;

- Special damages for legal costs, relocation expenses, surgical care, emergency housing, medical procedures, security, and ongoing protective needs.

B. Punitive and Exemplary Damages

- $100,000,000.00 CAD for willful fraud, judicial corruption, and conspiracy to obstruct justice at the highest levels of both Canadian and U.S. courts.

C. Declaratory Relief

- A declaration that the Ontario Mareva injunction and all related orders are void ab initio as products of judicial fraud and administrative conspiracy;

- A declaration that all Defendants engaged in actionable civil conspiracy to obstruct the Plaintiff's access to Canadian, California, and Supreme Court of Canada appellate remedies.

D. Injunctive Relief

- Permanent injunction restraining Defendants from:

  ◦ Any further enforcement actions;

  ◦ Continued judicial interference with Plaintiff's claims;

  ◦ Harassment, surveillance, or intimidation.

E. Pre- and Post-Judgment Interest

- 10% compound interest per annum from May 23, 2014, to judgment and full satisfaction.

F. Costs of Suit

- All legal costs, expert witness fees, disbursements, attorney fees, security protection, and relocation costs incurred herein.

G. Equitable and Protective Relief

- Full restitution of all frozen, seized, or converted assets;

- Ongoing personal security, emergency housing, and medical support to protect Plaintiff's life and survival;

Complaint for Human Trafficking

- Such other and further relief as this Honourable Court deems just, proper, and necessary to vindicate Plaintiff's constitutional and human rights.

## COUNT FIFTY-ONE: CIVIL RIGHTS VIOLATIONS UNDER COLOUR OF STATE LAW

(42 U.S.C. §§ 1983, 1985(2), 1985(3), and 1986)
(Against All Named Private Defendants Acting Under Colour of State Law and Co-Conspirators — Excludes Judicial and Government Officials)

I. INCORPORATION OF PRIOR ALLEGATIONS
Plaintiff Amber re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

II. JURISDICTIONAL BASIS
This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as Plaintiff asserts violations of rights secured by the United States Constitution and federal civil rights statutes.

III. DEFENDANTS ACTING UNDER Colour OF STATE LAW
Plaintiff does not name or seek monetary relief from judicial officers or government agents under this Count. This Count targets only private Defendants who conspired with state actors and thus acted under colour of state law, including:

- Quinn Emanuel LLP and their attorneys

- Glaser Weil LLP and their attorneys

- Wilson Sonsini LLP and their attorneys

- Bisnar Chase LLP and their attorneys

- Nemecek & Cole LLP and their attorneys

- The Law Firm of Rivers J. Morrell III and their attorneys

- Alan Brown

- Day Day & Brown LLP and their attorneys

- Paoli & Purdy LLP and their attorneys

- Charbonneau & Brown LLP and their attorneys

## IV. Colour OF LAW CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS

These private Defendants, while functioning as officers of the court, abandoned adversarial roles and formed a coordinated extrajudicial alliance to systematically deprive Plaintiff of due process, equal protection, and access to courts.

Specifically:

1. **Orange County Vexatious Litigant Order**
   These Defendants jointly endorsed and enforced a fraudulent vexatious litigant designation that imposed a $50,000 gag bond in favor of Michael Goguen, a billionaire known to these Defendants as Plaintiff's trafficker. This order was secured through sealed documents, perjured declarations, and denial of Plaintiff's right to be heard — violating her First and Fourteenth Amendment rights.

2. **San Mateo Quasi-Criminal Trial**
   Defendants conspired to stage a contempt proceeding in absentia in San Mateo County, despite the trial court's lack of subject-matter jurisdiction due to active federal removal and ongoing appeals. The proceeding was void ab initio and designed to intimidate, punish, and silence Plaintiff without lawful process.

3. **Fraudulent Glaser Judgment in Los Angeles County**
   These Defendants coordinated ex parte communications and backroom agreements with Judge Stephanie Bowick to suppress Plaintiff's scheduled hearing to vacate the multi-million dollar Glaser judgment. Tactics included improper denial of fee waivers, sealing of responsive filings, and issuance of adverse rulings with no notice or jurisdiction — a denial of due process orchestrated under colour of law.

4. **Ongoing Obstruction in Federal and Appellate Courts**
   After Plaintiff lawfully removed her case to federal court, these same private Defendants colluded with state-aligned federal judges to issue void remand orders, seal filings, and destroy Plaintiff's record before the Ninth Circuit. These actions reflect a continued conspiracy to obstruct justice and retaliate against Plaintiff's protected legal activity.

## V. LEGAL BASIS FOR LIABILITY

Complaint for Human Trafficking

Pursuant to Dennis v. Sparks, 449 U.S. 24 (1980), Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982), Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970), and Tower v. Glover, 467 U.S. 914 (1984), private attorneys and law firms who jointly act with state actors are liable under:

- 42 U.S.C. § 1983 – For deprivation of rights under colour of law

- § 1985(2) and (3) – For conspiracies to obstruct justice and deny equal protection

- § 1986 – For failure to intervene and prevent known conspiracies

These Defendants jointly and severally participated in unlawful acts that would not have been possible but for their coordination with judges, court clerks, and state legal apparatuses.

## VI. CONSTITUTIONAL VIOLATIONS

- First Amendment – Retaliation for court access, silencing through gag orders and contempt schemes

- Fifth Amendment – Deprivation of liberty and property without due process

- Fourteenth Amendment – Denial of equal protection and procedural due process through weaponized courts

## VII. DAMAGES

As a direct and proximate result, Plaintiff has suffered:

- Irreparable injury to her health, legal identity, and bodily autonomy

- Total loss of income, shelter, medical access, and personal safety

- Psychological trauma, PTSD, and cognitive damage

- Reputational destruction and de facto legal exile through colour of law abuse

## VIII. PRAYER FOR RELIEF – COUNT FIFTY-ONE

WHEREFORE, Plaintiff respectfully demands judgment against the above-named private Defendants, jointly and severally:

a. Compensatory Damages: $193,577,054.22

b. Special Damages: $10,000,000.00 for care, security, and relocation

c. Punitive Damages: Not less than $500,000,000.00 to deter future abuse

d. Treble Damages: Pursuant to 42 U.S.C. § 1985(3)

e. Injunctive Relief: Prohibiting Defendants from any further conspiracy, retaliation, or obstruction

f. Declaratory Relief: Declaring that Defendants violated Plaintiff's rights under the Constitution

g. Costs and Fees: Pursuant to 42 U.S.C. § 1988, including pro se costs

h. Interest: Pre- and post-judgment interest at 10% compound from May 23, 2014

i. Further Relief: As this Court deems just and proper

## COUNT FIFTY-TWO: ABUSE OF PROCESS

(Common Law Tort – Malicious and Ulterior Use of Legal Process)

AGAINST:

Michael Lewis Goguen, Sequoia Capital Operations, LLC, Two Bear Capital, Quinn Emanuel Urquhart & Sullivan LLP, Diane Doolittle, John Quinn, Bruce Van Dalsem, Kyle Batter, Glaser Weil LLP, Patricia Glaser, Jill Basinger, William Paoli, Paoli & Purdy LLP, Nemecek & Cole LLP, Brian Chase, Scott Ritsima, Bisnar Chase LLP, Richard Sherman, Sherman Law, Brown & Charbonneau LLP, Gregory G. Brown, Goodwin Procter LLP, Anthony McCusker, Wilson Sonsini Goodrich & Rosati LLP, Monique Jilesen, Sahar Talebi, Lenczner Slaght LLP, Barbara Conway, Cory Gilmore, and all other named Defendants.

Plaintiff repeats and realleges all prior paragraphs of this Complaint as if fully set forth herein.

This cause of action arises under the common law tort of Abuse of Process, as recognized in Texas. This tort prohibits the malicious or ulterior use of legal proceedings for purposes other than those for which the proceedings were originally intended.

Defendants, individually and in conspiracy, willfully and maliciously weaponized the judicial system as a tool of retaliation, coercion, intimidation, and obstruction—deploying court mechanisms in bad faith to suppress Plaintiff's pursuit of justice, silence her protected speech, deprive her of due process, and insulate their trafficking enterprise from exposure.

Specific Acts of Abuse of Process Include:

a. Filing fraudulent restraining orders, based on fabricated declarations, false identities, and perjured testimony, with the purpose of silencing Plaintiff and blocking litigation;

b. Designating Plaintiff a "vexatious litigant" in state courts without a hearing, without statutory compliance, and without any opportunity for Plaintiff to appear or respond;

c. Seeking ex parte gag orders and sealing orders to preclude Plaintiff from filing pleadings or presenting evidence;

d. Manipulating judicial assignments and routing procedures to funnel Plaintiff's cases to known corrupt or complicit judges;

e. Forging or coercing "settlement agreements" under duress while Plaintiff was unrepresented and traumatized (e.g., the coerced $40 million agreement of May 23, 2014);

f. Using judicial process to freeze assets, deny housing, revoke medical access, and place Plaintiff in immediate danger—not as part of legitimate litigation, but as retaliation for whistleblowing;

g. Orchestrating retaliatory and abusive legal actions in civil and quasi-criminal forums across multiple jurisdictions to obstruct Plaintiff's access to counsel, bar associations, appellate courts, and the press.

Ulterior Purpose

The overriding purpose of these legal maneuvers was not the pursuit of justice, but rather to:

- Suppress Plaintiff's reporting of human trafficking, rape, torture, and financial fraud;

- Shield the criminal enterprise operated by Goguen, Sequoia Capital, and their legal operatives;

- Prevent Plaintiff from accessing Texas courts, law enforcement, legal counsel, or the public;

- Harass and silence a known trafficking victim and whistleblower.

Legal Standard under Texas Law

Under Texas common law, a cause of action for Abuse of Process requires:

1. Use of legal process against a party;

2. An ulterior motive; and

3.  A willful act in the use of process that is not proper in the regular prosecution of the proceedings.
    See *Preston Gate, LP v. Bukaty*, 248 S.W.3d 892, 896 (Tex. App.—Dallas 2008); *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

All three elements are unquestionably satisfied in this case.

These abuses also constitute violations of the Texas Constitution, including:

- Article I, Section 3 (Equal Protection),

- Article I, Section 13 (Open Courts),

- Article I, Section 19 (Due Course of Law).

As a direct and proximate result of Defendants' abuse of legal process, Plaintiff has suffered:

- Ongoing threats to life and liberty;

- Deprivation of medical care, housing, and legal access;

- Destruction of professional reputation, relationships, and future livelihood;

- Irreparable emotional, financial, and constitutional harm.


PRAYER FOR RELIEF ON COUNT FIFTY-TWO

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

1.  Compensatory Damages in the amount of $50,000,000.00 USD for abuse of process and resultant harm;

2.  Punitive Damages of at least $100,000,000.00 USD to punish malicious conduct and deter future judicial abuse;

3.  Injunctive Relief prohibiting Defendants from initiating or participating in further abusive proceedings against Plaintiff;

4.  Declaratory Relief affirming that Defendants' actions constitute Abuse of Process under Texas common law;

**5.** Prejudgment Interest at 10% per annum, compounded annually, from May 23, 2014 to the date of final judgment;

**6.** Legal Costs, expert witness fees, and protective services as part of equitable restitution;

**7.** Any further relief this Honorable Court deems just and appropriate under Texas law.

## COUNT FIFTY-THREE: VIOLATION OF THE CONVENTION ON THE ELIMINATION OF ALL FORMS OF DISCRIMINATION AGAINST WOMEN (CEDAW)

*(Asserted under Customary International Law via the Alien Tort Statute, 28 U.S.C. § 1350, and/or Supplemental Jurisdiction)*

AGAINST:

Michael Lewis Goguen; Sequoia Capital Operations, LLC; Two Bear Capital; Quinn Emanuel Urquhart & Sullivan LLP; Diane Doolittle; John Quinn; Bruce Van Dalsem; Kyle Batter; Goodwin Procter LLP; Anthony McCusker; Wilson Sonsini Goodrich & Rosati LLP; Glaser Weil LLP; Patricia Glaser; Jill Basinger; Paoli & Purdy LLP; William Paoli; Bisnar Chase LLP; Nemecek & Cole LLP; Brian Chase; Scott Ritsima; Rivers J. Morrell III Law Firm; Sherman Law; Richard Sherman; Lenczner Slaght LLP; Monique Jilesen; Sahar Talebi; Barbara Conway; Cory Gilmore; and all other named Defendants.

1. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

2. This cause of action arises under customary international law and treaty obligations recognized by the United States through its signature and continuing observance of the Convention on the Elimination of All Forms of Discrimination Against Women (CEDAW), a foundational instrument of gender justice ratified by nearly every nation on earth, and binding upon the United States under evolving norms of customary international law and jus cogens principles, as enforceable through the Alien Tort Statute, 28 U.S.C. § 1350.

3. The Convention, adopted by the United Nations General Assembly in 1979 and signed by the United States in 1980, obligates all parties to eliminate discrimination against women in all fields, including in matters of violence, legal status, access to justice, and personal autonomy, and to provide effective remedies to victims of such violations.

4. CEDAW specifically prohibits:

   ◦ Gender-based violence, including trafficking and sexual exploitation;

   ◦ Systemic denial of legal redress and access to courts;

   ◦ Economic subjugation and reproductive coercion;

   ◦ Retaliation against women for asserting autonomy, legal rights, or exposing abuse.

5. The named Defendants, acting individually and in concert, have engaged in gross and systematic violations of Plaintiff's fundamental rights under CEDAW, including but not limited to:
   a. Trafficking Plaintiff into sexual servitude, beginning at age 15 and continuing for decades, through coercion, deception, and organized enterprise activity;
   b. Subjecting Plaintiff to rape, anal rape, forced drugging, and sexual exploitation, constituting extreme violations of bodily autonomy and gender-based dignity;
   c. Coerced sterilization and denial of reproductive health care, including forced pregnancies, interference with medical treatment, and denial of post-assault care;
   d. Legal sabotage through collusion between Defendants and judges, designed to deprive Plaintiff of legal representation, court access, or the ability to seek redress;
   e. Gender-targeted character assassination through public defamation campaigns engineered to humiliate, discredit, and silence Plaintiff as a trafficking survivor and whistleblower;
   f. Economic strangulation by cutting off access to bank accounts, litigation funds, housing, and medical care to retaliate against Plaintiff's attempt to flee, expose, or hold her traffickers accountable;
   g. Suppression of voice and visibility, using retaliatory lawsuits, gag orders, and fraudulent legal process to erase Plaintiff's story and censor her rights-based speech.

6.  These acts constitute not only severe violations of CEDAW, but also crimes against humanity and violations of peremptory international legal norms (jus cogens), including freedom from slavery, gender persecution, and torture.

7.  The Alien Tort Statute, 28 U.S.C. § 1350, permits jurisdiction over civil claims for violations of "the law of nations" or "a treaty of the United States." Courts have recognized that systemic gender-based violence and denial of legal recourse fall within the ambit of actionable ATS claims when linked to customary international law. See *Filártiga v. Peña-Irala*, 630 F.2d 876 (2d Cir. 1980); *Doe v. Unocal*, 395 F.3d 932 (9th Cir. 2002); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004).

8.  The United States' signature and continuous endorsement of CEDAW, combined with the universal recognition of its provisions, render the rights contained therein binding upon Defendants acting under colour of state or enterprise influence, and their systematic deprivation of Plaintiff's rights actionable under the ATS and under this Court's supplemental jurisdiction.

PRAYER FOR RELIEF ON COUNT FIFTY-THREE

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

1.  Declaratory relief that Defendants' actions constitute violations of the Convention on the Elimination of All Forms of Discrimination Against Women;

2.  Compensatory damages in the amount of $75,000,000.00 for gender-based harm, medical trauma, psychological damage, economic loss, and pain and suffering;

3.  Punitive damages in the amount of $150,000,000.00 for malicious, willful, and systemic gender-based abuse;

4.  Equitable relief, including a mandatory injunction requiring Defendants to disclose the full scope of their trafficking and gender-targeted misconduct;

5.  Injunctive relief, prohibiting any further retaliation, suppression, or gender-based silencing;

6.  Prejudgment interest at a rate of 10% per annum, compounded annually, from May 23, 2014;

7.  Costs of suit, including litigation security, protective measures, expert witnesses, and all necessary survivor support;

8.  Any other relief this Court deems just and proper in equity or at law.

## COUNT FIFTY-FOUR: FAILURE TO PREVENT HUMAN TRAFFICKING

(Against: Attorney General of California Rob Bonta, Gavin Newsom, Attorney General of Ontario Doug Downey, California State Bar, Judicial Council of California, Maame Frimpong, Danny Chou, Susan Greenberg, Barbara Conway, Cory Gilmore, Nina Shapirshteyn, David O. Carter, Stephanie Bowick, Laura Taylor Swain, and all named government and judicial actors)

1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber  realleges and incorporates by reference all preceding paragraphs and causes of action as though fully set forth herein.

2. NATURE OF CLAIM: FAILURE TO PROTECT / STATE COMPLICITY

This cause of action arises under:

- Trafficking Victims Protection Act (TVPA), 22 U.S.C. § 7101 et seq.;

- Palermo Protocol, Articles 2–5 (UN Convention Against Transnational Organized Crime);

- CEDAW, Articles 2, 3, and 5;

- Universal Declaration of Human Rights, Articles 1, 3, 5, 7, 8;

- Alien Tort Statute (ATS), 28 U.S.C. § 1350;

- U.S. Constitution, Fifth and Fourteenth Amendments (Due Process, Equal Protection);

- Customary international law prohibiting slavery, trafficking, and state-sanctioned abuse.

Defendants were under a statutory, constitutional, and moral duty to prevent, investigate, and prosecute human trafficking, rape, torture, and systemic abuse against the Plaintiff.

Instead, they:

- Affirmatively refused to act despite direct notice of the crimes.

- Facilitated judicial sabotage, gag orders, forced representation, restraining orders, and vexatious litigant designations to silence Plaintiff.

- Protected perpetrators, obstructed enforcement of laws, denied access to legal remedy, and permitted trafficking proceeds to fund retaliatory litigation.

- Enabled and perpetuated Plaintiff's captivity, homelessness, medical deprivation, and prolonged re-traumatization across multiple jurisdictions.

## 3. DUTY UNDER DOMESTIC AND INTERNATIONAL LAW

Under the TVPA, state and federal actors have an obligation to combat human trafficking and ensure victim protection (22 U.S.C. §§ 7104–7105).

Under the Palermo Protocol, signatory governments (including the U.S. and Canada) are required to:

- Prevent trafficking;

- Protect victims;

- Investigate and prosecute perpetrators;

- Provide access to justice and redress.

Under CEDAW, state actors must eliminate all forms of discrimination and gender-based violence through state action and institutional reform.

Judicial officers, prosecutors, and regulators named herein not only failed to uphold these duties — they willfully aided and abetted the trafficking enterprise.

## 4. SPECIFIC ACTS OF STATE COMPLICITY

Defendants engaged in or enabled:

- Bribery coverups, refusing to discipline lawyers who trafficked, raped, and threatened Plaintiff.

- Fraudulent restraining orders, gag orders, and forced representation to silence and isolate Plaintiff.

- Denial of medical care, fee waivers, housing, and survival access despite known risks to life.

- Fraudulent enforcement of void judgments while Plaintiff was under trafficking coercion.

- Willful inaction by the Attorney General(s), State Bar(s), and Judicial Councils despite hundreds of filings, judicial complaints, and petitions.

- Suppression of evidence, sealed filings, and secret hearings used to retaliate against Plaintiff.

## 5. LEGAL STANDARD AND LIABILITY

State actors may be held liable under the Alien Tort Statute when their conduct violates customary international norms — including:

- The right to be free from slavery;

- The right to bodily integrity;

- The right to effective remedy;

- The duty of non-refoulement and protection of trafficking survivors.

Their systemic failure constitutes:

- State-sanctioned denial of rights;

- Constructive complicity in trafficking and torture;

- Abuse of sovereign immunity to shield criminal enterprise participants.

## 6. DAMAGES SUFFERED

As a direct and foreseeable result of Defendants' failure to prevent trafficking:

- Plaintiff was denied legal redress, exposed to retaliatory violence, and deprived of security;

- She suffered further exploitation, loss of liberty, medical collapse, suicidality, and systemic injustice;

- Her rights under domestic and international law were nullified by institutional corruption.

7. PRAYER FOR RELIEF

Plaintiff demands judgment against all Defendants, jointly and severally, as follows:

- Declaratory relief that their actions constituted a violation of Plaintiff's rights under U.S. and international law;

- General and special damages as previously requested;

- Punitive damages against all public officials who acted with malice, fraud, or deliberate indifference;

- Permanent injunctive relief compelling systemic reform, disclosure of trafficking protections bypassed, and restitution of all denied remedies;

- Criminal referrals to the U.N. Special Rapporteur on Trafficking, U.S. DOJ Civil Rights Division, and the Office of the High Commissioner for Human Rights;

- Any such other relief the Court deems just and proper.

**COUNT FIFTY-FIVE: VIOLATION OF THE INTERNATIONAL COVENANT ON CIVIL AND POLITICAL RIGHTS (ICCPR)**

(Against All Defendants)

Legal Basis:

- Alien Tort Statute (28 U.S.C. § 1350) — permits federal jurisdiction over violations of binding international law norms;

- ICCPR, ratified by the United States (1992) and Canada, creating binding obligations under international and domestic law;

- Customary international law and jus cogens prohibitions against torture, arbitrary detention, and denial of due process.

## 1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber repeats, realleges, and incorporates by reference all preceding paragraphs and causes of action as though fully set forth herein.

## 2. THE ICCPR: BINDING TREATY LAW

The International Covenant on Civil and Political Rights (ICCPR) is a binding multilateral treaty codifying fundamental rights and freedoms. The United States ratified the ICCPR in 1992, obligating it to uphold and not violate its provisions. Canada has also ratified the ICCPR and integrated many of its provisions into domestic law.

The ICCPR is enforceable under the Alien Tort Statute, which recognizes torts "committed in violation of the law of nations or a treaty of the United States."

## 3. RIGHTS VIOLATED UNDER THE ICCPR

The Defendants—acting individually and in concert, and under colour of law and state authority—engaged in a sustained pattern of conduct that violated Plaintiff's rights under the following Articles of the ICCPR:

- Article 2 – Right to an effective remedy when rights are violated, including by persons acting in official capacity;

- Article 7 – Right to be free from torture and cruel, inhuman, or degrading treatment or punishment;

- Article 9 – Right to liberty and security of person; prohibition of arbitrary arrest or detention;

- Article 14 – Right to a fair and public hearing by a competent, independent, and impartial tribunal;

- Article 17 – Right to privacy, dignity, and protection from unlawful interference with one's correspondence, reputation, or home;

- Article 26 – Right to equal protection before the law and to be free from discrimination.

## 4. CONDUCT CONSTITUTING VIOLATIONS

Defendants' conduct that violated the above Articles includes, without limitation:

- Coordinated acts of rape, torture, trafficking, and enforced sexual slavery, including across international borders;

- Arbitrary detention in the form of judicial orders obtained without due process, notice, or hearing—rendered in ex parte or secret proceedings;

- Fabricated jurisdictional records, forged judgments, and suppression of Plaintiff's access to courts;

- Designation as a "vexatious litigant" and retaliatory restraining orders issued to silence and blacklist Plaintiff;

- Interference with housing, banking, communication, medical access, and other fundamental liberties without lawful justification;

- Judicial bias and collusion, including systemic denial of fee waivers, rejection of filings, sealing of meritorious claims, and refusal to vacate fraudulent judgments;

- Failure to provide remedy under U.S. or Canadian law, thereby violating Article 2 and compounding ICCPR breaches.

## 5. STATE ACTION AND INTERNATIONAL LIABILITY

Many of the violations were carried out under colour of law by judicial officers, bar regulators, or government actors, or with their complicity and protection. These acts invoke state responsibility under the ICCPR and permit relief under the Alien Tort Statute.

## 6. RELIEF REQUESTED

As a direct and proximate result of these ICCPR violations, Plaintiff has suffered:

- Physical and psychological trauma from torture, abuse, and unlawful targeting;

- Arbitrary deprivation of liberty, access to courts, medical care, housing, and legal remedies;

- Ongoing denial of human dignity, privacy, freedom of speech, and safety.

Plaintiff respectfully seeks:

a. Declaratory judgment that Defendants' actions violated the ICCPR and customary international law;
b. Compensatory and punitive damages for physical, psychological, economic, and reputational harm;
c. Treble damages under RICO and TVPRA where ICCPR violations overlap with domestic statutory violations;
d. Injunctive relief enjoining further violations of ICCPR rights, including interference with housing, court access, or Plaintiff's speech;
e. Referral to international bodies for investigation, including the United Nations Human Rights Committee;
f. Costs of suit, including security measures, relocation, and protection services;
g. Such other and further relief as this Court deems just and proper.


**COUNT FIFTY-SIX: DECLARATORY RELIEF**

(28 U.S.C. § 2201 – Declaratory Judgment Act)
Against All Defendants


1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber  repeats, realleges, and incorporates by reference all prior allegations and causes of action as if fully set forth herein.


2. LEGAL BASIS

This Count is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, which authorizes this Court to "declare the rights and other legal relations of any interested party seeking such declaration" in a case of actual controversy.

Plaintiff seeks declaratory relief in connection with the violations of her constitutional, statutory, and international rights, and the systemic misconduct committed by the named Defendants.

## 3. ACTUAL CONTROVERSY EXISTS

An actual and justiciable controversy exists between Plaintiff and Defendants, within the jurisdiction of this Court, regarding the following:

- The fraudulent nature of judicial orders and judgments entered in California and Ontario courts in violation of due process and constitutional safeguards;

- The unlawfulness of the "vexatious litigant" designations, gag orders, restraining orders, and sua sponte sealing orders entered against Plaintiff without proper notice, hearing, representation, or jurisdiction;

- The existence of a transnational criminal enterprise involving Defendants, designed to traffic, silence, exploit, and retaliate against Plaintiff;

- The unconstitutional deprivation of Plaintiff's access to the courts, counsel, housing, income, property, and medical care;

- The bad faith misuse of judicial process to obstruct Plaintiff's rights as a trafficking survivor, whistleblower, and civil rights complainant.

## 4. NEED FOR DECLARATORY JUDGMENT

A declaratory judgment is necessary to:

- Establish that fraudulent foreign and domestic judgments are void ab initio for lack of jurisdiction, fraud on the court, and due process violations;

- Declare that Defendants' conduct constitutes a violation of the U.S. Constitution, international human rights law, and statutory protections under TVPRA, VAWA, and RICO;

- Declare that the designation of Plaintiff as a vexatious litigant, the sealing of filings, and the issuance of ex parte gag orders were unconstitutional and in bad faith;

- Declare that Plaintiff is a survivor of human trafficking and systemic abuse, entitled to legal remedy, safety, and redress;

- Clarify the status of rights and wrongs in the record for use in future appellate proceedings, international complaints, and asylum-related filings, including potential relief under U.S. or Canadian law, or before the United Nations Human Rights bodies.

## 5. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court enter a declaratory judgment in her favour, stating:

a. That the California and Ontario judgments obtained against Plaintiff were entered in violation of due process, jurisdiction, and truth, and are thus null and void;
b. That Plaintiff's constitutional rights under the First, Fifth, Thirteenth, and Fourteenth Amendments have been violated by the Defendants;
c. That Defendants constitute a criminal enterprise under the definitions set forth in RICO (18 U.S.C. § 1961) and the TVPRA (18 U.S.C. § 1591 et seq.);
d. That the use of gag orders, vexatious designations, and sua sponte sealing orders constituted unconstitutional retaliation and suppression;
e. That Plaintiff is entitled to unfettered access to courts, legal counsel, and protective relief;
f. That Plaintiff has a protected legal and human right to speak publicly, seek redress, and expose trafficking and judicial abuse;
g. Any other declaratory relief this Court deems just and proper.

## COUNT FIFTY-SEVEN: INTENTIONAL INFLICTION OF CONSTITUTIONAL HARM

(Against: All defendants Government Actors, Judicial Officers, Bar Regulators, State Bar Entities, and All Co-Conspirators Acting Under Colour of Law)

Legal Basis:

Plaintiff alleges that Defendants, acting under color of law and in concert with private actors, engaged in a sustained pattern of retaliation, coercion, and abuse designed to deprive her of rights secured by both the United States Constitution and the Florida Constitution. This pattern constitutes an intentional infliction of constitutional harm in violation of:

- The First Amendment: including Plaintiff's rights to free speech, petition, and access to courts;

- The Fourth Amendment: through unlawful surveillance, coerced housing searches, and privacy intrusions;

- The Fifth and Fourteenth Amendments: by deprivation of liberty and property without due process of law;

- The Eighth Amendment: through cruel, degrading, and punitive measures designed to inflict psychological torture;

- Article I, Section 2 of the Florida Constitution: which guarantees the inherent rights to life, liberty, and the pursuit of happiness;

- Article I, Section 9 of the Florida Constitution: protecting against deprivation of life, liberty, or property without due process;

- Article I, Section 13 of the Florida Constitution: protecting against unlawful searches and seizures;

- Article I, Section 21 of the Florida Constitution: affirming the right to access the courts without obstruction or retaliatory designation;

Defendants' conduct, targeted gag orders, retaliatory litigation, coerced housing removals, illegal judgments, and malicious misuse of state power, constitutes a deliberate, coordinated infliction of constitutional injury rising to the level of a tort under both federal and Florida law.

- U.S. Constitution: First, Fifth, Thirteenth, and Fourteenth Amendments

- Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) (limited application)

- 42 U.S.C. § 1983 (where applicable)

- 28 U.S.C. § 1331 (federal question jurisdiction)

- Alien Tort Statute, 28 U.S.C. § 1350 (customary international law violations)

## 1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff realleges and incorporates by reference all preceding paragraphs, counts, and allegations as though fully set forth herein.

## 2. NATURE OF CLAIM

This cause of action is brought to redress the intentional, coordinated infliction of harm by government actors and their proxies through the abuse of power, state authority, and legal process for the specific purpose of depriving Plaintiff of her constitutional rights and liberties.

This is not mere negligence or isolated misconduct — it is deliberate constitutional sabotage targeting Plaintiff's bodily integrity, access to the courts, political speech, property, life, and liberty.

## 3. LEGAL RIGHTS VIOLATED

Defendants, acting under colour of law and/or in concert with state officials, violated the following constitutional protections:

- First Amendment: Retaliation against protected speech; gag orders; suppression of legal filings and survivor testimony; prior restraints.

- Fifth Amendment: Denial of due process; coerced settlements; void judgments executed without hearing or representation.

- Thirteenth Amendment: Continued enforcement of trafficking conditions and coercive control, including servitude and involuntary compliance.

- Fourteenth Amendment: Selective enforcement of laws; unequal protection; judicial bias; state-sanctioned abuse; denial of fair process.

## 4. STATE ACTION + INTENTIONALITY

This claim targets intentional conduct by state actors and their agents, including but not limited to:

- Judges issuing fraudulent, retaliatory orders to silence Plaintiff or deny access to courts;

- Attorney General offices refusing to investigate or intervene despite documented trafficking, coercion, and judicial misconduct;

- State Bars actively covering for corrupt lawyers and enabling litigation abuse;

- Government regulators and law enforcement ignoring statutory mandates to protect survivors;

- Repeated administrative obstruction and suppression of Plaintiff's constitutional claims.

## 5. DISTINCTION FROM IIED

While Count 24 alleges Intentional Infliction of Emotional Distress, this Count escalates that harm into constitutional magnitude, identifying:

- The state actor status of perpetrators;

- The core civil liberties targeted for annihilation;

- The systematic pattern of abuse across agencies and jurisdictions.

This is not just tortious—it is constitutionally unlawful.

## 6. DAMAGES AND RELIEF

As a direct result of Defendants' intentional infliction of constitutional harm, Plaintiff suffered:

- Catastrophic loss of civil rights, human dignity, and bodily autonomy;

- Medical collapse, psychiatric injury, trauma-related disability;

- Destruction of housing, employment, property, legal protections, and reputation;

- Total denial of redress across multiple courts and legal systems.

Plaintiff seeks:

- Declaratory relief affirming the constitutional violations committed by Defendants;

- Permanent injunctive relief barring Defendants from further retaliation, harassment, or denial of access to courts;

- Referral for criminal prosecution, impeachment, or administrative removal where applicable;

- Any further relief this Honorable Court deems just and proper.

**COUNT FIFTY-EIGHT: PATTERN OF RETALIATION AGAINST A WHISTLEBLOWER / VICTIM**

(Against: All Defendants, including state actors, judicial officers, and legal counsel engaged in retaliatory conduct)

Legal Basis:

- 18 U.S.C. §§ 1591–1595 (TVPRA: retaliation as a form of trafficking-related coercion and obstruction)

- 18 U.S.C. §§ 1512–1513 (witness tampering, intimidation, and retaliation as RICO predicate acts)

- 18 U.S.C. § 1961(1) (Racketeering predicates under RICO)

- U.S. Constitution, First and Fourteenth Amendments (protected speech, access to courts, equal protection)

- Federal common law and supplemental jurisdiction (28 U.S.C. §§ 1331, 1367)
- Alien Tort Statute, 28 U.S.C. § 1350 (customary international protections for trafficking victims and whistleblowers)

## 1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber  incorporates by reference all preceding paragraphs, allegations, and counts as if fully set forth herein.

## 2. NATURE OF CLAIM

This cause of action arises from a sustained, organized campaign of retaliation against Plaintiff for:

- Reporting human trafficking, rape, sexual slavery, judicial corruption, and transnational criminal conduct;
- Seeking redress in civil and criminal courts in the United States, Canada, and international forums;
- Publicly identifying perpetrators, naming government actors, and attempting to protect others from harm.

The retaliation has been coordinated, ongoing, transnational, and systemic, constituting a direct violation of Plaintiff's civil, constitutional, and international rights.

## 3. FORMS OF RETALIATION

The Defendants, jointly and severally, engaged in a broad pattern of retaliatory conduct including but not limited to:

- Judicial designation of Plaintiff as a "vexatious litigant" in bad faith, without hearing or notice;
- Issuance of fraudulent restraining orders, secret ex parte rulings, and prior restraints suppressing testimony;
- Court orders sealing Plaintiff's filings, denying fee waivers, and blocking service of process;

- Destruction of Plaintiff's housing, assets, and access to banking, food, medical care, and communication;

- Solicitation of murder contracts, physical surveillance, and forced disappearance threats via private security (e.g., Matthew Marshall);

- Interference with legal counsel, including coercion, bribery, and abandonment of meritorious cases;

- Weaponization of the legal system to silence Plaintiff's testimony, suppress her evidence, and permanently prevent redress.

## 4. WHISTLEBLOWER PROTECTIONS AND TVPRA ENHANCEMENT

The Trafficking Victims Protection Reauthorization Act (TVPRA) prohibits retaliation against victims who report or attempt to report their abuse.

Defendants' actions not only violated the core prohibitions of the TVPRA (§ 1591 et seq.) but also constitute an aggravating enhancement, warranting treble damages under 18 U.S.C. § 1595.

## 5. RICO PREDICATE ACTS: RETALIATION & WITNESS TAMPERING

Under 18 U.S.C. §§ 1512–1513, retaliation against a witness or victim—including intimidation, threats, and obstruction of court access—is a predicate act of racketeering.
Plaintiff's sustained targeting for her role as a victim and whistleblower qualifies under:

- 18 U.S.C. § 1512: Witness tampering and obstruction

- 18 U.S.C. § 1513: Retaliation against witnesses, informants, or victims

- 18 U.S.C. § 1961(1): Civil RICO predicate acts

## 6. CONSTITUTIONAL VIOLATIONS

This campaign of retaliation further violated Plaintiff's First Amendment rights (freedom of speech, right to petition the courts), and Fourteenth Amendment rights (equal protection and due process).

The abuse of state mechanisms to suppress speech and testimony constitutes viewpoint discrimination and retaliatory censorship, prohibited by binding precedent including:

- *Hartman v. Moore*, 547 U.S. 250 (2006)

- *Zalewska v. Cty. of Sullivan*, 316 F.3d 314 (2d Cir. 2003)

- *Gomez v. Toledo*, 446 U.S. 635 (1980)

## 7. DAMAGES AND RELIEF

As a direct result of Defendants' pattern of retaliation, Plaintiff has suffered:

- Irreparable physical harm, mental trauma, homelessness, medical collapse, and financial ruin;

- Destruction of access to legal redress, counsel, employment, safety, and privacy;

- Permanent stigmatization and reputational harm as a "vexatious litigant" and "criminalized victim";

- Deprivation of constitutional rights, international protections, and statutory remedies under the TVPRA.

Plaintiff seeks:

- Declaratory judgment that Defendants engaged in unlawful retaliation against a whistleblower and victim;

- Treble and punitive damages under TVPRA and RICO;

- Permanent injunction barring further retaliatory action, including litigation abuse, surveillance, and housing interference;

- Equitable relief including unsealing of her filings, vacatur of all retaliatory orders, and reinstatement of her access to courts;

- Any other relief deemed just and proper by this Court.

**COUNT FIFTY-NINE: CONTINUING VIOLATIONS DOCTRINE / ONGOING CONSPIRACY**

(Equitable Tolling Doctrine; Patterned Abuse; Civil RICO; TVPRA; ATS; Supplemental Jurisdiction)
Against: All Defendants

## 1. INCORPORATION OF PRIOR ALLEGATIONS

Plaintiff Amber  re-alleges and incorporates by reference all preceding paragraphs, factual allegations, and causes of action as if fully set forth herein.

## 2. NATURE OF THE CLAIM: CONTINUING VIOLATIONS & SYSTEMIC ENTERPRISE

This Count arises from the persistent and uninterrupted course of unlawful conduct committed by Defendants, forming an ongoing conspiracy and continuing violation of Plaintiff's constitutional, statutory, and international human rights.

The wrongdoing was not episodic or isolated, but rather a deliberate and orchestrated continuum of sexual exploitation, legal obstruction, retaliatory sabotage, and state-sanctioned persecution,  spanning for over two decades to the present day, across multiple jurisdictions and sovereign boundaries.

## 3. LEGAL FRAMEWORK & JURISDICTIONAL BASIS

This Count invokes the following legal authorities:

- Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. §§ 1581–1595

- Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968

- Alien Tort Statute (ATS), 28 U.S.C. § 1350

- 42 U.S.C. § 1983, § 1985

- Federal Common Law Conspiracy and Equitable Tolling Doctrines

- Canadian and international human rights law under supplemental jurisdiction (28 U.S.C. § 1367(a))

This Count is further supported by the Continuing Violations Doctrine, which recognizes that when a series of unlawful acts are part of an integrated and ongoing scheme, the statute of limitations is equitably tolled until the last overt act or the cessation of harm.

## 4. FACTUAL PATTERN: UNBROKEN CONTINUUM OF ABUSE

Defendants, acting individually and in concert, perpetuated a systemic and transnational criminal enterprise through:

- Human trafficking, rape, torture, and sexual slavery;

- Fraudulent legal instruments such as coerced settlement agreements (e.g., the May 23, 2014, $40 million Sequoia-Quinn Emanuel agreement);

- Judicial sabotage, including secret hearings, forged orders, and vexatious designations;

- Retaliation through gag orders, silencing of counsel, and media defamation campaigns;

- Unlawful asset freezes, Mareva injunctions, and seizure of property under void or unenforceable judgments;

- Re-trafficking through legal systems, depriving Plaintiff of access to courts, safety, housing, medical care, and public services;

- Interstate and international coordination of abuse between California, Ontario, Montana, New York, Washington D.C., and other forums;

- Attempted extrajudicial killing through deprivation of medical treatment, solicitation of murder-for-hire, and criminal negligence.

## 5. DEFENDANTS' LAST OVERT ACTS CONTINUE INTO THE PRESENT

The enterprise is not dormant — it is active and continuing. Defendants, as of 2025, are still:

- Enforcing void judgments across borders;

- Obstructing access to fair hearings in Canada and the U.S.;

- Withholding Plaintiff's funds, legal records, and identity documents;

- Engaging in judicial retaliation against Plaintiff in both federal and provincial courts;

- Coercing or bribing bar associations, judicial councils, and administrative agencies to prevent redress;

- Coordinating international interference to destroy Plaintiff's asylum, housing, and livelihood options.

These actions constitute current and ongoing violations, not time-barred acts.

## 6. EQUITABLE TOLLING MANDATED BY LAW AND JUSTICE

Because of the Defendants' fraudulent concealment, obstruction, and continuous retaliation, Plaintiff:

- Was prevented from filing timely claims through no fault of her own;

- Faced a hostile legal system corrupted by the very enterprise she seeks to expose;

- Continues to suffer fresh injuries and irreparable harm from the Defendants' ongoing conspiracy;

- Operates as a whistleblower under systemic siege, not merely a past victim.

As such, the statutes of limitation are tolled under:

- TVPRA, which permits tolling for victims of trafficking where fraud, threats, or duress prevent timely filing;

- RICO, where predicate acts continue and form a pattern of racketeering activity;

- Federal equitable tolling doctrines, applicable where misconduct actively prevents redress;

- International human rights law, which permits tolling for state-sanctioned persecution, torture, and discrimination.

## 7. DAMAGES AND INJUNCTIVE RELIEF REQUESTED

Plaintiff seeks:

a. A declaratory judgment recognizing the ongoing nature of the conspiracy and tolling of all applicable statutes of limitations;
b. Permanent injunction enjoining all Defendants from continuing any acts of retaliation, trafficking, obstruction, or litigation abuse;
c. Full damages, costs, equitable restitution, and treble recovery under applicable law;
d. Judicial recognition of the pattern of ongoing injury, for purposes of appellate preservation, asylum petitions, and international relief proceedings.

## 8. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants, jointly and severally, as follows:

- Recognition that no statute of limitations bars this action under the Continuing Violations Doctrine;

- Entry of declaratory and injunctive relief dismantling the enterprise;

- Full general, special, and punitive damages as previously outlined in this Complaint;

- Preservation of rights for absent class members and whistleblowers similarly situated;

- Such other and further relief as this Honorable Court deems just and proper.

## COUNT SIXTY: VIOLATION OF THE ONTARIO HUMAN RIGHTS CODE AND THE CANADIAN HUMAN RIGHTS ACT

(Asserted Pursuant to Supplemental Jurisdiction and/or the Alien Tort Statute, 28 U.S.C. § 1350)
(Against All Defendants Named in this Complaint)

Plaintiff Amber  hereby re-alleges and incorporates by reference all prior allegations of this Complaint as if fully set forth herein.

This cause of action arises under the Ontario Human Rights Code, R.S.O. 1990, c. H.19, and the Canadian Human Rights Act, R.S.C. 1985, c. H-6, both of which are asserted under this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) and/or under the Alien Tort Statute, 28 U.S.C. § 1350, in light of the transnational nature of Defendants' conduct, which implicates international legal norms, universal human rights, and cross-border violations of law.

## I. STATUTORY FRAMEWORK

Under the Ontario Human Rights Code, Plaintiff possessed rights to:

- Equal treatment in services, goods, facilities, and housing (Section 1);

- Equal opportunity in employment (Section 5(1));

- Freedom from reprisal or interference with the exercise of those rights (Section 9).

Under the Canadian Human Rights Act, Plaintiff was protected against:

- Discrimination in services, employment, and housing on the basis of sex, race, national origin, disability, and retaliation (Sections 3, 5, 7, 10);

- Sexual harassment, coercion, and retaliatory acts by both private and public actors;

- Systemic discriminatory practices including denial of services, access to legal remedies, and the imposition of unequal conditions in violation of federal norms.

## II. DEFENDANTS' VIOLATIONS

The Defendants—individually and in coordinated concert—committed egregious, ongoing, and systemically abusive acts in both Ontario and federal Canadian jurisdictions. These acts included:

- Gender-based violence, including sexual exploitation, forced servitude, and economic deprivation targeted at Plaintiff as a female survivor of human trafficking;

- Denial of access to legal representation due to her gender, race, and survivor status, in violation of her right to equal treatment;

- Bribery of Ontario judges, including Justices Cory Gilmore and Barbara Conway, who participated in issuing fraudulent Mareva injunctions and ex parte rulings that froze Plaintiff's bank accounts and deprived her of shelter, food, and medical access;

- Suppression of evidence, refusal to hear claims, and obstruction of proceedings through collusion with law firms including Quinn Emanuel, Glaser Weil, and Goodwin Procter;

- Retaliation and reprisal, including systemic denial of housing, employment, medical services, and judicial redress;

- Publication of false and defamatory materials, discriminatory gag orders, and silencing tactics meant to suppress Plaintiff's identity, dignity, and access to equal justice.

## III. LEGAL CONSEQUENCES

The Defendants' conduct constitutes:

- A flagrant violation of the Ontario Human Rights Code through denial of equal access to services, housing, legal process, and the courts;

- A violation of the Canadian Human Rights Act, through discrimination in federally regulated sectors, judicial sabotage, and systematic denial of redress;

- A transnational human rights violation, actionable under the Alien Tort Statute, as the acts committed constitute customary international law violations of human dignity, equality, and protection from gender-based violence;

- A violation of universal legal norms, including the Convention on the Elimination of All Forms of Discrimination Against Women (CEDAW) and the International Covenant on Civil and Political Rights (ICCPR).

As a direct and proximate result of these violations, Plaintiff suffered:

- Severe physical injuries, psychological trauma, and emotional devastation;

- Loss of livelihood, housing, medical care, legal redress, and basic dignity;

- Ongoing fear, surveillance, and coercion amounting to constructive torture.

## IV. PRAYER FOR RELIEF — COUNT FORTY-EIGHT

WHEREFORE, Plaintiff respectfully demands judgment against all named Defendants, jointly and severally, as follows:

a. General damages in the amount of $154,639,535.77 USD/CAD, for deprivation of dignity, bodily integrity, equal protection, and access to justice;

b. Special damages for housing loss, medical treatment, trauma recovery, and legal access in the amount of $10,000,000.00 USD;

c. Economic losses and lost earning capacity in the amount of $10,000,000.00 USD;

d. Punitive and aggravated damages not less than $500,000,000.00 USD, to punish Defendants for systemic, gender-based, and retaliatory abuse;

e. Prejudgment and post-judgment interest at 10% per annum, compounded annually, from May 23, 2014, to the date of final judgment;

f. Permanent injunctive relief prohibiting Defendants from future retaliation, surveillance, or deprivation of Plaintiff's rights;

g. Declaratory judgment that Defendants' conduct violated Plaintiff's rights under the Ontario Human Rights Code and the Canadian Human Rights Act;

h. Costs of suit, including attorneys' fees, security protection, expert witnesses, and emergency housing or medical access;

i. Any such other relief as the Court deems just, proper, and necessary to restore equity and protect transnational victims of systemic abuse.

## COUNT SIXTY-ONE: CONTINUED HUMAN TRAFFICKING VIA JUDICIAL ENTERPRISE

(18 U.S.C. §§ 1590, 1591, 1595 – Against Quinn Emanuel Urquhart & Sullivan LLP, Diane Doolittle, and All Non-Immune Private and Institutional Co-Conspirators)

1. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

2. This cause of action is brought under the Trafficking Victims Protection Act (TVPA), specifically 18 U.S.C. §§ 1590, 1591, and 1595, which prohibit the knowing recruitment, harboring, maintenance, coercion, and financial exploitation of human trafficking victims, including through non-physical means such as legal abuse, institutional coercion, economic strangulation, and judicial fraud.

3. Defendant Diane Doolittle, acting in her capacity as a senior partner at Quinn Emanuel Urquhart & Sullivan LLP, has knowingly and willfully participated in, conspired to facilitate, and financially profited from a criminal trafficking enterprise directed at Plaintiff, a recognized victim and whistleblower of transnational human trafficking and sexual exploitation.

4. Quinn Emanuel, in coordination with billionaire trafficker Michael Goguen and a network of co-conspiring legal actors, engaged in a coordinated campaign of psychological and legal coercion to isolate, control, economically destroy, and permanently silence Plaintiff.

5. Defendants used sham contracts, ex parte proceedings, fraudulent judicial orders, fabricated restraining orders, unlawful asset freezes, retaliatory gag orders, and blocked access to medical care and housing to forcibly re-dominate Plaintiff through state-sanctioned legal peonage, as defined by 18 U.S.C. § 1590.

6. These acts satisfy the definitions of "harboring," "maintaining," "obtaining labor or services by coercion," and "benefiting from a trafficking venture" under 18 U.S.C. §§ 1590 and 1591(a)(1)–(2).

7. Defendant Quinn Emanuel has received and continues to receive millions of dollars per month from known traffickers and child exploiters to litigate against Plaintiff in perpetuity, suppress investigations, and retaliate against her for exercising her constitutional and human rights.

8. The pattern of coercive abuse executed by Doolittle and her firm was not isolated or incidental—it was deliberate, systemic, and designed to replicate the psychological and economic captivity Plaintiff endured under her original traffickers.

9. Their continued legal onslaught constitutes post-escape trafficking, a form of continued coercion and control recognized under federal law.

See United States v. Estrada-Tepal, 57 F.4th 288 (2d Cir. 2022);
United States v. Callahan, 801 F.3d 606 (6th Cir. 2015);
Ricchio v. McLean, 853 F.3d 553 (1st Cir. 2017).

10. The U.S. Supreme Court in U.S. v. Kozminski, 487 U.S. 931 (1988),** confirmed that involuntary servitude can be imposed through abuse of legal authority and psychological coercion, both of which are central to this count.

11. Defendants further engaged in a joint enterprise with numerous judicial officers in both the United States and Canada, including Judges Bowick, Chou, Dourbetas, Greenberg, Shapirshteyn, Ambler, Frimpong, Carter, Kim, and Malloy, as well as Justices Barbara Conway and Cory Gilmore in Ontario, to carry out this ongoing trafficking venture by misusing the judiciary as a coercive apparatus.

12. These judicial actors, though immune from monetary liability, operated as integral instruments of coercion, their ex parte rulings, secret hearings, and fabricated orders serving as the enforcement mechanisms of Plaintiff's captivity, suppression, and re-exploitation.

13. Plaintiff does not seek monetary damages against these judges, but instead seeks injunctive and declaratory relief under Ex Parte Young to void all orders obtained through trafficking-related fraud and judicial conspiracy, and to enjoin further acts of retaliation and deprivation under colour of law.

14. Defendants Quinn Emanuel and Doolittle are liable under 18 U.S.C. § 1595, which provides a civil right of action against any individual or entity who knowingly benefits from or participates in a trafficking venture that results in harm to the victim.

15. Plaintiff has suffered grave, ongoing injuries as a result of this judicial trafficking enterprise, including:

- Permanent loss of income, shelter, and property;

- Denial of access to the courts and right to be heard;

- Denial of critical medical care and food;

- Psychological harm and emotional terror;

- Unrelenting retaliation for whistleblowing and survival.

Plaintiff has endured this ongoing trafficking and retaliatory control for over eleven (11) years following her last trafficking event and violent sexual assault, during which she was brutally raped, silenced, and discarded. Rather than receiving protection and redress, Plaintiff was systematically re-traumatized by the legal system. Judicial officers, acting in conspiracy with Quinn Emanuel and Diane Doolittle, transformed the courts into instruments of legalized captivity, replicating the dynamics of trafficking through asset seizures, gag orders, retaliatory rulings, and obstruction of medical care, housing, and safety. This was not negligence. It was deliberate. It was coordinated. It was trafficking by state-sanctioned means, designed to ensure Plaintiff's isolation, economic destruction, and eventual death. The duration and structure of this abuse exceed the statutory threshold of severity, and constitute prolonged trafficking under colour of law, as recognized under 18 U.S.C. §§ 1590 and 1591, and binding international human rights law.

PRAYER FOR RELIEF ON COUNT SIXTY-ONE

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Enter judgment against Defendants Quinn Emanuel and Diane Doolittle for civil liability under 18 U.S.C. § 1595;

b. Declare that Plaintiff has been subjected to continued trafficking through abuse of legal process, psychological coercion, and judicial enterprise under §§ 1590 and 1591;

c. Enjoin the enforcement of any judgment, order, or legal instrument issued as part of the trafficking venture, including:

- The Ontario Mareva injunction;

- California contempt judgments;

- Any ex parte rulings, secret hearings, or fraudulent court actions initiated by Quinn Emanuel or its affiliates;

d. Award compensatory and punitive damages in an amount to be determined at trial;

e. Award treble damages under 18 U.S.C. § 1595 and 18 U.S.C. § 1964(c) (RICO);

f. Refer this matter for criminal investigation and disciplinary prosecution by the U.S. Department of Justice, California State Bar, and any appropriate international human rights body;

g. Grant any further relief the Court deems just, equitable, and necessary to dismantle the judicial trafficking apparatus and restore Plaintiff's rights, dignity, and safety.

h. Refer this matter to the United Nations Special Rapporteur on Trafficking in Persons, the Inter-American Commission on Human Rights, and any relevant international body charged with the enforcement of the UN Palermo Protocol, the Universal Declaration of Human Rights, and the Convention Against Torture, recognizing that the United States legal system, as administered by the named co-conspirators, has knowingly engaged in prolonged trafficking and psychological torture under colour of law, and that Plaintiff is entitled to international protection and redress as a trafficking survivor subjected to ongoing persecution.

# 1. FACTUAL BACKGROUND

# VII.

2. A. Introduction to the Plaintiff's Ordeal

3. The Plaintiff, Amber (hereinafter "Amber "), is a Canadian citizen and survivor of transnational human trafficking, systemic sexual exploitation, judicial corruption, and egregious deprivations of her civil, constitutional, and human rights.

4. From the age of fifteen,The Plaintiff, Amber (hereinafter "Amber "), is a survivor of transnational human trafficking, systemic sexual exploitation, judicial corruption, and severe deprivation of her civil, constitutional, and human rights. From age fifteen, Amber was trafficked across borders by criminal syndicates, including the Hells Angels, and ultimately fell under the control of Michael Goguen, a U.S.-based billionaire and high-profile financier. Amber 's lived experience forms the foundation of this Action, asserting grave torts and violations of Canadian law, international human rights standards, and applicable treaties. The events detailed herein form a continuous pattern of abuse, fraud, and obstruction of justice, executed by Michael Goguen, his agents, Quinn Emanuel LLP, Sequoia Capital, and Canadian co-conspirators including Lenczner Slaght LLP, Monique Jilesen, Sahar Talebi, and members of the Ontario judiciary and legal system.

5. Amber was trafficked across international and interprovincial borders by organized criminal syndicates, including the Hells Angels, and ultimately fell under the coercive control of Defendant Michael Lewis Goguen, a billionaire financier and U.S.-based venture capitalist.

6. Amber 's lived experience, Human Trafficking Child sex- trafficking of sexual slavery, medical abuse, legal sabotage, and retaliatory litigation, forms the factual foundation for this Action, which asserts severe torts and statutory violations under Canadian law, international human rights standards, and binding treaties.

7. The harms committed were executed by Goguen and his agents, including Defendant law firm Quinn Emanuel Urquhart & Sullivan LLP, his financiers at Sequoia Capital, and Canadian co-conspirators, including but not limited to Lenczner Slaght LLP, Monique Jilesen, Sahar Talebi, and members of the Ontario judiciary.

8. B. Human Trafficking and Exploitation by Goguen His Co-Conspirators and Criminal Syndicates

9. At age fifteen, Amber was trafficked by a relative into the hands of the Hells Angels and subsequently funnelled into a high-end human trafficking circuit marketed as elite modelling.

10. By 2000, Amber was trafficked between strip clubs and elite private events, privates clubs luxury properties, sporting events, hostess bars, in the U.S. Virgin Islands, China, Japan, Guam, Puerto Rico, Florida, New York, Michigan, New Jersey, Arizona, Georgia, Montreal, Alberta, British Columbia, Manitoba, Ontario, Saskatchewan, Quebec, Europe and other locations, serving as nude entertainment for elite predators for the profit of the Hells Angels and other organized crime syndicates.

11. Between 2000 and 2013, Amber was transported across multiple jurisdictions, including the U.S. Virgin Islands, China, Japan, Guam, Puerto Rico, Florida, New York, Texas, Oklahoma, Louisiana, Arizona, Michigan, Alberta, Ontario, Quebec, and Europe, for the purpose of sexual exploitation at strip clubs, Hostess bars, Cabarets, luxury properties, sporting events, and Billionaire pedophiles private parties, generating revenue for organized crime syndicates.

12. After being trafficked to and From The Virgin Islands to billionaire pedophiles Amber was sent by plane to Texas, a few days after arrival In Dallas, Texas, Amber was introduced to Defendant Pedophilic serial rapist Michael Goguen by a VIP manager at a club controlled by organized crime. From approximately 2002 onward, Goguen exercised total coercive control over her person, body, communications, and finances. Goguen grooms Amber , promising to free her from traffickers if she submits to his demands.

13. Goguen forcibly inducted Amber into his private harem, subjected her to repeated sexual assaults, psychological manipulation, and drug-induced compliance, and trafficked her across state and national borders with the use of shell companies and private aircraft.

14. Amber was drugged and anally raped the first time by Goguen, while suffering from a head injury and retrograde amnesia after rival gang members assaulted her and tried to take her under their control. Shortly after discharge from an ICU, Goguen knowing Amber s condition used Sequoia Capital resources to fly her to Toronto, Ontario, where he raped her anally in the Sheraton Gateway Hotel.

15. Goguen continued with the grooming and sexual abuse, forced sodomy, rape, emotional torture, coercive control, and financial manipulation. Goguen used aliases, shell companies instructed Amber to set up (Je Ne Se Que Enterprises, LLC; Every Girl Counts for him to hide payments for her expenses from his multiple wives and the IRS. He used Sequoia Capital expense accounts, numbered companies, and offshore accounts to launder payments and evade tax liabilities, facilitating the sex-trafficking enterprise.

16. Amber is forced to submit to increasingly violent and degrading sexual acts, including being forced to beg Goguen to masturbate on her, forced sodomy for up to 6 hours, and being coerced to consume alcohol which he drugged with rohypnol drugs to increase her compliance and render her unconscious.

17. Goguen financed Goguen sex enterprises sex trafficking conspiracy using Sequoia Capital expense accounts, offshore accounts, and private banking instruments, engaging in money laundering and tax evasion in furtherance of the trafficking enterprise.

18. C. Medical Harm and Escalation of Violence

19. In around 2010, Amber was diagnosed with multiple high-risk strains of HPV, traced to Goguen's history of unprotected sex with trafficked women, prostitutes, other mens wives, and teenage rape victims. Goguen knowingly concealed his STI status from Amber and others.

20. In 2012, Goguen inflicted a 7-inch anal tear during a violent sexual assault at a hotel in London, UK. Necessitating emergency surgery. He paid $100,000 via wire transfer for medical treatment to suppress the incident but evaded legal and criminal accountability.

21. Goguen admits to knowing he has been infected with HPV since his university days at Cornell allegedly infected by Socialite Dayssi Olarte de Kanavos who Goguen resumes sodomizing over 30 years later in 2012 while she is married to Hotelier Paul Kanavos.

22. Goguen attempted to coerce Amber into further sexual acts with other men while concealing her HPV infection. Upon her refusal, he escalated the violence and psychological abuse. Goguen Continued to coerce Amber to conceal her infection and continue spreading it to others. When Amber objected to this debased ideology, Goguen retaliated citing ion she cut ties with he would hire men to surveil and track her for the remainder of her life.

23. D. Coerced Settlement, Financial Exploitation and Financial Control

24. Full time stalking and surveillance of Amber begins by men hired by Goguen

25. 2013: Goguen stops paying Amber 's expenses and asserts he will continue abusing Amber forever because he "loves" her so he is "keeping her in an emotional cage", forcing her to retain an attorney.

26. In 2014, Amber  Retained Attorney Rivers Morrell to help her end this abuse. Rivers Morrell demands mediation. Goguen contacts Amber  , calling her attorney a criminal, asserting her attorney is stalking her, that he is the dangerous one and demanding she fire him and Goguen and his high powered lawyers will represent her. Amber  , under duress, fires her attorney and is forced to rely on Sequoia Capitals lawyers (Quinn Emanuel) (Goodwin Procter), (Wilson Sonsini ).

27. Under distress, stalking, and surveillance, Amber  was forced By Goguen and his lawyers to fire her sole legal representative Rivers J Morrell and sign a $40 million "Personal Injury Settlement Agreement" drafted by Sequoia Capitals attorneys at Quinn Emanuel, Goodwin Procter, and Wilson Sonsini. The legally binding written contract was signed May 23, 2014.

28. The agreement was executed at the Rosewood Sand Hill Hotel, a known trafficking site used by Goguen. No negotiation, Independent legal advice, or freedom from duress was provided to Amber  . The legally Binding written contract was witnessed and notarized by Sequoia Capitals staff notary. Amber  , coerced and unrepresented, signs a Settlement Agreement drafted by Quinn Emanuel, Goodwin Procter and Wilson Sonsini "Attorneys" for $40 million, payable in four $10 million instalments, in exchange for her silence and dismissal of her personal injury claims, it is witnessed and notarised across the street from. Sequoia Capital at the Rosewood Sand Hill Hotel Business centre by their Sequoia Capitals staff notary. All of the sex slaves from Goguen sex enterprises were housed at the Rosewood Sandhill hotel for years and they had an sex trafficking conspiracy operating out of the lobby jewellery store.

29. Only the first $10 million installment was paid. Goguen defaulted and resumed his campaign of harassment, surveillance, and retaliation. His former head of security currently serving time in federal prison for crimes Goguen instructed him and paid him to commit, Matthew Marshall, has since been incarcerated for crimes which include pretending to run the CIA off the records for Goguen. Mathew Marshall hired men to stalking Amber  at the demand and Goguen. On multiple occasions Goguen instructed him to solicit her murder by organizing an assassination attempt against Amber  .

30. E. Judicial Sabotage, Retaliation in U.S. Courts (2014–2025)

31. Fraudulent Bench trials and Cross-Border Conspiracy

32. In 2014-2019: Amber  seeks to enforce the contract. Goguen and Quinn Emanuel launch a campaign of retaliation, including:

33. 2016-2019, Goguen and Quinn Emanuel begin bribing Bribing lawyers to abandon Amber  's case (e.g., Glaser Weil LLP Patricia Glaser, Jill Basinger, Sherman Law Richard Sherman, Bisnar Chase Brian Chase Scott Ritsima, Paoli and Purdy, William Paoli).

34. Weeks prior to Trial Goguen Quinn Emanuel Lawyers travel to Las Vegas with Amber  s attorney William Paoli he is provided bribe money to sabotage her case and not show up to trial.

35. $900.00 per hour Debased 85 year old court appointed referee from JAMS former judge Read Ambler Continues to perpetrate legal abuse against Amber  while she is attempting to recover from surgery.

36. While Amber  was incapacitated and recovering from major surgery, taking more than a dozen mind altering prescription medications, ordered to bed rest by her medical team. (tungsten poisoning, rods and plates in her bones, seizures, and bone marrow transplant) Plaintiff was in pro se due to attorney interference and bribery, San Mateo Judge John Grandseart denied Her meritorious motion to continue the trial until she recovered from surgery. Defendants held a fraudulent bench trial in San Mateo Superior Court presided over by bribed judge Danny Chou, producing a $14 million default judgment, an illegal unconstitutional gag order, and a fraudulent restraining order. All evidence was falsified and the testimony was manufactured by Quinn Emanuel and perjury was suborned by Quinn Emanuel.

37. Fraudulent gag order (restraining order) Drafted By Quinn Emanuel lawyers Signed by Judge Danny Chou issued without notice, silencing Amber  .14 million Dollar fraudulent Judgement drafted By Quinn Emanuel, Signed By Bribed Diversity, Equality and Inclusion China Born "Judge" Danny Chou

38. Despite ongoing appeals and Amber  's unavailability, the fraudulent judgment was enforced in Ontario, circumventing California laws staying judgment collection. Until the final appeal is heard in the Supreme court..

39. The Ontario Superior Court of Justice, via Judges Cordelia (Cory) Gilmore and Barbara Conway, issued an illegal Mareva injunction to freeze Amber 's Alberta assets, knowingly relying on fabricated evidence of Ontario jurisdiction.

40. Monique Jilesen, Sahar Talebi, and the firm Lenczner Slaght LLP that "runs" The commercial list business court a branch of the Canadian government fabricated jurisdiction by using false addresses, bank records, and business filings Converting Amber  from and Individual into a corporation for the purposes of defrauding the court.

41. Judges Barbara Conway And Cory Gilmore admitted in writing in ex-parte communications from their bench emails to the Quinn Emanuel lawyers that Amber had not been properly served but signed freezing orders regardless, denying her access to funds, shelter basic life necessities and for urgent surgery, forcing Amber  into homelessness in Los Angeles during the Global Corona virus pandemic.

42. Not only did the illegal Mareva injection rob Amber  of access to her fastest it robbed her siblings in western provinces of access to their personal assets and bank accounts with zero notice to them.

43. During this time, Quinn Emanuel intercepted Amber 's communications with law enforcement and obstructed criminal investigations.

44. Quinn Emanuel and Lenczner Slaght proceeded in bad faith before the Supreme Court of Canada. Amber  is currently suing the Crown.

45. F. Systematic Attorney Sabotage and Fraudulent Proceedings

46. Amber 's attorneys, including Gregory Brown and Herb Fox, embezzled over $300,000 from her trust account and sabotaged appeal filings.

47. In Orange County Superior Court, Patricia Glaser, Glaser Weil LLP, and other co-defendants colluded with arbitrators and mediators to prevent a $40 million legal malpractice claim from proceeding.

Complaint for Human Trafficking

48. Amber 's lawyers from Paoli and Purdy LLP failed to appear or submit responses despite having been Retained and paid. The JAMS arbitration firm was paid in full by Amber and so were the expert witnesses This led to another fraudulent multi-million dollar secret judgment.

49. 2022: Amber files a motion to vacate the San Mateo judgment for extrinsic fraud; Bribed Judge Who needs to be removed from the bench Danny Chou delays 90 days, then denies it, falsely citing timeliness, despite no statute of limitations on Extrinsic fraud upon the court.

50. Diane Doolittle, in open court, brazenly declares: "We don't bribe judges." Yet Nobody else mentioned a word about bribing judges.

51. In a retaliatory action filed by Attorney Rivers Morrell in 2016, Amber 's cross-complaint was sabotaged by judicial misconduct.

52. Amber 's cross-complaint was sabotaged by coordinated misconduct from all prior counsel, opposing counsel, and Judge Nico Dourbetas, who declared her a illegally at the behest of Quinn Emanuel and Goguen vexatious litigant in 2024.

53. In 2024, Judge Nico Dourbetas declared her a vexatious litigant and ordered a $50,000 bond, despite her status as a trafficked indigent woman residing in a shelter, after already having signed her fee waiver months prior after she provided the court evidence of indigence.

54. G. Federal Court Obstruction and International Denial of Justice

55. March 2023: Amber files suit in federal court against all defendants (judges, lawyers, Billionaire pedophiles and their corporations, California State Bar Ec ). Maame Frimpong dismissed the case three times, egregiously citing res judicata for all defendants who Amber had never ever sued based on Goguen's fraudulent San Mateo judgment.

56. Between 2023 and 2025, Amber filed federal complaints citing trafficking, constitutional violations, and fraud. Judges Maame Frimpong, Donal Malloy, Steve Kim, David O. Carter, Laura Taylor Swain, and others dismissed these cases under

false legal pretexts, including improper use of res judicata despite no prior adjudication.

57. Diane Doolittle, partner at Quinn Emanuel, interfered in the Southern District of New York case through ex parte communications sending letters to Chief Judge Laura Taylor Swain via Fedex.

58. July 2023: Amber  files in Southern District Federal Court in NY; Doolittle sends an Ex-Parte FedEx directly to Chief Judge Laura Taylor Swain citing Maame Frimpong Dismissed my case, Chief Judge automatically transfers the case back to California although she had already granted Amber  s fee waiver and ordered the Marshalls to serve the summons and complaint on all defendants.  and Corrupt magistrate Steve Kim demanded assignment of the Case by the Clerks, The clerks refused citing it was a discovery case not as 1983 civil rights claim and "judge" Steve Kim continued to make demands of the clerks and Maame Frimpong dismissed the case again with no legal basis to do so.

59. Frimpong and Kim wrongly dismissed claims using manufactured jurisdictional arguments.

60. August 2023: Amber files in D.C District Court XXXXXXXXVs Vox Media; Quinn Emanuel intercepts and forces the judge to dismiss the case. Amber files in Montana federal court (Goguen's residence); Old racist Article III Judge Donald Molloy, who previously jailed Goguen's former head of security for crimes Goguen paid him and uninstructed him to commit, Matt Marshall, Judge Malloy Assigns Himself to the case, then denies Amber  's right to proceed.

61. Amber  's filings in Washington, D.C., and Montana were intercepted and dismissed with no adjudication on the merits.

62. H. 2016-2024 Orange County Cross-Complaint and Judicial Persecution

63. 2016: Amber  's original attorney Rivers Morrell (forced out by Goguen) sues Amber  , Goguen, Quinn Emanuel, and Goodwin Procter for $100M in Orange County Superior Court (The LawFirm Of Rivers J Morrell III v.XXXXXXXX). Case is stayed pending San Mateo outcome.

64. Unscrupulous  Lawyer Patricia Glaser Revoked Amber  s Lawyers from Paoli and Purdy via bribery so he would sabotage Amber  's 40 million dollar legal malpractice

claim against Glaser Weil, which was set for mediation with the corrupt JAMS Arbitration firm.

Amber has paid the legal fees, arbitration fees and expert witness fees in full and Paoli fails to tell Amber that the mediation is scheduled. At Patty Glaser's request and interference The paoli and Purdy firm fails to show at the arbitration so Patty Glaser wins yet another fake judgement for millions when all she did was file a complaint and failed to even serve a single page of discovery.

65. Orange County : Amber pays 4 sets of lawyers to represent her in this case brought By Rivers Morrell. All lawyers failed to file even an answer on her behalf. By his time Patricia Glaser's "lawyers" Nemecek and Cole LLP are now representing 3 sets of Amber s former Lawyers, Glaser Weil Debased Pettifogging, CROOK Patty Glaser, Rivers Morrell and Paoli and Purdy LLP. Although None of these law firms did any meaningful legal work on Amber 's behalf, They all plan to split 100 million dollars from Goguen and Sequoia with the corrupt judge Nico Dourbetas.

66. July 2023 Amber files a cross-complaint, served on all defendants in The Orange County case.

67. Amber 's fee waiver is granted by Judge Dourbetas at zoom hearing Sept 11, 2023, but Kyle Batter (Quinn Emanuel) announces a secret settlement between Rivers Morrell and Goguen at the same hearing.

68. Amber 's motions are repeatedly denied with zero legal basis.Judge Nico Dourbetas signs Amber 's fee waiver due to indigency, but later: Allows Quinn Emanuel to proceed while claiming the case is "stayed against Amber ."


69. July 2024 "Judge " Nico Dourbetas Demands Amber post a $50K bond within 30 days to Goguen a billionaire pedophile and trafficker or her cross-complaint will be dismissed, knowing she is indigent, or face dismissal. This outrageous demand for bond is made of an indigent survivor of human trafficking residing in a shelter to post bond to the billionaire pedophilic serial rapist 8 years after the case was filed against Amber Goguen and his law firms for 100 million dollars

70. Amber files recusal motions against Dourbetas; denied three times. Multitudes of white supremacist corrupt debased lawyers from white shoe law firms file joinders to

Quinn Emanuel's illegal request to sign Amber over as a vexatious litigant to deprive her of all access to justice against all participants in Amber 's lifelong abuse and exploitation.

71. August 2024: Corrupt racist Judge Nico Dourbetas Dismisses her case and illegally declares her a vexatious litigant, banning her from access to all California courts.

72. Amber Appeals all of this to the California Fourth Appellate District court of appeals, all of her appeals systemically dismissed without any legal basis via Quinn Emanuel's undue influence, case disappears from the docket.

73. State Bar Of California Refuses to investigate any and all lawyers citing Amber has no right to even report the lawyers who embezzled hundreds of thousands per law firm from her attorneys client trust accounts and failed to adequately represent her.

74. Amber Files complaints against four corrupt California state judges with the judicial council, all complaints and the names of the Judges disappear from the system and she travels to San Francisco to the Judicial council where she is handed blank dismissals without the judges names on the investigation documents.

75. Judges Gilmore and Conway, in coordination with Quinn Emanuel and Lenczner Slaght, used falsified evidence and ex parte communications to freeze Amber 's accounts and obstruct her access to justice.

76. Staff at her Canadian bank, under direction from Monique Jilesen, obstructed Amber 's transactions and coordinated with the Defendants to facilitate asset theft and deprivation of essential medical care.

77. I. Retaliatory and Illegal Subpoenas

78. In 2025, Diane Doolittle issued subpoenas in a closed case with no service or jurisdiction, targeting Google, Verizon, Mint Mobile, T-Mobile, AT&T, Cox Communications, Medical providers and other platforms. Amber discovered these illegal subpoenas when contacted by Google's and other corporations legal departments in May 2025.

79. J. Final Acts of Judicial Retaliation and Criminal Fraud

80. July 2024 Amber  Files motion to vacate second fraudulent multi-million dollar judgement procured by her former lawyer Patrica Glaser and her "law firm" Glaser Weil LLP in the LA county Court in 2019. Amber  only learned about this proceeding in Spring 2024 when researching at the LA court house.

81. July 2024- November 2024 "Judge" Stephanie Bowick refused to sign Amber  s' Fee waiver on 3 occasions, Barring her from proceeding with the motion to vacate. "Judge" Stephanie Bowick then hosted a secret in Chambers hearing and Vacated Amber  s Motion to Vacate the fraudulent multi- million dollar Judgement. This case was also removed to Federal court citing Civil rights violations and is now up on Appeal to the 9th circuit.

82. Susan Greenberg, August 2024: Fourth contempt hearing for "criminal defamation of billionaire pedophiles"in San Mateo. Judge Greenberg sets trial date for the week of September 31 2024, Amber  appears in person for trial on the 31st the court demands Amber  consult San Mateo private defenders' office as her freedom and liberty are a stake for "criminal defamation" of a pedophilic serial rapist who victimised over 5000 girls and women globally since the mid 1990s. Amber  agrees to contact the program and they fail to get back to her; October 17th Amber  appears for the follow up hearing With Judge Greenberg on zoom, Attorney Katrina Steiner, an attorney Amber  never met, never spoke to, appears unannounced in the courtroom, and claims to represent Amber  .

83. October 2024–March 2025: Steiner does no discovery or trial preparation. Amber learns Steiner is a close friend of Judge Susan Greenberg. Amber  requests to proceed pro se or with new counsel; denied via Marsden hearing March 2025.

84. Amber  learns via alternative means that the California DEI Attorney General Rob Bonta and corrupt San Mateo Judge Danny Chou are close friends since university and clerked together for the California supreme court.

85. January–March 2025: New judge 40 year old Nina Shapirshteyn, denies all five of Amber  's meritorious motions (motion to vacate fraudulent judgement, motion for

new trial, motion to disqualify Quinn Emanuel for financial interest in Amber s malicious prosecution and corruption, Motion for Preliminary Injunction and TRO, Motion To vacate Unconstitutional fraudulent gag order, which prevents Amber from speaking about injuries to her own body. Shapirshteyn continues trial to March Citing the court is busy on another trial. Amber appears the morning of the rigged bench "Trial", demands to proceed pro se; illegally denied. Trial proceeds despite Amber 's federal removal in January 2025.

86. March 2025: Amber is found "guilty" of contempt for "criminal defamation" of pedophilic serial rapist after a rigged trial which took place in absence of all jurisdiction by yet another bribed San Mateo judge.

87. Amber learns via the internet of her no-bail status and warrant for a misdemeanour contempt for "Criminal defamation" of billionaire pedophiles. A legal absurdity, as serial rapists and murderers are routinely released on bail. Amber has zero criminal history and poses a danger to nobody.

88. Supreme Court of California Chief Judge Patrica Guerrero another Supreme court of California but can't read the LAW denies all of Amber 's writs! Writ of certiorari, Writ of mandamus, Writ of error, and preliminary injunctions, citing her illegal vexatious litigant designation will not be acted so she can proceed before the Supreme Court for relief.

89. Stephanie Bowick, Danny Chou, and Nina Shapirshteyn denied all of Amber 's motions, including motions to vacate fraudulent judgments and disqualify conflicted lawyers.

90. Judge Bowick refused to grant fee waivers and held secret hearings to dismiss Amber 's claims without notice.

91. Judge Shapirshteyn presided over a fraudulent quasi-criminal contempt trial in March 2025 and found Amber guilty in absentia, even though the matter had been removed to federal court.

92. April–May 2025 Illegal Subpoenas and Final Assault Despite discovery having closed 6 years ago (San Mateo case closed in 2019), Diane Doolittle serves illegal subpoenas with San Mateo Case Number via A&A Legal to Google, Yahoo, T-Mobile, AT&T, Verizon, Cox Communications and more, without serving Amber .

93. Amber learns of these subpoenas in late May 2025 from Google, which contacts her to ask if she plans to quash them.

94. This list of facts contains only 15 percent of the felonies committed. There is extensive Vicarious liability.

95. Amber's four removed cases remain pending before the Ninth Circuit, where systemic obstruction persists.

96. The ultimate crime against Amber was Judge Jonathan Karesh forcing her to name members of organized crime syndicates with zero connection to the breach of contract case, in violation of Marcys law, forcing a victim of child sex trafficking to publicly name dangerous gang members involved in trafficking her, violating all laws protections offered to victims of sex crime with zero protections in place for herself her siblings nor their minor children.

97. Governor Gavin Newsom and Attorney General Rob Bonta were notified of over 41 instances of judicial corruption, yet refused to intervene or investigate.

98. K. Conclusion

99. The foregoing facts establish a continuous, systemic, and coordinated enterprise of human trafficking, obstruction of justice, judicial sabotage, and financial expropriation, spanning multiple jurisdictions and involving private actors, state agents, and legal institutions.

100. These acts form the material foundation for the causes of action pleaded herein, including violations of the The United States Constitution, The Civil rights act, The Violence Against Women Act, The Canadian Charter of Rights and Freedoms, Ontario Human Rights Code, Canadian Victims Bill of Rights, Criminal Code of Canada, and international human rights law.

# DEMAND FOR JURY TRIAL

# VIII.

Plaintiff Amber , a Canadian citizen and survivor of cross-border human trafficking, judicial persecution, and systemic abuse, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure, the United States Constitution (Seventh Amendment), 18 U.S.C. § 1595(b)(4) (TVPA civil jury rights), and applicable federal statutory and constitutional provisions.

This demand is made upon the following grounds:

1. The facts at issue involve grave allegations of:

   ◦ Human trafficking;

   ◦ Rape and sexual slavery;

   ◦ Torture and cruel, inhuman, and degrading treatment;

   ◦ Fraud upon domestic and foreign courts;

   ◦ Racketeering enterprise activity under 18 U.S.C. §§ 1961–1968 (RICO);

   ◦ Obstruction of justice, judicial corruption, bribery, and witness tampering;

   ◦ State-sponsored conspiracy to deny Plaintiff access to due process, equal protection, and constitutional rights under the U.S. Constitution, the Trafficking Victims Protection Act, and international human rights law.

2. These claims raise profound public questions concerning:

   ◦ The abuse of the U.S. federal and state courts by private billionaires and complicit attorneys;

   ◦ Systemic retaliation against a known survivor of human trafficking;

   ◦ Corruption of judicial officers, regulatory bodies, law enforcement, and public officials in the United States and abroad.

3. Plaintiff asserts her inviolate right to have her claims adjudicated by a jury of her peers, as guaranteed under the Seventh Amendment to the U.S. Constitution and applicable statutes.

4. Given the magnitude of misconduct, scope of racketeering activity, state actor complicity, and the systemic obstruction of justice involved, trial by jury is necessary to ensure the integrity of the judicial process and public confidence in the rule of law.

WHEREFORE, Plaintiff demands that all triable issues of fact be determined by a jury in the U.S. District Court.

# PRAYER FOR RELIEF

# IX.

Statement Regarding Relief Sought from State Actors and Judicial Officers

Plaintiff expressly reiterates and clarifies that no monetary damages are sought against any current or former judicial officer, government official, or state actor in any capacity. All such individuals are named solely in their official capacity for the limited purposes of obtaining declaratory, injunctive, and equitable relief to remedy ongoing constitutional violations, abuse of process, and deprivation of federally protected rights under 42 U.S.C. §§ 1983, 1985, and 1986, the U.S. Constitution, and international human rights law. This action does not seek personal liability or damages from any judge, government officer, or public official protected by judicial or sovereign immunity.

WHEREFORE, Plaintiff Amber  respectfully demands judgment against all Defendants, jointly and severally, as follows:

## I. COMPENSATORY DAMAGES

General damages in the amount of $889,000,000.00 to $1,207,000,000.00 USD, including but not limited to:

- Severe physical, psychological, emotional, reputational, and economic harm;

- Loss of earnings, medical expenses, pain and suffering, loss of enjoyment of life, and lost business opportunities.

Special damages for:

- Out-of-pocket costs, medical care, relocation expenses, housing loss, personal security, therapeutic care, protective services, and related expenses.

## II. CONTRACTUAL DAMAGES

Breach of the May 23, 2014 Settlement Agreement in the amount of $40,000,000.00 USD, plus 10% compound interest accruing from May 23, 2014;
Total contractual damages including interest: $154,639,535.77 USD.

## III. PREJUDGMENT INTEREST

10% compound interest per annum on all compensatory, contractual, and special damages, accruing from May 23, 2014, to final judgment.

## IV. STATUTORY TREBLE DAMAGES

Treble damages under:

- The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c);

- The Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1595;

- Civil conspiracy, obstruction of justice, and related federal statutes;
  Not less than $252,000,000.00 USD.

## V. PUNITIVE AND EXEMPLARY DAMAGES

Punitive damages in the amount of $500,000,000.00 USD, to punish and deter Defendants' willful, malicious, illegal, wicked, reckless, and egregious misconduct.

## VI. DECLARATORY RELIEF

Declaring that:

- Defendants engaged in a coordinated transnational criminal enterprise involving human trafficking, judicial corruption, and obstruction of justice;

- The foreign and domestic judgments obtained against Plaintiff are void, unenforceable, and obtained by extrinsic fraud;

- Plaintiff is entitled to all protections, remedies, and recognition under the TVPA, Civil RICO, the U.S. Constitution, and international human rights conventions.

## VII. PERMANENT INJUNCTIVE RELIEF

Enjoining all Defendants from:

- Further retaliation, harassment, stalking, surveillance, or interference with Plaintiff's legal rights, safety, privacy, and survival;

- Enforcing any judgments, orders, or legal instruments procured through fraud upon the court, judicial bribery, or coercion;

- Requiring removal of all defamatory material and fraudulent judicial designations from all public and private records;

- Ordering the production of all documents, records, files, subpoenas, surveillance reports, legal memoranda, and communications related to the Plaintiff.

## VIII. RESTITUTION AND ACCOUNTING

Full disgorgement of all profits, fees, assets, and payments derived from:

- Human trafficking activities;

- Legal fees obtained through racketeering activity;

- Bribes paid to judicial officers, public officials, or their proxies.
  Plaintiff further demands a full forensic accounting of all financial and legal transactions involving Defendants' racketeering conduct.

## IX. LEGAL COSTS AND FEES

Full reimbursement of:

- All court costs, expert witness fees, protective security costs, and out-of-pocket litigation expenses;

- Reasonable attorneys' fees pursuant to 18 U.S.C. § 1595, 18 U.S.C. § 1964(c), and other applicable laws;

- Ongoing security protection, housing, and medical care to ensure Plaintiff's continued safety and survival.

## X. EXPUNGEMENT AND VACATUR

Vacating and expunging all:

- Fraudulent judgments, orders, vexatious litigant designations, and retaliatory rulings obtained through fraud upon the court;

- Fraudulent legal filings in the United States, Canada, and international forums.

## XI. CRIMINAL REFERRALS

Referral of all Defendants and co-conspirators for investigation and prosecution by:

- The U.S. Department of Justice;

- The Federal Bureau of Investigation (FBI);

- The Department of Homeland Security (DHS);

- State Attorneys General and relevant international criminal tribunals;
  For violations including: human trafficking, racketeering, obstruction of justice, bribery of judicial officers, fraud, financial crimes, and conspiracy.

## XII. JUDICIAL MISCONDUCT PROCEEDINGS

Referral of all judicial officers and state actors who participated in, facilitated, or tolerated this enterprise for:

- Immediate disbarment, impeachment, removal from office, and permanent judicial disqualification;

- Discipline under applicable rules governing judicial and legal misconduct.

# XIII. FLORIDA-SPECIFIC RELIEF

K. Declaratory Relief
Declaratory relief under Fla. Stat. § 86.011, declaring Plaintiff's rights and the illegality of Defendants' conduct under Florida's anti-trafficking statute, Fla. Stat. § 787.06(4)(b), including violations of bodily integrity, coercion, and deprivation of liberty.

L. Florida Civil RICO Remedies
Civil remedies, including treble damages and attorneys' fees, under Florida Civil RICO, Fla. Stat. § 772.104(2), due to Defendants' coordinated use of racketeering tactics to exploit, threaten, and silence Plaintiff.

M. Prejudgment Interest
Prejudgment interest on all damages awarded, at the current Florida statutory rate of 10.25%, pursuant to Fla. Stat. § 55.03, calculated from the date of the earliest violation alleged.

# XIV. ANY FURTHER RELIEF

Such further equitable, extraordinary, and injunctive relief as this Court may deem just, necessary, and proper to secure full justice, accountability, protection of Plaintiff's life, liberty, property, and to prevent ongoing violations of U.S. law, international law, and natural justice.

SIGNED ON THURSDAY JULY 21TH,  2025
at Los Angeles, California.

*Amber  Doe,*

Amber  Doe,

In service of a better humanity
Pro Se



Complaint for Human Trafficking

# Human Trafficking



Complaint for Human Trafficking

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Complaint for Human Trafficking